1   BLAKE MUIR HARPER, SBN: 115756
    e-mail:  bmh@hulettharper.com
2   HULETT HARPER STEWART LLP
    550 West C Street, Suite 1600
3   San Diego, CA 92101
    Telephone:  (619) 338-1133
4   Facsimile:   (619) 338-1139

5   ROBERT M. KORNREICH
    e-mail:  rkornreich@wolfpopper.com
6   PATRICIA I. AVERY
    e-mail:  pavery@wolfpopper.com
7   CHET B. WALDMAN
    e-mail:  cwaldman@wolfpopper.com
8   ANTHONY D. GREEN
    e-mail:  agreen@wolfpopper.com
9   WOLF POPPER LLP
    845 Third Avenue
10  New York, New York 10022
    Telephone: (212) 759-4600
11  Facsimile:  (212) 486-2093

12  CARLOS LOPEZ
    LLOVET ZURINAGA & LOPEZ PSC
13  Mercantil Plaza Building, PH1616
    2 Ponce de Leon Ave.
14  San Juan, PR 00918
    Phone: 787-250-1979
15  Facsimile: 787-250-8432

16  Attorneys for Plaintiff

17              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
18                SAN JOSE DIVISION

19

20  ALLAN QUERY, on behalf of itself          Case No. C 08-00832-PVT
    and all others similarly situated,
21                                            CLASS ACTION
                   Plaintiff,
22                                            **NOTICE OF MOTION AND
            v.                                MOTION OF  GOVERNMENT
23                                            EMPLOYEES AND JUDICIARY
    MAXIM INTEGRATED                          RETIREMENT SYSTEM OF THE
24  PRODUCTS, INC., JOHN F.                   COMMONWEALTH OF PUERTO
    GIFFORD, and CARL W. JASPER,              RICO TO BE APPOINTED LEAD
25                                            PLAINTIFF AND FOR APPROVAL
                   Defendants.                OF SELECTION OF LEAD
26                                            COUNSEL; MEMORANDUM IN
                                              SUPPORT**

27                                            DATE:      May 13, 2008
                                              TIME:      10:00 a.m.
28                                            CTRM:      5, 4th Floor
                                              JUDGE:     Hon. Patricial V. Trumbull

1   PLEASE TAKE NOTICE that at 10:00 a.m., on May 13, 2008, or as soon

2   thereafter as the parties can be heard, Plaintiff and Class Member Government

3   Employees and Judiciary Retirement System of the Commonwealth of Puerto Rico

4   ("Movant") will move this Court, before the Honorable Patricial V. Trumbull,

5   pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C.

6   §78u-4(a)(3)(B), for an order: (i) to appoint Movant as lead plaintiff in the

7   above-captioned class action; (ii) to approve Wolf Popper LLP, the law firm selected

8   and retained by Movant, as lead counsel for the plaintiff class; and (iii) to approve

9   Hulett Harper Stewart LLP as liaison counsel for the plaintiff class.

10   This Motion is supported by the below Memorandum of Points and Authorities,

11   the accompanying Declaration of Blake M. Harper, and the exhibits annexed thereto,

12   all of the prior pleadings and proceedings had herein, and such other written and/or

13   oral argument, as may be presented to the Court.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION, MTN; MEMO RE APPTMT LEAD PLTF  C 08-00832-PVT    -2-**

1

## <u>TABLE OF CONTENTS</u>

2  TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

3  PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

4  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6      I.    PUERTO RICO'S MOTION IS TIMELY . . . . . . . . . . . . . . . . . . . 7

7      II.   PUERTO RICO IS THE "MOST ADEQUATE
          PLAINTIFF" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8

9            1.    Puerto Rico Has Made A Motion For Appointment
                As Lead Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10            2.    Puerto Rico Has The Largest Financial Interest . . . . . . . . . . . 9

11            3.    Puerto Rico Satisfies Rule 23 . . . . . . . . . . . . . . . . . . . . . . . 10

12                a.    Puerto Rico Fulfills The Typicality
                    Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

13

              b.    Puerto Rico Fulfills The Adequacy Requirement . . . . 11

14

    III.  THE COURT SHOULD APPROVE PUERTO RICO'S CHOICE

15            OF COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

16  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2  *Armour v. Network Assocs.*,
3      171 F.Supp.2d 1044, 1051 (N.D.Cal.2001) . . . . . . . . . . . . . . . . . . . . . . . . 11

4  *In re Carbon Black Antitrust Litig.*,
       Civil Action No. 03-10191-DPW, 2005 U.S. Dist. LEXIS 660
5      (D. Mass. Jan. 18, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

6  *In re Cavanaugh*, 306 F.3d 726 (9th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . 8-10

7  *In re Critical Path, Inc. Sec. Litig.*,
       156 F.Supp.2d 1102 (N.D.Cal.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8  *In re Emulex Corp. Sec. Litig.*,
9      210 F.R.D. 717 (C.D.Cal.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

10 *In re Enron Corp. Sec. Litig.*,
       306 F.R.D. 427 (S.D.Tex.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 *In re Global Crossing Sec. & ERISA Litig.*,
12     225 F.R.D. 436 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

13 *In re Network Assocs., Inc., Sec. Litig.*,
       76 F.Supp.2d 1017 (N.D.Cal.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

14 *In re Olsten Corp. Sec. Litig.*,
15     3 F.Supp.2d 286 (E.D.N.Y.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16 *In re Oxford Health Plans, Inc. Sec. Litig.*,
       182 F.R.D. 42 (S.D.N.Y.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

17 *In re Surebeam*,
18     2004 WL 5159061 (S.D.Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

19 *Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*,
       354 F. Supp. 2d 18 (D.Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

20 *Mohanty v. BigBand Networks, Inc.*,
       No. C-07-5101 SBA, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008) . . . . 8-12
21
22 *Richardson v. TIVIA, Inc.*,
       No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406
23     (N.D. Cal. Apr. 16,2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

24 *Schonfield v. Dendreon Corp.*,
       No. C07-800-MJP, 2007 WL 2916533 (W.D. Wash. 2007) . . . . . . . . . . . 9

25 *Swack v. Credit Suisse First Boston*,
       230 F.R.D. 250 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12
26
27 *Tanne v. Autobytel, Inc.*,
       226 F.R.D. 659 (C.D.Cal.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28

**NOTICE OF MOTION, MTN; MEMO RE APPTMT LEAD PLTF  C 08-00832-PVT    -4-**

*Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*,
     No. 2:06-CV-2674-PHX-RCB, 2007 WL 2692217 (D.Ariz. 2007) . . . . . . 11

15 U.S.C. §78u-4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**NOTICE OF MOTION, MTN; MEMO RE APPTMT LEAD PLTF  C 08-00832-PVT**    -5-

1  **I.    PRELIMINARY STATEMENT**

2    This memorandum is filed by the Government Employees and Judiciary

3  Retirement System of the Commonwealth of Puerto Rico ("Puerto Rico") for

4  appointment as lead plaintiff, and approval of their selection of Wolf Popper LLP as

5  lead counsel.

6    Puerto Rico pension fund invests the retirement assets of its members employed

7  in the government and judiciary of Puerto Rico.

8    Puerto Rico is aware of no other securities fraud class action pending in this

9  Court brought on behalf of all investors who purchased publicly traded securities of

10  Maxim Integrated Products, Inc. ("Maxim" or the "Company") from April 29, 2003

11  through January 17, 2008 (the "Class Period").  Plaintiff alleges in this action that

12  during the Class Period defendants artificially inflated the price of Maxim securities

13  in violation of Sections 10(b) and 20(a) [15 U.S.C. §§ 78j(b) and 78t(a)] of the

14  Securities Exchange Act of 1934, as well as the rules and regulations promulgated

15  thereunder by the Securities and Exchange Commission ("SEC"), including Rule

16  10b-5, 17 C.F.R. §240.10b-5.

17    In class actions filed under the foregoing provisions of the federal securities

18  laws, the Private Securities Litigation Reform Act ("PSLRA") requires that courts

19  appoint as Lead Plaintiff the member or members of the class that have satisfied

20  certain procedural prerequisites and also constitute the "most adequate

21  representatives" of the prospective class.

22    As set forth in the Certification of Minia Gonzalez Alvarez, Administrator of

23  Puerto Rico, and the analysis of the Puerto Rico' trading in Maxim securities, attached

24  as Exhibit 2 to the Declaration of Blake M. Harper (the "Harper Decl."), Puerto Rico

25  incurred a loss of $1,200,526 on transactions in Maxim common stock during the

26  Class Period (defined above).  Puerto Rico has filed a timely motion for lead plaintiff,

27  readily satisfies the requirements of Rule 23 of the Fed. R. Civ. P, and is entitled to

28  the presumption that it is the most adequate plaintiff to represent the interests of class

1    members in this action.

2    As set forth below, Puerto Rico amply satisfies all of the criteria for selection

3    as Lead Plaintiff, including the requirements of Rule 23 of the Federal Rules of Civil

4    Procedure. Accordingly, Puerto Rico should be appointed Lead Plaintiff.

5    Puerto Rico also respectfully requests that the Court approve its selection of

6    counsel, in accordance with the PSLRA. Puerto Rico has retained Wolf Popper LLP

7    to serve as lead counsel for the Class and Hulett Harper Stewart LLP as liaison

8    counsel. Wolf Popper LLP has been highly successful in prosecuting securities fraud

9    class actions and other complex class actions and is well-qualified to represent the

10   interests of all Class members.

11   **II.    STATEMENT OF FACTS**

12   Maxim designs, develops, manufactures, and markets linear and mixed-signal

13   integrated circuits, commonly referred to as analog circuits. Maxim is a citizen of the

14   States of California and Delaware. Plaintiff in this action alleges that during the Class

15   Period, defendants knowingly or recklessly issued a series of materially false and

16   misleading statements that misled the investing public about Maxim's business,

17   operations, performance, and prospects, and in particular, its improper accounting for

18   Maxim's stock option grants to its officers, directors, and employees. The Company's

19   materially false and misleading statements artificially inflated the trading price of

20   Maxim stock during the Class Period. *See* the Complaint filed in this action by Allan

21   Query, at ¶ 63.

22   **III.   ARGUMENT**

23   **A.    PUERTO RICO'S MOTION IS TIMELY**

24   The PSLRA provides that within sixty days after that publication of notice, any

25   person or group of persons who are members of the proposed class may apply to the

26   Court to be appointed as Lead Plaintiff. *See* PSLRA § 21D(a)(3)(A)(i), 15 U.S.C.

27   §78u-4(a)(3)(A)(i). Within sixty days after that publication of notice, any person or

28   group of persons who are members of the proposed class may apply to the Court to

1  be appointed as Lead Plaintiff.  *Id.*

2      The PSLRA provides a "rebuttable presumption" that the most "adequate

3  plaintiff" to serve as Lead Plaintiff is the person or entity that:

4          (aa) has either filed the complaint or made a motion in response to a

5          notice...;

6          (bb) in the determination of the Court, has the largest financial interest

7          in the relief sought by the class; and

8          (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules

9          of Civil Procedure.

10  15 U.S.C. §78u-4(a)(3)(B)(iii); *see also Mohanty v. BigBand Networks, Inc.*, C-

11  07-5101 SBA, 2008 WL 426250, at **2-4 (N.D. Cal. Feb. 14, 2008); *Richardson v.*

12  *TIVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406 at **8-9 (N.D.

13  Cal. Apr. 16, 2007) (*citing In re Cavanaugh*, 306 F.3d 726, 729-30 [9th Cir.2002]).

14      As set forth below, Puerto Rico satisfies all three of these criteria and, thus, is

15  entitled to the presumption that Puerto Rico is the most adequate plaintiff of the class,

16  and, therefore, should be appointed Lead Plaintiff.

17      **B.**    **PUERTO RICO IS THE "MOST ADEQUATE PLAINTIFF"**

18          **1.**    **Puerto Rico Has Made A Motion For Appointment As Lead**

19          **Plaintiff**

20      On February 7, 2008, the initial notice of the pendency of the Query Action was

21  released on <u>Businesswire</u>.  A copy of the <u>Businesswire</u> press release is attached as

22  Exhibit 1 to the Harper Decl.  Puerto Rico's motion, which is being submitted to this

23  Court by April 7, 2008, is timely because it is being made within sixty days after

24  publication of the initial notice.

25      Thus, Puerto Rico has satisfied the procedural prerequisites set forth in the

26  PSLRA and has fulfilled the first prong of the statutory test for determining the most

27  adequate plaintiff by timely filing this motion for lead plaintiff as discussed above.

28

**NOTICE OF MOTION, MTN; MEMO RE APPTMT LEAD PLTF  C 08-00832-PVT**    -8-

## 2.    Puerto Rico Has The Largest Financial Interest

Pursuant to the second prong of the PSLRA, identification of the most adequate plaintiff begins with the identification of the movant with "the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb); *see Mohanty*, 2008 WL 426250, at *4 ("Although the PSLRA does not provide any specific guidance with respect to the appropriate method of calculating which plaintiff has the "largest financial interest," district courts typically equate "largest financial interest" with the amount of potential recovery."), *citing to In re Critical Path, Inc. Sec. Litig.*, 156 F.Supp.2d 1102, 1107-08 (N.D.Cal.2001) and *In re Network Assocs., Inc., Sec. Litig.*, 76 F.Supp.2d 1017, 1030 (N.D.Cal.1999); *TVIA*, 2007 U.S. Dist. LEXIS 28406 at *14 (approximate loss is most determinative).

In determining which movant has the largest financial interest, "the district court must calculate each potential lead plaintiff's financial interest in the litigation. In so doing, the court may select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d, at 730, fn3. "Although the PSLRA does not specify the criteria for calculating which party has the largest financial interest, the factors which courts have generally considered are: the number of shares purchased during the class period, the number of net shares purchased during the class period, the total net funds expended during the class period and the estimated losses suffered during the class period." *Schonfield v. Dendreon Corp.*, No. C07-800-MJP, 2007 WL 2916533, at *3 (W.D. Wash. 2007), *citing to In re Surebeam*, 2004 WL 5159061 (S.D.Cal.); *see also In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y.1988); *In re Enron Corp. Sec. Litig.*, 306 F.R.D. 427, 440 (S.D.Tex.2002). Pursuant to the foregoing criteria, Puerto Rico believes that it has the largest financial interest in the relief sought by the Class and is therefore the presumptive most adequate plaintiff.

Puerto Rico purchased 156,375 shares of Maxim common stock during the Class Period at an aggregate cost of $4,836,020 and has sustained a loss of $1,200,526

1   as a result of defendants' fraudulent conduct.  A chart quantifying Puerto Rico's loss
2   is attached as Exhibit 2 to the Harper Decl.

3       **3.      Puerto Rico Satisfies the Requirements of Rule 23 of the**
4              **Federal Rules of Civil Procedure**

5       In addition to the aforementioned requirements, PSLRA
6   §21D(a)(3)(B)(iii)(I)(cc) dictates that the proposed Lead Plaintiff must also
7   "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil
8   Procedure."  According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the
9   largest financial interest in the outcome of the litigation, the lead plaintiff must also
10  demonstrate, "based on the information he has provided in his pleadings and
11  declarations ... [that] he satisfies the requirements of Rule 23(a)." *In re Cavanaugh*,
12  306 F.3d, at 730.

13      To satisfy Rule 23, a plaintiff seeking class certification must demonstrate that:
14  (i) the number of class members is so large that joinder of all class members is
15  impracticable; (ii) common issues of law and fact exist and predominate over
16  individual questions; (iii) the class representatives are typical of class members; (iv)
17  the class representatives will fairly and adequately protect the interests of the class;
18  and (v) a class action is superior to individual actions.  *See* Fed. R. Civ. P. 23(a) and
19  (b)(3).

20      Of the prerequisites to maintaining a class action, only two -- typicality and
21  adequacy -- directly address the personal characteristics of the class representative.
22  Consequently, in deciding a motion to serve as lead plaintiff, district courts have in
23  the past uniformly limited their inquiry to the typicality and adequacy prongs of Rule
24  23(a), and defer examination of the remaining requirements until the lead plaintiff
25  moves for class certification.  *See In re Cavanaugh*, 306 F.3d, at 730; *Mohanty*, 2008
26  WL 426250, at *5.  "The court will limit its analysis under Rule 23 because '[a] wide
27  ranging analysis is not appropriate to determine whether [the candidate for lead
28  plaintiff] has made a prima facie showing that [it] satisfies the requirements of Rule

1    23[. ]' [internal citations omitted] ... Indeed, examination of the other two factors

2    under Rule 23, numerosity and the existence of common questions of law or fact, 'is

3    deferred until the lead plaintiff moves for class certification[ ]' under that Rule."

4    *Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, No.

5    2:06-CV-2674-PHX-RCB, 2007 WL 2692217 (D.Ariz. 2007), *quoting Tanne v.*

6    *Autobytel, Inc.*, 226 F.R.D. 659,666 (C.D.Cal.2005) and *Richardson*, at *4.

7              **a.    Puerto Rico Fulfills The Typicality Requirement**

8         Under Rule 23(a)(3), the claims or defenses of the representative party must be

9    typical of those of the class. "The 'typicality' requirement is satisfied when: (1) the

10   claims of the proposed lead plaintiff arise from the same course of conduct that gives

11   rise to the other purported class members' claims, (2) the claims are based on the same

12   legal theory, and (3) the purported class members and proposed lead plaintiff were

13   injured by the same conduct." *Mohanty*, 2008 WL 426250, at *5; *Swack v. Credit*

14   *Suisse First Boston*, 230 F.R.D. 250, 262-263 (D. Mass. 2005); *see also Armour v.*

15   *Network Assocs.*, 171 F.Supp.2d 1044, 1051 (N.D.Cal.2001); *In re Carbon Black*

16   *Antitrust Litig.*, Civil Action No. 03-10191-DPW, 2005 U.S. Dist. LEXIS 660, *51-52

17   (D. Mass. Jan. 18, 2005); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42,

18   49 (S.D.N.Y.1998).

19        Puerto Rico seeks to represent a class of purchasers of Maxim securities which

20   have identical, non-competing, and non-conflicting interests.  Puerto Rico satisfies the

21   typicality requirement because, just like all other class members, it: (1) purchased or

22   acquired Maxim securities during the Class Period; (2) at prices allegedly artificially

23   inflated by defendants' materially false and misleading statements and/or omissions;

24   and (3) suffered damages thereby.  Thus, Puerto Rico's claims are typical of those of

25   other class members since its claims and the claims of other class members arise out

26   of the same course of events.

27              **b.    Puerto Rico Fulfills The Adequacy Requirement**

28        Section 21D of the PSLRA directs the Court to limit its inquiry under the

**NOTICE OF MOTION, MTN; MEMO RE APPTMT LEAD PLTF  C 08-00832-PVT  -11-**

1   adequacy prong to the existence of any conflicts between the interests of the proposed
2   representative and the members of the Class, and then allow the lead plaintiff to retain
3   lead counsel to represent the class, "subject to the approval of the court." *See*
4   §21D(a)(3)(B)(v) of the Exchange Act. Under Rule 23(a)(4), the representative party
5   must "fairly and adequately protect the interests of the class." "The 'adequacy'
6   requirement of Rule 23(a)(4) is satisfied when the proposed lead plaintiff does not
7   have interests antagonistic to the proposed class, and when the proposed lead plaintiff
8   has retained experienced and capable counsel." *Mohanty*, 2008 WL 426250, at *5,
9   *citing to In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D.Cal.2002); *see also*
10  *Swack*, 230 F.R.D., at 265.

11          Here, the interests of Puerto Rico are clearly aligned with the members of the
12  Class, and there is no evidence of any antagonism between its interests and the Class.
13  As detailed above, Puerto Rico shares virtually identical questions of law and fact
14  with the members of the Class, and its claims are typical of the claims of other Class
15  members. Puerto Rico is the victim of the same fraud as all other Class members, and
16  its claims raise similar questions of law and fact as those of all Class members. To
17  further its own interests, Puerto Rico will necessarily have to advance the interests of
18  all Class members. That motion is supported by the Certification of Minia Gonzalez
19  Alvarez, on behalf of Puerto Rico, listing Puerto Rico's transactions in Maxim
20  common stock during the Class Period and attesting to its willingness to serve as Lead
21  Plaintiff in the action and an understanding of the responsibilities of a Lead Plaintiff,
22  including, the willingness and ability to monitor the actions of counsel, and the
23  willingness to provide testimony at deposition and trial. Therefore this element is
24  satisfied.

25          Puerto Rico has retained Wolf Popper LLP to represent it as lead counsel (and
26  Hulett Harper Stewart as liaison counsel) and seek lead plaintiff status in this
27  litigation. This is precisely the scenario contemplated by the PSLRA. *See In re*
28  *Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (stating

**NOTICE OF MOTION, MTN; MEMO RE APPTMT LEAD PLTF  C 08-00832-PVT    -12-**

1  that "in cases subject to the PSLRA, the lawyers representing a class are not mere

2  entrepreneurs acting on behalf of purely nominal plaintiffs, but are lawyers selected

3  by court-appointed Lead Plaintiffs who are substantial and sophisticated institutional

4  investors with access to independent legal and financial specialists and a huge stake

5  in the litigation"); *Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*, 354 F.

6  Supp. 2d 18, 23 (D.Mass. 2000) (finding "the 'whole point of the [PSLRA provisions]

7  was to install a lead plaintiff with substantive decision making ability and authority,'

8  instead of permitting attorneys to direct the litigation process.") (internal citations

9  omitted).

10      Puerto Rico has ample resources to vigorously prosecute the case and to

11  supervise counsel effectively.  Puerto Rico has the sophistication, expertise and

12  resources to supervise this litigation and will keep fully informed at all times

13  concerning the status and progress of the case.

14  **C.    THE COURT SHOULD APPROVE PUERTO RICO'S CHOICE**

15  **OF COUNSEL**

16      The PSLRA vests authority in the Lead Plaintiff to select and retain counsel,

17  subject to court approval. *See* Section 21D(a)(3)(B)(v), 15 U.S.C. §78u-4(a)(3)(B)(v).

18  Consistent with congressional intent, a court should not disturb the Lead Plaintiff's

19  choice of counsel, unless it is "necessary to protect the interest of the plaintiff class."

20  *See* Statement of Managers -- The "Private Securities Litigation Reform Act of 1995,"

21  141 Cong. Rec. H13691-08, at H13700, H. R. Conf. Rpt. No. 104-369, at 62, 104th

22  Cong. 1st Sess. (Nov. 28, 1995).  Puerto Rico has retained Wolf Popper LLP to serve

23  as Lead Counsel.  Wolf Popper LLP has been highly successful in prosecuting

24  securities fraud class actions and other complex class actions as outlined in the firm's

25  resume annexed as Exhibit 3 to the Harper Decl.  Hulett Harper Stewart LLP, Puerto

26  Rico's choice to serve as liaison counsel for the class, has similar long-standing

27  experience and success in prosecuting securities and other class actions. See Harper

28  Decl. at Exhibit 4.

1  **IV.    <u>CONCLUSION</u>**

2          For all of the foregoing reasons, Puerto Rico respectfully requests that its

3  motion for appointment as Lead Plaintiff be granted and the counsel it has selected

4  and retained be approved as Lead Counsel for all plaintiffs and Class members in

5  connection with these proceedings.

6  Dated:        April 7, 2008

7                                              Respectfully submitted,

8                                              HULETT HARPER STEWART LLP
                                               BLAKE MUIR HARPER
9
                                               /s/ Blake M. Harper
10                                             550 West C Street, Suite 1600
                                               San Diego, CA 92101
11                                             Telephone:   (619) 338-1133
                                               Facsimile:    (619) 338-1139
12                                             e-mail: bmh@hulettharper.com

13                                             WOLF POPPER LLP
                                               ROBERT M. KORNREICH
14                                             PATRICIA I. AVERY
                                               CHET B. WALDMAN
15                                             ANTHONY D. GREEN
                                               845 Third Avenue
16                                             New York, New York 10022
                                               Telephone: (212) 759-4600
17                                             Facsimile:  (212) 486-2093
                                               E-mail:  IRRep@wolfpopper.com
18
                                               Of Counsel:
19                                             LLOVET ZURINAGA & LOPEZ PSC
                                               CARLOS LOPEZ
20                                             Mercantil Plaza Building, PH1616
                                               2 Ponce de Leon Ave.
21                                             San Juan, PR 00918
                                               Phone: 787-250-1979
22                                             Facsimile: 787-250-8432

23

24

25

26

27

28

**NOTICE OF MOTION, MTN; MEMO RE APPTMT LEAD PLTF  C 08-00832-PVT    -14-**

1   BLAKE MUIR HARPER, SBN: 115756
    e-mail:  bmh@hulettharper.com
2   HULETT HARPER STEWART LLP
    550 West C Street, Suite 1600
3   San Diego, CA 92101
    Telephone:  (619) 338-1133
4   Facsimile:    (619) 338-1139

5   ROBERT M. KORNREICH
    e-mail:  rkornreich@wolfpopper.com
6   PATRICIA I. AVERY
    e-mail: pavery@wolfpopper.com
7   CHET B. WALDMAN
    e-mail: cwaldman@wolfpopper.com
8   ANTHONY D. GREEN
    e-mail:  agreen@wolfpopper.com
9   WOLF POPPER LLP
    845 Third Avenue
10  New York, New York 10022
    Telephone: (212) 759-4600
11  Facsimile:  (212) 486-2093

12  CARLOS LOPEZ
    LLOVET ZURINAGA & LOPEZ PSC
13  Mercantil Plaza Building, PH1616
    2 Ponce de Leon Ave.
14  San Juan, PR 00918
    Phone: 787-250-1979
15  Facsimile: 787-250-8432

16  Attorneys for Plaintiff

17              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
18                  SAN JOSE DIVISION

19  | ALLAN QUERY, on behalf of itself | Case No. C 08-00832-PVT |
20  | and all others similarly situated, | |
    | | CLASS ACTION |
21  | Plaintiff, | |
    | | **DECLARATION OF BLAKE M.** |
22  | v. | **HARPER IN SUPPORT OF** |
    | | **MOTION OF GOVERNMENT** |
23  | MAXIM INTEGRATED | **EMPLOYEES AND JUDICIARY** |
    | PRODUCTS, INC., JOHN F. | **RETIREMENT SYSTEM OF THE** |
24  | GIFFORD, and CARL W. JASPER, | **COMMONWEALTH OF PUERTO** |
    | | **RICO TO BE APPOINTED LEAD** |
25  | Defendants. | **PLAINTIFF AND FOR APPROVAL** |
    | | **OF LEAD PLAINTIFF'S** |
26  | | **SELECTION OF COUNSEL** |

27  DATE:        May 13, 2008
    TIME:        10:00 a.m.
28  CTRM:        5, 4th Floor
    JUDGE:      Hon. Patricial V. Trumbull

**DECLARATION OF BLAKE M. HARPER**          C 08-00832-PVT

1    I, Blake M. Harper, declare as follows:

2    1.    I am a member of the law firm of Hulett Harper Stewart LLP, plaintiff's

3    counsel in the above-captioned action.  I submit this Declaration in support of the

4    motion of the Government Employees and Judiciary Retirement System of the

5    Commonwealth of Puerto Rico ("Movant") to be appointed as lead plaintiff, and for

6    approval of lead plaintiff's selection of lead counsel and liaison counsel.

7    2.    Attached as Exhibit 1 is a true and correct copy of the initial notice to

8    class members by Allan Query that was published on February 7, 2008, on

9    <u>Businesswire</u>, advising the public of the pendency of a class action filed on behalf of

10    shareholders of Maxim Integrated Products, Inc. ("Maxim" or the "Company").

11    3.    Attached as Exhibit 2 is a true and correct copy of the signed

12    Certification of Minia Gonzalez Alvarez, Administrator of Puerto Rico, and the

13    analysis of the Puerto Rico's trading in Maxim securities pursuant to the Private

14    Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(2), during

15    the period April 29, 2003 through January 17, 2008, inclusive (the "Class Period"),

16    as well as a chart of Movant's transactions in Maxim common stock and its

17    approximate losses on purchases made during the Class Period.

18    4.    Attached as Exhibit 3 is a true and correct copy of the firm biography for

19    Wolf Popper LLP, the law firm Movant asks the Court to approve as lead counsel.

20    5.    Attached as Exhibit 4 is a true and correct copy of the firm biography for

21    Hulett Harper Stewart LLP, the law firm Movant asks the Court to approve as liaison

22    counsel.

23    I hereby declare under penalty of perjury under the laws of the United States

24    of America and the State of California that the foregoing is true and correct to the best

25

26

27

28

**DECLARATION OF BLAKE M. HARPER**            **C 08-00832-PVT**        -1-

1   of my knowledge, information, and belief.  Executed on April 7, 2008, at San Diego,

2   California.

3                                       /s/ Blake M. Harper

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF BLAKE M. HARPER**                **C 08-00832-PVT**          -2-

Yahoo!  My Yahoo!  Mail    Make Y! your home page    Search: [ ]   [ Web Search ]

**YAHOO!** FINANCE   **Sign In**   Finance Home – Help   marketwire
New User? Sign Up

Welcome [Sign In]                          To track stocks & more, Register

**Financial News**

Enter symbol(s) [ ]  [ Basic  ▼ ] [ Get ]  Symbol Lookup

Press Release                                     Source: The Rosen Law Firm

# The Rosen Law Firm Files Securities Class Action Charging Maxim Integrated Products, Inc. With Violations of the Federal Securities Laws - MXIM.PK

Wednesday February 6, 11:11 pm ET

NEW YORK, NY--(MARKET WIRE)--Feb 6, 2008 -- The Rosen Law Firm today announced that it has filed a class action lawsuit on behalf of purchasers of the common stock and options of Maxim Integrated Products, Inc. ("Maxim" or the "Company") (Other OTC:MXIM.PK - News) (formerly NASDAQ: MXIM), during the period from April 29, 2003 through January 17, 2008 (the "Class Period").

To join the Maxim class action, go to the website at http://www.rosenlegal.com or call Laurence Rosen, Esq. or Phillip Kim, Esq. toll-free at 866-767-3653 or email lrosen@rosenlegal.com or pkim@rosenlegal.com for information on the class action.

NO CLASS HAS YET BEEN CERTIFIED IN THE ABOVE ACTION. UNTIL A CLASS IS CERTIFIED, YOU ARE NOT REPRESENTED BY COUNSEL UNLESS YOU RETAIN ONE. YOU MAY ALSO REMAIN AN ABSENT CLASS MEMBER.

The case is pending in the United States District Court for the Northern District of California as case no. 08-cv-0832. You can obtain a copy of the complaint from the clerk of court or you may contact counsel for plaintiffs Laurence Rosen, Esq. or Phillip Kim, Esq. toll-free at 866-767-3653 or email lrosen@rosenlegal.com or pkim@rosenlegal.com.

The complaint charges that Maxim and certain of its former officers violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by engaging in improper stock option backdating that caused the issuance of materially false and misleading financial statements during the Class Period.

The complaint asserts that on January 17, 2008, the Company announced that it would be restating its financial statements to record between $550 million and $650 million of additional stock-based compensation expense and that its previously issued financial statements could no longer be relied on. As a result of these adverse disclosures, the Company's stock price has declined 22%.

A class action lawsuit has already been filed on behalf of Maxim shareholders. If you wish to serve as lead plaintiff, you must move the Court no later than April 7, 2008. If you wish to join the litigation or to discuss your rights or interests regarding this class action, please contact plaintiff's counsel, Laurence Rosen, Esq. or Phillip Kim, Esq. of The Rosen Law Firm toll free at 866-767-3653 or via e-mail at lrosen@rosenlegal.com or pkim@rosenlegal.com.

The Rosen Law Firm has expertise in prosecuting investor securities litigation and extensive experience in actions involving financial fraud. The Rosen Law Firm represents investors throughout the nation, concentrating its practice in securities class actions.

*Contact:*

```
Contact:
Laurence Rosen, Esq.
Phillip Kim, Esq.
The Rosen Law Firm P.A.
Tel:  (212) 686-1060
Toll Free: 1-866-767-3653
Fax: (212) 202-3827
Email Contact
Email Contact
http://www.rosenlegal.com
```

Source: The Rosen Law Firm

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Send Feedback
Copyright © 2008 Marketwire. All rights reserved. All the news releases provided by Marketwire are copyrighted. Any forms of copying other than an
individual user's personal reference without express written permission is prohibited. Further distribution of these materials is strictly forbidden,
including but not limited to, posting, emailing, faxing, archiving in a public database, redistributing via a computer network or in a printed form.

## PLAINTIFF CERTIFICATION

I am the Administrator of The Government Employees' and Judiciary Retirement Systems Administration of the Commonwealth of Puerto Rico (the "Retirement Systems") and am authorized to execute this Certification on their behalf. I hereby state that:

1.      I have reviewed the draft complaint against Maxim Integrated Products Inc., and certain of its senior officers and directors, entitled The Government Employees' and Judiciary Retirement System of the Commonwealth of Puerto Rico vs. Maxim, Inc. et al.. I am authorized, on behalf of the Retirement Systems, to approve the filing of the complaint and/or a lead plaintiff motion by Wolf Popper LLP.

2.      The Retirement Systems did not purchase the securities that are the subject of the action at the direction of counsel or in order to participate in this private action.

3.      The Retirement Systems are willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.      During the Class Period alleged in the Complaint, the Retirement Systems made the following transactions in common stock:

|   Transaction | Trade Date | No. of Shares | Price Per Share |
|---|---|---|---|

### PLEASE SEE ATTACHED

5.      During the three-year period preceding the date of my signing this certification, the Retirement Systems have sought to serve, or have served, as representative on behalf of a class in the following private action(s) arising under the federal securities laws:

The Government Employee Retirement System of the Commonwealth of Puerto Rico is currently acting as lead plaintiff in In re Marvell Technology Group, Ltd. Securities Litigation, 06 CV 06286-RMW (N.D. Cal.); has acted as lead plaintiff in In re Coca-Cola Enterprises, Inc. Securities Litigation, 06 CV 00275-TWT (N.D. Ga.); and sought to served as lead plaintiff in Mizzaro v. Home Depot, Inc., 06 CV 01151-ODE (N.D. Ga.).

6.      The Retirement Systems will not accept any payment for serving as a representative party on behalf of a class except to receive their pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___8___ day of February, 2008.

Minia González Álvarez
ADMINISTRATOR

Maxim Integrated Products (MXIM)
Class Period:        4/29/03    1/17/2008

**Fund :**

| *Puerto Rico* | Date | Trade | Buy | Sell | Price | Cost | Proceeds |
|---|---|---|---|---|---|---|---|
| | 3/4/05 | BUY | 200 | | $42.95 | $8,591 | |
| | 3/4/05 | BUY | 4,400 | | $42.95 | $188,998 | |
| | 3/7/05 | BUY | 7,600 | | $44.00 | $334,391 | |
| | 3/7/05 | BUY | 300 | | $44.00 | $13,200 | |
| | 3/8/05 | BUY | 100 | | $43.80 | $4,380 | |
| | 3/8/05 | BUY | 1,200 | | $43.80 | $52,554 | |
| | 3/8/05 | BUY | 2,700 | | $44.03 | $118,889 | |
| | 3/8/05 | BUY | 100 | | $44.03 | $4,403 | |
| | 3/8/05 | BUY | 100 | | $43.89 | $4,389 | |
| | 3/8/05 | BUY | 1,100 | | $43.89 | $48,279 | |
| | 3/8/05 | BUY | 600 | | $43.91 | $26,349 | |
| | 3/9/05 | BUY | 3,500 | | $43.95 | $153,825 | |
| | 3/9/05 | BUY | 250 | | $43.95 | $10,988 | |
| | 3/10/05 | BUY | 225 | | $43.84 | $9,864 | |
| | 3/10/05 | BUY | 200 | | $43.99 | $8,798 | |
| | 3/10/05 | BUY | 4,400 | | $43.84 | $192,902 | |
| | 3/10/05 | BUY | 4,300 | | $43.99 | $189,150 | |
| | 8/9/06 | BUY | 3,300 | | $27.19 | $89,739 | |
| | 8/9/06 | BUY | 1,800 | | $26.99 | $48,574 | |
| | 8/9/06 | BUY | 3,500 | | $27.11 | $94,899 | |
| | 8/9/06 | BUY | 200 | | $27.19 | $5,439 | |
| | 8/9/06 | BUY | 100 | | $26.99 | $2,699 | |
| | 8/9/06 | BUY | 200 | | $27.11 | $5,423 | |
| | 8/10/06 | BUY | 200 | | $27.15 | $5,430 | |
| | 8/10/06 | BUY | 900 | | $27.14 | $24,426 | |
| | 8/10/06 | BUY | 3,500 | | $27.15 | $95,022 | |
| | 8/11/06 | BUY | 200 | | $26.85 | $5,369 | |
| | 8/11/06 | BUY | 300 | | $26.84 | $8,052 | |
| | 8/11/06 | BUY | 3,300 | | $26.85 | $88,591 | |
| | 8/11/06 | BUY | 5,300 | | $26.84 | $142,253 | |
| | 8/14/06 | BUY | 500 | | $26.93 | $13,463 | |
| | 8/14/06 | BUY | 2,800 | | $26.94 | $75,424 | |
| | 8/14/06 | BUY | 9,400 | | $27.05 | $254,294 | |
| | 8/14/06 | BUY | 100 | | $26.94 | $2,694 | |
| | 8/14/06 | BUY | 400 | | $27.05 | $10,821 | |
| | 8/16/06 | BUY | 100 | | $28.54 | $2,854 | |
| | 8/16/06 | BUY | 2,500 | | $28.54 | $71,358 | |
| | 8/17/06 | BUY | 200 | | $29.50 | $5,899 | |
| | 8/17/06 | BUY | 700 | | $29.40 | $20,577 | |
| | 8/17/06 | BUY | 3,000 | | $29.50 | $88,490 | |
| | 8/18/06 | BUY | 1,700 | | $29.28 | $49,779 | |
| | 8/18/06 | BUY | 100 | | $29.28 | $2,928 | |
| | 8/21/06 | BUY | 100 | | $28.61 | $2,861 | |
| | 8/21/06 | BUY | 1,000 | | $28.61 | $28,609 | |
| | 8/21/06 | BUY | 600 | | $28.61 | $17,163 | |
| | 11/3/06 | BUY | 2,700 | | $28.47 | $76,865 | |
| | 11/3/06 | BUY | 3,400 | | $28.33 | $96,322 | |
| | 11/3/06 | BUY | 5,600 | | $28.45 | $159,308 | |
| | 11/3/06 | BUY | 100 | | $28.47 | $2,847 | |
| | 11/3/06 | BUY | 200 | | $28.33 | $5,666 | |
| | 11/3/06 | BUY | 300 | | $28.45 | $8,534 | |
| | 11/6/06 | BUY | 100 | | $29.20 | $2,920 | |
| | 11/6/06 | BUY | 200 | | $29.61 | $5,921 | |
| | 11/6/06 | BUY | 1,200 | | $29.20 | $35,044 | |

| Date | Type | | | Price | |
|---|---|---|---|---|---|
| 11/6/06 | BUY | 3,700 | | $29.61 | $109,543 |
| 11/7/06 | BUY | 1,400 | | $30.16 | $42,230 |
| 11/7/06 | BUY | 4,600 | | $30.65 | $141,002 |
| 11/7/06 | BUY | 100 | | $30.16 | $3,016 |
| 11/7/06 | BUY | 200 | | $30.65 | $6,131 |
| 11/8/06 | BUY | 3,100 | | $30.51 | $94,585 |
| 11/8/06 | BUY | 2,300 | | $30.86 | $70,967 |
| 11/8/06 | BUY | 100 | | $30.51 | $3,051 |
| 11/8/06 | BUY | 100 | | $30.86 | $3,086 |
| 11/9/06 | BUY | 100 | | $30.63 | $3,063 |
| 11/9/06 | BUY | 300 | | $30.51 | $9,154 |
| 11/9/06 | BUY | 2,200 | | $30.63 | $67,392 |
| 11/9/06 | BUY | 6,900 | | $30.51 | $210,533 |
| 11/10/06 | BUY | 100 | | $30.55 | $3,055 |
| 11/10/06 | BUY | 400 | | $30.79 | $12,318 |
| 11/10/06 | BUY | 1,700 | | $30.55 | $51,940 |
| 11/10/06 | BUY | 600 | | $30.15 | $18,090 |
| 11/10/06 | BUY | 6,700 | | $30.79 | $206,293 |
| 1/4/08 | BUY | 3,600 | | $24.30 | $87,493 |
| 1/4/08 | BUY | 8,000 | | $24.58 | $196,631 |
| 1/4/08 | BUY | 17,600 | | $24.60 | $433,037 |
| 1/4/08 | BUY | 1,500 | | $24.60 | $36,907 |
| | | | | | |
| 11/11/05 | SELL | | 150 | $36.20 | $5,430 |
| 11/11/05 | SELL | | 2,300 | $36.20 | $83,262 |
| 11/14/05 | SELL | | 1,700 | $36.08 | $61,329 |
| 11/14/05 | SELL | | 100 | $36.08 | $3,608 |
| 11/15/05 | SELL | | 100 | $36.07 | $3,607 |
| 11/15/05 | SELL | | 600 | $36.03 | $21,615 |
| 11/15/05 | SELL | | 1,200 | $36.07 | $43,284 |
| 11/15/05 | SELL | | 1,300 | $36.10 | $46,926 |
| 5/25/06 | SELL | | 5,400 | $31.09 | $167,897 |
| 5/25/06 | SELL | | 300 | $31.09 | $9,328 |
| 5/26/06 | SELL | | 300 | $30.96 | $9,287 |
| 5/26/06 | SELL | | 100 | $30.88 | $3,088 |
| 5/26/06 | SELL | | 1,300 | $30.88 | $40,144 |
| 5/26/06 | SELL | | 5,400 | $30.96 | $167,165 |
| 5/30/06 | SELL | | 5,000 | $30.27 | $151,357 |
| 5/30/06 | SELL | | 200 | $30.27 | $6,054 |
| 5/31/06 | SELL | | 1,600 | $30.35 | $48,566 |
| 5/31/06 | SELL | | 1,900 | $30.85 | $58,618 |
| 5/31/06 | SELL | | 1,700 | $31.00 | $52,703 |
| 5/31/06 | SELL | | 100 | $30.35 | $3,035 |
| 5/31/06 | SELL | | 100 | $30.85 | $3,085 |
| 6/1/06 | SELL | | 25 | $31.00 | $775 |
| 6/1/06 | SELL | | 400 | $31.00 | $12,401 |
| 1/23/07 | SELL | | 400 | $31.39 | $12,558 |
| 1/23/07 | SELL | | 7,100 | $31.39 | $222,896 |
| 1/24/07 | SELL | | 2,100 | $31.41 | $65,960 |
| 1/24/07 | SELL | | 3,200 | $31.37 | $100,397 |
| 1/24/07 | SELL | | 1,700 | $31.45 | $53,465 |
| 1/24/07 | SELL | | 100 | $31.41 | $3,141 |
| 1/24/07 | SELL | | 100 | $31.37 | $3,137 |
| 1/24/07 | SELL | | 100 | $31.45 | $3,145 |
| 1/24/07 | SELL | | 100 | $31.46 | $3,146 |
| 1/24/07 | SELL | | 1,900 | $31.46 | $59,765 |
| 1/25/07 | SELL | | 4,100 | $31.51 | $129,172 |
| 1/25/07 | SELL | | 200 | $31.51 | $6,301 |
| 12/21/07 | SELL | | 3,400 | $25.94 | $88,184 |
| 12/21/07 | SELL | | 200 | $25.94 | $5,187 |

| | Purchases | 156,375 | | $30.93 | $4,836,020 | |
| | Sales | | 55,975 | $31.43 | | $1,759,018 |

| | | |
|---|---|---|
| 1 | Average Market Price 1/17/08-4/4/08: | $18.69 |
| 2 | Purchases - Sales: | 100,400 |
| 3 | Line 1 x Line 2: | $1,876,476 |
| 4 | Line 3 + Sales Proceeds: | $3,635,494 |
| 5 | Total Purchase Cost - Line 4: | -$1,200,526 |

## BIOGRAPHICAL SKETCH OF WOLF POPPER LLP

Wolf Popper LLP ("Wolf Popper" or "the Firm") is a nationally recognized law firm with decades of experience in the field of securities and consumer class actions and securities derivative actions. Since the Firm was founded in 1945, Wolf Popper has been a leader in efforts to protect the interests of defrauded investors and consumers, prosecuting hundreds of actions under federal and state laws throughout the United States. The Firm's efforts have resulted in the recovery of billions for aggrieved parties.

The Firm also has a substantial practice in corporate and commercial law. Wolf Popper's commercial litigation practice encompasses the representation of defendants as well as plaintiffs. The Firm's corporate practice includes business transactions, and the law of foreign missions. Among the Firm's clients are domestic and international individuals and businesses, and foreign missions to the United Nations.

The Firm's members have been on the faculty of the Practicing Law Institute and are active members in a variety of professional legal associations, including serving on or chairing a number of committees of such associations. The Firm's members include graduates from the law schools of Harvard, Columbia, and New York University, and many of the Firm's members have written extensively on a variety of subjects for numerous professional associations and legal periodicals. Many of the Firm's current and former members have held responsible positions in government both at the federal and the state level. For example, Benedict Wolf (now deceased) was the First Secretary and Chief Trial Examiner of the National Labor Relations Board, and Martin Popper (now deceased) was a consultant to the U.S. Delegation to the Founding Conference of the United Nations and was vice-president of the Consular Law Society.

Wolf Popper has an exemplary record in its representation of plaintiffs, and the skill and experience of the attorneys at the Firm have been repeatedly recognized by Courts throughout the country. In recognition of its high standing at the bar, Courts have frequently appointed Wolf Popper to serve as lead or co-lead counsel in complex, multi-party actions, including securities and antitrust actions. Recently five Wolf Popper attorneys were selected as New York "Super Lawyers"® for 2007. This selection represents the top 5% of attorneys practicing in New York City. Robert M. Kornreich, Marian P. Rosner, Robert C. Finkel, and Patricia I. Avery were recognized in the Securities Litigation category and Lester L. Levy was recognized in the Consumer and Class Action category.

Wolf Popper has achieved notable and significant successes over the years, some of which are detailed below. Most recently, the Firm was appointed by the Honorable Sidney H. Stein of the United States District Court for the Southern District of New York as Co-Lead Counsel in an ERISA action brought on behalf of participants and beneficiaries who acquired interests in Citigroup common stock through certain Citigroup 401(k) employee benefit plans. The action alleges that defendants breached their fiduciary duties under ERISA by imprudently investing participants' assets in Citigroup common stock despite the fact that such investment posed an undue risk due to, inter alia, (i) Citigroup's underwriting of subprime and "low documentation" loans, (ii) undisclosed losses owing to such subprime loans and (iii) Citigroup's involvement in issuing commercial paper through off-balance-sheet structured investment vehicles (SIVs).

Wolf Popper LLP
Page -2-

A sample of some of the outstanding recoveries achieved and decisions obtained by the Firm is described below.

***Securities Actions:***

- In the <u>Motorola Securities Litigation</u>, 03C287 (RRP) (N.D. Ill.), Wolf Popper represented the Lead Plaintiff, the State of New Jersey, Department of Treasury, Division of Investment. On the eve of trial, the defendants paid $190,000,000 to the class to resolve the federal securities litigation. This recovery was obtained after more than four years of litigation. During the litigation, Wolf Popper, among other things, defeated Motorola's motion to dismiss the complaint (2004 U.S. Dist. LEXIS 18250 (Sept. 9, 2004, N.D. Ill.)) and Motorola's motions for summary judgment (2007 U.S. Dist. LEXIS 9530 (Feb. 8, 2007, N.D. Ill.)).

- In <u>Thurber v. Mattel</u>, Master File No. CV-99-10368-MRP(CWx) (C.D. Cal.) (§10(b) claims) and <u>Dusek v. Mattel</u>, Master File No. CV-99-10864-MRP(CWx) (C.D. Cal.) (§14(a) claims), Wolf Popper was a member of the Executive Committee of Plaintiffs' counsel, but was also specifically appointed by the Federal Court to have primary responsibility for the prosecution of the <u>Dusek v. Mattel</u> §14(a) claims. After more than three years of extremely hard-fought litigation, including two rounds of motions to dismiss, the production of millions of documents, and the taking or defending of more than 40 depositions, both cases settled for the aggregate sum of $122 million, with $61 million allocated for the <u>Dusek v. Mattel</u> §14(a) claims, believed to be the largest settlement of a § 14(a) case. Upon approving the settlement, the Judge complimented counsel saying that the settlement was an "awfully good result." The Judge also specifically found that "Wolf Popper LLP vigorously prosecuted the <u>Dusek</u> action and zealously represented the interests of the <u>Dusek</u> class members" and that Wolf Popper zealously performed in a "very capable and professional manner."

- In <u>Middlesex Retirement System v. Quest Software, Inc.</u>, No. 06-06863-DOC(RNBx) (C.D. Cal.), Wolf Popper was appointed lead counsel in a federal securities class action against Quest Software, Inc. ("Quest"), a company that designs, develops, distributes and supports software products. The case is based on allegations that Quest issued materially false and misleading statements to cover up its failure to account properly for backdated stock options, causing Quest's operating and net income to be overstated and its stock price to be artificially inflated. Following comprehensive briefing opposing defendants' motion to dismiss, the Court on October 22, 2007, denied virtually all of defendants' motion. The litigation is proceeding.

- Wolf Popper LLP was a co-lead settlement counsel for the plaintiff class in <u>In re Service Corporation Internat'l</u>, Civil Action No. H-99-280 (S.D. Tex.). The action alleged that defendants made material misrepresentations in connection with Service Corp.'s January 1999 stock-for-stock acquisition of Equity Corp. International. Based on the strength of the amended complaint, and presentation at mediation sessions, Wolf Popper recovered $63 million for the plaintiff class. The settlement, approved in 2004, was an extraordinary recovery inasmuch as there were no allegations of insider trading, a SEC investigation, or an accounting restatement, and the District Court had spent over four years deliberating over defendants' motion to dismiss the complaint, lessening plaintiffs' leverage in settlement negotiations.

Wolf Popper LLP
Page -3-

- In <u>Stanley v. Safeskin</u>, Lead Case No. 99cv454-BTM(LSP) (S.D. Cal.), Wolf Popper served as Court-appointed Co-lead Counsel for Plaintiffs, in which the Court approved a $55 million settlement in favor of plaintiffs on March 20, 2003. The Honorable Barry T. Moskowitz thereafter complimented Plaintiffs' Co-Lead Counsel, noting his "incredible respect for the work that the lawyers did." Describing Plaintiffs' counsel as "highly skilled in these cases," Judge Moskowitz commented that he was "kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ." The Court subsequently further complimented Co-Lead Counsel, stating that "competency is too weak of a word -- the extraordinary ability of these firms * * * I really thought that the Plaintiffs' law firms in this case not only had extraordinary ability to deal with the complicated factual issues -- and it certainly was a difficult case, and you should be applauded in that regard." Paying Plaintiffs' Co-Lead Counsel perhaps an ultimate compliment, the Court further said, "From the plaintiffs' perspective -- and I say this for all the firms -- you handled it on a much higher plane, probably on a textbook or ideal plane. If they would teach people how it should be done in law school, this would be the example of, how the lawyers handle this case."

- In <u>Buxbaum v. Deutsche Bank, A.G.</u>, 98 Civ. 8460 (JGK) (S.D.N.Y.), Wolf Popper recovered $58 million as co-lead counsel in a major securities fraud action against Deutsche Bank, A.G. and its senior officer. The action alleged that Deutsche Bank defrauded Bankers Trust shareholders by misrepresenting the status of takeover negotiations for Deutsche Bank to acquire Bankers Trust. The District Court's opinion denying defendants' motion to dismiss is reported at Fed. Sec. L. Rep. (CCH) ¶90,969 (S.D.N.Y. 2000). The decision denying defendants' motion for summary judgment is reported at 2002 U.S. Dist. LEXIS 1893 (S.D.N.Y., Jan. 30, 2002). The $58 million recovery, obtained on the eve of trial, was equivalent to approximately 48% of the class' maximum possible recovery, and approximately 96% of the class' most likely recovery.

- In <u>In re Sunbeam Sec. Litig.</u>, 98-8258-Civ.-Middlebrooks (S.D. Fl.), Wolf Popper was appointed co-lead counsel. The case was brought against Sunbeam, its auditors, and former officers and directors of the company, including "Chainsaw" Al Dunlap. Plaintiffs reached a partial settlement with Sunbeam's auditors, Arthur Andersen, for $110 million - one of the largest settlements ever with an accounting firm in a securities class action - and reached a separate settlement with the individual defendants that included more than $18 million in cash plus a separate $13 million recovery from the company's excess insurance policies.

- In <u>In re Providian Financial Sec. Litig.</u>, MDL No. 1301 (E.D. Pa.), Wolf Popper was co-lead counsel for the plaintiff class and obtained a $38 million recovery from the defendants. The Court, in approving the settlement in June 2002, remarked on the "extremely high quality" and "skill and efficiency" of plaintiffs' counsel's work, which the Court stated it had seen throughout the litigation. The Court also noted the "extremely high quality" of Wolf Popper's work is reflected in the result which it obtained and in the fact that it is a nationally prominent firm with extensive experience in the field.

- Wolf Popper was co-lead counsel in <u>In re FTD.com, Inc. Shareholder Litig.</u>, C.A. No. 19458-NC (Del. Ch.), an action in Delaware Chancery Court that alleged that members of the board of directors of FTD.com abused their control of the company by taking FTD.com private under terms advantageous to them but not to FTD.com's public shareholders. After mediation, co-lead counsel obtained a recovery which came to more than 99% of the damages claimed by members of the class.

Wolf Popper LLP
Page -4-

- In <u>Danis v. USN Communications, Inc.</u>, No. 98 C 7482 (N.D. Ill., May 30, 2001), the Court recently approved a settlement Wolf Popper obtained of approximately $45 million for investors, expressly thanking Plaintiffs' co-lead counsel "for all the work you have done and constructive results."

- In an arbitration before a court appointed arbitrator in <u>Retsky Family Limited Partnership v. Price Waterhouse LLP</u>, No. 97 C 7694 (N.D. Ill., June 18, 2001), after a full hearing and several days of testimony, the arbitrator awarded plaintiffs the total damages claimed.

- Wolf Popper achieved a benefit of over $50 million in the settlement of the litigation over the merger of the American Stock Exchange and the NASD in <u>Philipson v. American Stock Exchange</u>, 98 Civ. 4219 (DC) (S.D.N.Y., Transcript of Proceedings, February 18, 1999, at 8-11), in which the Court complimented the Firm for its "terrific job" in negotiating a "substantial [recovery]."

- Wolf Popper was co-lead counsel in <u>In re Chambers Development Co. Sec. Litig.</u>, C.A. No. 92-0679 (W.D. Pa.) that resulted in a $95 million cash settlement for the class in 1996.

- Wolf Popper was the Chair of Plaintiffs' Executive and Scheduling Committees in the consolidated litigation arising out of the national scandal at Wedtech Corporation. <u>In re Wedtech Sec. Litig.</u>, M 21-36 (LBS) MDL 735 (S.D.N.Y.). The action was settled in 1992 for $77.5 million, one of the then largest settlements in a securities fraud action.

- Wolf Popper served as co-lead counsel in <u>In re Prime Motor Inns Shareholder Litig.</u>, Master File No. 90-87 (DRD) (D.N.J.). At the conclusion of the case in 1993, Judge Debevoise complimented plaintiffs' counsel, stating, "The plaintiffs' attorneys have performed their work aggressively, skillfully and with good effect."

- Wolf Popper served as a member of Plaintiffs' Executive Committee and as Plaintiffs' Lead Settlement Counsel in <u>In re Gulf Oil/Cities Service Tender Offer Litig.</u>, 82 Civ. 5253 (MBM) (S.D.N.Y.), where a settlement of $34 million, achieved only after the case was fully prepared for trial, was approved by the Court in May 1992.

- Wolf Popper was the plaintiffs' co-trial counsel in <u>Bella Abzug, et ano. v. Kerkorian, et al.</u>, CA 000981, Superior Court, Los Angeles, California, which was settled during trial in October 1990 for $35 million.

- Wolf Popper was the plaintiffs' co-lead counsel in a litigation that resulted in the then largest recovery in the history of securities class actions. In <u>In re The Standard Oil Company/British Petroleum Litig.</u>, Consolidated Case No. 12676, Court of Common Pleas, Cuyahoga County, Ohio, plaintiffs' counsel negotiated and obtained a benefit for the class in excess of $600 million. In its ruling which approved in full counsels' application for attorneys' fees, the Court commented favorably on the quality of co-lead counsel:

> The professional skill required to achieve the resultant benefits to this Class has been evidenced on nearly a daily basis by this Court.

Wolf Popper LLP
Page -5-

As a result of this professional skill and excellent representation, these benefits to the Class would not have otherwise been achieved.

The Court has fully weighed in its decision the benefits bestowed on the Class. At this juncture the Court finds that the benefit is unprecedented.

• Wolf Popper was co-lead counsel in the case producing the largest recovery in a securities class action prior to the Standard Oil litigation. In Joseph, et al v. Shell Oil Company, et al., Consolidated Civil Action No. 7450 (Del. Ch., April 19, 1985), the plaintiff stockholders successfully petitioned the Delaware Chancery Court to enjoin the proposed merger of Shell Oil Company and Royal Dutch Petroleum Company, 482 A.2d 335, Del. Ch. 1984). In approving the $205 million recovery in the Shell Oil Litigation, Vice Chancellor Maurice Hartnett stated: "The results achieved in this case for the class are outstanding."

• Wolf Popper played a major role in representing the rights of shareholders in the notorious Boesky/Drexel/Milken trading scandal involving Ivan F. Boesky, Dennis B. Levine, Kidder Peabody & Co. Incorporated, Goldman, Sachs & Co., Drexel, Michael R. Milken, and others. These actions arose from the illegal use by various individuals of non-public information about publicly traded corporations, conveyed to them from high level executives at these large investment firms, to reap illicit profits for personal gain. Wolf Popper was appointed co-lead counsel in several of these actions, including the Boesky insider trading class litigation pending in the Southern District of New York, to represent classes of shareholders who suffered losses as a result of these illicit activities. In re Ivan F. Boesky Sec. Litig., MDL 732, MDL-21-45-MP (S.D.N.Y.). The Firm is also one of the lead counsel in the Drexel/Milken litigation also pending in the Southern District of New York. In re Drexel Burnham Lambert Group Inc., et al., Debtors, 90 Civ. 6954 (MP), 90-B-10421 (FGC) (S.D.N.Y.). After intensive litigation, the Firm helped recover in excess of $800 million for investors. In the global settlement of these Milken related litigations, the Court specifically certified a worldwide class of investors after notice was given throughout the world, in addition to publications in newspapers worldwide.

• Wolf Popper was a court-appointed co-lead counsel representing a class of Salomon Brothers securities purchasers who brought an action under the federal securities laws arising out of violations of rules of the United States Department of the Treasury in connection with certain auctions of government securities, In re Salomon Brothers Inc. Sec. Litig., 91 Civ. 5442 (RPP) (S.D.N.Y.). The litigation ultimately settled for over $54 million.

• The Firm was co-lead counsel for plaintiffs in litigation involving the alleged "greenmail" of Walt Disney Company by Saul Steinberg and his Reliance Group, Heckmann v. Ahmanson, C.A. 000851 (Superior Court, Cal.) (co-lead counsel for derivative actions). There the Los Angeles Superior Court in September 1989 approved a settlement providing for a cash payment of $45 million plus the therapeutic benefit of the termination of certain defendants' claim for rescission which potentially would have cost the company in excess of a billion dollars.

Numerous other cases in which the Firm acted as sole lead or co-lead counsel for plaintiffs resulted in multi-million dollar settlements in favor of plaintiffs, including, for example:

Wolf Popper LLP
Page -6-

- In re Grand Casinos, Inc. Sec. Litig., Master File No. 4-96-890 (JRT/RLE) (settled in August 2001; in one of the very early decisions under the Private Securities Litigation Reform Act of 1995, the court sustained various claims finding that plaintiffs met rigorous pleading standards of the then new Act, 988 F. Supp. 1270 (D. Minn. 1997));
- Jonas v. Aspec Technology, Inc., Lead Case No. CV775037 (Superior Court of the State of California, County of Santa Clara (approved in 2001);
- In re Adac Laboratories Sec. Litig., Master File No. C-98-4934-MHP;
- In re Exide Corp. Sec. Litig., 98-CV-60061-AA (E.D. Mich.)
- In re Archer Daniels Midland Co. Securities Litig., (C.D. Ill.) ($30 million recovery approved in 1997);
- In re JWP, Inc. Sec. Litig.,Master File No. 92 Civ. 5815 (S.D.N.Y.) (recovery of $36.2 million from officers, directors, and outside auditors, approved in 1996);
- Polikoff v. Eamer, Case No. BC039354 (Superior Court, Los Angeles, Cal.) ( equitable and therapeutic relief in addition to substantial damages approved  in 1996);
- PS Group Inc. Sec. Litig., Master File No. 93-2046 (C.D. Ill., October 1995) (approved in 1995);
- In re Pacific Enterprises Sec. Litig., CV920841 JSL (EEx) (C.D. Ca., March 28, 1994) ($35 million recovery approved in 1994)(where the Judge complimented plaintiffs' co-lead counsel as being "outstanding lawyers" who "could not be improved on for this kind of litigation," and "this group of lawyers merits [respect].");
- In re American Business Computers Corporation Sec. Litig., Docket No. MDL 913 (CLB) (S.D.N.Y.)
- In re McDonnell Douglas Equipment Leasing Sec. Litig., MDL No. 873 (S.D.N.Y.)(the Court described the Firm as "experienced and competent counsel");
- In re: Fleet/Norstar Sec. Litig., C.A. No. 90-0173-B (FJB)(D.R.I.);
- In re Marion Merrell Dow Inc. Sec. Litig., Master File No. 92-0609-CV-W-6 (W.D. Mo.);
- Hwang v. Smith Corona Corp., CA B 89-450 (TFGD) (D. Conn.) ($24.5 million recovery);
- Pill v. Metromedia, (Del. Ch. Court);
- Watkins v. Beatrice, (Del. Ch. Court) ($190 million recovery);
- In re International Systems & Controls Sec. Litig., MDL 440 (S.D. Tex.) (recovery for the class members of 100% of their damages);
- American Southwest Mortgage Sec. Litig., Civ. 89-462 TUC RMB (D. Az. 1992);
- Seidman v. Stauffer Chemical Co., (D.Conn.);
- Flohr v. Borman's, (S.D.N.Y.) (recovery for class members of over 90% of their damages);
- In re Elscint, Ltd. Sec. Litig., MDL 675 (D. Mass.);
- Zinberg v. Washington Bancorp, Inc., (D.N.J.) (recovery for the class members of 200% of their damages);
- In re Philips N.V. Sec. Litig., Master File 90 Civ. 3044 (RPP) (S.D.N.Y.);
- Rand v. Lorimar, 88 Civ. 3179 (LLS) (S.D.N.Y.);
- In re Jefferson Smurfit Corporation Shareholders' Litig., consolidated C.A. No. 11006 (Del. Ch.);
- In re National Education Corp. Sec. Litig., Master File No. SACV-89-405-AHS (RWRX) (C.D. Cal.);
- In re Phillips Petroleum Sec. Litig., Master File No. Misc. 85-75-MMS (D. Del.);

Wolf Popper LLP
Page -7-

- Fine, et al. v. Houston Oil Trust, et al., C.A. No. H-82-551 (S.D. Tex.) (settlement of approximately $45 million);
- In re Beverly Enterprises Sec. Litig., Master File No. CV-88-01189 (RSWL) (Tx) (C.D. Cal.);
- In re Tenneco Inc. Sec. Litig., Master File No. H-912010 (S.D. Tex.) ($50 million settlement);
- In re Telerate, Inc. Shareholders Litig., Civil Action No. 1115 (consolidated) (Del. Ch.) (acquiring company required to pay $3 more per share);
- In re Henley Manufacturing Corporation Shareholders Litig., Consolidated Civil Action No. 10445 (Del. Ch.) (class recovery of $10 per share increase in tender offer price, a $26 million benefit, plus additional therapeutic benefits);
- In re Kaypro Corporation Shareholder Litig., Master File No. 84-2091 N(M) (S.D. Cal.);
- Rand v. Lorimar Telepictures Corp., 88 Civ. 3179 (LLS) (S.D.N.Y.);
- Grobow v. Dingman, Civil No. 575076 (Superior Court, Cal.) and Civil No. 87-0889 JLI (IEG) (S.D. Cal.) (settlement, comprised of monetary and equitable relief, valued by experts at in excess of $52 million, of federal and state class and derivative actions);
- In re E.F. Hutton Banking Practices Litig., MDL No. 649 (WK);
- Weinberger v. Shumway, Civil No. 547586 (Superior Court., Cal.);
- In re Saxon Sec. Litig., 82 Civ. 3103 (S.D.N.Y.);
- Rubenfeld and Polikoff v. Harte-Hanks Communications, Inc. Civil Action Nos. 7558, 7565 (Del. Ch.);
- Bacine v. Scharffenberger, C.A. 7862 (Del. Ch.);
- In re Itel Sec. Litig., C-79-2168A (N.D. Cal.) ($40 million recovery);
- In re United States Surgical Corp., (D. Conn. No. B-83-775);
- In re Digital Equipment Corporation Sec. Litig., Master File No. CA 83-3255 Y (D. Mass.).

*Consumer Class Actions:*

Wolf Popper's strong presence in prosecuting class actions on behalf of defrauded consumers has similarly resulted in the return of millions of dollars to thousands of victims of unfair business practices. These litigations in which the Firm served as sole lead or co-lead counsel include, among others:

- In re Coordinated Title Insurance Cases, Index No.009600/03 (Sup. Ct., Nassau County, NY), a New York consumer fraud action brought against various Title Insurance Companies for their failure to charge the discounted rate for title insurance premiums in qualified refinancing transactions and their failure to provide borrowers with notice of the discount. In approving the settlement of over $31 million, one of the largest consumer class actions in the history of that court, at the hearing held on July 29, 2005, the court stated:

> And it's this Court's very strong opinion that what we have had before us on all sides – Plaintiffs' side, which involves two firms, and the Defendants, eight Defendants which involve five firms representing the eight different Defendants – was lawyering of the highest quality. It's always enjoyable for the Court to have high quality lawyering in front of it. It's always my opinion that it raises the level of the Bench when the

Wolf Popper LLP
Page -8-

lawyers before it proceed in a very high fashion, which has happened in this case.

- Sims v. First Consumers National Bank, Index No. 01/604536 (Sup. Ct., NY County), this consumer fraud action challenged the misleading disclosure of fees in fine print in connection with the issuance of the bank's credit cards. The lower court's dismissal of the action was unanimously reversed by the appellate court and the action was settled in 2005 with a recovery of 100% of the damages for the class.

- Canning v. Concord EFS, Inc., Docket No. L-6609-02 (Super. Ct., NJ, Law Division, Camden County), a consumer fraud action brought in New Jersey on behalf of recipients of certain public assistance benefits who were being illegally surcharged to access their benefits through ATM machines. The settlement, approved in May 2005, provided for a recovery of 90% of the surcharges and an injunction halting the illegal surcharging.

- Taylor v. American Bankers Insurance Group, Inc., 700 N.Y.S.2d 458 (App. Div., 1st Dept.1999), in which the Firm successfully defended against an appeal by defendants of the certification of a nationwide class on behalf of consumers who alleged that defendants had violated §§349 and 350 of the General Business Law by misleading consumers about the purchase of insurance and improperly denying insurance claims. The Firm achieved a complete recovery for class members as defendants agreed to pay class members' disputed coverage claims in full, as well as revise their solicitations to prevent a recurrence.

- Champod v. Iomega Corp., No. 98/600887 (Sup. Ct, N.Y. Cty. 1999), in which purchasers of computer storage devices alleged that the product could not read certain tapes that it was advertised as being capable of reading, and that they were improperly charged for customer assistance calls. The Firm achieved a settlement that provided a software fix to correct the problem with reading the tapes or, if not corrected, ultimately provided for a return of the product; the Firm also obtained a refund of 50% of the charges for the customer assistance calls.

- Princeton Economics Group, Inc. v. American Telephone & Telegraph Co., Civil Action No. L-91-3221 (N.J. Super. Ct. 1995), the largest class action ever brought in New Jersey State Court. The action, based upon AT&T's marketing and sales of a telephone system that it advertised as well suited to small businesses because of its "conference call" features, revealed that the phone system did not function as advertised. The participants to calls could not hear each other because the conference feature lacked amplification. This litigation resulted in a settlement valued by the Court at $85-90 million. At the conclusion of the case, the Court noted the complexity and difficulty of the issues involved and favorably commented that, "[i]f not for the skill and experience of class counsel, a settlement may not have been reached or, if it had been reached, may have resulted in a significantly diminished recovery for the class."

- Tanzer v. HIP, (1997 WL 773695), in a unanimous decision obtained by the Firm, the New York Court of Appeals, New York's highest court, upheld a class action complaint on behalf of insureds who had been denied medical insurance coverage. The Firm subsequently obtained partial summary judgment against HIP for breach of HIP's contract with its health insurance subscribers for

Wolf Popper LLP
Page -9-

failing to reimburse the subscribers for anesthesia-related expenses in conjunction with surgical procedures performed in New York State since June 7, 1993. <u>Tanzer v. HIP</u>, Index No. 114263-95, slip op., January 27, 1999. Ultimately, a settlement was reached which paid members of the class 100% of their damages.

- • <u>Feinberg v. Empire Blue Cross-Blue Shield Consumer Litig.</u>, 88 Civ. 2532 (RO) (S.D.N.Y.), in which participants in a Blue Cross Blue Shield medical insurance program alleged that the program breached its contract with customers by paying subscribers amounts below the "usual and customary" rates that it represented it would pay in its contract of insurance. The action was ultimately settled with Empire agreeing to reimburse subscribers.

### *Transactional Litigation*

Wolf Popper's transactional litigation department has represented plaintiffs in Delaware and other states' courts when investors in merged or acquired companies are offered inadequate compensation for their stock or are provided inadequate information to allow such investors to make an informed decision whether to vote for such a transaction, tender their shares in a tender offer, or seek appraisal. Examples of merger and acquisition litigation challenging such transactions where Wolf Popper acted as lead or co-lead counsel and contributed to the benefit include:

- • <u>Rice v. Lafarge North America, Inc.</u>, Civ. No. 268974-V (Md. Cir.) ($383 million aggregate benefit)
- • <u>In re Aramark Corp. Shareholders Litig.</u>, Consol. C.A. No. 2117-N (Del. Ch.) ($222 million aggregate benefit).
- • <u>In re Nortek, Inc. Shareholder Litig.</u>, Consol. C.A. No. 19538-NC (Del. Ch.) ($63 million aggregate benefit)
- • <u>In re New Valley Corp. Shareholder Litig.</u>, Consol. C.A. No. 1678-N (Del. Ch.) ($28 million aggregate benefit).
- • <u>In re Net2Phone, Inc. Shareholders Litig.</u>, Consol. C.A. No. 1467-N (Del. Ch.)
- • <u>In re William Lyon Homes Shareholder Litig.</u>, Consol. C.A. No. 2015-N (Del. Ch.)
- • <u>In re ftd.com Inc. Shareholder Litig.</u>, Consol. C.A. No. 19458 (Del. Ch.)

Wolf Popper has served as lead or co-lead counsel in other cases challenging transactions involving, among others: The Topps Co., EDO Corp., James River Group, Inc., CentraCore Properties Trust, Bioenvision, Inc., Mossimo, Inc., Genencor International Inc., Uni-Marts, Inc., Nassda Corp., and Chaparral Steel, Co.

### *Antitrust Actions:*

Wolf Popper's antitrust department has represented plaintiffs nationwide in price fixing cases and other violations of the federal antitrust laws. For example, in <u>In the Matter of the Ocean Shipping Antitrust Litig.</u>, MDL 395 (S.D.N.Y.) Wolf Popper was co-lead counsel and recovered over $50 million on behalf of transatlantic shippers of goods who brought an action against the leading carriers of containerized shipping in the United States-Europe trade for conspiracy to fix the charges made for shipping services. The Firm served as lead or co-lead counsel in numerous other antitrust class actions, including: <u>Wholesale Tobacco Distributors</u> antitrust litigation and in <u>In re Milk Antitrust Litig.</u>, 81 Civ.

Wolf Popper LLP
Page -10-

1963 (RO), (S.D.N.Y. 1981); <u>In re Bread Antitrust Litig.</u>, Master File No. CV-85-2013 (CPS) (E.D.N.Y.); <u>In re Shopping Carts Antitrust Litig.</u>, M.D.L. No. 451 (S.D.N.Y.); <u>In re Wiring Device Antitrust Litig.</u>, MDL 331 (E.D.N.Y.) (where Chief Judge Weinstein described counsel for the plaintiffs as "outstanding and skillful").

### *Environmental Or Health Actions:*

The Firm's strong commitment to and experience in class actions concerning environmental or health matters is demonstrated by the Firm's strong presence and important roles in several cases arising from environmental disaster and health hazards. These include, among other cases, <u>In re Exxon Valdez Oil Spill Litig.</u>, 3AN-89-2533 Civil (Sup. Ct. Alaska) and A-89-095 Civil (D. Alaska) in which the jury awarded judgment for the plaintiffs in the amount of $5 billion; <u>In re Asbestos School Litig.</u>, 83-0268 (E.D. Pa.); <u>Holifield v. BP America, Inc.</u>, CV-90-0722 RJX (C.D. Cal.); <u>In re Johns-Manville Corporation, Debtors</u>, 82 B 11656-11676 (BRL) (Bkr. S.D.N.Y.); and <u>Ross v. A. H. Robins, Inc.</u>, 77 Civ. 1407 (CBM).

### *Trial Experience:*

One of the reasons Wolf Popper maintains a favorable, formidable reputation is because of the Firm's demonstrated willingness to prosecute cases through trial in order to achieve a favorable result for our clients. The Firm's trial (and arbitration) experience includes, among other cases:

● <u>Zuckerman v. FoxMeyer Health Corp.</u>, 3-96-CV 2258-L (N.D. Tex. 2002), where Wolf Popper successfully prosecuted a mini-trial before a former Magistrate Judge from the N.D. Cal. in the context of an ADR Proceeding to determine a binding fair value of a settlement of the action. Notwithstanding the fact that the defendant company was on the brink of insolvency (and subsequently filed for bankruptcy), the company providing the initial layer of insurance coverage was in liquidation, and the individual defendants were not wealthy, after presentation of the evidence, the neutral arbiter determined in plaintiffs' favor.

● In an arbitration before a court appointed arbitrator in <u>Retsky Family Limited Partnership v. Price Waterhouse LLP</u>, No. 97 C 7694 (N.D. Ill., June 18, 2001), after a full hearing and several days of testimony, the arbitrator awarded plaintiffs the total damages claimed.

● The Firm served as arbitration counsel in 1997, 1998, and 1999 in several extensive commercial arbitrations on behalf of an international airline.

● Plaintiffs' co-trial counsel in <u>Abzug, et ano. v. Kerkorian, et al.</u>, CA 000981, Superior Court, Los Angeles, California, which was settled during trial in October 1990 for $35 million.

● The Firm was co-lead counsel for plaintiffs in litigation involving the alleged "greenmail" of Walt Disney Company by Saul Steinberg and his Reliance Group, <u>Heckmann v. Ahmanson</u>, C.A. 000851 (Superior Court, Cal.) (co-lead counsel for derivative actions). There the Los Angeles Superior Court in September 1989 approved a settlement at trial providing for a cash payment of $45 million plus

Wolf Popper LLP
Page -11-

the therapeutic benefit of the termination of certain defendants' claim for rescission which potentially would have cost the company in excess of a billion dollars.

- •     <u>Citron v. E.I. duPont de Nemours & Co.</u>, Del. Ch. (Civil Action No. 6219), in Delaware Chancery Court in which the Vice-Chancellor complimented plaintiffs' counsel "for the able way in which they presented the case," their "well-done" pre-trial briefs, and the "good job" done.

- •     <u>Odmark v. Westside Bancorporation, Inc.</u>, No. C85-1099R (W.D. Wash.), settled mid-way through trial in Seattle, Washington.

- •     Co-trial counsel for a plaintiff class in <u>Kreindler v. Sambo's</u>, 79 Civ. 4538 (WK)(S.D.N.Y.), which was settled during trial.

- •     Co-counsel for the plaintiff class in the successful trial of <u>Sirota v. Solitron Devices, Inc.</u>, 75 Civ. 1383 (CLB) (S.D.N.Y.), a complex securities fraud class action prosecuted under §10(b) of the Securities Exchange Act of 1934. After an eleven-day trial, the jury brought in a verdict for the plaintiff class on all issues of liability and damages which was sustained on appeal. See <u>Sirota v. Solitron Devices, Inc.</u>, 673 F.2d 566 (2d Cir. 1982).

- •     <u>Baum v. Centronics Data Computer Corp.</u>, 85-363-L (D.N.H.), settled after trial had commenced in New Hampshire.

- •     The Firm also has tried several other actions on behalf of plaintiff classes in securities actions in Delaware and elsewhere.

***Court Commentary On The Firm:***

Throughout the history of the Firm, the Courts before whom Wolf Popper has appeared have commented favorably and repeatedly on the ability, expertise, and performance of the Firm and its members. A sampling of some of the praise the Firm has consistently received over the course of its practice include the following cases:

- •     In approving the $190,000,000 recovery for the Class in the <u>Motorola Sec. Litig.</u>, 03C287 (N.D. Ill.), where Wolf Popper represented the lead plaintiff, the Court stated as follows "You did a great very professional job here. This was a hard fought, but extremely professionally fought battle and I appreciate it. Thank you."

- •     In <u>Dusek v. Mattel</u>, Master File No. CV-99-10864-MRP (CWx) (C.D. Cal.), in approving the settlement of the action along with a companion action, for $122 million, the Judge, in her Findings of Fact and Conclusions of Law entered on November 6, 2003, complimented counsel saying that "Wolf Popper LLP vigorously prosecuted the <u>Dusek</u> action and zealously represented the interests of the <u>Dusek</u> Class members," and that Wolf Popper performed in a "very capable and professional manner."

Wolf Popper LLP
Page -12-

- The Firm served as Co-Lead Counsel for plaintiffs in <u>Stanley v. Safeskin</u>, Lead Case No. 99cv454-BTM(LSP) (S.D. Cal.), in which the Judge noted in approving a $55 million settlement that "Plaintiffs' counsel are highly skilled in these cases" and that he was "kind of looking forward to trying this case, because it would have the best lawyers in the country trying this case. . . ." The Honorable Barry T. Moskowitz subsequently further complimented Co-Lead Counsel at a hearing on November 20, 2003, stating:

> I think I learned more about the honorability of the firms and the competency -- and competency is too weak of a word -- the extraordinary ability of these firms in handling the cost aspects of it, and expenses aspect of it, . . . I don't think I've seen lawyers so honest with the Court . . . . I really thought that the Plaintiffs' law firms in this case not only had extraordinary ability to deal with the complicated factual issues -- and it certainly was a difficult case, and you should be applauded in that regard.
>
> * * *
>
> And it's not usual that the court sees lawyers behave -- we usually see them behave well, but this is extraordinarily positive. And I wanted to make that notation. . . I can -- come out of it having incredible respect for the work that the lawyers did in this case.
>
> * * *
>
> From the plaintiffs' perspective -- and I say this for all the firms -- you handled it on a much higher plane, probably on a textbook or ideal plane. If they would teach people how it should be done in law school, this would be the example of, how the lawyers handle this case.

- In approving the settlement of the <u>In re Exide Corp. Sec. Litig.</u>, Case No. 98-CV-60061-AA (E.D. Mich., Transcript of Proceedings, September 2, 1999, at 34, 35-6), the Honorable George Caram Steeh complimented the Firm for its diligence and skill, saying:

> The court is satisfied indeed that the settlement that was reached in arm's length bargaining, that was undertaken only after very thorough preparation on the part of plaintiff's counsel. That the counsel itself was extremely competent and considerable experience in pursuing such matters. . . .
>
> * * *
>
> So the court is satisfied that the attorneys on both sides of this litigation should be commended for their effort and professionalism in developing and presenting the issues and for their common sense in arriving at the settlement as it has been presented to the court for confirmation.

- In the <u>In re Marketspan Corporation /LILCO Shareholder Litig.</u>, Index No. 15731/98 (Sup. Ct., NY, Transcript of Proceedings, April 28, 1999, at 9), Justice Ute Wolff Lally commended the Firm when he preliminarily approved a proposed settlement, stating:

> Let me first state that having had the stipulation of settlement prior to today, I have, of course, perused it at length, and I want to thank and I want to commend the executive committee and the head law firm, Wolf Popper, in adhering to the timetable which this Court has set in the various orders that have been issued and in completing

Wolf Popper LLP
Page -13-

the discovery and the complex negotiations in accordance with the Court's order. The court appreciates that because it was an enormously complex litigation, and I certainly commend you for reaching this agreement.

● In approving the proposed settlement of the litigation over the merger of the American Stock Exchange and the NASD, Judge Denny Chin stated in <u>Philipson v. American Stock Exchange</u>, 98 Civ. 4219 (DC) (S.D.N.Y., Transcript of Proceedings, February 18, 1999, at 8-11):

> I've considered the papers and what I have heard today, and I find that the settlement is fair, reasonable and adequate. . . . The recovery is substantial. There is the $30 million for the seat market program. . . . There is the potential revenue sharing, which I think at a reasonable estimate would be $20.7 million at least, . . . .

> So the benefits of the proposed settlement are substantial. * * * I think that the benefits of the proposed settlement compare very well to any conceivable reasonable potential recovery. * * * There are very experienced and very good counsel on both sides. The negotiations were difficult and went on for quite a long time. * * * So, having considered all those factors, I conclude that the settlement is fair, reasonable and adequate and is approved.
>
> * * *
>
> Terrific job on both sides.

● Judge Donna F. Martinez complimented the Firm when she approved the settlement of a securities fraud action in <u>Germano v. Cognitronics Securities Corp.</u>, Docket No. 3:93-CV-00539 (DFM) (D. Conn., Transcript of Proceedings, September 11, 1998, at 2, 3-4), stating:

> Your presentations. . .were extraordinary – extraordinarily thorough and highly expert. . . .
>
> * * *
>
> The issues presented were complicated. They were difficult, and as we've all said more than once now, they were bitterly and expertly fought.
>
> * * *
>
> You've ended a long piece of litigation. I know that there was hard work involved not only in the litigation, but a lot of hard work and considerable number of hours that went into the efforts to resolve the case, and you're all to be commended for your very, very excellent representation of your respective clients.

● In a securities fraud action against Caremark International, Inc. arising out the company's failure to disclose violations of state fraud statutes, the Firm served as Co-Lead Counsel for plaintiffs and recovered $25 million on behalf of defrauded investors. The Court complimented plaintiffs' counsel on their handling of the case, stating:

> Congratulations * * *I know [this case] was a complex piece of litigation. * * * thank you very much for your efforts. I think the class and the defense were very well represented.

Wolf Popper LLP
Page -14-

<u>In re Caremark International, Inc. Sec. Litig.</u>, Docket No. 94 C 4751 (Transcript of proceedings, December 15, 1997, at 7-8).

- In the investor actions arising out of the failed public offering involving In-Store Advertising in which the Firm was co-lead counsel, Judge Peter K. Leisure, in approving the settlement stated at the settlement hearing held on December 18, 1996:

> Now, having reviewed the excellent work of counsel with regard to the preparation of the papers, and the research that was done, and having conducted independent research on the law, I am fully satisfied with the quality of the lawyers' work in this matter.

<u>In re In Store Advertising Sec. Litig.</u>, Master File No. 90 Civ. 5594 (PKL) (S.D.N.Y., December 18, 1996)

- Wolf Popper was lead counsel in <u>Carpi v. McDonnell Douglas Capital Income Fund-I</u>, 90 Civ. 3448 (JMC) where 95% of the class damages was recovered for the class. Judge Cannella praised lead counsel in a decision dated January 21, 1994, as follows:

> Plaintiffs' lead counsel has at all times demonstrated to this Court the highest caliber of representation, measurable both in quantitative terms (i.e., the benefits of the settlement to the class members), and in the professionalism, the timeliness, and the thoroughness of lead counsel's written submissions.

- Wolf Popper was co-lead counsel in investor actions brought against Valley National Bank of Arizona. Judge Robert C. Broomfield stated in approving a settlement on January 31, 1994:

> I commend counsel, particularly counsel who litigated this matter, on the quality of their representation of their respective counsel. The quality of representation was very high on behalf of all parties.

<u>Hoexter, et al. v. Simmons, et al.</u>, No. CV-89-1069-PHX-RCB (D. Az.).

- Judge James F. Holderman complimented counsel for the quality of their efforts in <u>In re Salton/Maxim Sec. Litig.</u>, Docket No. 91 C 7693 (N.D. Ill.), in which Wolf Popper was Co-Lead Counsel, at the hearing approving the settlement and awarding counsel fees, the Court stated:

> I want to not only compliment you lawyers for the professionalism that you showed in the course of reaching this compromise resolution, but I want to compliment you on the professionalism that you showed during the course of the litigation. This was a hard fought litigation. It was well briefed. The issues were presented crisply. . . . [A]s a judge presiding over this case, it was a pleasure to preside over it because of the skill and the quality of the lawyering on everyone's part in connection with this case.

Wolf Popper LLP
Page -15-

- Judge Dickinson R. Debevoise stated at the February 3, 1993 hearing at which he approved the settlement in In re Prime Motor Inns Shareholder Litig., Master File No. 90-87 (DRD) (D.N.J.):

> The plaintiffs' attorneys have performed their work aggressively, skillfully and with good effect. I do not detect any duplication of work....The attorneys have earned generous compensation.

- Judge Leonard B. Sand of the Southern District of New York, in In re Wedtech Sec. Litig., 21-46 (LBS) MDL 735 (S.D.N.Y.), in approving the settlement and counsel's fee application (in which the Firm was Chair of the Plaintiffs' Executive and Scheduling Committees in the consolidated litigation), stated:

> My observation has been that this litigation has at all times been conducted at a very high-skilled professional level. I have had no sense in this case of make-work activity or any sense that the matter was not pursued by all parties diligently but not excessively . . . .

- In the In re Gulf Oil/Cities Service Tender Offer Litig., 82 Civ. 5253 (MBM) (S.D.N.Y.) litigation, where Wolf Popper served as Plaintiffs' Lead Settlement Counsel and as a member of Plaintiffs' Executive Committee and in which a settlement of $34 million was achieved only after the case was fully prepared for trial, the Honorable Michael B. Mukasey stated to the Wolf Popper partner in charge of the case, at a hearing held on January 3, 1992, "to the extent you have fiduciary obligations, you have discharged them magnificently in this case. You have gotten the best settlement that you can negotiate for your client." Judge Mukasey further stated in his Opinion and Order approving the settlement and awarding counsel fees:

> [P]laintiffs' counsel did all the work on their own....class counsel consistently have been skillful, resourceful and diligent without also being captious -- no mean feat. They invested time and money in this case, and well deserve the payment they request.

In re Gulf Oil/Cities Service Tender Offer Litig., Fed. Sec. L. Rep. (CCH) ¶ 96,845, at 93,391 (S.D.N.Y. 1992).

- In the International Systems & Controls Sec. Litig., MDL 440 (S.D. Tx.) case, Judge Black stated at the conclusion of the action that the quality of the plaintiffs' lawyers was "extraordinary." In Seidman v. Stauffer Chemical Co., B-84-543 (D. Conn.) at the conclusion of the case, Chief Judge Daly remarked, in approving the settlement, that plaintiffs' co-lead counsel had acted throughout the litigation "...in accord with the highest standards of the bar, and it was a pleasure to deal with you and to listen to you, and to review your work...".

- Judge Nicholas H. Politan stated at the hearing approving the settlement in In re Electro-Catheter Corporation Sec. Litig., Civil No. 87-41 (D.N.J. September 7, 1989), in which the Firm was co-lead counsel:

Wolf Popper LLP
Page -16-

   I'm satisfied that counsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation that I participated in, which was perhaps the major portion of the Court litigation here, always well prepared, well spoken, and knew their stuff and they were a credit to their profession. They are the top of the line. It is good to see top-of-the-line people come in here and top-of-the-line people should be paid top-of-the-line fees. . . . I'm very satisfied with counsel. . . . I compliment them. . . .

  ●  At the settlement hearing held on September 30, 1985 in <u>In re Saxon Sec. Litig.</u>, 81 Civ. 3103 (S.D.N.Y.), in which the Firm served as co-lead counsel, Judge Mary Johnson Lowe praised the quality of work performed in the case:

I have never had the pleasure of working with such an outstanding group of attorneys. . . .

           \* \* \*

We had claims which aggregated many times the value of what was available, and I think you were all just superb, and from this Court to all of the lawyers who participated you have my admiration, my thanks -- and I don't know what other accolades I can give you other than that, but that is the way I feel about what happened here, and I am very proud to be a lawyer to be associated with you.

# HULETT HARPER STEWART
## —— LLP ——

*550 West C Street, Suite 1600*
*San Diego, California 92101*
*office 619.338.1133*
*fax 619.338.1139*

## FIRM RESUME

Hulett Harper Stewart LLP was established in July 2000 to provide quality representation to individual and corporate clients in the areas of complex business, securities, antitrust, consumer and class litigation.  Our three partners bring to the firm more than 75 years of experience as counsel in numerous large, high-visibility cases.

The partners at Hulett Harper Stewart LLP have considerable experience acting as lead trial and principal counsel in numerous antitrust, securities and consumer class and individual actions.  Hulett Harper Stewart has obtained a number of multi-million dollar verdicts and settlements for its individual and class clients, including a $127.5 million settlement with Edward Jones & Co. involving an alleged unlawful "revenue sharing" program; a $336 million proposed settlement with Visa, Mastercard and major credit card issuing banks relating to foreign currency conversion practices; a $30 million jury verdict for a San Diego County Native American Indian tribe against Harrah's for business interference; a $30 million settlement in *Stenovich v. Eccles*, a breach of fiduciary duty class action challenging the fairness of a bank acquisition; a $11 million settlement after trial commenced in an action by a bankruptcy trustee against a debtor's former outside auditors; a full recovery for an elderly individual who lost over $40 million as part of Wall Street's largest single-broker fraud case in history; and a $22.5 million settlement for individual clients from Worldcom and the officers and directors of a WorldCom controlled company.  The firm also played a substantial role in the successful prosecution of a class securities fraud action against Broadcom, Inc., which settled for $150 million on the eve of trial.

The key strengths of our firm include:

> **Attorney Experience** – Our partners have decades of collective practice in significant complex litigation and class action representation**,** and have been recognized for diligence, energy, skill and imagination.

> **Case Success –** As lead or co-lead counsel, we have both litigated cases to verdict and secured or participated in securing hundred of millions of dollars in class action and other settlements.

> **Client Focus –** Actions we have brought have benefited businesses, classes of consumers, investors and employees – and addressed financial fraud and anticompetitive market practices.

1

**Practice Depth** – Our litigation practice combines a solid understanding of antitrust law, consumer and investor protection and corporate governance.

Our mission is to provide high quality legal services and personal attention to our clients in a select number of cases. We place our clients' interests first and employ legal strategies designed to achieve for them the most favorable outcome possible.

Here is a sample of some of the results we have achieved:

*Currency Conversion Cases:*

In *Schwartz v. Visa*, Dennis Stewart was principal trial counsel in a California consumer action seeking to recover inadequately disclosed currency conversion fees charged by Visa and MasterCard. After a six-month trial, judgments worth hundreds of millions of dollars were entered. Hulett Harper Stewart was also one of the principal counsel for certified classes prosecuting a separate federal court case in New York.

A proposed $336 million dollar settlement has been reached in that case and is awaiting Court approval. A similar nationwide consumer class action against American Express also litigated by Hulett Harper Stewart was successfully resolved, resulting in a settlement of $75 million.

*Pauma Band of Luiseño Mission Indians of the Pauma Yuima Reservation, California v. Caesars Entertainment, Inc., et al.*

Hulett Harper Stewart represented the Pauma Band in a tortious interference action against Harrah's Entertainment, Inc. The firm obtained a $30 million dollar jury verdict on behalf of the Pauma Band after a five-week trial in late 2006.

*Enriquez v. Edward D. Jones & Co.*
**(St. Louis City Circuit Court, Missouri):**

Hulett Harper Stewart was co-lead class counsel against Edward Jones & Co., one of the largest brokerage firms in the United States in a case which sought the recovery of funds Edward Jones received from mutual funds in exchange for Edward Jones agreeing to recommend those funds as its "preferred funds." A settlement of $127 million was achieved.

*In re Broadcom Corp. Securities Litigation*
**(C.D. Cal.):**

Hulett Harper Stewart played a significant role in the prosecution of this large federal securities class action, which settled within weeks of trial for $150 million.

***In re Conseco Life Insurance Company Cost of Insurance Litigation***
**(C.D. Cal.):**

Hulett Harper Stewart represented lead-plaintiff and former U.S. Senator Jake Garn and other life insurance policy holders and was on the executive committee prosecuting this nationwide consumer class action. A settlement valued at more than $300 million was obtained.

***Stenovich v. Eccles***
**(3d Dist. Utah)**

The firm represented a class of shareholders in asserting breach of fiduciary duty claims in connection with a proposed merger, which were settled within days of trial for $29,950,000.00.

***Guy F. Atkinson, Inc. v. PricewaterhouseCoopers LLP***
**(N.D. Cal.):**

The firm was co-lead trial counsel on behalf of one of the then largest construction companies in America. The case was successfully settled for $11 million after trial commenced.

***Abbott, et al. v. John D. ("Jack") Phillips, et al.***
**(San Francisco Superior Court)**

The firm represents several individuals in a securities fraud action against World Access and Worldcom. A settlement of $22.5 million was achieved.

These are some of our current cases:

***In Re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation***

The firm is one of the principal counsel prosecuting an action on behalf of a proposed national class of merchants challenging the interchange fee and related practices of Visa and Mastercard.

***Bachman v. AG Edwards, et al.***
**(St. Louis City Circuit Court, Missouri):**

The firm is on the executive committee of firms prosecuting a class action against one of Wall Street's largest firms. The claims arise from allegations that AG Edwards violated its fiduciary duties to its customers by accepting payments from mutual funds to secure "shelf space" and favorable recommendations.

***On-Line Travel Distributors Hotel Tax and Service Fee Cases***

Hulett Harper Stewart is lead counsel in these consumer class actions alleging wrongdoing in connection with stock options back dating.

***In re Infosonics Securities Litigation***

Hulett Harper Stewart is liaison counsel in this securities class action alleging fraudulent disclosure of the company's business and financial reporting.

***Middlesex Retirement System v. Quest Software, Inc.***

Hulett Harper Stewart is liaison counsel in this securities class action alleging improper backdating of stock option grants.

**BLAKE MUIR HARPER** graduated from the University of Utah College of Law in 1981, where he served as Executive Editor of the Utah Law Review and received an award in a national legal writing competition. He then served as law clerk to the Honorable David K. Winder, U.S. District Judge for the District of Utah. Mr. Harper has directed as lead class counsel prosecution of numerous securities and consumer actions throughout the United States, including *Stenovich v. Eccles* (3d Dist. Ct. Utah) (settled for $30 million); *In re L.A. Gear Sec. Litig.* (C.D. Cal.) (settled for more than $50 million); *In re Genentech Sec. Litig.* (N.D. Cal.) (settled for $29 million); *In re Bonneville Pacific Securities Litigation* (D. Utah) (settled for $25 million); *In re Network Equipment Technologies Sec. Litig.* (N.D. Cal.) (settled for cash and securities valued in excess of $23 million); *Cytryn v. Cook* , (N.D. Cal.) (settled for $19.5 million). Mr. Harper was also one of the trial counsel in *In re Apple Computer Sec. Litig.*, No. C-84-20198(A)-JW (N.D. Cal.), where in 1991 a jury verdict was obtained against two corporate officers in a case where damages exceeded $100 million. He played a significant role in prosecuting *In re Broadcom Securities Litigation,* No. SACV 01-275 (GLT) (MLGx) (C.D. Cal.) settled for $150 million. He has taught at PLI and Lorman seminars on topics of accountant liability and civil procedure.

**KIRK B. HULETT** graduated from the University of California San Diego in 1978. Mr. Hulett graduated *cum laude* from the University of San Diego School of Law in 1983, where he was Managing Editor of the University of San Diego Law Reporter. Since 1984, Mr. Hulett has specialized in the representation of plaintiffs in securities and consumer class actions, participating as lead or co-lead counsel in dozens of class actions throughout the country, including *Lincoln Savings* (D. Az.); *Media Vision* (N.D. Cal.); *Home Fed* (S.D. Cal.); and *Gensia Pharmaceuticals* (S.D. Cal.). After a nearly six-month trial in *Lincoln Savings* case, the jury returned a verdict exceeding $250 million. Recently, Mr. Hulett was co-lead trial counsel in a multimillion dollar auditor liability action against *PriceWaterhouseCoopers, LLP* and was lead counsel on behalf of a class against Edward Jones & Company, which recently settled for $127.5 million. He recently testified before the California Assembly Business and Professions Committee on the topic of potential regulatory and auditor liability reforms following the Enron financial collapse.

**DENNIS STEWART** received his Bachelor of Arts from the College of the Holy Cross in 1976 and his Juris Doctor with distinction from Hofstra University in 1981, where he was a member of the Law Review. Between 1981 and 1985 he worked for a major San Diego law firm and engaged in general commercial litigation practice. Between 1985 and 1988, Mr. Stewart served as a trial attorney with the Antitrust Division of the United States Department of Justice. While at the Antitrust Division, Mr. Stewart participated in investigations and trials involving alleged criminal violations of the antitrust and related laws and was lead counsel in the successful prosecution through trial of *United States v. Saft America, Inc.,* No. CD88-99(DRD) (D.N.J.).

Mr. Stewart has served as lead counsel, principal counsel and/or trial counsel in numerous antitrust, consumer and securities cases. He was lead trial counsel in *Knapp v. Ernst & Whinney,* 90 F.3d 1431 (9th Cir. 1996), in which a plaintiffs' verdict was returned in a Rule 10b-5 securities fraud class action, and *Hall v. NCAA,* No. 94-2392-KHV (D. Kan.), in which a plaintiffs' verdict of $30 million was returned in an antitrust class action. He also

5

served as co-lead trial counsel in *In re Airline Ticket Commission Antitrust Litigation*, MDL 1058, an antitrust class action which settled for $85 million, *In re Contact Lens Antitrust Litigation*, which settled for $90 million, and in *In re Lifescan Consumer Litigation*, a consumer class action which settled for $45 million. Most recently, he was trial counsel in Pauma Band of Luiseño Mission Indians v. Caesars Entertainment Inc., et al. in which the jury returned a plaintiff's verdict for $30 million. He has served as co-lead counsel in the *Carbon Fiber Antitrust Litigation* which resulted in a pre-trial settlement of $67.5 million and in the *In re Currency Conversion Litigation*, and trial counsel in *Schwartz v. Visa*. He also played a significant role in prosecuting *In re Broadcom Securities Litigation*, No. SACV 01-275 (GLT) (MLGx ) (C.D. Cal.), settled for $150 million. He is a member of the California and New York bars and continues to specialize in antitrust, consumer and other complex litigation.  He has served on the Executive Committee of the State Bar of California Antitrust and Unfair Competition Section and of the Association of Business Trial Lawyers and has lectured on antitrust and class action topics for the Practicing Law Institute, The American Bar Association Antitrust Section and the California State Bar Antitrust and Trade Regulation Section.

\* \* \* \*

**BRIDGET FOGARTY GRAMME** graduated from the University of San Diego School of Law where she received an award for Outstanding Contribution to the California Regulatory Law Reporter for her report on the Medical Board of California. Ms. Gramme graduated cum laude from the University of San Diego and received her Bachelor of Arts in International Relations and Latino Studies. Prior to attaining her Law Degree, she worked at the U.S. Department of State in Washington, DC where she coordinated the Northern Ireland Vital Voices: Women in Democracy initiative for the International Women's Issues office. She is a member of the California Bar, the San Diego County Bar Association, and the Louis M. Welch American Inns of Court. She is also a volunteer attorney for Casa Cornelia Law Center.

**JENNIFER A. KAGAN** graduated *cum laude* from New York University with a Bachelor of Arts in psychology. She graduated *cum laude* from the University of San Diego School of Law and was admitted to the Order of the Coif. Ms. Kagan served as Senior Executive Editor for the *San Diego Law Review* and worked as an intern at the United States District Court for the Southern District of California and the San Diego City Attorney's Office. She is a member of the California Bar.

**SARAH P. WEBER** graduated *cum laude* from the University of San Diego School of Law. There, she was honored as the Outstanding Contributor to the California Regulatory Law Reporter for her reporting on the activities of the California Board of Accountancy and the California Department of Corporations. Ms. Weber also served as an extern to Presiding Justice Judith McConnell at the California Court of Appeal, 4th Appellate District Division One. She received her Bachelors of Science with an emphasis in Finance from Northern Arizona University in Flagstaff. Prior to obtaining her law degree, Ms. Weber was a Registered Securities Representative and Investment Advisor. She is a member of the California Bar and the Lawyer's Club of San Diego.

1  BLAKE MUIR HARPER, SBN: 115756
   e-mail: bmh@huletharper.com
2  HULETT HARPER STEWART LLP
   550 West C Street, Suite 1600
3  San Diego, CA 92101
   Telephone: (619) 338-1133
4  Facsimile: (619) 338-1139

5  ROBERT M. KORNREICH
   e-mail: rkornreich@wolfpopper.com
6  PATRICIA I. AVERY
   e-mail: pavery@wolfpopper.com
7  CHET B. WALDMAN
   e-mail: cwaldman@wolfpopper.com
8  ANTHONY D. GREEN
   e-mail: agreen@wolfpopper.com
9  WOLF POPPER LLP
   845 Third Avenue
10 New York, New York 10022
   Telephone: (212) 759-4600
11 Facsimile: (212) 486-2093

12 CARLOS LOPEZ
   LLOVET ZURINAGA & LOPEZ PSC
13 Mercantil Plaza Building, PH1616
   2 Ponce de Leon Ave.
14 San Juan, PR 00918
   Phone: 787-250-1979
15 Facsimile: 787-250-8432

16 Attorneys for Plaintiff

17                 UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
18                      SAN JOSE DIVISION

19 | ALLAN QUERY, on behalf of itself | Case No. C 08-00832-PVT
   | and all others similarly situated, |
20 |                                    | CLASS ACTION
21 |                Plaintiff,          |
22 |        v.                          | **[PROPOSED] ORDER
   |                                    | APPOINTING LEAD PLAINTIFF
23 | MAXIM INTEGRATED                   | AND APPROVING LEAD
   | PRODUCTS, INC., JOHN F.            | PLAINTIFF'S SELECTION OF
24 | GIFFORD, and CARL W. JASPER,       | COUNSEL**
25 |                Defendants.         |
26 |                                    | DATE:     May 13, 2008
   |                                    | TIME:     10:00 a.m.
27 |                                    | CTRM:     5, 4th Floor
   |                                    | JUDGE:    Hon. Patricial V. Trumbull
28

**[PROPOSED] ORDER**                      **C 08-00832-PVT**

1    WHEREAS the deadline for any class members to file a motion pursuant to

2  Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-

3  4(a)(3)(B), to be appointed lead plaintiff and to approve lead plaintiff's selection of

4  counsel expired on April 7, 2008; and

5    WHEREAS Class member Government Employees and Judiciary Retirement

6  System of the Commonwealth of Puerto Rico ("Puerto Rico") has timely submitted

7  a Motion to be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's

8  Selection of Counsel (the "Motion"); and

9    WHEREAS Puerto Rico constitutes the "most adequate plaintiff" pursuant to

10  §21D(a)(3)(B) of the Securities Exchange Act of 1934;

11    IT IS HEREBY ORDERED THAT:

12    1.    Class member Puerto Rico constitutes the "most adequate plaintiff"

13  pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 and is therefore

14  appointed as the Lead Plaintiff in the above-captioned class action (the "Action").

15    2.    The Motion is granted as requested.

16    3.    This Order (the "Order") shall apply to the Action and to each case that

17  relates to the same subject matter that is subsequently filed in this Court or is

18  transferred to this Court and is consolidated with the Action.

19    4.    Middlesex Retirement System is appointed to serve as lead plaintiff in

20  the Action, pursuant to 15 U.S.C. §78u-4(a)(3)(B).

21    5.    The law firm of Wolf Popper LLP is hereby approved as lead counsel for

22  the plaintiff class.

23    6.    The law firm of Hulett Harper Stewart LLP is hereby approved as liaison

24  counsel for the plaintiff class.

25    IT IS SO ORDERED.

26

27  DATED: _____    _____

28    UNITED STATES DISTRICT JUDGE