Joseph J. Tabacco, Jr. (75484)
Email: jtabacco@bermanesq.com
Nicole Lavallee (165755)
Email: nlavallee@bermanesq.com
Lesley Ann Hale (237726)
Email: lhale@bermanesq.com
**BERMAN DeVALERIO PEASE TABACCO**
**BURT & PUCILLO**
425 California Street, Suite 2100
San Francisco, CA  94104
Telephone: (415) 433-3200
Facsimile:  (415) 433-6382

**Proposed Local Counsel**

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ALLAN QUERY, individually and on behalf of all others similarly situated, <br><br> v. <br><br> MAXIM INTEGRATED PRODUCTS, INC., CARL W. JASPER, and JOHN F. GIFFORD. | NO. C-08-00832 PVT <br><br> **DECLARATION OF DOUGLAS RISEN IN SUPPORT OF MOTION BY THE CITY OF PHILADELPHIA BOARD OF PENSIONS AND RETIREMENT FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF CO-LEAD COUNSEL** <br><br> **Date:   May 27, 2008** <br> **Time:   2:00 p.m.** <br> **Judge:  Honorable Patricia V. Trumbull** <br> **Crtrm:  5** |

[C-08-00832 PVT] DECLARATION OF DOUGLAS RISEN

1    DOUGLAS RISEN hereby declares as follows:

2    I am an attorney admitted to practice in Pennsylvania, and I am a shareholder with the law

3    firm of Berger & Montague, P.C., which represents the City of Philadelphia Board of Pensions and

4    Retirement.

5    I make this Declaration in Support of the Motion of the City of Philadelphia Board of

6    Pensions and Retirement for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's

7    Selection of Co-Lead Counsel.

8    Attached hereto as exhibits are true and correct copies of the following:

9    | Exhibit No. | Description |
|---|---|
| A | Certification of Movant, City of Philadelphia Board of Pensions and Retirement; |
| B | Chart detailing Movant's losses; |
| C | Notice to members of the Class published via *MarketWire* on February 6, 2008; |
| D | Firm Resume of Berger & Montague, P.C; and |
| E | Firm Resume of Trujillo Rodriguez & Richards, LLC. |

16    I declare under penalty of perjury that the foregoing is true and correct.

17    Executed on April 7, 2008.

18

19    _____
         DOUGLAS RISEN

20

21

22

23

24

25

26

27

28

[C-08-00832 PVT] DECLARATION OF DOUGLAS RISEN                                    1

Exhibit A

## MAXIM INTEGRATED PRODUCTS
## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

I, Christopher R. DiFusco, Deputy City Solicitor, Law Department, City of Philadelphia, on behalf of the City of Philadelphia Board of Pensions & Retirement ("CPBPR" or "Plaintiff), duly swear and say as to the claims asserted under the federal securities laws, that:

1.    As of this date, I have reviewed the complaint filed in this action. I adopt the allegations contained therein, and I hereby authorize CPBPR's selected counsel, Berger & Mongague and Trujillo Rodriguez & Richards, LLC to file a Lead Plaintiff Petition on its behalf.

2.    Plaintiff did not engage in transactions in the securities that are the subject of this action at the direction of counsel or in order to participate in this or any other litigation under the securities laws of the United States.

3.    Plaintiff is willing to serve as representative plaintiff on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made no transactions during the class period in the debt or equity securities that are the subject of this action except those set forth below (as used herein, "equity security" shall have the same meaning as that term has for purposes of section 16(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(a)).

5.    Plaintiff's transaction in the securities of Maxim Integrated Products between April 29, 2003 and January 17, 2008 as follows:

See Schedule A

6.    Plaintiff has not, within the three years preceding the date of certification, sought to serve or served as a representative party on behalf of a class in an action involving alleged violations of the federal securities laws, except as set forth below:

See Schedule B

7.    Plaintiff has been a lead plaintiff in the following securities class actions in the past three (3) years preceding the date on which this certification is signed:

See Schedule B

8.    Plaintiff has not accepted and will not accept any payment for serving as representative plaintiff on behalf of the class beyond its pro rata share of any recovery, unless ordered or approved by the Court pursuant to section 27(a)(4) of the Securities Act, 15 U.S.C. § 77z-1(a)(4), or section 21D(a)(4) of the Securities Exchange Act, 15 U.S.C. § 78u-4(a)(4).

9.    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 4th day of April 2008.


By: Christopher R. DiFusco
    Christopher R. DiFusco, Esq.
    Deputy City Solicitor
    Law Department
    City of Philadelphia

# SCHEDULE A

**CITY OF PHILADELPHIA**

**MAXIM INTEGRATED PRODUCTS**

**Loss Calculations for Transactions During Class Period: April 29, 2003 through January 17, 2008**

| Trade Date | Tran Type | No. Shares Bought | Purch Price / Share | Purchase Cost (excl. fees) | | No. Shares Sold | Price / Share Sold | Sales Proceeds (excl. comm) | |
|---|---|---|---|---|---|---|---|---|---|
| **Held 04/28/03** | | 8,056 | | | | | | | |
| **Class Period Transactions** | | | | | | | | | |
| 07/16/03 | SELL | | | | | 400 | $38.4539 | N/A - match to pre-class holdings | |
| 07/17/03 | SELL | | | | | 300 | $36.8540 | N/A - match to pre-class holdings | |
| 08/01/03 | SELL | | | | | 400 | $39.1640 | N/A - match to pre-class holdings | |
| 08/04/03 | SELL | | | | | 400 | $39.1468 | N/A - match to pre-class holdings | |
| 08/22/03 | BUY | 11,700 | $43.8400 | $ | 512,928 | | | | |
| 09/02/03 | BUY | 8,000 | $44.4750 | $ | 355,800 | | | | |
| 09/02/03 | BUY | 11,500 | $44.7739 | $ | 514,900 | | | | |
| 10/01/03 | BUY | 500 | $40.6200 | $ | 20,310 | | | | |
| 10/02/03 | BUY | 400 | $40.9341 | $ | 16,374 | | | | |
| 10/21/03 | SELL | | | | | 1,500 | $45.8400 | N/A - match to pre-class holdings | |
| 11/13/03 | SELL | | | | | 600 | $53.1433 | N/A - match to pre-class holdings | |
| 11/20/03 | SELL (Part 1 of 2) | | | | | 4,456 | $50.2021 | N/A - match to pre-class holdings | |
| | | | | | | **8,056** | **Subtotal Sales of Pre-Class Holdings** | | |
| 11/20/03 | SELL (Part 2 of 2) | | | | | 8,244 | $50.2021 | $ | 413,866 |
| 04/23/04 | SELL | | | | | 900 | $47.4400 | $ | 42,696 |
| 08/16/04 | BUY | 420 | $43.2424 | $ | 18,162 | | | | |
| 08/17/04 | BUY | 280 | $44.7208 | $ | 12,522 | | | | |
| 08/25/04 | SELL | | | | | 380 | $44.6200 | $ | 16,956 |
| 01/26/05 | BUY | 400 | $39.4071 | $ | 15,763 | | | | |
| 02/24/05 | BUY | 5,400 | $42.6658 | $ | 230,395 | | | | |
| 02/25/05 | BUY | 2,700 | $43.2704 | $ | 116,830 | | | | |
| 03/02/05 | BUY | 7,800 | $43.3603 | $ | 338,210 | | | | |

FIFO ANALYSIS                                    Page 1 of 4

## CITY OF PHILADELPHIA

## MAXIM INTEGRATED PRODUCTS

## Loss Calculations for Transactions During Class Period: April 29, 2003 through January 17, 2008

| Trade Date | Tran Type | No. Shares Bought | Purch Price / Share | Purchase Cost (excl. fees) | No. Shares Sold | Price / Share Sold | Sales Proceeds (excl. comm) |
|---|---|---|---|---|---|---|---|
| 03/02/05 | BUY | 4,000 | $43.8700 | $ 175,480 | | | |
| 03/07/05 | SELL | | | | 4,000 | $44.0930 | $ 176,372 |
| 03/31/05 | SELL | | | | 10,900 | $40.6802 | $ 443,414 |
| 03/31/05 | SELL | | | | 7,600 | $40.6802 | $ 309,170 |
| 07/14/05 | BUY | 1,400 | $41.6600 | $ 58,324 | | | |
| 07/19/05 | SELL | | | | 1,400 | $42.5600 | $ 59,584 |
| 08/02/05 | BUY | 3,400 | $45.3134 | $ 154,066 | | | |
| 09/07/05 | BUY | 200 | $42.8800 | $ 8,576 | | | |
| 10/04/05 | BUY | 4,300 | $43.3428 | $ 186,374 | | | |
| 10/05/05 | BUY | 3,200 | $42.9251 | $ 137,360 | | | |
| 10/19/05 | BUY | 800 | $39.6854 | $ 31,748 | | | |
| 11/21/05 | BUY | 16,300 | $35.7493 | $ 582,714 | | | |
| 12/02/05 | BUY | 3,800 | $38.1634 | $ 145,021 | | | |
| 01/12/06 | BUY | 2,900 | $40.3858 | $ 117,119 | | | |
| 01/27/06 | BUY | 2,300 | $41.7735 | $ 96,079 | | | |
| 04/27/06 | SELL | | | | 12,800 | $34.7949 | $ 445,375 |
| 04/27/06 | SELL | | | | 6,600 | $34.5732 | $ 228,183 |
| 04/28/06 | SELL | | | | 8,400 | $35.3220 | $ 296,705 |
| 05/01/06 | SELL | | | | 14,000 | $35.3004 | $ 494,206 |
| 05/02/06 | SELL | | | | 11,300 | $35.0202 | $ 395,728 |
| 05/24/06 | BUY | 1,000 | $31.6833 | $ 31,683 | | | |
| 05/24/06 | BUY | 2,014 | $31.7050 | $ 63,854 | | | |
| 10/27/06 | SELL | | | | 2,014 | $29.6660 | $ 59,747 |
| 11/02/06 | BUY | 11,400 | $29.3300 | $ 334,362 | | | |
| 11/08/06 | SELL | | | | 11,400 | $30.8500 | $ 351,690 |
| 02/12/07 | SELL | | | | 1,452 | $30.2197 | $ 43,879 |
| 02/22/07 | BUY | 2,580 | $33.0138 | $ 85,176 | | | |
| 02/22/07 | BUY | 2,240 | $33.0138 | $ 73,951 | | | |

FIFO ANALYSIS                                Page 2 of 4

## CITY OF PHILADELPHIA

## MAXIM INTEGRATED PRODUCTS

### Loss Calculations for Transactions During Class Period: April 29, 2003 through January 17, 2008

| Trade Date | Tran Type | No. Shares Bought | Purch Price / Share | Purchase Cost (excl. fees) | | No. Shares Sold | Price / Share Sold | Sales Proceeds (excl. comm) | |
|---|---|---|---|---|---|---|---|---|---|
| 02/22/07 | BUY | 2,710 | $33.2831 | $ | 90,197 | | | | |
| 02/22/07 | BUY | 900 | $33.1500 | $ | 29,835 | | | | |
| 02/22/07 | BUY | 290 | $33.0413 | $ | 9,582 | | | | |
| 02/23/07 | BUY | 2,600 | $33.4711 | $ | 87,025 | | | | |
| 02/23/07 | BUY | 610 | $33.3991 | $ | 20,373 | | | | |
| 02/23/07 | BUY | 310 | $33.5591 | $ | 10,403 | | | | |
| 02/26/07 | BUY | 2,040 | $33.1323 | $ | 67,590 | | | | |
| 02/26/07 | BUY | 2,400 | $33.1150 | $ | 79,476 | | | | |
| 02/26/07 | BUY | 500 | $33.0839 | $ | 16,542 | | | | |
| 02/26/07 | BUY | 470 | $33.0839 | $ | 15,549 | | | | |
| 04/18/07 | BUY | 20 | $30.6500 | $ | 613 | | | | |
| 04/18/07 | BUY | 910 | $30.6000 | $ | 27,846 | | | | |
| 04/18/07 | BUY | 2,680 | $30.6670 | $ | 82,188 | | | | |
| 04/18/07 | BUY | 2,920 | $30.6670 | $ | 89,548 | | | | |
| 04/18/07 | BUY | 30 | $30.6400 | $ | 919 | | | | |
| 04/18/07 | BUY | 2,430 | $30.9915 | $ | 75,309 | | | | |
| 05/22/07 | SELL | | | | | 600 | $32.0400 | $ | 19,224 |
| 06/01/07 | BUY | 7,830 | $31.1338 | $ | 243,778 | | | | |
| 06/20/07 | BUY | 700 | $32.5700 | $ | 22,799 | | | | |
| 06/25/07 | SELL | | | | | 700 | $33.3450 | $ | 23,342 |
| 07/24/07 | SELL | | | | | 909 | $33.6300 | $ | 30,570 |
| 09/05/07 | SELL | | | | | 2,380 | $30.6983 | $ | 73,062 |
| 09/05/07 | SELL | | | | | 610 | $30.6983 | $ | 18,726 |
| 09/05/07 | SELL | | | | | 510 | $30.6550 | $ | 15,634 |
| 09/05/07 | SELL | | | | | 490 | $30.6422 | $ | 15,015 |
| 09/05/07 | SELL | | | | | 4,310 | $30.6569 | $ | 132,131 |
| 09/11/07 | SELL | | | | | 2,420 | $29.9210 | $ | 72,409 |
| 09/11/07 | SELL | | | | | 5,490 | $29.9393 | $ | 164,367 |

FIFO ANALYSIS                          Page 3 of 4

## CITY OF PHILADELPHIA

## MAXIM INTEGRATED PRODUCTS

### Loss Calculations for Transactions During Class Period: April 29, 2003 through January 17, 2008

| Trade Date | Tran Type | No. Shares Bought | Purch Price / Share | Purchase Cost (excl. fees) | | No. Shares Sold | Price / Share Sold | Sales Proceeds (excl. comm) | |
|---|---|---|---|---|---|---|---|---|---|
| 09/12/07 | SELL | | | | | 9,540 | $29.5911 | $ | 282,299 |
| 09/12/07 | SELL | | | | | 3,450 | $29.9450 | $ | 103,310 |
| 09/12/07 | SELL | | | | | 3,350 | $29.8971 | $ | 100,155 |
| 09/12/07 | SELL | | | | | 1,920 | $29.1589 | $ | 55,985 |
| 09/20/07 | BUY | 4,000 | $29.9500 | $ | 119,800 | | | | |
| 09/25/07 | BUY | 9,000 | $28.0789 | $ | 252,710 | | | | |
| 09/25/07 | SELL | | | | | 4,000 | $27.8704 | $ | 111,482 |
| 09/26/07 | BUY | 10,000 | $28.3485 | $ | 283,485 | | | | |
| 09/26/07 | BUY | 48,200 | $28.4697 | $ | 1,372,240 | | | | |
| 09/26/07 | SELL | | | | | 643 | $28.6100 | $ | 18,396 |
| 09/26/07 | SELL | | | | | 2,572 | $28.5400 | $ | 73,405 |
| 10/01/07 | SELL | | | | | 2,900 | $28.4000 | $ | 82,360 |
| 12/31/07 | BUY | 46,400 | $26.4373 | $ | 1,226,691 | | | | |
| **Class Period Totals** | | **258,884** | | **$ 8,658,578** | | **156,240** | | **$** | **5,169,441** |
| Less sale of shares matched to pre-class period holdings: | | | | | | 8,056 | | $ | - |
| **Subtotal of Sales of Shares Purchased in Class Period:** | | | | | | **148,184** | | **$** | **5,169,441** |

**Held 01/17/08**     110,700

**CLASS PD. RETAINED**     110,700    (No. of Shares Purchased in the Class Period & Still held on 01/17/08)

| | | | | Avg. Price to 04/03/08 | | |
|---|---|---|---|---|---|---|
| **Shares Purchased in the Class Period & Retained** | | | 110,700 | $18.6759 | $ | 2,067,417 |
| **CLASS PD. TOTAL** | **258,884** | **$ 8,658,578** | **258,884** | | **$** | **7,236,858** |

| NET LOSS | ($1,421,720) |
|---|---|

FIFO ANALYSIS          Page 4 of 4

# SCHEDULE B

## SCHEDULE B

Plaintiff has sought to serve as class representative in the following actions brought under the United States federal securities laws which were filed in the past three (3) years preceding the date on which this certification is signed:

*Frank v. Dana Corporation et al.*; U.S.D.C. N.D. Ohio Case No. 3:05-cv-07393-JCG

*In re R&G Financial Corporation Securities Litigation*; U.S.D.C. S.D.N.Y. Case No. 1:05-cv-04186-JES

*Hill v. Tribune Company, et al.*; U.S.D.C. N.D. Ill. Case No. 1:05-cv-02602

*Andropolis v. Red Robin Gourmet Burgers, Inc., et al.*; U.S.D.C. D. Colo. Case No. 1:05-cv-01563-EWN-BNB (settled)

*In re KLA-Tencor Corp. Securities Litigation*; U.S.D.C. N.D. CA Case No. 06:cv04065-MJJ

*Eastwood Enters., LLC v. Farha, et al.*, U.S.D.C. M.D. Fla. Case No. 8:07-cv-1940-T24

*Hubbard v. BankAtlantic Bancorp, Inc., et al.*, U.S.D.C. S.D. Fla. No. 0:07-cv-61542-UU

Plaintiff has been a lead plaintiff in the following securities class actions in the past three (3) years preceding the date on which this certification is signed.

*In re R&G Financial Corporation Securities Litigation*; U.S.D.C. S.D.N.Y. Case No. 1:05-cv-04186-JES

*Hill v. Tribune Company, et al.*; U.S.D.C. N.D. Ill. Case No. 1:05-cv-02602

*Andropolis v. Red Robin Gourmet Burgers, Inc., et al.*; U.S.D.C. D. Colo. Case No. 1:05-cv-01563-EWN-BNB (settled)

*In re KLA-Tencor Corp. Securities Litigation*; U.S.D.C. N.D. CA Case No. 06:cv04065-MJJ

*In re Coca-Cola Enterprises, Inc. Securities Litigation*, Case No. 1:06-cv-00275-TWT (N.D. Ga.)

Plaintiff is currently serving as a lead plaintiff in:

*In re R&G Financial Corporation Securities Litigation*; U.S.D.C. S.D.N.Y. Case No. 1:05-cv-04186-JES

*Hill v. Tribune Company, et al.*; U.S.D.C. N.D. Ill. Case No. 1:05-cv-02602

*In re KLA-Tencor Corp. Securities Litigation*; U.S.D.C. N.D. CA Case No. 06:cv04065-MJJ

# Exhibit B

## CITY OF PHILADELPHIA

## MAXIM INTEGRATED PRODUCTS

### Loss Calculations for Transactions During Class Period: April 29, 2003 through January 17, 2008

| Trade Date | Tran Type | No. Shares Bought | Purch Price / Share | Purchase Cost (excl. fees) | No. Shares Sold | Price / Share Sold | Sales Proceeds (excl. comm) |
|---|---|---|---|---|---|---|---|
| **Held 04/28/03** | | **8,056** | | | | | |
| **Class Period Transactions** | | | | | | | |
| 07/16/03 | SELL | | | | 400 | $38.4539 | N/A - match to pre-class holdings |
| 07/17/03 | SELL | | | | 300 | $36.8540 | N/A - match to pre-class holdings |
| 08/01/03 | SELL | | | | 400 | $39.1640 | N/A - match to pre-class holdings |
| 08/04/03 | SELL | | | | 400 | $39.1468 | N/A - match to pre-class holdings |
| 08/22/03 | BUY | 11,700 | $43.8400 | $  512,928 | | | |
| 09/02/03 | BUY | 8,000 | $44.4750 | $  355,800 | | | |
| 09/02/03 | BUY | 11,500 | $44.7739 | $  514,900 | | | |
| 10/01/03 | BUY | 500 | $40.6200 | $  20,310 | | | |
| 10/02/03 | BUY | 400 | $40.9341 | $  16,374 | | | |
| 10/21/03 | SELL | | | | 1,500 | $45.8400 | N/A - match to pre-class holdings |
| 11/13/03 | SELL | | | | 600 | $53.1433 | N/A - match to pre-class holdings |
| 11/20/03 | SELL (Part 1 of 2) | | | | 4,456 | $50.2021 | N/A - match to pre-class holdings |
| | | | | | **8,056** | **Subtotal Sales of Pre-Class Holdings** | |
| 11/20/03 | SELL (Part 2 of 2) | | | | 8,244 | $50.2021 | $  413,866 |
| 04/23/04 | SELL | | | | 900 | $47.4400 | $  42,696 |
| 08/16/04 | BUY | 420 | $43.2424 | $  18,162 | | | |
| 08/17/04 | BUY | 280 | $44.7208 | $  12,522 | | | |
| 08/25/04 | SELL | | | | 380 | $44.6200 | $  16,956 |
| 01/26/05 | BUY | 400 | $39.4071 | $  15,763 | | | |
| 02/24/05 | BUY | 5,400 | $42.6658 | $  230,395 | | | |
| 02/25/05 | BUY | 2,700 | $43.2704 | $  116,830 | | | |
| 03/02/05 | BUY | 7,800 | $43.3603 | $  338,210 | | | |

FIFO ANALYSIS                              Page 1 of 4

## CITY OF PHILADELPHIA

## MAXIM INTEGRATED PRODUCTS

### Loss Calculations for Transactions During Class Period: April 29, 2003 through January 17, 2008

| Trade Date | Tran Type | No. Shares Bought | Purch Price / Share | Purchase Cost (excl. fees) | No. Shares Sold | Price / Share Sold | Sales Proceeds (excl. comm) |
|---|---|---|---|---|---|---|---|
| 03/02/05 | BUY | 4,000 | $43.8700 | $ 175,480 | | | |
| 03/07/05 | SELL | | | | 4,000 | $44.0930 | $ 176,372 |
| 03/31/05 | SELL | | | | 10,900 | $40.6802 | $ 443,414 |
| 03/31/05 | SELL | | | | 7,600 | $40.6802 | $ 309,170 |
| 07/14/05 | BUY | 1,400 | $41.6600 | $ 58,324 | | | |
| 07/19/05 | SELL | | | | 1,400 | $42.5600 | $ 59,584 |
| 08/02/05 | BUY | 3,400 | $45.3134 | $ 154,066 | | | |
| 09/07/05 | BUY | 200 | $42.8800 | $ 8,576 | | | |
| 10/04/05 | BUY | 4,300 | $43.3428 | $ 186,374 | | | |
| 10/05/05 | BUY | 3,200 | $42.9251 | $ 137,360 | | | |
| 10/19/05 | BUY | 800 | $39.6854 | $ 31,748 | | | |
| 11/21/05 | BUY | 16,300 | $35.7493 | $ 582,714 | | | |
| 12/02/05 | BUY | 3,800 | $38.1634 | $ 145,021 | | | |
| 01/12/06 | BUY | 2,900 | $40.3858 | $ 117,119 | | | |
| 01/27/06 | BUY | 2,300 | $41.7735 | $ 96,079 | | | |
| 04/27/06 | SELL | | | | 12,800 | $34.7949 | $ 445,375 |
| 04/27/06 | SELL | | | | 6,600 | $34.5732 | $ 228,183 |
| 04/28/06 | SELL | | | | 8,400 | $35.3220 | $ 296,705 |
| 05/01/06 | SELL | | | | 14,000 | $35.3004 | $ 494,206 |
| 05/02/06 | SELL | | | | 11,300 | $35.0202 | $ 395,728 |
| 05/24/06 | BUY | 1,000 | $31.6833 | $ 31,683 | | | |
| 05/24/06 | BUY | 2,014 | $31.7050 | $ 63,854 | | | |
| 10/27/06 | SELL | | | | 2,014 | $29.6660 | $ 59,747 |
| 11/02/06 | BUY | 11,400 | $29.3300 | $ 334,362 | | | |
| 11/08/06 | SELL | | | | 11,400 | $30.8500 | $ 351,690 |
| 02/12/07 | SELL | | | | 1,452 | $30.2197 | $ 43,879 |
| 02/22/07 | BUY | 2,580 | $33.0138 | $ 85,176 | | | |
| 02/22/07 | BUY | 2,240 | $33.0138 | $ 73,951 | | | |

**CITY OF PHILADELPHIA**

**MAXIM INTEGRATED PRODUCTS**

**Loss Calculations for Transactions During Class Period: April 29, 2003 through January 17, 2008**

| Trade Date | Tran Type | No. Shares Bought | Purch Price / Share | Purchase Cost (excl. fees) | No. Shares Sold | Price / Share Sold | Sales Proceeds (excl. comm) |
|---|---|---|---|---|---|---|---|
| 02/22/07 | BUY | 2,710 | $33.2831 | $ 90,197 | | | |
| 02/22/07 | BUY | 900 | $33.1500 | $ 29,835 | | | |
| 02/22/07 | BUY | 290 | $33.0413 | $ 9,582 | | | |
| 02/23/07 | BUY | 2,600 | $33.4711 | $ 87,025 | | | |
| 02/23/07 | BUY | 610 | $33.3991 | $ 20,373 | | | |
| 02/23/07 | BUY | 310 | $33.5591 | $ 10,403 | | | |
| 02/26/07 | BUY | 2,040 | $33.1323 | $ 67,590 | | | |
| 02/26/07 | BUY | 2,400 | $33.1150 | $ 79,476 | | | |
| 02/26/07 | BUY | 500 | $33.0839 | $ 16,542 | | | |
| 02/26/07 | BUY | 470 | $33.0839 | $ 15,549 | | | |
| 04/18/07 | BUY | 20 | $30.6500 | $ 613 | | | |
| 04/18/07 | BUY | 910 | $30.6000 | $ 27,846 | | | |
| 04/18/07 | BUY | 2,680 | $30.6670 | $ 82,188 | | | |
| 04/18/07 | BUY | 2,920 | $30.6670 | $ 89,548 | | | |
| 04/18/07 | BUY | 30 | $30.6400 | $ 919 | | | |
| 04/18/07 | BUY | 2,430 | $30.9915 | $ 75,309 | | | |
| 05/22/07 | SELL | | | | 600 | $32.0400 | $ 19,224 |
| 06/01/07 | BUY | 7,830 | $31.1338 | $ 243,778 | | | |
| 06/20/07 | BUY | 700 | $32.5700 | $ 22,799 | | | |
| 06/25/07 | SELL | | | | 700 | $33.3450 | $ 23,342 |
| 07/24/07 | SELL | | | | 909 | $33.6300 | $ 30,570 |
| 09/05/07 | SELL | | | | 2,380 | $30.6983 | $ 73,062 |
| 09/05/07 | SELL | | | | 610 | $30.6983 | $ 18,726 |
| 09/05/07 | SELL | | | | 510 | $30.6550 | $ 15,634 |
| 09/05/07 | SELL | | | | 490 | $30.6422 | $ 15,015 |
| 09/05/07 | SELL | | | | 4,310 | $30.6569 | $ 132,131 |
| 09/11/07 | SELL | | | | 2,420 | $29.9210 | $ 72,409 |
| 09/11/07 | SELL | | | | 5,490 | $29.9393 | $ 164,367 |

## CITY OF PHILADELPHIA

## MAXIM INTEGRATED PRODUCTS

### Loss Calculations for Transactions During Class Period: April 29, 2003 through January 17, 2008

| Trade Date | Tran Type | No. Shares Bought | Purch Price / Share | Purchase Cost (excl. fees) | No. Shares Sold | Price / Share Sold | Sales Proceeds (excl. comm) |
|---|---|---|---|---|---|---|---|
| 09/12/07 | SELL | | | | 9,540 | $29.5911 | $ 282,299 |
| 09/12/07 | SELL | | | | 3,450 | $29.9450 | $ 103,310 |
| 09/12/07 | SELL | | | | 3,350 | $29.8971 | $ 100,155 |
| 09/12/07 | SELL | | | | 1,920 | $29.1589 | $ 55,985 |
| 09/20/07 | BUY | 4,000 | $29.9500 | $ 119,800 | | | |
| 09/25/07 | BUY | 9,000 | $28.0789 | $ 252,710 | | | |
| 09/25/07 | SELL | | | | 4,000 | $27.8704 | $ 111,482 |
| 09/26/07 | BUY | 10,000 | $28.3485 | $ 283,485 | | | |
| 09/26/07 | BUY | 48,200 | $28.4697 | $ 1,372,240 | | | |
| 09/26/07 | SELL | | | | 643 | $28.6100 | $ 18,396 |
| 09/26/07 | SELL | | | | 2,572 | $28.5400 | $ 73,405 |
| 10/01/07 | SELL | | | | 2,900 | $28.4000 | $ 82,360 |
| 12/31/07 | BUY | 46,400 | $26.4373 | $ 1,226,691 | | | |
| **Class Period Totals** | | **258,884** | | **$ 8,658,578** | **156,240** | | **$ 5,169,441** |
| Less sale of shares matched to pre-class period holdings: | | | | | 8,056 | | $ - |
| **Subtotal of Sales of Shares Purchased in Class Period:** | | | | | **148,184** | | **$ 5,169,441** |

**Held 01/17/08**       110,700

**CLASS PD. RETAINED**       110,700     (No. of Shares Purchased in the Class Period & Still held on 01/17/08)

| | | | Avg. Price to 04/03/08 | | |
|---|---|---|---|---|---|
| Shares Purchased in the Class Period & Retained | | 110,700 | $18.6759 | $ | 2,067,417 |
| **CLASS PD. TOTAL** | **258,884** | **$ 8,658,578** | **258,884** | **$** | **7,236,858** |

| NET LOSS | ($1,421,720) |
|---|---|

# Exhibit C

The Rosen Law Firm Files Securities Class Action Charging Maxim Integrated Products Page 2 of 2



Yahoo!  My Yahoo!  Mail                                    Search: [                    ]    [Web Search]

**YAHOO!** FINANCE    Welcome, **eleeott**        Finance Home -              marketwire
                     [Sign Out, My Account]     Help

**Welcome [Sign In]**                                    To track stocks & more, Register

**Financial News**

                     Enter symbol(s) [          ] [Basic    ] [GO] Symbol Lookup

**Press Release**                                        Source: The Rosen Law Firm

# The Rosen Law Firm Files Securities Class Action Charging Maxim Integrated Products, Inc. With Violations of the Federal Securities Laws - MXIM.PK

Wednesday February 6, 11:11 pm ET

NEW YORK, NY--(MARKET WIRE)--Feb 6, 2008 -- The Rosen Law Firm today announced that it has filed a class action lawsuit on behalf of purchasers of the common stock and options of Maxim Integrated Products, Inc. ("Maxim" or the "Company") (Other OTC:MXIM.PK - News) (formerly NASDAQ: MXIM), during the period from April 29, 2003 through January 17, 2008 (the "Class Period").

To join the Maxim class action, go to the website at http://www.rosenlegal.com or call Laurence Rosen, Esq. or Phillip Kim, Esq. toll-free at 866-767-3653 or email lrosen@rosenlegal.com or pkim@rosenlegal.com for information on the class action.

NO CLASS HAS YET BEEN CERTIFIED IN THE ABOVE ACTION. UNTIL A CLASS IS CERTIFIED, YOU ARE NOT REPRESENTED BY COUNSEL UNLESS YOU RETAIN ONE. YOU MAY ALSO REMAIN AN ABSENT CLASS MEMBER.

The case is pending in the United States District Court for the Northern District of California as case no. 08-cv-0832. You can obtain a copy of the complaint from the clerk of court or you may contact counsel for plaintiffs Laurence Rosen, Esq. or Phillip Kim, Esq. toll-free at 866-767-3653 or email lrosen@rosenlegal.com or pkim@rosenlegal.com.

The complaint charges that Maxim and certain of its former officers violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 by engaging in improper stock option backdating that caused the issuance of materially false and misleading financial statements during the Class Period.

The complaint asserts that on January 17, 2008, the Company announced that it would be restating its financial statements to record between $550 million and $650 million of additional stock-based compensation expense and that its previously issued financial statements could no longer be relied on. As a result of these adverse disclosures, the Company's stock price has declined 22%.

A class action lawsuit has already been filed on behalf of Maxim shareholders. If you wish to serve as lead plaintiff, you must move the Court no later than April 7, 2008. If you wish to join the litigation or to discuss your rights or interests regarding this class action, please contact plaintiff's counsel, Laurence Rosen, Esq. or Phillip Kim, Esq. of The Rosen Law Firm toll free at 866-767-3653 or via e-mail at lrosen@rosenlegal.com or pkim@rosenlegal.com.

The Rosen Law Firm has expertise in prosecuting investor securities litigation and extensive experience in actions involving financial fraud. The Rosen Law Firm represents investors throughout the nation, concentrating its practice in securities class actions.

*Contact:*

```
Contact:
Laurence Rosen, Esq.
Phillip Kim, Esq.
The Rosen Law Firm P.A.
Tel:  (212) 686-1060
Toll Free: 1-866-767-3653
Fax: (212) 202-3827
Email Contact
Email Contact
http://www.rosenlegal.com
```

_____

Source: The Rosen Law Firm

Copyright © 2008 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Send Feedback
Copyright © 2008 Marketwire. All rights reserved. All the news releases provided by Marketwire are copyrighted. Any forms of copying other than an
individual user's personal reference without express written permission is prohibited. Further distribution of these materials is strictly forbidden,
including but not limited to, posting, emailing, faxing, archiving in a public database, redistributing via a computer network or in a printed form.

# Exhibit D

# BERGER & MONTAGUE, P.C.

April 3, 2008

# BERGER & MONTAGUE, P.C.

## THE FIRM:

Berger & Montague has been engaged in the practice of complex and class action litigation from its Center City Philadelphia office for over 35 years. The firm has been recognized by courts throughout the country for its ability and experience in handling major complex litigation, particularly in the fields of securities, antitrust, mass torts, civil and human rights, and consumer litigation. In numerous precedent-setting cases, the Berger firm has played a principal or lead role. The firm has achieved the highest possible rating by its peers and opponents as reported in Martindale-Hubbell. Currently, the firm consists of 66 lawyers, approximately half of whom are engaged full-time in securities litigation; 18 paralegals; several professional investigators; and an experienced support staff.

Berger & Montague was founded in 1970 by the late David Berger to concentrate on the representation of plaintiffs in a series of antitrust class actions. David Berger pioneered the use of class actions in antitrust litigation and was instrumental in extending the use of the class action procedure to other litigation areas, including securities, employment discrimination, civil and human rights, and mass torts. The firm's complement of nationally recognized lawyers has represented both plaintiffs and defendants in these and other areas, and has recovered billions of dollars for its clients. In complex litigation, particularly in areas of class action litigation, Berger & Montague has established new law and forged the path for recovery for victims of fraud and other wrongdoing.

The firm has been involved in a series of notable cases, some of them among the most important in the last 35 years of civil litigation. For example, the firm was one of the principal counsel for plaintiffs in the Drexel Burnham Lambert/Michael Milken securities and bankruptcy litigation. Claimants in these cases recovered approximately $2 billion in the aftermath of the collapse of the junk bond market and the bankruptcy of Drexel in the late 1980's. The firm was also among the principal counsel engaged in the trial of the Exxon Valdez Oil Spill in Anchorage, Alaska, a trial resulting in a record punitive damages award of $5 billion against Exxon. Berger & Montague was lead counsel in the School Asbestos Litigation, in which a national class of secondary and elementary schools recovered in excess of $300 million to defray the costs of asbestos abatement. The case was the first mass tort property damage class action certified on a national basis.

2

In the area of securities litigation, the firm has represented public institutional investors - such as the retirement funds for the States of Pennsylvania, Connecticut, New Hampshire, New Jersey and Louisiana, as well as the City of Philadelphia and numerous individual investors and private institutional investors. The firm was co-lead counsel in the Melridge Securities Litigation in the Federal District Court in Oregon, in which an $88.2 million jury verdict was obtained. Berger and Montague has served as lead counsel in numerous other major class action cases, including those against Waste Management (settlement for investors of $220 million) and Rite Aid (settlements totalling $334 million), to name only two of the most notable successes.

In addition to its distinction in securities litigation, the firm has served as lead or co-lead counsel on many of the most significant civil antitrust cases over the last 30 years, including In re Corrugated Container Antitrust Litigation (recovery in excess of $366 million), the Infant Formula case (recovery of $125 million), and the Retail Drug price fixing case (settlement of more than $700 million). More recently, the firm, through its membership on the litigation Executive Committee, helped to achieve a $1.25 billion settlement with the largest Swiss banks on behalf of victims of Nazi aggression whose deposits were not returned after the Second World War. The firm has also played an instrumental role in bringing about a $4.37 billion settlement with German industry and government for the use of slave and forced labor during the Holocaust.

The *National Law Journal* in October 2004, 2005 and 2007 selected Berger & Montague as one of the 12 to 20 top plaintiffs' litigation firms in the U.S. based on its most recent performance and its track record of successes in the last 3-to-5 year period.

3

# PROMINENT JUDGMENTS AND SETTLEMENTS

The success of Berger & Montague in prosecuting class actions and other complex litigation is best demonstrated by the firm's significant results for its clients. The following is a partial list of some of the more notable judgments and settlements from the past few years:

## *Securities Litigation*

*In re Sepracor Inc. Securities Litigation:* The firm, as co-lead counsel, obtained a settlement of $52.5 million for the benefit of bond and stock purchaser classes. (Civil Action No. 02-12235-MEL (D. Mass 2007)).

*In re CIGNA Corp. Securities Litigation:* The firm, as co-lead counsel, obtained a settlement of $93 million for the benefit of the class. (Master File No. 2:02-CV-8088 (E.D. Pa. 2007)).

*In re Fleming Companies, Inc. Securities Litigation:* The firm, as lead counsel, obtained a class settlement of $94 million for the benefit of the class. (Civil Action No. 5-03-MD-1530 (TJW) (E.D. Tex. 2005)).

*In re Xcel Energy Inc. Securities, Derivative & "ERISA" Litigation:* The firm, as co-lead counsel in the Securities Actions, obtained a cash settlement of $80 million on behalf of investors against Xcel Energy and certain of its officers and directors. (Civil Action No. 02-2677 (DSD/FLN) (D. Minn. 2005)).

*In re Campbell Soup Co. Securities Litigation:* The firm, as co-lead counsel, obtained a settlement of $35 million for the benefit of the class. (Civil Action No. 00 152 (JEI) (D.N.J.2004)).

*In re Premiere Technologies, Inc. Securities Litigation:* The firm, as co-lead counsel, obtaineda class settlement of over $20 million in combination of cash and common stock. (Civil Action No.1:98-CV-1804-JOF (N.D. Ga. 2002)).

*In re: PSINet, Inc., Securities Litigation:* The firm, as co-lead counsel, obtained a settlement of $17.83 million on behalf of investors. (Civ. No. 00-1850-A (E.D. Va. 2003)).

4

*In re Safety-Kleen Corp. Securities Litigation :*  The firm, as co-lead counsel, obtained a class settlement in the amount of $45 million against Safety-Kleen's outside accounting firm and certain of the Company's officers and directors.  The final settlement was obtained 2 business days before the trial was to commence. (C.A. No. 3:00-CV-736-17 (D.S.C. 2001)).

*Emil Rossdeutscher and Dennis Kelly v. Viacom:*  The firm, as lead counsel, obtained a settlement resulting in a fund of $14.25 million for the class (C.A. No. 98C-03-091 (JEB) (Del. Super. 2002)).

*Silver v. UICI:*  The firm, as co-lead counsel, obtained a settlement resulting in a fund of $16 million for the class. (No. 3:99 CV 2860-L (N.D. Tex. 2003)).

*In re Alcatel Alsthom Securities Litigation:* In 2001, the firm, as co-lead counsel, obtained a class settlement for investors of $75 million cash.  (MDL Docket No. 1263 (PNB) (E.D. Tex. 2001)).

*In re Rite Aid Corp. Securities Litigation:*  The firm, as co-lead counsel, obtained settlements totalling $334 million against Rite Aid's outside accounting firm and certain of the company's former officers (99 CV 1349 (E.D. Pa. 2003)).

*In re Sunbeam Inc. Securities Litigation:*  As co-lead counsel, the firm obtained a settlement on behalf of investors of $141 million in the action against Sunbeam's outside accounting firm and Sunbeam's officers.   (98 CV 8258 (S.D. Fla. 2001)).

*In re Sotheby's Holding, Inc. Securities Litigation:* the fir, as lead counsel obtained a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant (No. 00 Civ. 1041 (DLC) (S.D.N.Y. 2001)).

*In re Waste Management, Inc. Securities Litigation:*  In 1999, the firm, as co-lead counsel, obtained a class settlement for investors of $220 million cash which included a settlement against Waste Management's outside accountants. (97 CV 7709 (N.D. Ill. 2000)).

*In re IKON Office Solutions Inc. Securities Litigation:*  The firm, serving as both co-lead and liaison counsel, obtained a cash settlement of $111 million in an action on behalf of investors against IKON and certain of its officers.  (MDL Dkt. No. 1318 (E.D. Pa. 2000)).

***In re Melridge Securities Litigation:***  The firm served as lead counsel and co-trial counsel for a class of purchasers of Melridge common stock and convertible debentures. A four-month jury trial yielded a verdict in plaintiffs' favor for $88.2 million, and judgment was entered on RICO claims against certain defendants for $239 million. The court approved settlements totaling $55.4 million. (CV-87-1426 FR (D. Ore. 1998)).

***Walco Investments, Inc. et al. v. Kenneth Thenen, et al. (Premium Sales):*** The firm, as a member of the Plaintiffs' Steering Committee, obtained settlements of $141 million for investors victimized by a Ponzi scheme. (Reported at: 881 F. Supp. 1576 (S.D. Fla. 1995); 168 F.R.D. 315 (S.D. Fla. 1996); 947 F. Supp. 491 (S.D. Fla. 1996)).

***In re The Drexel Burnham Lambert Group, Inc.:***  The firm was appointed co-counsel for a mandatory non-opt-out class consisting of all claimants who had filed billions of dollars in securities litigation-related proofs of claim against The Drexel Burnham Lambert Group, Inc. and/or its subsidiaries. Settlements in excess of $2.0 billion were approved in August 1991 and became effective upon consummation of Drexel's Plan of Reorganization on April 30, 1992. (90 Civ. 6954 (MP), Chapter 11, Case No. 90 B 10421 (FGC), Jointly Administered, reported at, *inter alia*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed,* 506 U.S. 1088 (1993) ("Drexel I") and 995 F.2d 1138 (2d Cir. 1993) ("Drexel II")).

***In re Michael Milken and Associates Securities Litigation:*** As court-appointed liaison counsel, the firm was one of four lead counsel who structured the $1.3 billion "global" settlement of all claims pending against Michael R. Milken, over 200 present and former officers and directors of Drexel Burnham Lambert, and more than 350 Drexel/Milken-related entities.  (MDL Dkt. No. 924, M21-62-MP (S.D.N.Y.1993)).

***RJR Nabisco Securities Litigation:***  In this action, Berger & Montague represented individuals who sold RJR Nabisco securities prior to the announcement of a corporate change of control.  This securities case settled for $72 million. (88 Civ. 7905 MBM (S.D.N.Y. 1992)).

6

### *Antitrust Litigation*

***In re High Fructose Corn Syrup Antitrust Litigation:*** Berger & Montague was one of three co-lead counsel in this nationwide class action alleging a conspiracy to allocate volumes and customers and to price-fix among five producers of high fructose corn syrup. After nine years of litigation, including four appeals, the case was settled on the eve of trial for $531 million. (MDL. No. 1087 and Master File No. 95-1477 (C.D. Ill. 2004)).

***In re Linerboard Antitrust Litigation:*** Berger & Montague was one of a small group of court-appointed executive committee members who led this nationwide class action against producers of linerboard. The complaint alleged that the defendants conspired to reduce production of linerboard in order to increase the price of linerboard and corrugated boxes made therefrom. At the close of discovery, the case was settled for more than $200 million. (98 Civ. 5055 and 99-1341 (E.D. Pa. 2003)).

***In re Relafen Antitrust Litigation:*** Berger & Montague was one of a small group of firms who prepared for the trial of this nationwide class action against GlaxoSmithKline, which was alleged to have used fraudulently-procured patents to block competitors from marketing less-expensive generic versions of its popular nonsteroidal anti-inflammatory drug, Relafen (nabumetone). Just before trial, the case was settled for $175 million. (No. 01-12239-WGY (D. Mass. 2003)).

***State of Connecticut Tobacco Litigation:*** Berger & Montague was one of three firms to represent the State of Connecticut in a separate action in state court against the tobacco companies. The case was litigated separate from the coordinated nationwide actions. Although eventually Connecticut joined the national settlement, its counsel's contributions were recognized by being awarded the fifth largest award among the states from the fifty states' Strategic Contribution Fund.

***In re Graphite Electrodes Antitrust Litigation:*** Berger & Montague was one of the four co-lead counsel in a nationwide class action price-fixing case. The case eventually settled in excess of $130 million. (02 Civ. 99-482 (E.D. Pa. 2003)).

***In re Buspirone Antitrust Litigation:*** The firm served on the court-appointed steering committee in this class action, representing a class of primarily pharmaceutical wholesalers and resellers.

The Buspirone class action alleged that pharmaceutical manufacturer BMS engaged in a pattern of illegal conduct surrounding its popular anti-anxiety medication, Buspar, namely, paying a competitor to refrain from marketing a generic version of Buspar; improperly listing a patent with the FDA; and wrongfully prosecuting patent infringement actions against generic competitors to Buspar. On April 11, 2003, the Court finally approved a $220 million settlement. (MDL No. 1410 (S.D.N.Y. 2003)).

*In re Cardizem CD Antitrust Litigation:* Berger & Montague served on the Executive Committee of firms appointed to represent the class of direct purchasers of Cardizem CD. The suit charged that Aventis (the brand-name drug manufacturer of Cardizem CD) entered into an illegal agreement to pay Andrx (the maker of a generic substitute to Cardizem CD) millions of dollars to delay the entry of the less expensive generic product. On November 26, 2002, the district court approved a final settlement against both defendants for $110 million. (No. 99-MD-1278, MDL No. 1278 (E.D. Mich. 2002)).

*In re Brand Name Prescription Drugs Antitrust Litigation*: The firm served as co-lead counsel in this antitrust price-fixing class action on behalf of a class of purchasers of brand name prescription drugs. Following certification of the class by the district court, settlements exceeded $717 million. (No. 94 C 897 (M.D. Ill. 2000)).

**North Shore Hematology-Oncology Assoc., Inc. v. Bristol-Myers Squibb Co.:** The firm was one of several prosecuting an action complaining of Bristol Myers's use of invalid patents to block competitors from marketing more affordable generic versions of its life-saving cancer drug, Platinol (cisplatin). The case settled for $50 million. (No. 1:04CV248 (EGS) (D.D.C. 2004)).

*In re Catfish Antitrust Litig. Action*: The firm was co-trial counsel in this action which settled with the last defendant a week before trial, for total settlements approximating $27 million. (No. 2:92CV073-D-O, MDL No. 928 (N.D. Miss. 1995)).

*In re Carbon Dioxide Antitrust Litigation:* The firm was co-trial counsel in this antitrust class action which settled with the last defendant days prior to trial for total settlements approximating $53 million, plus injunctive relief. (MDL No. 940 (M.D. Fla. 1995)).

*In re Infant Formula Antitrust Litigation*: The firm served as co-lead counsel in an antitrust class action where settlement was achieved two days prior to trial, bringing the total settlement proceeds to $125 million. (MDL No. 878 (N.D. Fla. 1992)).

*Red Eagle Resources Corp., Inc., v. Baker Hughes, Inc.:* The firm was a member of the plaintiffs' executive committee in this antitrust class action which yielded a settlement of $52.5 million. (C.A. No. H-91-627 (S.D. Tex. 1991)).

*In re Corrugated Container Antitrust Litigation:* The firm, led by H. Laddie Montague, was co-trial counsel in an antitrust class action which yielded a settlement of $366 million, plus interest, following a trial. (MDL No. 310 (S.D. Tex. 1981)).

*Bogosian v. Gulf Oil Corp.:*  With Berger & Montague as sole lead counsel, this landmark action on behalf of a national class of more than 100,000 gasoline dealers against 13 major oil companies led to settlements of over $35 million plus equitable relief on the eve of trial. (No. 71-1137 (E.D. Pa. 1977)).

*In re Master Key Antitrust Litigation:*  The firm served as co-lead counsel in an antitrust class action that yielded a settlement of $21 million during trial. (MDL No. 45 (D. Conn. 1977)).

### *Environmental/Mass Tort Litigation*

*In re Exxon Valdez Oil Spill Litigation*: On September 16, 1994, a jury trial of several months duration resulted in a record punitive damages award of $5 billion against the Exxon defendants as a consequence of one of the largest oil spills in U.S. history.  David Berger was co-chair of the Plaintiffs' Discovery Committee (appointed by both the federal and state courts).  H. Laddie Montague was specifically appointed by the federal court as one of the four designated trial counsel.  Both Mr. Montague and Peter Kahana shared (with the entire trial team) in the 1995 "Trial Lawyer of the Year Award" given by the Trial Lawyers for Public Justice.  (No. A89-0095-CVCHRH (D. Alaska 1996)).

*In re Ashland Oil Spill Litigation:*  The firm served as co-lead counsel and obtained a $30 million settlement for damages resulting from a very large oil spill. (Master File No. M-14670 (W.D. Pa. 1990)).

9

*In re School Asbestos Litigation*:  As co-lead counsel, the firm successfully litigated a case in which a nationwide class of elementary and secondary schools and school districts suffering property damage as a result of asbestos in their buildings were provided relief.  Pursuant to an approved settlement, the class received $70 million in cash and $145 million in discounts toward replacement building materials. (No. 83-0268 (E.D. Pa. 1986)).

### *Health Care/ERISA Litigation*

*In re Unisys Corp. Retiree Medical Benefits:*  The firm, as co-lead counsel, handled the presentation of over 70 witnesses, 30 depositions, and over 700 trial exhibits in this action that has resulted in partial settlements of over $110 million for retirees whose health benefits were terminated. (MDL No. 969 (E.D. Pa. 1998)).

*Local 56 U.F.C.W. v. Campbell Soup Co.:* The firm represented a class of retired Campbell Soup employees in an ERISA class action to preserve and restore retiree medical benefits. A settlement yielded benefits to the class valued at $114.5 million. (No. 93-MC-276 (SSB) (D.N.J. 1984)).

### *Civil/Human Rights*

*In re Holocaust Victim Assets Litigation:*  Through Stephen A. Whinston's membership on the Executive Committee in cases brought by Holocaust survivors against the three largest Switzerland-based banks, this litigation was settled for $1.25 billion. (105 F. Supp.2d 139 (E.D.N.Y. 2000)).

*In re Nazi Era Cases Against German Defendants Litigation:*  Through the firm's co-lead counsel role, cases against German industry and banks for the use of slave and forced labor during the Nazi era were ultimately settled in the context of international negotiations which created a fund for victims of $4.5 billion. (198 F.R.D. 429 (D.N.J. 2000)).

## *Consumer Litigation*

*In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litigation*:  The firm served on the plaintiffs' steering committee and obtained an $11.1 million settlement on behalf of persons who were incorrectly scored on a teacher's licensing exam. (MDL No. 1643 (E.D. La. 2006))

*Block v. McDonald's Corporation*:  The firm served as co-lead counsel and obtained a settlement of $12.5 million with McDonald's stemming from its failure to disclose the use of beef fat in its french fries.  (No. 01-CH-9137 (Cir. Ct. Cook Cty., Ill. 2002))

*Fitz, Inc. v. Ralph Wilson Plastics Co.*:  The firm served as sole lead counsel and obtained,after 7 years of litigation, a claims-made settlement whereby fabricators could obtain full recoveries for their losses resulting from defendants' defective contact adhesives.  (No. 1-94-CV-06017 (D.N.J. 2000))

*Parker v. American Isuzu Motors, Inc.*:  The firm served as sole lead counsel and obtained a claims-made settlement whereby class members recovered up to $500 for economic damages resulting from accidents caused by faulty brakes.  (No. 3476 (CCP Phila. Cty. 2007))

*Crawford v. Philadelphia Hotel Operating Co.*:  The firm served as co-lead counsel and obtained a claims-made settlement whereby persons who contracted food poisoning at a business convention recovered $1,500 each.  (No. 040300070 (CCP Phila. Cty. 2005))

*In re TJX Companies Retail Security Breach Litigation*: The firm is currently serving as co-lead counsel in this pending litigation brought on behalf of persons and entities whose personal and financial data was compromised in the largest computer theft of personal data in history.  The case has been settled and is pending approval by the Court.  Some of the principal elements of the settlement are the availability to class members who returned merchandise without a receipt of 3 years of identity theft insurance and credit monitoring, as well as cash and/or vouchers to compensate for damages, including time lost from work.  (No. 1:07-cv-10162-WGY, (D. Mass.))

***In re Pet Foods Product Liability Litigation***: The firm is currently serving as one of plaintiffs' co-lead counsel in this class action suit seeking to redress the harm resulting from the manufacture and sale of contaminated dog and cat food.  (MDL Docket No. 1850 (D.N.J.))

## JUDICIAL PRAISE FOR BERGER & MONTAGUE ATTORNEYS

Berger & Montague's record of successful prosecution of class-actions and other complex litigation has been recognized and commended by judges and arbitrators across the country. Some remarks on the skill, efficiency, and expertise of the firm's attorneys are excerpted below.

### *Securities Litigation*

From **Judge Michael M. Baylson**, of the U.S. District Court for the Eastern District of Pennsylvania:

"The Court is aware of and attests to the skill and efficiency of class counsel: they have been diligent in every respect, and their briefs and arguments before the Court were of the highest quality. The firm of Berger & Montague took the lead in the Court proceedings; its attorneys were well prepared, articulate and persuasive."

Praising the work of Berger & Montague attorneys including Securities Department Chair Sherrie R. Savett and partners Carole A. Broderick and Barbara A Podell in *In re CIGNA Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51089, **17-18 (E.D. Pa. July 13, 2007)

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"Thanks to the nimble class counsel, this sum, which once included securities worth $149.5 million is now all cash. Seizing on an opportunity Rite Aid presented class counsel first renegotiated what had been stock consideration into Rite Aid Notes and then this year monetized those Notes. Thus, on February 11, 2003, Rite Aid redeemed those Notes from the class, which then received $145,754,922.00. The class also received $14,435,104 in interest on the Notes.

"Co-lead counsel ... here were extraordinarily deft and efficient in handling this most complex matter... they were at least eighteen months ahead of the United States Department of Justice in ferreting out the conduct that ultimately resulted in the

13

write down of over $1.6 billion in previously reported Rite Aid earnings.   In short, it
would be hard to equal the skill class counsel demonstrated here."

Praising the work of Berger & Montague attorneys including Securities Department Chair
Sherrie R. Savett and partners Carole Broderick and Robin Switzenbaum in *In re Rite
Aid Corp. Securities Litigation*, 269 F. Supp. 2d 603, 605 (E.D. Pa. 2003)

From **Judge Clarence C. Newcomer**, of the U.S. District Court for the Eastern District of
Pennsylvania:

"...[C]ounsel has conducted this litigation with skill, professionalism and extraordinary
efficiency."

Praising the work of Sherrie R. Savett, Securities Department Chair, and Arthur Stock,
*In Re: Unisys Corporation Securities Litigation*, Civil Action No. 99-5333 , 2001 U.S.
Dist. LEXIS 20160 *10 (E.D. Pa. Dec. 6, 2001).

From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"As to 'the skill and efficiency of the attorneys involved,' we can only echo what we said
about some of the same lawyers in *U.S. Bioscience*.  The results here are outstanding in a
litigation that was far ahead of public agencies like the Securities and Exchange
Commission and the United States Department of Justice. . . .  At the same time, these
attorneys have, through the division of their labors, represented the class most
efficiently[.]"

Praising the work of Berger & Montague attorneys including Securities Department
Chair, Sherrie R. Savett, in achieving settlements of over $190 million in *In re Rite Aid
Inc. Securities Litigation*, 146 F. Supp.2d 706, 735 (E.D. Pa. June 8, 2001).

14

From **Judge Marvin Katz**, of the U.S. District Court for the Eastern District of Pennsylvania:

"Class counsel did a remarkable job in representing the class interests."

Commenting on the work of Berger & Montague attorneys Merrill G. Davidoff, Todd S. Collins and Douglas M. Risen, on the partial settlement for $111 million approved May, 2000, *In Re: IKON Office Solutions Securities Litigation*, 194 F.R.D. 166, 197 (E.D. Pa. 2000).


From Judge **Wayne R. Andersen**, of the U.S. District Court for the Northern District of Illinois:

"...[Y]ou have acted the way lawyers at their best ought to act. And I have had a lot of cases...in 15 years now as a judge and I cannot recall a significant case where I felt people were better represented than they are here ... I would say this has been the best representation that I have seen."

Praising the work of Sherrie R. Savett , Carole A. Broderick, and Gary E. Cantor at a hearing in *In Re: Waste Management, Inc. Securities Litigation*, Civil Action No. 97-C 7709 (N.D. Ill. 1999).


From **Judge Stewart Dalzell**, of the U.S. District Court for the Eastern District of Pennsylvania:

"The quality of lawyering on both sides, but I am going to stress now on the plaintiffs' side, simply has not been exceeded in any case, and we have had some marvelous counsel appear before us and make superb arguments, but they really don't come any better than Mrs. Savett . . . , and the arguments we had on the motion to dismiss [Mrs. Savett argued the motion], both sides were fabulous, but plaintiffs' counsel were as good as they come."

Commenting on the settlement of a securities case litigated by Sherrie R. Savett and Carole A. Broderick, *In re U.S. Bioscience Securities Litigation*, Civil Action No. 92-0678, hearing held April 4, 1994 (E.D. Pa. 1994).

15

From **Judge Joseph F. Anderson, Jr.**, of the U.S. District Court for the District of South Carolina:

> "I don't have a problem at all approving the settlement. In light of what you've said today and your submission to the Court and I am familiar with the case ... it was a sharply litigated case, with good lawyers on both sides and I think it's an ideal case for settlement. It's the largest settlement I've been called upon to approve in my eight years as a judge."

Praising the work of Sherrie R. Savett, Securities Department Chair, in achieving a $32 million settlement in *In Re: Policy Management Systems Corporation,* Civil Action No. 3:93-0807-17 (D.S.C. 1993).

From **Judge Harry R. McCue**, of the U.S. District Court for the Southern District of California:

> "There can be no doubt that the public good was fully served by the attorneys for the plaintiffs in this case, because they invested their own time, their own money, they invested their special skills and knowledge to vindicate the rights and interests of the thousands of investors who invested their money and placed their trust in the integrity of the securities market. . . . I conclude that the achievement of plaintiffs' counsel under any of those tests was superior. "

Concerning the work of Berger & Montague in achieving a $33 million settlement in *In re Oak Industries Securities Litigation*, 1986 U.S. Dist. LEXIS 20942 (S.D. Cal. 1986).

From **Judge John F. Keenan**, of the U.S. District Court for the Southern District of New York:

> "The quality of work of plaintiffs' counsel on this case is also demonstrated by the efficient manner of prosecution. . . . At the settlement hearing, defense counsel conceded that plaintiffs' counsel constitute the 'cream of the plaintiffs' bar.' The court cannot find fault with that characterization."

Regarding the work of Sherrie R. Savett and Stephen A. Whinston, *In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985).

16

### *Antitrust Litigation*

From **Judge Charles P. Kocoras**, of the U.S. District Court for the Northern District of Illinois:

> "The stakes were high here, with the result that most matters of consequence were contested. There were numerous trips to the courthouse, and the path to the trial court and the Court of Appeals frequently traveled. The efforts of counsel for the class has [sic] produced a substantial recovery, and it is represented that the cash settlement alone is the second largest in the history of class action litigation. . . . There is no question that the results achieved by class counsel were extraordinary[.]"

Regarding the work of Berger & Montague shareholders H. Laddie Montague and Peter R. Kahana, among others, in achieving a more than $700 million settlement with some of the defendants in *In Re Brand Name Prescription Drugs Antitrust Litigation*, 2000 U.S. Dist. LEXIS 1734, *5-6 (N.D. Ill. Feb. 9, 2000).

From **Judge Peter J. Messitte**, of the U.S. District Court for the District of Maryland:

> "The experience and ability of the attorneys I have mentioned earlier, in my view in reviewing the documents, which I have no reason to doubt, the plaintiffs' counsel are at the top of the profession in this regard and certainly have used their expertise to craft an extremely favorable settlement for their clients, and to that extent they deserve to be rewarded."

Concerning the work of senior member, Merrill G. Davidoff, as stated in a Settlement Approval Hearing, Oct. 28, 1994. *Spawd, Inc. and General Generics v. Bolar Pharmaceutical Co., Inc.*, CA No. PJM-92-3624.

From **Judge Donald W. Van Artsdalen**, of the U.S. District Court for the Eastern District of Pennsylvania:

> "As to the quality of the work performed, although that would normally be reflected in the not immodest hourly rates of all attorneys, for which one would expect to obtain excellent quality work at all times, the results of the settlements speak for themselves. Despite the extreme uncertainties of trial, plaintiffs' counsel were able to negotiate a cash settlement of a not insubstantial sum, and in addition, by way of equitable relief, substantial concessions by the defendants which, subject to various condition, will afford the right, at least, to lessee-dealers to obtain gasoline supply product from major oil companies and suppliers other than from their respective lessors. The additional benefits obtained for the classes by way of equitable relief would, in and of itself, justify some upward adjustment of the lodestar figure."

Commending the skills of firm then chairman David Berger, shareholder Martin Twersky, and other Berger & Montague attorneys, in *Bogosian v. Gulf Oil Corp*, 621 F. Supp. 27,31 (E.D. Pa. 1985).

From **Judge Joseph Blumenfeld**, of the U.S. District Court of Connecticut:

> "The work of the Berger firm showed a high degree of efficiency and imagination, particularly in the maintenance and management of the national class actions."

Referencing the leadership of managing partner H. Laddie Montague, co-lead counsel, in *In re Master Key Antitrust Litigation*, 1977 U.S. Dist. LEXIS 12948, **34-35 (Nov. 4, 1977).

### *Civil/Human Rights Cases*

From **Deputy Treasury Secretary Stuart E. Eizenstat:**

> "We must be frank. It was the American lawyers, through the lawsuits they brought in U.S. courts, who placed the long-forgotten wrongs by German companies during the Nazi era on the international agenda. It was their research and their work which highlighted these old

injustices and forced us to confront them. Without question, we would not be here without them. . . . For this dedication and commitment to the victims, we should always be grateful to these lawyers."

In his remarks at the July 17, 2000, signing ceremony for the international agreements which established the German Foundation to act as a funding vehicle for the payment of claims to Holocaust survivors. Among the lawyers specifically mentioned for special recognition were Stephen A. Whinston and Edward W. Millstein, both shareholders of the firm.

### *Customer/Broker Arbitrations*

**From Robert E. Conner,** Public Arbitrator with the National Association of Securities Dealers, Inc.:

". . . [H]aving participated over the last 17 years in 400 arbitrations and trials in various settings, . . . the professionalism and the detail and generally the civility of everyone involved has been not just a cause for commentary at the end of these proceedings but between ourselves [the arbitration panel] during the course of them, and . . . the detail and the intellectual rigor that went into the documents was fully reflective of the effort that was made in general. I wanted to make that known to everyone and to express my particular respect and admiration."

About the efforts of Berger & Montague shareholders Merrill G. Davidoff and Eric L. Cramer, who achieved a $1.1 million award for their client, in *Steinman v. LMP Hedge Fund, et al.*, NASD Case No. 98-04152, at Closing Argument, June 13, 2000.

## FOUNDING PARTNER:

### David Berger  (1912-2007)

David Berger was the founder and the Chairman of Berger & Montague. He received his A.B.*cum laude* in 1932 and his LL.B. *cum laude* in 1936, both from the University of Pennsylvania. He was a member of The Order of the Coif and was an editor of the *University of Pennsylvania Law Review*. He had a distinguished scholastic career including being Assistant to Professor Francis H. Bohlen and Dr. William Draper Lewis, Director of the American Law Institute, participating in the drafting of the first Restatement of Torts. He also served as a Special Assistant Dean of the University of Pennsylvania Law School. He was a member of the Board of Overseers of the Law School and Associate Trustee of the University of Pennsylvania. In honor of his many contributions, the Law School established the David Berger Chair of Law for the Improvement of the Administration of Justice.

David Berger was a law clerk for the Pennsylvania Supreme Court. He served as a deputy assistant to Director of Enemy Alien Identification Program of the United States Justice Department during World War II.

Thereafter he was appointed Lt.j.g. in the U.S. Naval Reserve and he served in the South Pacific aboard three aircraft carriers during World War II. He was a survivor of the sinking of the U.S.S. Hornet in the Battle of Santa Cruz, October 26, 1942. After the sinking of the Hornet, Admiral Halsey appointed him a member of his personal staff when the Admiral became Commander of the South Pacific. Mr. Berger was ultimately promoted to Commander. He was awarded the Silver Star and Presidential Unit Citation.

After World War II, he was a law clerk in the United States Court of Appeals. The United States Supreme Court appointed David Berger a member of the committee to draft the Federal Rules of Evidence, the basic evidentiary rules employed in federal courts throughout the United States. David Berger was a fellow of the American College of Trial Lawyers, the International Society of Barristers, and the International Academy of Trial Lawyers, of which he was a former Dean. He was a Life Member of the Judicial Conference of the Third Circuit and the American Law Institute.

20

A former Chancellor (President) of the Philadelphia Bar Association, he served on numerous committees of the American Bar Association and was a lecturer and author on various legal subjects, particularly in the areas of antitrust, securities litigation, and evidence.

David Berger served as a member of President John F. Kennedy's committee which designed high speed rail lines between Washington and Boston. He drafted and activated legislation in the Congress of the United States which resulted in the use of federal funds to assure the continuance of freight and passenger lines throughout the United States. When the merger of the Pennsylvania Railroad and the New York Central Railroad, which created the Penn Central Transportation Company, crashed into Chapter 11, David Berger was counsel for Penn Central and a proponent of its reorganization. Through this work, Mr. Berger ensured the survival of the major railroads in the Northeastern section of the United States including Penn Central, New Jersey Central, and others.

Mr. Berger's private practice included clients in London, Paris, Dusseldorf, as well as in Philadelphia, Washington, New York City, Florida, and other parts of the United States. David Berger instituted the first class action in the antitrust field, and for over 30 years he and the Berger firm were lead counsel and/or co-lead counsel in countless class actions brought to successful conclusions, including antitrust, securities, toxic tort and other cases. He served as one of the chief counsel in the litigation surrounding the demise of Drexel Burnham Lambert, in which over $2.6 billion was recovered for various violations of the securities laws during the 1980s. The recoveries benefitted such federal entities as the FDIC and RTC, as well as thousands of victimized investors.

In addition, Mr. Berger was principal counsel in a case regarding the Three Mile Island accident near Harrisburg, Pennsylvania, achieving the first legal recovery of millions of dollars for economic harm caused by the nation's most serious nuclear accident. As part of the award in the case, David Berger established a committee of internationally renowned scientists to determine the effects on human beings of emissions of low level radiation. Several important studies have issued from this committee, some which were used in connection with the Chernobyl disaster.

In addition, as lead counsel in *In re Asbestos School Litigation*, he brought about settlement of this long and vigorously fought action spanning over 13 years for an amount in excess of $300 million.

David Berger was active in Democratic politics. President Clinton appointed David Berger a member of the United States Holocaust Memorial Council, in which capacity he served from 1994-2004. In addition to his having served for seven years as the chief legal officer of Philadelphia, he was a candidate for District Attorney of Philadelphia, and was a Carter delegate in the Convention which nominated President Carter.

Over his lengthy career David Berger was prominent in a great many philanthropic and charitable enterprises some of which are as follows: He was the Chairman of the David Berger Foundation and a long time honorary member of the National Commission of the Anti-Defamation League. He was on the Board of the Jewish Federation of Philadelphia and, at his last place of residence, Palm Beach, as Honorary Chairman of the American Heart Association, Trustee of the American Cancer Society, a member of the Board of Directors of the American Red Cross, and active in the Jewish Federation of Palm Beach County. Among other distinguished entities, David Berger was a member of the Foundation for Art and Preservation in Embassies.

David Berger's principal hobby was tennis, a sport in which he competed for over 60 years. He was a member of the Board of Directors of the International Tennis Hall of Fame and other related organizations for assisting young people in tennis on a world-wide basis.

# THE SHAREHOLDERS:

### Harold Berger

Harold Berger, a former Judge of the Court of Common Pleas of Philadelphia, is a graduate of the University of Pennsylvania School of Electrical Engineering (B.S.E.E. 1948) and the University of Pennsylvania Law School (J.D. 1951). He is a senior partner and managing principal of the firm and serves on its Executive Committee.

He currently serves as a member of the Board of Overseers of the School of Engineering and Applied Science of the University of Pennsylvania. He has served as Chair of the Third Circuit Class Action and Complex Litigation Committee of the Federal Bar Association and is past Chair of the FBA's National Committee on the Federal and State Judiciary. He is the author of numerous law review articles and has lectured extensively before bar associations and at universities. His biography appears in Who's Who in America, Who's Who in American Law and Who's Who in the World. He has been given the highest rating for legal ability as well as the highest rating for ethical standards by the *Martindale-Hubbell* American legal directory.

Harold Berger has participated in many national litigation and class action matters of a complex nature, including the *Exxon Valdez Oil Spill Litigation*, C.A. No. A89-095 (D. Alaska), which resulted in a record punitive damage award of $5 billion against Exxon after Trial and in which he served on the case management team and as Co-Chair of the national discovery team. He also participated in the *In re Three Mile Island Litigation*, C.A. No. 79-0432 (M.D. Pa.), where he acted as liaison counsel, and in the nationwide school asbestos property damage class action, *In re Asbestos School Litigation*, Master File No. 83-0268 (E.D. Pa.), where the firm was co-lead counsel. The case was settled for an amount in excess of $300 million. He also served as co-lead counsel in the *Ashland Oil Spill Litigation*, Master File No. M-14670 (W.D. Pa.), as co-lead counsel in the *Chrysler Motors Corp. Odometer Litigation*, MDL Docket No. 740 (E.D. Mo.), and as lead counsel in the *Collins & Aikman Product Liability Class Action*, C.A. No. 87-2529 (E.D. Pa.).

Harold Berger is a former member of the State and Federal Court Relations Committee of the National Conference of State Trial Judges and is the recipient of numerous awards including a Special American Bar Association Presidential Program Award and Medal and the Special Service Award of the Pennsylvania Conference of State Trial Judges. He is the recipient of the Federal Bar

23

Association's National Service Award for distinguished service to the Federal and State Judiciary. He is a permanent member of the Judicial Conference of the Third Circuit Court of Appeals and served as National Chair of the FBA's Alternate Dispute Resolution Committee.

Recipient of the Alumnus of the Year Award of the Thomas McKean Law Club of the University of Pennsylvania Law School, Harold Berger was honored by the University of Pennsylvania School of Engineering and Applied Science by the dedication of the Honorable Harold Berger Annual Lecture and Award to a technical innovator who has made a lasting contribution to the quality of our lives. He was further honored by the University by the dedication of a student award in his name for engineering excellence.

Harold Berger has served as Chair of the International Conferences on Global Interdependence held at Princeton University. He has served as Chair of the Aerospace Law Committees of the American, Federal and Inter-American Bar Associations and, in recognition of the importance and impact of his scholarly work, was elected to the International Academy of Astronautics in Paris. He is active in law and engineering alumni affairs at Penn, serving on the University of Pennsylvania's Biddle Law Library Advisory Board and as Chair of Friends of Biddle National Campaign. He is a past President of the Eastern District Chapter of the Federal Bar Association and currently serves as Chair of the Chapter's Class Action and Complex Litigation Committees in addition to serving as Chair of the Bench-Bar Liaison Committee.

Long active in diverse, philanthropic, charitable, community and inter-faith endeavors, Harold Berger currently serves as a Trustee of The Federation of Jewish Charities of Greater Philadelphia, as a Director of the National Museum of Jewish History, as a National Director of the Hebrew Immigrant Aid Society in its endeavors to assist refugees and indigent souls of all faiths, as a Charter Fellow of the Foundation of the Federal Bar Association and as a member of the Hamilton Circle of the Philadelphia Bar Foundation.

### H. Laddie Montague, Jr.

H. Laddie Montague, Jr. is a graduate of the University of Pennsylvania (B.A. 1960) and the Dickinson School of Law (L.L.B. 1963) where he was a member of the Board of Editors of the *Dickinson Law Review*. He is currently Chairman of the Board of Governors for Dickinson School of Law of Penn State University. He is a member of the Executive Committee of the firm having

joined its predecessor David Berger, P.A. at its inception in 1970. He is a managing principal and shareholder of the firm and is Chairman of the Antitrust Department.

In addition to being one of the courtroom trial counsel for plaintiffs in the mandatory punitive damage class action in the *Exxon Valdez Oil Spill Litigation*, Mr. Montague has served as lead or co-lead counsel in many class actions, including *In re Infant Formula Antitrust Litigation* (1993) and *Bogosian v. Gulf Oil Corp.*, a nationwide class action against thirteen major oil companies (1984). Mr. Montague is co-lead counsel for the State of Connecticut in its litigation against the tobacco industry.

Mr. Montague was one of four co-lead counsel in *In re Brand Name Prescription Drugs Antitrust Litigation, M.D.L.* 997 (N.D. Ill.) and was one of three co-lead counsel in *In Re High Fructose Corn Syrup Antitrust Litigation*, M.D.L. No. 1087 (C.D. Ill.). In addition to the *Exxon Valdez Litigation*, he has tried several complex, protracted cases to jury, including two class actions: *In re Master Key Antitrust Litigation*, (1977) and *In re Corrugated Container Antitrust Litigation* (1980). For his work as trial counsel in the *Exxon Valdez Oil Spill Litigation*, Mr. Montague shared the Trial Lawyers for Public Justice 1995 Trial Lawyer of the Year Award.

Mr. Montague has frequently lectured on class action litigation for the Practicing Law Institute, the Pennsylvania Bar Institute and before other associations. He has taught a Complex Litigation Course at Temple University Law School and has been a panelist at the Federal Bench-Bar Conference for the Eastern District of Pennsylvania. Mr. Montague was a member of the 1984 faculty of the Columbia Law School Continuing Legal Educational Program entitled "The Trial of an Antitrust Case." Mr. Montague has testified before Congress with respect to antitrust and business fraud legislation, including the Racketeer Influenced and Corrupt Organizations Act ("RICO"). He is currently a member of the Advisory Board of the Antitrust & Trade Regulation Report published by the Bureau of National Affairs.

**Sherrie R. Savett**

## Summary

Sherrie R. Savett, Chair of the Securities Litigation Department, and member of the Management Committee of the law firm of Berger & Montague, has practiced in the area of securities litigation and class actions since 1975. Eight securities class actions in which Ms. Savett served as lead counsel are among the 100 largest securities class actions settled in the history of the federal securities laws. She has advanced investor protection by helping to establish several significant legal precedents. Ms. Savett speaks and writes often on professional topics, and is also a business and community leader.

## Securities Litigation

Ms. Savett serves or has served as lead or co-lead counsel or as a member of the executive committee in a large number of important securities and consumer class actions in federal and state courts across the country, including:

*Advanced Micro Devices* (class settlement of $11.5 million)
 *(Civil Action No. 95-20750 (N.D. Cal. 1998));
 ***Alcatel Alsthom* (class settlement of $75 million)
(Master Docket No. 99-1263 (E.D. Tex. 2001));
*BankAmerica* (derivative settlement of $39.25 million)
(Civil Action No. 85-4779 (C.D. Cal. 1987));
*Boston Chicken* (class settlement of $21.5 million)
(Civil Action No. 97-1308 (D. Colo. 2006));
*Bristol-Myers Squibb* (class settlement of $20 million)
(Civil Action No. 92-4007 (S.D.N.Y. 1994));
*Cephalon* (class settlement of $17 million)
(Civil Action No. 96-0633 (E.D. Pa. 1999));

---

*In this and all other cases on this list, dates represent the year of settlement. The settlement year for cases that include multiple settlements reflects the first settlement in time.

**Listed among the 100 largest securities class action settlements in the United States since the enactment of the 1933-1934 securities acts.        26

**\*\*CIGNA** (class settlement of $93 million)
(Civil Action No. 2:02-8088 (E.D. Pa. 2007));
**Coastal Physician Group** (class settlement of $8.15 million)
(Civil Action No. 1:95-0036 (1998 M.D.N.C.));
**Crocker Shareholder Litigation** (class settlement of $35 million)
(Civil Action No. 7405 (Del. Ch. 1985));
**Employee Solutions** (class settlement valued at $15 million)
(Civil Action No. 97-545 (D. Ariz. 1999));
**Fidelity/Micron** (class settlement of $10 million)
(Civil Action No. 95-12676 (D. Mass. 1997));
**\*\*Fleming Companies** (class settlement of $94 million)
(MDL No. 1530 (E.D. Tex. 2005));
**Genentech** (class settlement of $29 million)
(Civil Action No. 88-4038 (N.D. Cal. 1991));
**\*\*Global Crossing** (class settlement of $444 million (partial))
(Civil Action No. 02-910 (S.D.N.Y. 2006));
**Home Shopping Network** (class settlement of $18.2 million)
(Civil Action No. 87-428 (M.D. Fla. 1991));
**Long Island Lighting** (class settlement of $48.5 million)
(Civil Action No. 84-0588 (E.D.N.Y. 1988));
**Marconi** (class settlement of $7.1 million)
(Civil Action No. 01-1259 (W.D. Pa. 2003));
**\*\*Medaphis/Deloitte & Touche**  (class settlement of $96.5 million)
(Civil Action Nos. 96-2088 (N.D. Ga. 1997) and 97-3183 (N.D. Ga. 2000));
**MicroWarehouse** (class settlement valued at $30 million)
(Civil Action No. 96-1920 (D. Conn. 1998));
**Motorola** (class settlement of $15 million)
(Civil Action No. 90-5887 (N.D. Ill. 1995));
**Oak Industries** (class settlement in excess of $35 million)
(Civil Action No. 83-0536 (S.D. Cal. 1983));
**Plains All American Pipeline LP** (class settlement of $24.1 million)
(Civil Action No. 99-4136 (S.D. Tex. 2001));
**Policy Management** (class settlement of $32 million)
(Civil Action No. 3:93-0807 (D.S.C. 1995));

*Policy Management II* (class settlement of $7.75 million)
(Civil Action No. 94-1150 (D.S.C. 2001));

*Public Service Company of New Mexico* (class and derivative settlements of $33 million)
(Civil Action No. 91-0536 (S.D. Cal. 1992));

*Raychem* (class settlement of $19.5 million)
(Civil Action No. 89-20801 (N.D. Cal. 1992));

**Rite Aid** (class settlement of $334 million)
(Civil Action No. 99-1349 (E.D. Pa. 2003));

*Safety-Kleen* (class settlement of $44.5 million achieved two days before trial)
(Civil Action No. 3:00-736-17 (D.S.C. 2001));

*Sepracor Inc.*(class settlement of $52.5 million)
(Civil Action No. 02-12235 (D. Mass. 2007));

*Shopko Stores* (class settlement of $4.9 million)
(Civil Action No. 01-1034 (D. Wis. 2004));

*SmithKline Beckman* (class settlement of $22 million)
(Civil Action No. 88-7474 (E.D. Pa. 1990));

**  *Sotheby's Holdings* (class settlement of $70 million) including $30 million from individual
     officer) (Civil Action No. 00-1041 (S.D. N.Y. 2001));

*Summit Technology* (class settlement of $10 million)
(Civil Action No. 96-11589 (D. Mass. 2001));

*Sunrise Medical* (class settlement of $20 million)
(Civil Action No. 95-3605 (S.D. Cal. 1996));

*Subaru* (class settlement of $70 million)
(Civil Action No. MD 0016-90 (N.J. Super. 1991));

*Synergen* (class settlement of $28 million)
(Civil Action No. 93B-402 (D. Colo. 1995));

*U.S. Bioscience* (class settlement valued at $15.25 million)
(Civil Action No. 92-678 (E.D. Pa. 1994));

*United HealthCare* (class settlement of $20.1 million)
(Civil Action No. 98-1888 (D. Minn. 2000));

*United Telecommunications* (class settlement of $28 million)
(Civil Action No. 90-2251 (D. Kan. 1994));

*Valujet* (class settlement of $5 million)
(Civil Action No. 1:96-1355 (N.D. Ga. 1999));

28

*W.R. Grace* (derivative settlement of $8.5 million)
(Civil Action No. 95-9003 (S.D. N.Y. 1998));
  \*\**Waste Management* (class settlement of $220 million)
(Civil Action No. 97-7709 (N.D. Ill. 1999));
   \*\**Xcel Energy* (class settlement of $80 million)
(Civil Action No. 02-2627 (D. Minn. 2005)).

**Investor Protection**

Ms. Savett has helped establish several significant precedents. Among them is the holding (the first ever in a federal appellate court) that municipalities are subject to the anti-fraud provisions of SEC Rule 10b-5 under § 10(b) of the Securities Exchange Act of 1934, and that municipalities that issue bonds are not acting as an arm of the state and therefore are not entitled to immunity from suit in the federal courts under the Eleventh Amendment. *Sonnenfeld v. City and County of Denver*, 100 F.3d 744 (10th Cir.1996).

In the *U.S. Bioscience* securities class action, a biotechnology case where critical discovery was needed from the federal Food and Drug Administration, the court ruled that the FDA may not automatically assert its administrative privilege to block a subpoena and may be subject to discovery depending on the facts of the case. *In re U.S. Bioscience Secur. Litig.*, 150 F.R.D. 80 (E.D. Pa. 1993)

In the *CIGNA Corp. Securities Litigation*, the Court denied defendants' motion for summary judgment, holding that a plaintiff has a right to recover for losses on shares held at the time of a corrective disclosure and his gains on a stock should not offset his losses in determining legally recoverable damages. *In re CIGNA Corp. Securities Litigation*, 459 F. Supp. 2d 338 (E.D. Pa. 2006).

**Professional Leadership**

Ms. Savett is active in her profession, and is a frequent author and lecturer on prosecuting shareholder and consumer class actions. She was formerly on the board of the Philadelphia Bar Foundation.

29

In May 2007, Ms. Savett spoke in Rome, Italy at the conference presented by the Litigation Committee of the Dispute Resolution Section of the International Bar Association and the Section of International Law of the American Bar Association on class certification. Ms. Savett participated in a mock hearing before a United States Court on whether to certify a worldwide class action that includes large numbers of European class members.

She has lectured at the Wharton School of the University of Pennsylvania and at the Stanford Law School on prosecuting shareholder class actions. She is frequently invited to present and serve as panelist in American Bar Association, American Law Institute/American Bar Association and Practicing Law Institute (PLI) conferences on securities class action litigation and the use of class actions in consumer litigation. She has been a presenter and panelist at PLI's Securities Litigation and Enforcement Institute annually since 1995. She has also spoken at major institutional investor and insurance industry conferences, and DRI -- the Voice of the Defense Bar.

Ms. Savett is a member of the Editorial Board of the *Securities Litigation Report* and has been a contributor to this publication.

She has written numerous articles on securities and complex litigation issues, including:

"Plaintiffs' Vision of Securities Litigation: Trends/Strategies in 2005-2007," 1620 *PLI*, September 2007

"Plaintiffs' Vision of Securities Litigation: Trends/Strategies in 2005-2007," SM086 ALI ABA, June 7-8, 2007

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," 1557 *PLI*, September 2006

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," 1505 *PLI*, September 2005

"Recent Developments in the Lead Plaintiff and Lead Counsel Provisions of the Private Securities Litigation Reform Act (PSLRA)," 1 *Securities Litigation Report*, (Glasser LegalWorks) December 2004-January 2005

"Primary Liability of 'Secondary' Actors under the PSLRA," 1 *Securities Litigation Report* (Glasser) November 2004

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," 1442 *PLI/Corp.13*, September-October 2004

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," SJ084 ALI-ABA 399, May 13-14, 2004

"The 'Indispensable Tool' of Shareholder Suits," *Directors & Boards*, Vol. 28, February 18, 2004

"Plaintiff's Perspective on How to Obtain Class Certification in Federal Court in a Non-Federal Question Case", 679 *PLI*, August 2002

"Hurdles in Securities Class Actions: The Impact of Sarbanes-Oxley from a Plaintiff's Perspective," 9 *Securities Litigation and Regulation Reporter* (Andrews), December 23, 2003

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," SG091 ALI-ABA, May 2-3, 2002

"Securities Class Actions Since the 1995 Reform Act: A Plaintiff's Perspective," SF86 ALI-ABA 1023, May 10, 2001

"Greetings from the Plaintiffs' Class Action Bar: We'll Be Watching," SE082 ALI-ABA739, May 11, 2000

"Preventing Financial Fraud," B0-00E3 *PLI* BO-00E3 April-May 1999

"Shareholders Class Actions in the Post Reform Act Era," SD79 ALI-ABA 893, April 30, 1999

"What to Plead and How to Plead the Defendant's State of Mind in a Federal Securities Class

Action," with Arthur Stock, *PLI*, ALI/ABA 7239, November 1998

"The Merits Matter Most: Observations on a Changing Landscape under the Private Securities Litigation Reform Act of 1995," 39 *Arizona Law Review* 525, 1997

"Everything David Needs to Know to Battle Goliath," ABA Tort & Insurance Practice Section, *The Brief*, Vol. 20, No.3, Spring 1991

"The Derivative Action: An Important Shareholder Vehicle for Insuring Corporate Accountability in Jeopardy,*" PLI* H4-0528, September 1, 1987

"Prosecution of Derivative Actions: A Plaintiff's Perspective," *PLI* H4-5003, September 1, 1986

**Honors**

Ms. Savett is widely recognized as a leading litigator and a top female leader in the profession by local and national legal rating organizations.

*The Legal Intelligencer* and *Pennsylvania Law Weekly* named her one of the "56 Women Leaders in the Profession" in 2004.

In 2004, 2005 and 2007, Berger & Montague was named to the *National Law Journal's* "Hot List" of 12-20 law firms nationally "who specialize in plaintiffs' side litigation and have excelled in their achievements." Ms. Savett's achievements were mentioned, among others'.

Ms. Savett was named a "Pennsylvania Top 50 Female Super Lawyer" and a "Pennsylvania Super Lawyer" from 2004 through 2006 by *Philadelphia Magazine* after an extensive nomination and polling process among Pennsylvania lawyers.

In 2006 and 2007, she was named one of the 500 leading litigators and leading plaintiffs' litigators in the United States by *Lawdragon*. In 2008, Ms. Savett was named by *Lawdragon* as one of the "500 Leading Lawyers in America."

32

**Business and Community Leadership**

A business leader, Ms. Savett is on the Board of Directors of Pennsylvania Business Bank, and is a member of The Forum of Executive Women.

Ms. Savett is active in community affairs, serving for decades on the Board of Trustees of The Jewish Federation of Philadelphia. She is on the Board of the National Liberty Museum, and is Chairperson of the Southeastern Pennsylvania State of Israel Bonds and is a member of the National Cabinet of Israel Bonds. In 2005, she received The Spirit of Jerusalem Medallion, the State of Israel Bonds' highest honor. She is a former board member of the Philadelphia Chapter of the Weizman Institute, and the American Jewish Committee.

**Education**

She earned her J.D. from the University of Pennsylvania Law School, and a B.A. *Summa Cum Laude* with Distinction in English Literature from the University of Pennsylvania where she was elected a member of Phi Beta Kappa.

**Personal**

Ms. Savett and her husband have five children and four grandchildren. In addition to her family, she enjoys tennis, physical training, travel and collecting art, especially glass and sculpture.

<u>**Merrill G. Davidoff**</u>

Merrill G. Davidoff, a Senior Shareholder in the firm, received a B.A. degree from the University of Pennsylvania in 1969, and a J.D. from the University of Pennsylvania Law School (*cum laude*) in 1973. He is admitted to practice law in the Commonwealth of Pennsylvania, the State of New York, the United States Supreme Court, and numerous federal Courts of Appeal. Mr. Davidoff is Co-Chairman of the Antitrust Department with Mr. Montague, Chairs the Environmental Group, and has litigated and tried a wide range of securities, antitrust, and environmental class actions.

In the Rocky Flats Nuclear Weapons Plant class action where Mr. Davidoff is lead counsel, the Court

33

held the United States Department of Energy in contempt of court after a one week trial in November, 1995 (reported at 907 F. Supp. 1460 (D. Colo. 1995)). In 2005-2006, this class action finally went to trial (with Mr. Davidoff as lead trial counsel) and, in February 2006, the jury returned a special verdict for the plaintiffs for $554 million, the largest property damage class action jury verdict ever. The verdict was the third-largest jury verdict of 2006 in the United States, according to *The National Law Journal*. The Rocky Flats trial team led by Mr. Davidoff was also one of seven finalists for the 2006 "Trial Lawyer of the Year" award from the non-profit foundation Trial Lawyers for Public Justice.

In *In re Foreign Currency Fee Antitrust Litigation*, MDL No. 1409, where Mr. Davidoff and Berger & Montague are co-lead counsel, a proposed class action settlement of $336 million with Visa, MasterCard, and a number of their member banks was recently announced.

In *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720, one of the largest pending antitrust cases in the United States, H. Laddie Montague, Jr., Mr. Davidoff and Berger & Montague are one of the three Court-appointed co-lead counsel.

During a legal career spanning 33 years, Mr. Davidoff has represented diverse clients, including Burger King Corporation; John I. Haas, Inc.; Joh. Barth & Sohn, A.G.; Karhu, Inc.; Rexroth Corporation/Rexroth GmbH; ADVO System, Inc.; the LeFrak Organization; Mannesmann A.G.; Championship Auto Racing Teams, Inc.; Cascade Steel Rolling Mills, Inc.; Carpenter Technology Corp.; the State of New Jersey; and the City of Philadelphia. He has also represented many other large and small companies, sports teams, professional organizations, individuals and professional firms. He has acted as lead counsel and trial counsel in numerous antitrust, commercial, environmental, and securities cases. He represented Championship Auto Racing Teams ("CART"), a major Indy-car race-sanctioning organization, in a series of antitrust cases against Indianapolis Motor Speedway and others.

Mr. Davidoff has been a speaker at American Trial Lawyers Association meetings and seminars, and has addressed the Environmental and Toxic Torts Section at the National Convention of ATLA. He is also a member of the Antitrust and Business Law Sections of the American Bar Association, and served on the subcommittee of the American Bar Association Antitrust Section which prepared the 1985 supplement to the "Antitrust Civil Jury Instructions."

34

Mr. Davidoff served as co-lead and trial counsel for a plaintiff class in the first mass tort class action trial in federal court which resulted in a precedent-setting settlement for class members, *In re Louisville Explosions Litigation*. In the Canadian Radio-Television and Telecommunications Commission ("CRTC") Decisions (*Challenge Communications, Ltd. v. Bell Canada*), Mr. Davidoff was lead counsel for Applicant (plaintiff) in three evidentiary hearings before the CRTC. The hearings resulted in the first precedent breaking Bell Canada's monopoly over the telecommunications equipment which was connected to its telephone network. He was lead counsel in the *Revco Securities Litigation*, an innovative "junk bond" class action, which settled for $36 million. Mr. Davidoff was lead plaintiffs' counsel and lead trial counsel in *In re Melridge Securities Litigation*, tried to jury verdicts for $88 million (securities fraud) and $240 million (RICO). He was co-lead counsel for the class in the *In re Graphite Electrodes Antitrust Litigation*, an international price-fixing case which yielded settlements ranging from 18% to 32% of the plaintiffs' and class' purchases from the defendants (aggregate settlements totaled $134 million). He was one of co-lead counsel in the *Ikon Securities Litigation*, in which a settlement of $111 million was obtained. He was co-lead counsel and designated lead trial counsel in the *In Re Sunbeam Securities Litigation*, where settlements of $142 million were reached. One of his areas of concentration is representation in commodities futures and options matters, and expertise in derivatives. He has represented market-makers on the Philadelphia Stock Exchange, where he owned a member firm in the early 1990s, as well as broker-dealers and market-makers on other exchanges.

Recently, Chambers & Partners highly-regarded Chambers USA Edition rated Berger & Montague's Antitrust Practice as "the top choice for plaintiff antitrust representation, particularly in complex class actions." Mr. Davidoff was described as a "giant in the field."

### Daniel Berger

Daniel Berger graduated with honors from Princeton University (Class of 1969) and Columbia Law School (1974) where he was a Harlan Fiske Stone academic scholar. He is presently a senior member and shareholder of the firm, for which he serves as Managing Shareholder. Over the last 15 years, he has been involved in a number of complicated commercial cases including class action securities, antitrust, mass tort and bankruptcy cases. In the antitrust area, he has headed up the firm's involvement in highly successful litigation against brand and generic prescription drug manufacturers in which the Berger Firm has been co-lead counsel, a member of various executive committees or otherwise played a key role including, *inter alia*, the following cases: Duane Reade Co. v. Aventis

35

*et al.* ($110 million settlement involving prescription drug Hytrin); <u>Louisiana Wholesale Drug Co.</u> <u>v. Bristol-Myers Squibb</u> ($220 million settlement involving prescription drug Buspar); <u>Valley Drug</u> <u>Co. v. Abbott Laboratories</u> *et al.,* (pending case involving agreements by brand and generic drug companies to delay generic entry); <u>Louisiana Wholesale Drug Co. v. Schering Plough</u> (pending case involving agreements by brand and generic drug companies to delay generic entry); and <u>Louisiana</u> <u>Wholesale Drug Co. v. Glaxo SmithKline Co.</u> (pending case involving fraud on the U.S. Patent Office and improper FDA listing by a brand prescription drug manufacturer which delayed generic entry. In the civil rights area, he has been counsel in informed consent cases involving biomedical research and human experimentation by federal and state governmental entities.

Daniel Berger also has a background in the study of economics having done graduate level work in applied micro-economics and macro-economic theory, the business cycle and economic history. He has published law review articles in the *Yale Law Journal*, the Duke University *Journal of Law and Contemporary Problems* and the New York Law School *Law Review* and worked with the American Law Institute /American Bar Association program on continuing legal education. He has been affiliated with the Kennedy School of Government through the Shorenstein center of Media and Public Policy at Harvard University.

Mr. Berger has been active in city government in Philadelphia and was a member of the Mayor's Cultural Advisory Council, advising the Mayor of Philadelphia on arts policy and the Philadelphia Cultural Fund, which is responsible for all city grants to arts organizations. Mr. Berger was also a member of the Pennsylvania Humanities Council, one of the State organizations through which the National Endowment for the Humanities makes grants.

Mr. Berger is also an author and journalist and has published in the *Nation* magazine and reviewed books for the *Philadelphia Inquirer*.

### Todd S. Collins

Todd S. Collins is a graduate of the University of Pennsylvania (B.A. 1973) and the University of Pennsylvania Law School (J.D. 1978), where he won the 1978 Henry C. Laughlin Prize for Legal Ethics. He is a member of the Pennsylvania and Delaware Bars. Since joining Berger & Montague in 1982, following litigation and corporate experience in Wilmington, Delaware and Philadelphia, he has concentrated on complex class litigation, including cases on behalf of securities purchasers,

shareholders, trust beneficiaries, and retirement plan participants and beneficiaries.

Mr. Collins has served as lead counsel or co-lead counsel in numerous cases that have achieved significant benefits on behalf of the Class. These cases include: *In re AMF Bowling Securities Litigation*, 99 Civ. 3023 (PKC) (S.D.N.Y.) ($20 million recovery, principally against investment banks, where defendants asserted that c lass suffered no damages); *Ashworth Securities Litigation*; Master File No. 99 CV 0121- L (JFS) (S.D. Cal.) ($15.25 million recovery, coupled with substantial corporate therapeutic relief); *In re Aero Systems, Inc. Securities Litigation*, Case No. 90-0083-CIV-PAINE (S.D. Fla.) (settlement equal to 90 percent or more of Class members' estimated damages); *Price v. Wilmington Trust Co.*, Case No. 12476 (Del. Ch.) (in litigation against bank trustee for breach of fiduciary duty, settlement equal to 70% of the losses of the Class of trust beneficiaries); *In re Telematics International, Inc. Securities Litigation*, Case No. 89-6015-CIV-PAINE (S.D. Fla.) (settlements achieved, after extensive litigation, following 11th Circuit reversal of dismissal below); *In re Ex-Cell-O Securities Litigation*, Case Nos. 86 CV 73442 DT and 86 CV 75335 DT (E.D. Mich.); *In re Sequoia Systems, Inc.* Case No. 92-11431-WD (D. Mass.); *In re Sapiens International, Inc. Securities Litigation*, Case No. 94 Civ. 3315 (RPP) (S.D.N.Y.); *In re Datastream Securities Litigation*, Case No. 9-99-0088-13 (D.S.C.); *Copland v. Tolson (*Fischer & Porter Corporate Litigation), Case No. 93008366-09-5 (C.P. Bucks County, Pa.) (on eve of trial, in case against corporate principals for breach of fiduciary duty, settlement reached that represented 65% or more of claimants' losses, with settlement funded entirely from individual defendants' personal funds); and *In re IKON Office Solutions, Inc. Securities Litigation*, Case No. 98-CV-5483 (E.D. Pa.). In *IKON*, where Mr. Collins was co-lead counsel as well as chief spokesman for plaintiffs and the Class before the Court, plaintiffs' counsel created a fund of $111 million for the benefit of the Class.

In addition, Mr. Collins has served as lead or co-lead counsel in several of the leading cases asserting the ERISA rights of 401(k) plan participants. Mr. Collins currently serves as co-lead counsel in *In re Lucent Technologies, Inc. ERISA Litigation*, No. 01-CV-3491 (D.N.J.); *In re Nortel Networks Corp. ERISA Litigation*, No. 03-MD-1537 (M.D. Tenn.); and *In re SPX Corporation ERISA Litigation*, Master File No. 04-CV-192 (W.D. N.C.). In *Lucent*, in the past year, Mr. Collins and his team achieved an excellent result, consisting of $69 million for the benefit of plan participants as well as substantial injunctive relieve with respect to the operation of the 401(k) plans.

Mr. Collins is at the forefront of litigation designed to achieve meaningful corporate governance reform. Recently, he brought to a successful conclusion two landmark cases in which corporate therapeutics are at the core of the relief obtained. In *Oorbeek v. FPL Group, Inc.* (S.D. Fla.), a

37

corporate derivative action brought on behalf of the shareholders of FPL Group, plaintiffs challenged excessive "change of control" payments made to top executives. In settlement, plaintiffs recovered not only a substantial cash amount, but also a range of improvements in FPL's corporate governance structure intended to promote the independence of the outsider directors.

Similarly, in *Ashworth Securities Litigation* (S.D. Cal.), a Section 10(b) fraud case, in which Mr. Collins was co-lead counsel, plaintiffs again have been successful in recovering millions of dollars and also securing important governance changes. The goal is to compensate the victims of wrongdoing and also, where appropriate, to make those structural changes necessary to make sure that such wrongdoing will never recur.

## Glen L. Abramson

Glen L. Abramson has been a member of Berger & Montague's Securities Litigation Department since 2003, concentrating his practice in the area of complex securities class action litigation. Prior to joining Berger & Montague, he worked at Dechert LLP in Philadelphia, where he handled complex commercial litigation, product liability, intellectual property, and civil rights disputes. While at Dechert, Mr. Abramson co-chaired a civil rights trial in federal court that led to a six-figure verdict. Mr. Abramson also spent three years as a professional equities trader.

Currently Mr. Abramson represents both public and private institutional investors, as well as high-net-worth individuals, in several high-profile securities fraud class actions. He is actively involved in *In re Mutual Funds Investment Litigation*, where Berger & Montague is a member of the Steering Committee, and represents the interest of investors who were harmed as a result of the mutual fund industry's recent market timing and late trading scandal.

Mr. Abramson is also active in pursing corporate governance reform on behalf of institutional investors. He is a member of the National Association of Public Pension Attorneys (NAPPA), and had contributed to an article titled "The Indispensable Tool of Shareholder Suits: Private Securities Litigation as a Remedy for Failed Governance" in *Directors & Boards* magazine (Vol. 28, No. 2, Winter 2004). Mr Abramson has also commented on securities fraud cases for several publications, including *The Economist*.

Mr. Abramson was awarded a B.A. from Cornell University where he was elected to Phi Beta Kappa. He holds a J.D. *cum laude* from the Harvard Law School, where he was a member of the Harvard Legal Aid Bureau. He is admitted to practice law in Pennsylvania and New Jersey.

## Gary L. Azorsky

Gary L. Azorsky joined Berger & Montague, P.C. as a shareholder of the firm in 2002 and concentrates his practice on qui tam litigation in addition to commercial class actions and complex commercial litigation. Previously, Mr. Azorsky had been actively involved in groundbreaking civil rights, commercial and intellectual property litigation, including Internet and software industry-related litigation, as a partner at the Philadelphia firm of Mesirov Gelman Jaffe Cramer & Jamieson, and later as a partner at the Philadelphia firm of Schnader Harrison Segal & Lewis.

Since joining Berger, Mr. Azorsky has focused primarily on qui tam litigation, particularly in the context of the health care industry. He works extensively representing whistleblowers in both state and federal court. A series of False Claims Act cases against drug companies for fraudulent Medicaid and Medicare drug pricing has led to recoveries of over $200 million, including a $150 million settlement with GlaxoSmithKline PLC.

Mr. Azorsky is admitted to the bars in both Pennsylvania and New Jersey.

Mr. Azorsky is a graduate of The University of Pennsylvania (B.A. 1980) and Cornell University Law School (J.D. 1983).

### Jonathan D. Berger

Jonathan D. Berger is a graduate of the Wharton School of the University of Pennsylvania (B.S., Economics, 1980) and the Delaware Law School (J.D. 1985). Mr. Berger was a Judicial Law Clerk for the Honorable Charles P. Mirarchi, Jr., Court of Common Pleas of Philadelphia in 1986 and 1987. Since joining Berger & Montague, in September 1987, he has been involved in class actions and complex commercial litigation including the *Exxon Valdez Oil Spill Litigation*; *Norplant Contraceptive Litigation*; *In re Domestic Airlines Antitrust Litigation*, 137 F.R.D. 677 (N.D. Ga. 1991); *Ford/Firestone MDL Litigation*; *Unisys ERISA Benefits Litigation*; *In re Asbestos School Litigation*, Master File No. 83-0268 (E.D. Pa); *Commercial Explosives Antitrust Litigation*; and *Vitamins Antitrust Litigation*. Additionally, Mr. Berger has been actively engaged in other complex cases including multi-party litigation involving hydraulic engineered systems.

### Carole A. Broderick

Carole A. Broderick is a 1952 graduate of Cornell University where she received a Bachelor of Arts degree. She is a 1957 graduate of the University of Pennsylvania Law School, where she was awarded an L.L.B. and was a member of the *Law Review*. She has practiced before the Securities and Exchange Commission and actively participated in the prosecution and trial of complex securities and antitrust litigation. She is admitted to practice law in the Commonwealth of Pennsylvania.

### Gary E. Cantor

Gary E. Cantor is a graduate of Rutgers College (B.A., *magna cum laude*, 1974, with highest distinction in economics) where he was a member of Phi Beta Kappa, and the University of Pennsylvania Law School (J.D. 1977), where he was a member of the Moot Court Board and the author of a law review comment on computer-generated evidence. He was admitted to the Pennsylvania bar in 1977. Since joining the Berger firm in 1977, he has concentrated on complex litigation, particularly securities litigation and securities valuations. Among other cases, Mr. Cantor has served as co-lead counsel in *Steiner v. Phillips, et al.* (Southmark Securities), Consolidated C.A. No. 3-89-1387-X (N.D. Tex.), which resulted in several payments to the Settlement Fund of $82.5 million, and *In re Kenbee Limited Partnerships Litigation,* Civil Action No. 91-2174 (GEB), a class action involving 119 separate limited partnerships resulting in cash settlement and debt restructuring (with as much as $100 million in wrap mortgage reductions). In addition, he played a major leadership role in: *In re Sepracor Inc. Securities Litigation,* Civil Action no. 02-12235-MEL (D. Mass.)($52.5 million settlement approved September 6, 2007); *In re Marconi, Plc, Securities Litigation,* Civil Action No. 2:01-CV-1259 (W.D. Pa.)($7.1 million settlement approved January 16, 2004); *In re Sotheby's Holding, Inc. Securities Litigation,* No. 00 Civ. 1041 (DLC) (S.D.N.Y.)($70 million class settlement); *In re Fidelity/Micron Securities Litigation,* Civil Action No. 95-12676-RGS (D. Mass.) ($10 million class settlement); *In re Tucson Electric Power Company Securities Litigation,* C.A. No. 89-1274 PHX (WPC C.D. Ariz.) ($30 million settlement of class and derivative actions). He was also actively involved in the *Waste Management Securities Litigation* (class settlement of $220 million).

In addition, Mr. Cantor has also concentrated on securities valuations and the preparation of damage studies or the supervision of outside damage experts for many of the firm's securities cases, including many of the cases listed under Prominent Judgments and Settlements above.

Mr. Cantor has been active in numerous community service activities, including serving as treasurer, president and board chairman of a private school.

### Shanon J. Carson

Shanon J. Carson is a graduate of the Indiana University of Pennsylvania (B.A. *cum laude* 1996 - Criminology) and the Dickinson School of Law of the Pennsylvania State University (J.D. 2000).

While in law school, Mr. Carson was Senior Editor of the Dickinson Law Review, and also served as a law clerk for the Honorable William W. Caldwell, Senior Judge, United States District Court, Middle District of Pennsylvania. Since joining Berger & Montague in August of 2000, Mr. Carson has concentrated his practice in the areas of employment discrimination, civil rights, products liability and other commercial litigation, and complex class action litigation. Mr. Carson is admitted to practice in the Commonwealth of Pennsylvania

### Bart D. Cohen

Bart Cohen graduated from the University of Pennsylvania in 1984 with two degrees, from the Wharton School and the School of Engineering and Applied Science. After working as a software developer, he graduated in 1989 from the Georgetown University Law Center, where he was a member of the American Criminal Law Review, and authored the "1987 Computer Crime Update" in the journal's survey of white collar crime. Since joining the Berger firm in 1991, Mr. Cohen has concentrated on antitrust litigation, including *In re Infant Formula Antitrust Litigation*, (N.D. Fla. 1993), *In re Carbon Dioxide Antitrust Litigation*, (M.D. Fla. 1996), and *Callahan v. A.E.V., Inc.*, 182 F.3d 237 (3rd Cir. 1999) (reversing dismissal of antitrust claims of several small beer distributors). He has also represented an automobile dealership in antitrust litigation against its franchisor, *Mercedes-Benz, U.S.A. v. Coast Automotive Group, Ltd.*, (D.N.J.). Mr. Cohen is admitted to practice in the Commonwealth of Pennsylvania, the Eastern District of Pennsylvania and the Eleventh Circuit Court of Appeals.

### Eric L. Cramer

Eric L. Cramer graduated *summa cum laude* from Princeton University (A.B. 1989), where he was selected for Phi Beta Kappa, and *cum laude* from Harvard Law School (J.D. 1993). He is admitted to practice in Pennsylvania and New York, and various federal courts.

In June 2005, Chambers USA *America's Leading Lawyers for Business* honored Mr. Cramer as one of Philadelphia's "up and coming" antitrust lawyers, noting that he is "admired [by his peers] for his strong analytical skills" and recognized for his "expert knowledge of the economic side of the law." Moreover, the June 2005 edition of Philadelphia Magazine selected Mr. Cramer as one of the City's *"Super Lawyers,"* based on his work in the antitrust field.

42

Since joining Berger & Montague in 1995, Mr. Cramer has concentrated his practice in complex public protection litigation, representing victims of mass torts and those injured by violations of antitrust and consumer protection laws. Mr. Cramer has spent the past five years prosecuting antitrust class actions on behalf of direct purchasers of brand name drugs, charging pharmaceutical manufacturers with illegally blocking the market entry of less expensive competitor drugs. In four such cases, Mr. Cramer was significantly responsible for winning class certification. *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001); *In re Buspirone Patent & Antitrust Litig.*, 210 F.R.D. 43 (S.D.N.Y. 2002); *In re Premarin Antitrust Litig.*, 225 F.R.D. 208 (S.D. Ohio 2003); and *In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003).

In the last three years, Mr. Cramer and his colleagues have won substantial settlements in six of these cases for a combined total of more than $700 million: *Cardizem* settled in November 2002 for $110 million; *Buspirone* settled in April of 2003 for $220 million; *Relafen* settled in February 2004 for $175 million; *In re Platinol Antitrust Litig.* settled in November 2004 for $50 million; *In re Terazosin Hydrochloride Antitrust Litig.* settled in April 2005 for nearly $75 million; and *In re Remeron Antitrust Litig.* settled in November 2005 for $75 million.

In addition, Mr. Cramer was significantly responsible for winning class certification in *In re Microcrystalline Cellulose Antitrust Litigation*, No. 01-CV-111 (E.D. Pa. Aug. 13, 2003).

Mr. Cramer recently co-sponsored, and presented at, a symposium in November 2004, focusing on antitrust issues in the pharmaceutical industry, at the University of San Francisco School of Law. Several articles from the symposium were published in the Fall 2004 edition of that school's law review, including a piece co-authored by Mr. Cramer with his partner, Daniel Berger, entitled *The Superiority of Direct Proof of Monopoly Power and Anticompetitive Effects in Antitrust Cases Involving Delayed Entry of Generic Drugs*, 39 U.S.F. Law Rev. 81 (Fall 2004). Mr. Cramer has also taught several seminars on the law of class actions and expert witnesses sponsored by the National Business Institute in Philadelphia.

Mr. Cramer began his career representing victims of human radiation experimentation carried out by the federal government in conjunction with state and private actors as part of the U.S. atomic weapons program during the Cold War. He helped resolve two such cases for over $4.7 million combined, and was principally responsible for a reversal by the Ninth Circuit Court of Appeals of a summary judgment dismissal of one of those cases on statute of limitations grounds. *See Bibeau,*

*et al. v. Pacific Northwest Research Foundation, et al.*, 188 F.3d 1105 (9th Cir. 1999).

Mr. Cramer is also active in community affairs, specifically those involving public education. He is a co-founder, current member, and past President of the Board of Trustees of the Independence Charter School, for which he also acted as litigation counsel. After a successful appeal to the Pennsylvania Charter School Appeal Board, which granted the school a charter, Mr. Cramer secured an affirmance by the Commonwealth Court. *See School District of Philadelphia v. Independence Charter School*, 2001 Pa. Commmw. LEXIS 279 (May 3, 2001). The Center City Philadelphia charter school opened its doors to nearly three-hundred elementary age school children in the Fall of 2001. Mr. Cramer also serves on the Board of the Center for Literacy, one of largest non-profit adult literacy organizations in the country.

### Michael C. Dell'Angelo

Michael C. Dell'Angelo specializes in antitrust, securities and complex litigation. Since joining Berger & Montague, Mr. Dell'Angelo has handled cases in a variety of fields and has represented successfully public and private institutional investors and high-net-worth individuals in securities related litigation as well as industrial manufacturers and wholesale purchasers of prescription drug products in antitrust and commercial litigation matters. A substantial portion of his practice involves parties domiciled in Canada and Europe.

Mr. Dell'Angelo was recently selected to the 2007 Pennsylvania Super Lawyers – Rising Stars Division, for his work in class action litigation, a designation awarded to the 2.5 percent of the best up-and-coming attorneys in Pennsylvania. He is regularly invited to speak at Continuing Legal Education and other seminars both locally and abroad including, most recently, the "Shareholder Responsibility & Class Action Law" Forum in London. Mr. Dell'Angelo currently serves as the Third Circuit Editor of the American Bar Association's quarterly publication, "Class Action and Derivative Suits." He is a member of the Philadelphia and American Bar Associations.

Prior to joining Berger & Montague, Mr. Dell'Angelo was an associate at Miller Faucher and Cafferty LLP, where he concentrated in antitrust, securities, and complex commercial litigation. In his capacity at Miller Faucher, Mr. Dell'Angelo also practiced before the Federal Trade Commission. He also devoted a substantial portion of his practice to the prosecution of numerous class action law

suits on behalf of survivors of slave labor during the Holocaust. These suits, against German companies, resulted in a $5.2 billion German Foundation to pay Nazi-era claims.

Mr. Dell'Angelo's *pro bono* work includes the representation of an Alabama death row inmate. That representation resulted in a reversal of the client's sentencing by the Sixth Circuit and a grant of a writ of habeas corpus vacating the client's death sentence.

Mr. Dell'Angelo graduated from Connecticut College (B.A. 1994) and The Catholic University of America, Columbus School of Law (J.D. 1997). At the Columbus School of Law he was a member of the Moot Court Honor Society and Phi Delta Phi.

### Lawrence Deutsch

Lawrence Deutsch is a graduate of Boston University (B.A. 1973), George Washington University School of Government and Business Administration (M.S.A. 1979), and Temple University's School of Law (J.D. 1985). He became a member of the Pennsylvania Bar in 1986 and the New Jersey Bar in 1987. He has been admitted to practice in Eastern District of Pennsylvania, the First Circuit Court of Appeals, the Second Circuit Court of Appeals, the Third Circuit Court of Appeals, the Supreme Court of Pennsylvania, the Supreme Court of New Jersey, and the U.S. Court of Federal Claims. He has also been admitted to practice in various jurisdictions across the country for specific cases.

At the Berger firm, Mr. Deutsch has been involved in numerous major securities class action cases. Recently he served as one of lead counsel in the *In Re Sunbeam Securities Litigation* class action concerning "Chainsaw" Al Dunlap (recovery of over $142 million for the class in 2002). Similarly, Mr. Deutsch served as a member of the Executive Committee for the securities litigation regarding *Mattel Corporation* (recovery of $122 million finalized in 2006). Presently he serves as one of Lead Counsel in the class litigation regarding the *Scudder* mutual funds, a track of the Mutual Funds Market Timing consortium of cases. These cases seek recovery for mutual fund purchasers and holders against participants in the widespread scheme to market time and late trade mutual funds. In addition, he is serving as lead counsel on behalf of Class A shareholders against the *Philadelphia Stock Exchange*, its management and six investment firms concerning the rights and valuation of their shareholdings. Mr. Deutsch has also represented plaintiffs in matters of corporate governance, broker/dealer arbitrations, and consumer fraud.

In addition to his litigation work, Mr. Deutsch has been a member of the firm's Administrative Committee and also manages the firm's paralegals. Mr. Deutsch has also been active on behalf of children with disabilities, having served as President of the Pathway Parents Association.

Prior to joining the Berger firm, Mr. Deutsch was in the Peace Corps from 1973-1976, working in Costa Rica, the Dominican Republic and Belize. He then worked for ten years at the United States General Services Administration.

### Michael T. Fantini

Michael T. Fantini is a graduate of Saint Joseph's University (B.S. *magna cum laude* 1986) and George Washington National Law Center (J.D. with honors 1989), where he was a member of the Moot Court Board. Prior to joining the Berger firm, he was a litigation associate in the Washington, D.C. office of Dechert, Price & Rhoads. Since joining the Berger firm in 1992, Mr. Fantini has concentrated in consumer and securities fraud class action litigation. Some notable consumer cases include: *In re Educational Testing Service Praxis Principles of Learning and Teaching: Grade 7-12 Litigation*, MDL No. 1643 (E.D. La. 2006) (settlement of $11.1 million on behalf of persons who were incorrectly scored on a teachers' licensing exam); *Block v. McDonald's Corporation*, No: 01CH9137 (Cir. Ct. Of Cook County, Ill.) (settlement of $12.5 million where McDonald's failed to disclose beef fat in french fries); *Fitz, Inc. v. Ralph Wilson Plastics Co.*, No. 1-94-CV-0601 7 (D. N.J.) (claims-made settlement whereby fabricators filly recovered their losses resulting from defective contact adhesives); *Parker, et al. v. American Isuzu Motors, Inc.*; No: 3476 (CCP, Philadelphia County) (claims-made settlement whereby class members recovered $500 each for their economic damages caused by faulty brakes); *Crawford v. Philadelphia Hotel Operating Co.*, No: 04030070 (CCP Phila. Cty. 2005) (claims-made settlement whereby persons with food poisoning recovered $1,500 each); and *In re TJX Companies Retail Security Breach Litigation*, Master Docket No. 07-10162 (D. Mass) (pending class action brought on behalf of persons whose personal and financial data were compromised in the largest computer theft of personal data in history. Some notable securities cases include: *In re PSINet Securities Litigation*, No: 00-1850-A (E.D. Va.) (settlement in excess of $17 million); *Ahearn v. Credit Suisse First Boston, LLC*, No: 03-10956 (D. Mass.) (settlement of $8 million); and *In re Nesco Securities Litigation*, 4:0l-CV-0827 (N.D. Okla.). Mr. Fantini is also involved in *Benzman, et al v. Whitman*, et al., No:04-0l 888 (S.D.N.Y.), a class action suit brought by residents, students, and office workers of Lower Manhattan against the Environmental Protection Agency and certain of its top officials for their failure to clean up hazardous substances after the September 11, 2001 terrorist attacks. Finally, Mr. Fantini is currently representing the City of Philadelphia and the City of Chicago in separate suits against certain online

46

travel companies for their failure to pay hotel taxes. Mr. Fantini is licensed to practice in the Commonwealth of Pennsylvania and the District of Columbia.

## Bret Flaherty

Bret Flaherty graduated from the University of Pennsylvania (B.A. 1989 in Economics and Political Science) and from Tulane University Law School (J.D. *cum laude* 1992). He is admitted to practice in the Commonwealth of Pennsylvania.

He specializes in complex commercial and consumer protection litigation and transactional corporate law. He was the sole associate for a claimed 10 year verbal contract case which resulted in a $30 million recovery for the client. *See Provident American Corp. and Provident Indemnity Life Insurance Company v. The Loewen Group Inc. and Loewen Group International Inc.*, E.D. Pa., Civil Action No. 92-1964.

Mr. Flaherty is actively involved with Asian American United, a community based organization located in Chinatown serving Philadelphia's diverse Asian communities.

## Charles P. Goodwin

Mr. Goodwin joined Berger & Montague, following his 1992 graduation *cum laude* from the University of Pennsylvania Law School, where he was an editor of the *University of Pennsylvania Law Review.* Prior to attending law school, Mr. Goodwin graduated *cum laude* from Williams College (where he received the Graves Essay Prize in economics), and enrolled in graduate studies in economics at Stanford University. Mr. Goodwin also has engaged in commercial litigation practice in New York. With Berger & Montague, Mr. Goodwin is concentrating in antitrust and employee benefits litigation. Mr. Goodwin is admitted to practice law in the Commonwealth of Pennsylvania.

## Ruthanne Gordon

Ruthanne Gordon is a graduate of the University of Michigan (B.A. 1974) and the University of Pennsylvania Law School (J.D. 1979). Since joining the Berger firm in 1982, she has concentrated on the litigation of antitrust, securities and environmental class actions, and derivative litigation, including the following complex antitrust cases, among others: *In re Microcrystalline Cellulose*

*Antitrust Litigation* (E.D. Pa.)(shortly before trial the case was settled for $50 million); *In re Currency Conversion Fee Antitrust Litigation* ($336 million settlement pending); *In re Compact Disc Antitrust Litigation; State of Connecticut v. Philip Morris, Inc., et al.,* in which the State of Connecticut recovered approximately $3.6 billion from certain manufacturers of tobacco products; and *In re Commercial Tissue Antitrust Litigation.* She has also played a lead role in litigation involving the following industries: the real estate industry (*Lyons v. Calderone, et al.* (D.N.J.); *Best v. Koger Equity, Inc., et al.* (M.D. Fla.)); the computer industry (*In re Convex Computer Corporation Securities Litigation* (N.D. Tex.); *Heideman v. Toreson, et al.* (N.D. Cal.)); public utilities (*In re Philadelphia Electric Company Derivative Litigation* (Phila. C.C.P.); *In re PSE&G Derivative Litigation* (N.J. Super. Ct. Ch. Div.)); the environmental services industry (*Houston Corporation v. Environmental Systems Company, et al.* (E.D. Ark.)); the tobacco industry (*Friedman v. RJR Nabisco, Inc., et al.* (S.D.N.Y.)); the biotechnology industry (*In re Biogen Inc. Securities Litigation* (D. Mass.)); and the healthcare industry (*In re W.R. Grace & Co. Securities Litigation* (S.D.N.Y.)), among others.

Ms. Gordon was co-lead counsel in *In re PSE&G Derivative Litigation*, where she argued complex issues of first impression before the New Jersey Supreme Court. She was also counsel in *In re Louisville Explosion Litigation*, a class action case alleging property damage, which was prosecuted through a six-week trial and settled at the close of plaintiffs' case for more than one hundred percent of actual damages.

In addition, Ms. Gordon represented a class of Pennsylvania inmates in a federal civil rights class action, which resulted in the establishment of a statewide treatment program for Pennsylvania inmates suffering from post-traumatic stress disorder as a result of their service in the Vietnam war.

### Russ Henkin

Russ Henkin graduated from American University in Washington, D.C. in 1969 with a Bachelor of Science Degree with honors. He graduated from the University of Pennsylvania Law School in 1972. Mr. Henkin was law clerk to Honorable Maurice W. Sporkin in the Pennsylvania Court of Common Pleas for Philadelphia County from 1972 through 1975. From 1973 through 1975, he also worked in a small personal injury firm, trying plaintiffs' personal injury cases. He worked as an associate with the Berger firm from 1975 through 1980. During that time, he was involved in or tried complex civil litigation matters. His cases included fraud matters, securities matters, breach of contract, restrictive employment covenant litigation, eminent domain litigation, and divorce, among other fields.

From 1980 through 1991, he was associated with another firm, again involved in trials of complex civil litigation matters. His cases involved antitrust, bankruptcy litigation and reorganization, contracts, malpractice, products liability, employment discrimination, commercial disparagement litigation, business separation litigation, emotional distress litigation, claims and defense under the Racketeer Influenced and Corrupt Organization Act ("RICO"), stock fraud and foreclosure/workout and other trials. Representative results included confirmation of a $20 million plan of reorganization for a psychiatric hospital company, and successful defense against a $30 million RICO suit.

In June 1991, Mr. Henkin returned to the Berger firm, and is again trying complex civil matters. Those matters involve areas such as stock fraud, class action personal injury, breach of contract and consumer fraud, and lender liability. In one of his cases, he achieved a $30 million recovery in a claimed 10 year verbal contract case.

Mr. Henkin is admitted to practice law in the Commonwealth of Pennsylvania and the State of Florida.

### Peter R. Kahana

Peter R. Kahana is a Phi Beta Kappa graduate of Dickinson College (B.A. *magna cum laude* 1977) with a degree in Philosophy. Mr. Kahana graduated from Villanova Law School (J.D. 1980) where he was a member of the *Villanova Law Review*. He is admitted to practice in the Commonwealth of Pennsylvania and has clerked at the appellate court level for The Honorable Gwilym A. Price, Jr., of the Superior Court of Pennsylvania. Following his clerkship, Mr. Kahana joined the Berger firm in 1981. Mr. Kahana has diverse trial and appellate court experience in complex civil and class action litigation, and he has successfully represented both plaintiffs and defendants in numerous state and federal courts across the country. Mr. Kahana has also played a leading role in major antitrust and environmental litigation, including cases such as *In re Brand Name Prescription Drugs Antitrust Litigation* ($723 million settlement), *In re Ashland Oil Spill Litigation* ($30 million settlement), and *In re The Exxon Valdez* ($286 million compensatory damage and $5 billion punitive damage award – currently on appeal). In connection with his work as a member of the litigation team that prosecuted *In re The Exxon Valdez*, Mr. Kahana was selected to share the 1995 Trial Lawyer of the Year Award by The Trial Lawyers for Public Justice Foundation.

### Peter Russell Kohn

Peter Kohn is a 1989 graduate of the University of Pennsylvania (B.A., English) and a 1992 *cum laude* graduate of Temple University Law School, where he was senior staff for the *Temple Law Review* and recipient of awards for trial advocacy. Prior to joining the firm in July of 2000, Mr. Kohn defended products liability, toxic and mass tort cases on behalf of insureds and self-insureds at LaBrum & Doak (1992-1994) and prosecuted toxic tort, civil rights, class, and MDL actions at Monheit, Monheit, Silverman & Fodera (1994-2000), where he specialized in lead-based paint-related litigation. He is a member of the bars of the Supreme Court of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, and the United States Court of Appeals for the Third Circuit, as well as of the Association of Trial Lawyers of America and Trial Lawyers for Public Justice. Mr. Kohn is an member of the legal advisory board for Quackwatch, an affiliate of the National Council for Reliable Health Information

### Lawrence J. Lederer

Lawrence J. Lederer concentrates in complex commercial litigation. He represents plaintiffs and defendants in class and individual actions, particularly in the securities, bankruptcy and contract areas.

In securities litigation, Mr. Lederer participated in several class and individual actions resulting in multi-million dollar recoveries for plaintiff investors, including the celebrated Drexel/Milken/Boesky complex of cases. *See, e.g., In re Michael R. Milken and Associates Securities Litigation*, MDL Dkt. No. 924, Master File No. M21-62 (MP), 1993 U.S. Dist. LEXIS 14242, 1993 WL 413673 (S.D.N.Y. Oct. 7, 1993) (approving approximately $1.3 billion overall settlement with Michael R. Milken and related persons and entities), *aff'd*, 995 F.2d 1138 (2d Cir. 1993); *Presidential Life Insurance Co. v. Milken, et al.*, 946 F. Supp. 267 (S.D.N.Y. 1996) ($50 million settlement in novel "global" class action of all previously unasserted claims against some 500 defendants; *In re Ivan F. Boesky Securities Litigation*, 948 F.2d 1358 (2d Cir. 1991) (affirming district court approval of "first tier" settlements totaling approximately $29 million against Ivan F. Boesky and others; related "second tier" class, derivative and other settlements subsequently approved totaling in excess of $200 million).

More recently, Mr. Lederer was lead counsel for a group of private shareholders who sold their companies to a large publicly-held corporation in exchange for $103.5 million in stock. *Kelly v.*

*McKesson HBOC, Inc.*, C.A. No. 99C-09-265 WCC, 2002 Del. Super. LEXIS 39 (Del. Super. Jan 17, 2002). Following extensive discovery, that case was settled on the eve of trial yielding a significant cash recovery for the plaintiff shareholders. Mr. Lederer also has experience representing large public and private institutional and other investors in "opt out" securities cases. For example, he was one of the primary attorneys for four Commonwealth of Pennsylvania public funds which, in June 2006, obtained a $23 million recovery in litigation arising out of the AOL-Time Warner merger. *See Commonwealth of Pennsylvania Public School Employees' Retirement System, et al. v. Time Warner Inc., et al.*, Case No. 002103, July Term, 2003 (Pa. Common Pleas Ct.-Phila. Cty.). He also was one of the primary attorneys for the plaintiffs in the securities litigation captioned *Miller, et al. v. Waste Management Inc., et al.*, C.A. No. 00C-06-257 RRC (Del. Super.). Mr. Lederer has also represented investors in cases arising under the federal securities laws which have resulted in important judicial decisions regarding jurisdiction and procedure. *See, e.g., Ginsburg v. Faragalli*, 776 F. Supp. 806 (S.D.N.Y. 1991) (holding that a federal court's jurisdiction over a defendant encompasses the boundaries of the United States under the nationwide service of process provisions of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa).

Mr. Lederer also has significant experience defending securities cases. For example, he is one of the Berger firm's principal attorneys defending a public company against securities fraud class action litigation. *See In re DRDGold Ltd. Securities Litigation*, 05 Civ. 5542 (VM), 2007 U.S. Dist. LEXIS 7180 (S.D.N.Y. Jan. 31, 2007) (dismissing securities class action lawsuit). He also assisted in representing an individual charged with "insider trading" through a criminal jury trial in federal court, and in parallel civil proceedings brought by the SEC. *United States v. Pileggi*, No. 97-CR-612-2, 1998 U.S. Dist. LEXIS 8068 (E.D. Pa. June 3, 1998), *aff'd*, No. 98-1811, 1999 U.S. App. LEXIS 18592 (3d Cir. July 22, 1999).

In bankruptcy litigation, Mr. Lederer helped obtain hundreds of millions of dollars for investors in the complex Chapter 11 proceedings involving the former investment banking and brokerage firm Drexel Burnham Lambert, including through appeals before the United States Court of Appeals for the Second Circuit and the United States Supreme Court. *See, e.g., In re The Drexel Burnham Lambert Group, Inc.*, 130 B.R. 910 (Bankr. & S.D.N.Y. Aug. 20, 1991), *aff'd*, 960 F.2d 285 (2d Cir. 1992), *cert. denied*, 506 U.S. 1088 (1993). Mr. Lederer also served as co-lead counsel in securities class action litigation arising out of the bankruptcy of a physician practice management firm, BMJ Medical Management. *See Sapir, et al. v. Delphi Ventures, et al.*, 99-8086-Civ.-Jordan (S.D. Fla.). Following extensive bankruptcy and related proceedings, that litigation was settled for $3.8 million, with proceeds distributed to investors in the summer of 2002.

51

Mr. Lederer graduated from Georgetown University Law Center (LL.M. 1988); Western New England College School of Law (J.D. 1987), where he was a member of *Western New England Law Review*; and the University of Pittsburgh, where he was managing editor of *The Pitt News*, and co-captain (1983) and captain (1984) of the men's varsity tennis team (B.A. 1984). Mr. Lederer is admitted to practice law in Pennsylvania, the District of Columbia, and several federal courts. Mr. Lederer was selected by *Philadelphia Magazine* one of the City's "Super Lawyers".

### Jeanne A. Markey

Jeanne A. Markey is a graduate of Colgate University (B.A. *cum laude* 1979) and the Cornell Law School (J.D. 1983), where she was on the Moot Court Board. She was admitted to the Pennsylvania bar in 1983. Since joining the Berger firm, she has been actively involved in various complex class action litigations, focusing primarily on securities class action litigation.

### Peter Nordberg

Peter Nordberg is a graduate of Harvard College (A.B. 1980) and the University of Pennsylvania Law School (J.D. 1985), where he received the Fred G. Leebron Award in Constitutional Law and the John H. Maurer Memorial Prize in Criminal Procedure, and where he served as an Executive Editor of the *University of Pennsylvania Law Review*, authoring "The Petition Clause and Unauthorized Practice Rules," 132 U. Pa. L. Rev. 1515 (1984).

Since joining Berger & Montague in 1990, Mr. Nordberg has practiced in state and federal courts across the nation, in diverse areas of complex civil litigation including mass tort and environmental litigation, qui tam actions, antitrust matters, securities cases, and ERISA litigation. He recently served as co-counsel for plaintiffs in the four-month trial of *Cook v. Rockwell Int'l Corp.*, where claims for trespass and nuisance against two former operators of the Rocky Flats Nuclear Weapons Plant were tried to verdict on behalf of a class of Colorado property owners, resulting in a half-billion dollar jury award. In 2005, he served as a member of the plaintiffs' trial team in Washington State for the inaugural bellwether trial in the *Hanford Nuclear Reservation Litigation*, helping to win what is believed to be the first verdict in history in favor of personal injury plaintiffs suffering from cancer caused by offsite exposures to radiation released by operators of a nuclear weapons facility. In 2003, he was appellate counsel in *Ileto v. Glock*, in which the Ninth Circuit approved a public nuisance action against gun manufacturers for injuries inflicted by the unlawful use of their products.

52

Mr. Nordberg is also founder and author of the web site "Daubert on the Web," a nationally recognized resource on the law of expert evidence. He is admitted to practice in Pennsylvania, and he is also a member of the bar of the United States Supreme Court and numerous U.S. Courts of Appeals.

### Phyllis Maza Parker

Phyllis Maza Parker is a graduate of Yeshiva University (B.A. *cum laude* 1969), Columbia University (M.A. French Literature 1971), Boston University – Brussels, Belgium (M.S. in Management), and Temple University School of Law (J.D. *cum laude* 1995), where she was a member of the *Temple Law Review* and published a Note on the subject of the Federal Sentencing Guidelines. After her first year of law school, Ms. Parker interned with the Honorable Dolores K. Sloviter of the United States Court of Appeals for the Third Circuit. Following graduation from law school, Ms. Parker served as law clerk to the Honorable Murray C. Goldman of the Court of Common Pleas in Philadelphia, Pennsylvania. Since joining the Berger firm in September 1996, Ms. Parker has concentrated in complex securities class action litigation, representing both individual and institutional investors. Among other cases, she has been on the litigation team in *In re Xcel Energy, Inc. Securities Litigation* ($80 million settlement, listed among the 100 largest securities class action settlements in the United States since the enactment of the 1933-1934 securities acts); *In re Reliance Group Holdings, Inc. Securities Litigation* ($15 million settlement); *In re The Loewen Group, Inc. Securities Litigation* ($6 million settlement); and *In re Veeco Instruments Inc. Securities Litigation* ($5.5 million settlement). She is admitted to practice in Pennsylvania and New Jersey as well as the Eastern District of Pennsylvania.

### Barbara A. Podell

Barbara A. Podell, who joined the Berger firm as a shareholder in the Securities Group in early 2002, holds a Bachelor's degree from the University of Pennsylvania (B.A. 1972 *cum laude* with distinction in Art History). She attended the Institute of Fine Arts of New York University, and from 1973 to 1975, and was a full-time faculty member at Temple University, Philadelphia, Pennsylvania, in the Department of Art History. In 1978, Ms. Podell received a Juris Doctor degree (*magna cum laude*) from the Temple University School of Law, where she was one of the top nine students in the graduating class and was Editor-in-Chief of the Temple Law Quarterly (Volume 51). Prior to joining

the Berger firm, Ms. Podell was a member of the firm of Savett Frutkin Podell & Ryan, P.C., and
before that, a shareholder at Kohn, Savett, Klein & Graf, both in Philadelphia.

She is admitted to practice before the Supreme Court of Pennsylvania, the United States Court of
Appeals for the Third Circuit, and the United States District Court for the Eastern District of
Pennsylvania. She is a member of the American, Pennsylvania, and Philadelphia Bar Associations
and has achieved an "AV" rating (the highest rating) in Martindale-Hubbell.

### Douglas M. Risen

Douglas Risen is a shareholder of the firm and has been a member of Berger & Montague's
Securities Litigation Department since 1998, concentrating his practice in complex class
litigation with an emphasis on the private civil prosecution of securities fraud. Mr. Risen's
significant successes in this area include: *In re Ikon Office Solutions* ($111 million settlement)
and *In re Safety-Kleen Corp.* ($44.5 million settlement). Mr. Risen also handles class cases for
consumer fraud, predatory lending, and disability discrimination, among other areas.

Mr. Risen is a graduate of the Pennsylvania State University (B.A. *magna cum laude* 1994) and
the University of Pennsylvania Law School (J.D. 1997). He is admitted to practice in the
Commonwealth of Pennsylvania.

### David F. Sorensen

Mr. Sorensen graduated from Duke University (B.A. *magna cum laude* 1983) and from Yale
University (J.D. 1989). He was Law Clerk to the Hon. Norma L. Shapiro (E.D. Pa.), in 1990-1991.
He was admitted to the Pennsylvania bar in 1989, and is admitted to practice in various federal
courts, including the Eastern District of Pennsylvania, and the United States Courts of Appeals for
the Ninth, Tenth, and Eleventh Circuits.

Mr. Sorensen practices in the areas of complex mass tort and antitrust class action litigation. He
helped try a class action property damage case, *Cook v. Rockwell Corp.,* that resulted in a jury
verdict of $554 million on February 14, 2006, after a four-month trial, on behalf of thousands of
property owners near the former Rocky Flats nuclear weapons plant located outside Denver,

Colorado. The jury verdict is the largest in Colorado history, and is the first time a jury has awarded damages to property owners living near one of the nation's nuclear weapons sites. The verdict included an award of $200 million in punitive damages against the former Rocky Flats contractors, Dow Chemical Company and Rockwell International Corporation. The case was filed in 1990, and has resulted in 10 published court opinions. The suit alleged that defendants negligently and recklessly caused plutonium to be released off-site from the plant onto class properties, damaging property values and putting residents at increased risk of developing cancer. The jury found for plaintiffs on both of their claims, for trespass and nuisance.

Mr. Sorensen also played a major role in the firm's representation of the State of Connecticut in *State of Connecticut v. Philip Morris, Inc., et al.*, in which Connecticut recovered approximately $3.6 billion (excluding interest) from certain manufacturers of tobacco products.

Mr. Sorensen also has been involved in a number of antitrust cases representing direct purchasers of prescription drugs. These cases have alleged that pharmaceutical manufacturers have conspired to keep less expensive generic drugs off of the market, in violation of federal antitrust laws. Several of these cases have resulted in substantial cash settlements, including *In re Terazosin Hydrochloride Antitrust Litigation*, MDL 1317 (S.D.Fla.) ($75 million); and *In re Remeron Antitrust Litig.* ($75 million).

Mr. Sorensen, along with partner Eric L. Cramer, presented at a symposium in November 2004, focusing on antitrust issues in the pharmaceutical industry, at the University of San Francisco School of Law. Several articles from the symposium were published in the school's law review, including one co-authored by Mr. Sorensen and one of the school's law professors, Joshua P. Davis. The article is entitled, *Chimerical Class Conflicts in Federal Antitrust Litigation: The Fox Guarding the Chicken House in Valley Drug*, 39 U.S.F. Law Review 141 (Fall 2004).

Mr. Sorensen also has presented a seminar, with his partner Eric L. Cramer, on the law of class actions, sponsored by the National Business Institute in Philadelphia. Mr. Sorensen was named as one Pennsylvania's "SuperLawyers" in 2005 in the Philadelphia Magazine; and has received the highest peer-review rating, "AV," in Martindale-Hubbell.

## Arthur Stock

Arthur Stock's practice is concentrated in securities litigation. Mr. Stock has litigated numerous significant cases vindicating the rights of investors, including: *Safety-Kleen Corp.* ($45 million stockholders settlement); *Synergen, Inc.* ($28 million settlement); *UICI* ($16 million settlement); *Livent,* Inc. ($6.45 million settlements); *Worldport, Inc.* ($5.1 million settlement); *Datastream* ($5 million cash and stock settlement); *Blasband v. Rales (*favorable precedent for investors established in Delaware Supreme Court).

Mr. Stock is a graduate of Yale University (B.A. *with distinction in economics* 1984) and the Duke University School of Law (J.D. *with high honors* 1990), where he served as Articles Editor of the *Duke Law Journal.* From 1990 to 1991, Mr. Stock served as a law clerk to the Honorable Jackson L. Kiser, United States District Court for the Western District of Virginia. He joined the Berger Firm in 1991. Mr. Stock is admitted to practice law in the Commonwealth of Pennsylvania.

Mr. Stock is the co-author with Sherrie R. Savett of *What to Plead and How to Plead the Defendant's State of Mind in a Federal Securities Class Action: The Plaintiff's Perspective,* Practicing Law Institute, 30th Annual Institute of Securities Regulation, Vol. 2, p. 807 (1998), and author of *Justice Scalia's Use of Sources in Statutory and Constitutional Interpretation: How Congress Always Loses,* Duke L.J. 160 (1990). He has also written political commentary for *Slate.*com.

Mr. Stock also serves on the Board of Trustees of Adoptions from the Heart, a non-profit adoption agency.

## Robin Switzenbaum

Robin Blumenfeld Switzenbaum is a graduate of Barnard College (B.A. *cum laude* 1976) and the University of Pennsylvania Law School (J.D. 1985). Before law school, Ms. Switzenbaum was engaged in the development of commercial and residential real estate in Pennsylvania and New Jersey. During that time, Ms. Switzenbaum served on the board of directors of the Home Owners Warranty Council for Southeastern Pennsylvania and the Home Builders Association for Montgomery and Bucks Counties. Before becoming Of Counsel to the Berger firm in October, 1989, Ms. Switzenbaum was an associate with the Philadelphia firm of Saul, Ewing, Remick & Saul specializing in real estate, bankruptcy and zoning matters. Since joining the Berger firm,

Ms. Switzenbaum has concentrated in complex civil and securities litigation. Ms. Switzenbaum was part of the litigation teams in *In re Rite Aid Securities Litigation,* MDL 1360 (E.D. Pa.) ($334 million settlement), *In re Sunbeam Securities Litigation*, 98-8258-Civ-Middlebrooks (S.D. Fla.) ($142 million settlement), and *In re CMS Energy Securities Litigation*, 02 CV 72004 (E.D.Mich.) ($200 million settlement). With Lawrence Deutsch, Ms. Switzenbaum served as lead counsel in *Ginsburg v. Philadelphia Stock Exchange, Inc., et al.,* C.A. No. 2202-CC (Del. Ch.) representing certain shareholders of the Philadelphia Stock Exchange in the Delaware Court of Chancery (confidential settlement). In another state court action, Ms. Switzenbaum represented a class of holders of a publicly traded common stock who were denied their preemptive rights, *Korman v. InKine Pharmaceutical,* Case No. 04341 (CCP, Phila. County) ($9 million settlement). She has also pursued claims on behalf of liquidating trusts bringing actions against officers, directors and auditors of insolvent companies. Ms. Switzenbaum has participated in several securities class actions including *In re Northeast Bancorp,* Case No. N-90-24 (D. Conn) ($4.9 million settlement), *In re Chase Manhattan Bank,* Case No. 90 Civ. 6092 (S.D.N.Y. 1992) ($17.5 million settlement), *In re Midlantic,* Case No. 90-1275 (D.N.J.) ($9 million settlement), *In re ShopKo Stores, Inc. Securities Litigation,* Case No. 01-C-1034 (E.D. Wis.) ($4.9 million settlement), and *In re Medi-Hut Co., Inc. Securities Litigation,* C.A. No. 02-881 (D.N.J.) ($4.9 million recovery against accountants, plus recovery from company). Ms. Switzenbaum is a member of the bar in Pennsylvania, New Jersey, Florida, and California and an arbitrator with the New York Stock Exchange. Ms. Switzenbaum also serves as a volunteer guide at the Philadelphia Museum of Art and as a member of the board of Community Legal Services, Inc.

### Susan Schneider Thomas

Susan Schneider Thomas is a graduate of Brandeis University (B.A. *magna cum laude* 1977) and Temple University School of Law (J.D. *cum laude* 1980), where she was a staff member and Associate Articles Editor of the *Temple Law Quarterly* and a judicial intern to the Hon. Edward R. Becker, then on the United States District Court for the Eastern District of Pennsylvania. She was admitted to the Pennsylvania Bar in 1980. In 1980-81, she was a law clerk to the Hon. Dolores K. Sloviter of the United States Court of Appeals for the Third Circuit. Subsequently she was an associate at Schnader, Harrison, Segal & Lewis, Philadelphia, and Greenfield & Chimicles, in Haverford, Pennsylvania, where she was actively involved in the litigation of complex securities fraud actions. From 1985 to 1989 as an associate at Berger & Montague, she concentrated her practice in complex securities and derivative actions. Upon leaving the Berger firm, Ms. Thomas was

a partner in the law firm of Zlotnick & Thomas from 1989 through 1995, where she had primary responsibility for the litigation of several major class actions including *Geist v. New Jersey Turnpike Authority*, C.A. No. 92-2377 (D.N.J.), a bond redemption case that settled for $2.25 million and *Burstein v. Applied Extrusion Technologies*, C.A. No. 92-12166-PBS (D. Mass.), which settled for $3.4 million. Ms. Thomas returned to the Berger firm in 1996, where she has had major responsibilities in many securities and consumer fraud class actions, including *In re CryoLife Securities Litigation*, C.A. No. 1:02-CV-1868 BBM (N.D.Ga.), which settled in 2005 for $23.25 million and *In re First Alliance Mortgage Co.*, Civ. No. SACV 00-964 (C.D.Cal.), a deceptive mortgage lending action which settled for over $80 million. More recently, Ms. Thomas has concentrated her practice in the area of health fraud *qui tam* litigation.

### Martin I. Twersky

Mr. Twersky, a graduate of Yeshiva University (B.A. 1969, M.S. 1973), has practiced Antitrust Law and Complex Litigation at the firm for over 20 years, during which time he has successfully represented numerous plaintiffs and defendants in both individual and class actions pending in state and federal courts. His practice has involved litigation in the oil and gas, banking, airline, waste hauling, agricultural chemicals and other regulated industries. He is a graduate of the University of Pennsylvania Law School (J.D. 1980). Among other cases, he has played a leading role in the following class action cases: *In re: Graphite Antitrust Litigation* (E.D. Pa.)(settlements of more than $70 million dollars); *In re: Catfish Antitrust Litigation* (N.D. Miss.) (as a member of the trial team he helped obtained settlements of more than $27 million dollars); *In re: Revco Securities Litigation* (N.D. Ohio)("Junk Bond" class action where settlements of $36 million were reached), and *Bogosian v. Gulf Oil* (E.D. Pa.) (landmark litigation with settlements and injunctive relief on behalf of a nationwide class of gasoline dealers.) Mr. Twersky has also played a key role in various nonclass action cases, such as *Kutner Buick v. America Motors* (3rd Cir. 1989)(breach of contract) and *Florham Park v. Chevron* (D.N.J. 1988)(Petroleum Marketing Act case).

## OUR ASSOCIATES:

### David Anziska

Mr. Anziska joined Berger & Montague's antitrust department in April 2004, after working as an associate at the law firm of Sidley Austin Brown & Wood. He received his J.D. from the University of Michigan School of Law, *cum laude*, in 2003, and his B.A. from Yeshiva University, *summa cum laude*, in 1999.

### Steven L. Bloch

Steven L. Bloch graduated from SUNY Albany (B.A. 1989) and Benjamin N. Cardozo School of Law (J.D. 1992). He is admitted to practice in Pennsylvania, New York and Connecticut, as well as various federal courts. Mr. Bloch has received the highest peer-review rating, "AV," in Martindale-Hubbell and was recently selected to the 2005 Pennsylvania Super Lawyers – Rising Stars Division, for his work in the business litigation arena.

Since joining Berger & Montague in 2005, Mr. Bloch has concentrated his class action practice on insurance and consumer fraud matters, as well as antitrust and ERISA. Mr. Bloch's insurance practice involves representation of policyholders against life, health, property and casualty, automobile and disability insurers concerning unfair and deceptive sales, marketing and trade practices, coverage disputes, claims adjustment practices, suitability, churning and bad faith. At present, Mr. Bloch, together with his colleagues, is:

- Prosecuting to final approval the settlement of a class action on behalf of policyholders in multiple states against AFLAC, Inc. concerning the sale and adjustment of supplemental disability income policies.
- Prosecuting a national class action against The Hartford Financial Services Group and its affiliates concerning the sale of structured settlement annuities to third-party claimants.
- Prosecuting a national class action against Allstate Ins. Co. predicated on fraudulent adjustment practices under homeowners insurance policies.
- Prosecuting a national class action against United American Ins. Co. concerning the sale of limited benefit health insurance and related products.
- Prosecuting a class action on behalf of California policyholders against

59

UnumProvident concerning the sale and adjustment of own-occupation disability policies.

In addition, Mr. Bloch has wide-ranging litigation experience, and has handled matters involving complex commercial and corporate disputes, business torts, real estate, securities, banking and credit card transactions and relationships, labor and employment and civil RICO. Some of Mr. Bloch's notable representations, for which he has had primary or significant responsibility, include:

• Successfully prosecuting to a seven-figure settlement an action involving the sale of a health-care industry software program.

• Successfully prosecuting to a seven-figure verdict and permanent injunction an action involving the sale of a hair care business and proprietary information.

• Successfully defending and settling an action by a major credit card brand against a credit card issuing bank, avoiding enforcement of a long-term contract predicated on price fixing and monopolistic conduct.

• Successfully prosecuting to a seven-figure settlement an action by a credit card issuing bank against an internet service provider and its merchant bank concerning improper credit card transactions.

• Successfully defending and settling an action for preliminary and permanent injunctive relief against an equipment manufacturer alleging misappropriation of proprietary information and unfair competition.

• Securing peremptory judgment (mandamus) on behalf of the Philadelphia City Council against the Mayor of Philadelphia to enforce legislation.

• Successfully defending and defeating a preliminary injunction to enjoin construction of a multi-million dollar parking garage facility based on claims of interference with easement and real property rights.

• Successfully prosecuting multiple actions by the Pennsylvania Insurance Commissioner on behalf of insurers in liquidation.

• Establishing liability for collusion against a clearing bank under UCC Article 8 in connection with improper broker-dealer conduct in a case of first impression in New York.

• Securing dismissal of an action against a broker-dealer by a pension fund for alleged fraud and regulatory violations in connection with a so-called "mini" tender offer.

### Joy P. Clairmont

Joy Clairmont received her B.A. *cum laude* in international affairs from George Washington University in 1995, and her J.D. from George Washington University Law School in 1998, where she served as a managing editor of *The Environmental Lawyer* law journal. After graduating from law school, she clerked for The Honorable Richard J. Hodgson of the Court of Common Pleas of Montgomery County, Pennsylvania. Ms. Clairmont is a member of the Pennsylvania Bar.

Ms. Clairmont joined Berger & Montague, P.C. in 2000 and focuses her practice on securities class actions and False Claims Act (qui tam) litigation. Her *qui tam* litigation work principally involves fraud in the pharmaceutical industry.

Ms. Clairmont was a member of the team in the *Sunbeam Securities Litigation* class action ($142 million settlement). She has also worked extensively representing whistleblowers in *qui tam* lawsuits in state and federal courts throughout the country. A series of False Claims Act cases against drug companies for fraudulent Medicare and Medicaid drug pricing has led to recoveries to date of over $390 million, including a $150 million settlement with GlaxoSmithKline PLC, and a $190 million settlement with Aventis Pharmaceuticals, Inc.

### Neill W. Clark

Neill W. Clark graduated *cum laude* from Appalachian State University in 1994 (B.A.) and from Temple University School of Law in 1998 (J.D.), where he earned seven "distinguished class performance" awards, an oral advocacy award and a "best paper" award. After graduating from law school, he clerked for Judge Stephen E. Levin, who handled pre-trial proceedings in all class actions filed in the Court of Common Pleas, Philadelphia County.

Since joining the firm in 1999, Mr. Clark has been significantly involved in prosecuting antitrust class actions on behalf of direct purchasers of brand name drugs and charging pharmaceutical manufacturers with illegally blocking the market entry of less expensive competitors.

Six of those cases have resulted in substantial settlements totaling over $700 million: *In re Cardizem CD Antitrust Litig.* settled in November 2002 for 110 million; *In re Buspirone Antitrust Litig.* settled in April 2003 for 220 million; *In re Relafen Antitrust Litig.* settled in February 2004 for $175 million; *In re Platinol Antitrust Litig.* settled in November 2004 for $50 million; *In re Terazosin*

*Antitrust Litig.* settled in April 2005 for $75 million; and *In re Remeron Antitrust Litig.* settled in November 2005 for $75 million.

Mr. Clark was selected as a "Rising Star" by Pennsylvania Super Lawyers and listed as one of the Top Young Lawyers in Pennsylvania in the December 2005 edition of Philadelphia Magazine.

An avid runner, Mr. Clark has won the Lawyer's Division of the annual Philadelphia Bar Association race seven consecutive times.

### Candace Enders

Candice Enders is a member of Berger & Montague's antitrust department. She received a B.A. in political science from the University of Delaware in 2000 and earned her J.D. from the University of Pennsylvania in 2003.

While in law school, Ms. Enders served as a senior editor on the Journal of Labor and Employment Law, volunteered as a legal advocate at the Custody and Support Assistance Clinic, and interned at Philadelphia City Council.

### Elizabeth W. Fox

Elizabeth Williams Fox is a graduate of Bryn Mawr College (B.A., *cum laude*, with honors in Anthropology 1963) and the University of Pennsylvania (M.S. in Education 1972; J.D. 1980). Before attending law school, Ms. Fox taught history and social studies at the Baldwin School where she became Head of the History Department. After law school, Ms. Fox joined Ballard, Spahr, Andrews & Ingersoll as an associate where she practiced employment law and general commercial litigation. In 1985, she joined Hoyle, Morris & Kerr where she specialized in toxic torts and insurance coverage litigation, first as an associate and later as a partner. She joined Berger & Montague in July 2001 where she concentrates in securities litigation.

Since joining Berger & Montague, Ms. Fox has worked on numerous class action that have achieved significant benefits on behalf of the Class. These cases include: *In re AMF Bowling Securities Litigation*, (S.D.N.Y.) ($20 million recovery, principally against investment banks, where defendants asserted that class suffered no damages); *Ashworth Securities Litigation*, (S.D. Cal.) ($15.25 million recovery, coupled with substantial corporate therapeutic relief); *Oorbeek v. FPL Group, Inc.* (S.D.

Fla.) *(corporate derivative action brought on behalf of the shareholders of FPL Group, in which plaintiffs recovered a substantial cash amount, and improvements in FPL's corporate governance structure); Eagle International Services, Inc. v. Uni-Marts, LC,* (C.P. Luzerne county, PA) (class action by store owners in which owners recovered significant cash amounts and received numerous favorable changes in their contracts with defendant Uni-Marts).

### Jill I. Freeman

Jill Freeman received a B.A. from the University of Pittsburgh in 1996 and graduated from Widener University School of Law in 2000. Prior to joining Berger & Montague in 2005, Ms. Freeman practiced immigration law. During law school, Ms. Freeman worked for HIAS and Council Migration Services of Philadelphia, the Nationality Service Center, and clerked for the late Honorable Judge Joseph F. Battle in the Delaware County Courthouse in Media, PA.

Ms. Freeman has devoted a substantial amount of time to: *in re New Motor Vehicles Canadian Export Antitrust Litigation; In re LNR Property Corp. Shareholders Litigation;* and *In re JDS Uniphase Securities Litigation.*

Ms. Freeman is involved with the Anti-Defamation League of Eastern Pennsylvania/Delaware Region, and is on the board of HIAS and Council Migration Services of Philadelphia.

Ms. Freeman is admitted to practice law in Pennsylvania and New Jersey.

### Laura L. Gleason

Laura L. Gleason is a 2006 graduate of the University of Pennsylvania Law School, where she worked for the Criminal Law Research Group, served as Senior Editor for the *Journal of Constitutional Law,* and interned with the Pennsylvania Senate Judiciary Committee.

Ms. Gleason holds a 2001 B.A. from Brandeis University, where she majored in history and fine arts and received honors for her thesis in painting.

Since joining Berger & Montague, P.C. in August 2006, Ms. Gleason has worked in the antitrust department. She is admitted to practice in Pennsylvania.

### Shauna Itri

Shauna Itri received a B.A. and an M.A. from Stanford University in 2000 and 2001. She graduated Villanova Law School in 2005 and is currently licensed to practice law in Pennsylvania and New Jersey. While attending law school Shauna was the Editor-in-Chief of the *Villanova Law School Sports & Entertainment Law Journal* and published an article entitled "*Maurice Clarett v. N.F.L.: An Analysis of Clarett's Challenge to the Legality of the NFL's Draft Eligibility Rule Under Antitrust Laws.*"

1.    While attending Stanford University Shauna was a member of the Stanford University Women's Soccer Team and captained the team from 1999-2001.

Since joining the law firm of Berger & Montague, Shauna has practiced primarily in the area of securities class action litigation.

### Michael J. Kane

Michael J. Kane graduated from Rutgers University (B.S. 1991) and Ohio Northern University School of Law, with distinction (1994), where he was a member of the Law Review. Mr. Kane is admitted to practice in Pennsylvania and various Federal Courts.

Mr. Kane joined Berger & Montague's antitrust practice in 2005. Prior to joining Berger & Montague, Mr. Kane was affiliated with Mager, White & Goldstein, LLP where he represented clients in complex commercial litigation involving alleged unlawful business practices including: violations of federal and state antitrust and securities laws, breach of contract and other unfair and deceptive trade practices. Mr. Kane has served in prominent roles in high profile antitrust, securities, and unfair trade practice cases filed in courts around the country. Recently, Mr. Kane served as co-lead counsel in *In re Microsoft Corporation Massachusetts Consumer Protection Litigation* (Mass. Super. Ct., Middlesex Cty.), in which plaintiffs alleged that as a result of Microsoft Corporation's anticompetitive practices, Massachusetts consumers paid more than they should have for Microsoft's operating systems and software. The case was settled for $34 million. Other cases in which Mr. Kane has had a prominent role include:

*In re Currency Conversion Fee Antitrust Litig.* (S.D.N.Y.);

*In re Nasdaq Market Makers Antitrust Litig.* (S.D.N.Y);

*In re Compact Disc Antitrust Litig.* (C.D. Cal.);

*In re WorldCom, Inc. Securities Litig.* (S.D.N.Y);

*In re Lucent Technologies, Inc. Securities Litig.* (D.N.J.);

*City Closets LLC v. Self Storage Assoc., Inc.* (S.D.N.Y.);

*Rolite, Inc. v. Wheelabrator Environmental Sys. Inc.,* (E.D. Pa.);
*Amin v. Warren Hospital* (N.J. Super.).

### Jon J. Lambiras

Jon J. Lambiras, Esq., CPA, CFE is a graduate of Pepperdine University School of Law (J.D. 2003) and Bryant College (B.S. in Accounting, *cum laude* 1996).

While in law school Mr. Lambiras was a Lead Articles Editor for the *Pepperdine Law Review.* He has published articles including:

- *White-Collar Crime: Why the Sentencing Disparity Despite Uniform Guidelines?, 30 PEPP. L. REV. 459 (2003) (named Student Article of the Year by the Pepperdine Law Review); and*

- *Inside Job: A Guide to Insider Trading, 17 THE WHITE PAPER 23 (July/Aug. 2003).*

Mr. Lambiras is also a Certified Public Accountant and Certified Fraud Examiner. Prior to law school he practiced accounting for four years as an auditor of public and private corporations.

In 2006-08, Mr. Lambiras presented several continuing legal education (CLE) seminars regarding securities class actions to the Philadelphia Chapter of the American Association of Attorney-Certified Public Accountants.

Since joining Berger & Montague in 2003, Mr. Lambiras has practiced primarily in the areas of securities fraud and data breach/identity theft class action litigation.

## David A. Langer

David A. Langer is a graduate of Haverford College (B.A. 1991) and Vermont Law School (J.D. *cum laude* 1999). While in law school, Mr. Langer was a member of the *Vermont Law Review* and also served as a Managing Editor. He was admitted to the Pennsylvania Bar in 1999. Mr. Langer became associated with Berger & Montague in September 1999 and practices in the antitrust complex litigation area.

## Eric Lechtzin

Eric Lechtzin joined the firm in 2008 and concentrates his practice in the areas of securities fraud class actions, shareholder derivative suits, and mergers and acquisitions cases. Prior to joining Berger & Montague, Mr. Lechtzin worked with Grant & Eisenhofer P.A., in Wilmington, Delaware, and Schiffrin Barroway Topaz & Kessler, LLP, in Radnor, Pennsylvania, where his practice focused on securities fraud class actions and corporate governance litigation.

Mr. Lechtzin has helped obtain multi-million dollar settlements in a number of federal securities cases, including the following: *In re Global Crossing Access Charge Litigation*, No. 04-MD-1630 (S.D.N.Y) ($15 million settlement); *Taft v. Ackermans*, (KPNQwest Securities Litigation), No. 02-CV-07951 (S.D.N.Y.) ($15 million settlement); *In re RenaissanceRe Holdings Ltd. Securities Litigation*, No. 1:05-CV-06764 (S.D.N.Y.) ($13.5 million settlement); *In re Van der Moolen Holding N.V. Securities Litigation*, No. 1:03-CV-8284 (S.D.N.Y.) ($8 million settlement); *Scott Tanne v. Autobytel, Inc., et al*, No. CV 04-8987 (C.D. Cal.) ($6.75 million settlement); *In re Biolase Technology, Inc. Securities Litigation*, No. 8:04-CV-00947 (C.D. Cal.) ($2.95 million settlement). Mr. Lechtzin has also helped obtain significant corporate governance reforms in shareholder derivative actions.

Mr. Lechtzin received his B.A. in Political Science and Economics, *magna cum laude*, from Temple University, where he was elected to Phi Beta Kappa, in 1988. Mr. Lechtzin received his J.D. from Temple University James E. Beasley School of Law, in 1991. Mr. Lechtzin is licensed to practice law in California, New Jersey, and Pennsylvania, and has been admitted to practice before the United States Court of Appeals for the Third and Fourth Circuits, and the United States District Courts for the Central, Northern and Southern Districts of California, Eastern District of Pennsylvania, and District of New Jersey.

### Sheryl Saltzberg Levy

Sheryl S. Levy has been an associate at the firm since March, 1988. She received a Bachelor of Arts degree (*cum laude*) from the University of Pennsylvania in 1984, and a Juris Doctorate degree at the National Law Center of George Washington University in 1987 (*cum laude*). While attending law school, Ms. Levy served as an editor of the *George Washington Journal of International Law and Economics*. Prior to joining Berger & Montague, Ms. Levy was associated with the Philadelphia firm of Pechner, Dorfman, Wolffe, Rounick & Cabot. Ms. Levy has worked on a variety of complex litigation matters, primarily in the areas of commercial and mass tort litigation. She is admitted to practice law in Pennsylvania.

### Neil F. Mara

Neil F. Mara is a graduate of the College of the Holy Cross (B.A. 1987) and the University of Connecticut (J.D. 1991) where he was a member of the executive board of the Moot Court Honor Society. Mr. Mara was an Assistant District Attorney in Philadelphia, Pennsylvania, from 1991-1997. He was also a Special Assistant United States Attorney for the Eastern District of Pennsylvania, 1996-1997, where he prosecuted large narcotics organizations. Since joining the Berger firm, he has concentrated on environmental litigation and securities litigation. Mr. Mara is admitted to practice law in Connecticut, Pennsylvania, and various federal courts.

### Matthew P. McCahill

Matthew P. McCahill is a 2000 graduate of Fordham Law School, where he received a B.A., *summa cum laude*, in history and was elected to Phi Beta Kappa. Mr. McCahill is a 2003 graduate of Fordham Law School, where he was a member of the *Fordham Urban Law Journal*. Before joining Berger & Montague in January 2006, Mr. McCahill was an associate at Kaplan Fox & Kilsheimer LLP in New York, practicing primarily in antitrust litigation. Mr. McCahill continues to focus on antitrust litigation at Berger & Montague. Mr. McCahill is admitted to practice in the state courts of New York and Pennsylvania, as well as in the U.S. District Courts for the Southern and Eastern Districts of New York. He is fluent in French and proficient in Spanish.

### Ellen T. Noteware

Ms. Noteware earned her undergraduate degree from Cornell University (B.S. 1989) and graduated first in her class from the University of Wisconsin Law School (J.D. 1993) where she served as Associate Editor of the Wisconsin Law Review.

Following graduation, Ms. Noteware clerked for the Honorable J. Calvitt Clarke, Jr. in the United States District Court for the Eastern District of Virginia. Prior to joining Berger & Montague, Ms. Noteware handled complex commercial litigation, products liability, employment law, ERISA and trade secret disputes as an associate at Arnold & Porter in Washington, D.C. and at Morgan, Lewis & Bockius in Philadelphia. Ms. Noteware continues to handle complex litigation and class action matters as a member of Berger & Montague's Antitrust Department.

### Jeff Osterwise

Jeff Osterwise is a 1999 graduate of Duke University where he received a B.A. in Political Science and completed a certificate program in Markets & Management. Prior to attending law school, Mr. Osterwise formed a corporation for the purpose of exploring entrepreneurial ventures.

Mr. Osterwise is a 2005 graduate of the Duke University School of Law and is admitted to practice law in Pennsylvania. Since joining Berger & Montague, P.C. in August 2005, Mr. Osterwise has practiced primarily in the area of securities class action litigation.

### Russell D. Paul

Russell D. Paul joined Berger & Montague, P.C. in 2006, and concentrates on securities class actions, complex securities litigation matters and derivative suits. Prior to joining Berger & Montague, Mr. Paul was with the firm of Grant & Eisenhofer P.A. in Wilmington, Delaware. Mr. Paul began his legal career in the New York office of Skadden, Arps, Slate, Meagher & Flom, L.L.P.

Mr. Paul has litigated securities class actions against Tyco International Ltd., Baxter Healthcare Corp., ALSTOM S.A., Able Laboratories, Inc., Refco Inc., and Federal National Mortgage Association (Fannie Mae). He has also litigated derivative actions in various state courts around the country, including in the Delaware Court of Chancery. He has briefed and argued federal appeals,

including arguing before Judges Posner and Easterbrook of the Seventh Circuit. In addition to securities litigation, he has broad corporate law experience, including mergers and acquisitions, venture capital financing, proxy contests and general corporate matters.

Mr. Paul graduated from the Columbia University School of Law in 1989, where he was a Harlen Fiske Stone Scholar and a member of the Moot Court Board. In 1986, Mr. Paul received a dual degree from the University of Pennsylvania, a B.S. in Economics with a concentration in finance, *magna cum laude* from the Wharton School, and a B.A. in American History, *magna cum laude* from the College of Arts and Sciences.

Mr. Paul is admitted to the bar in the states of Delaware, New Jersey, Pennsylvania, and New York.

### Jacob M. Polakoff

Jacob M. Polakoff is a 2006 graduate of the joint JD/MBA program at the University of Miami, where he was the recipient of the Dean's Certificate of Achievement in Legal Research & Writing, was awarded a Graduate Assistantship, and was honored with the Award for Academic Excellence in Graduate Studies.

Mr. Polakoff holds a 2002 B.S.B.A. from Boston University's School of Management, where he concentrated in finance.

Since joining Berger & Montague, P.C. in August 2006, Mr. Polakoff has worked in the class action securities litigation area. He is admitted to practice law in Pennsylvania and New Jersey.

### Shoshana Savett

Shoshana Savett received a B.A. from the University of Pennsylvania in 1999. She graduated from Temple Law School in 2003 and is admitted to practice law in Pennsylvania and New Jersey. Ms. Savett is an associate in the securities department.

### Joshua C. Schumacher

Joshua C. Schumacher joined Berger & Montague's Securities Litigation Department in 2005, and concentrates his practice on complex securities class action litigation on behalf of both public and private institutional investors, as well as high-net-worth individuals.

69

Since joining Berger & Montague, Mr. Schumacher has assisted in the prosecution and trial preparation of a number of noteworthy securities actions including In re Cigna Corp. Securities Lit., No. 2:02CV8088 (E.D.Pa.) ($93M settlement) and In re Sepreaor Inc. Securities Lit., No. 02-12235-MEL (D.Ma.) ($52.5M settlement). Additionally, Mr. Schumacher has assisted in the prosecution of consumer fraud and commercial litigation class actions including most recently Ginsburg v. Philadelphia Stock Exchange, Inc. et at., No. 2202-CC (Del. Ch.) ($67-80M settlement).

Prior to joining Berger & Montague, Mr. Schumacher worked for Davis & Young, L.P.A. in Cleveland, Ohio where he concentrated on general corporate and commercial liability defense, as well as the defense of highly trained professionals such as physicians and attorneys. While at Davis & Young, Mr. Schumacher assisted in the litigation which resulted in Westfield v. Galatis, 100 Ohio St.3d 216, 797 N.E.2d 1256 (2003), a landmark decision. Prior to attending law school Mr. Schumacher served as an administrator for The Society for Imaging Science & Technology, a non-profit organization in Washington, DC.

Mr. Schumacher was awarded a B.A. from George Mason University. While attending George Mason University, Mr. Schumacher participated in the Accuracy Project, a comprehensive survey of capital punishment in America, the results of which was published as Dead Wrong.' An Examination of Capital Prosecutions and Recommendations for Change (2002) of which Mr. Schumacher was a co-author. Mr. Schumacher was awarded a J.D. cum laude from Case Western Reserve University where he received High Honors in the study of Litigation, and was awarded the prestigious Paul 3. Hergenroeder Award for outstanding success and scholarship in the study of Trial Advocacy.

Mr. Schumacher is member of the bars of the Supreme Court of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania.

### Daniel Simons

Mr. Simons is a member of Berger & Montague's Antitrust Department. He received a Bachelor of Arts in Political Science, magna cum laude, from Yeshiva University in 1997. In addition to winning the Political Science departmental award two years running, Mr. Simons also garnered three awards for scholastics and student leadership upon graduation.

He earned his J.D. with honors, at Temple Law School in May, 2000, where he headed three student groups, served on Temple Law Review, and interned in the Health Care Fraud Unit of the United

States Attorney's Office. Following graduation, he clerked for the Honorable Berle M. Schiller of the Eastern District of Pennsylvania. He has also served as a volunteer in the Philadelphia Reads Program.

Mr. Simons is admitted to practice in Pennsylvania and New Jersey, as well as in the United States District Courts for the Eastern District of Pennsylvania and for the District of New Jersey. He is a member of the American Bar Association and it Antitrust Section.

### Keith J. Verrier

Keith J. Verrier is an associate in Berger & Montague's antitrust department, having joined the firm in 2005. Mr. Verrier graduated, magna cum laude, from Temple University School of Law (J.D. 2000) and is a graduate of the University of Rhode Island (B.S. 1992). While in law school, Mr. Verrier was a member of the Law Review. After law school, Mr. Verrier served as a judicial clerk for the Honorable Herbert J. Hutton in the United States District Court for the Eastern District of Pennsylvania.

Prior to joining Berger & Montague, Mr. Verrier gained substantial experience in litigating complex commercial cases including several significant antitrust matters. Mr. Verrier is admitted to practice in the state and federal courts in both Pennsylvania and New Jersey.

### Lane L. Vines

Lane L. Vines is a graduate of the University of Wisconsin-Madison (B.B.A.-Accounting, Graduated with Distinction, 1988) and Villanova University School of Law (J.D. 1997). During law school, Mr. Vines was a member of the *Villanova Law Review* and served as a Managing Editor of Outside Works. Prior to joining the Berger firm, Mr. Vines was a law clerk for the Honorable James R. Melinson, Chief U.S. Magistrate Judge for the Eastern District of Pennsylvania. He is admitted to practice in Pennsylvania and New Jersey, as well as several federal courts including the Supreme Court of the United States. He is a member of the Villanova Law J. Williard O'Brien American Inn of Court. Mr. Vines joined the Berger firm in 1999 and concentrates his practice in the area of securities and complex commercial litigation.

**OF COUNSEL**:

### Carey R. D'Avino

Mr. D'Avino is of counsel to Berger & Montague, P.C. in Philadelphia. He has practiced in the field of international law for more than 20 years and his practice is currently concentrated in international human rights class action litigation. He received a B.A., with honors, from Colgate University and his J.D., with honors, from Emory University Law School, where he served as an Editor, Emory Law Journal. He is the inaugural John Henry Hobart Fellow in Ethics and Social Justice at Hobart and William Smith Colleges and he is a member of the Board of Directors of the American Anti-Slavery Group, a Boston based human rights foundation dedicated to the eradication of slavery and forced labor around the world.

Mr. D'Avino is a member of the Bar in New York State and the United States Virgin Islands. He is admitted to practice law in the United States Supreme Court, United States District Court for the Eastern District of New York, the United States District Court for the Southern District of New York, the Virgin Islands District Court, the United States Court of Appeals for the Third Circuit, and the United States Court of Appeals for the Second Circuit, and the United States Court of Appeal for the District of Columbia.

He served as class counsel in each of the following Holocaust related class actions: *In re Holocaust Victims Assets Litigation*, No. 96 CV 4849; *Helene Pollack, et al., v. Siemens A.G. et. al.*, No. 98 CV 5489; *Marta Cornell, et. al. v. Assicurazioni Generali S.p.a., et. al.*, No. 97 CV 2262; *Watman et. al. v. Deutsche Bank, Dresdner Bank, Creditanstalt, et al.*, No. 98 CV 9186; *Burger-Fisher, et. al. v Degussa*, No. 98 CV 3958; *Jack Bressler et. al. v. Phillip Holzmann AG, et. al.*, No. 98 CV 6335; *Anna Gutwillig, et. al. v. Steyer-Daimler-Pusch A.G.*, 98 CV 6336 and *Kluge, et al. v. Raiffeisen Zentral, et, al.*, 00 CV 2851. He is an individual signatory of the German and Austrian Holocaust settlement agreements including the Joint Statement establishing the terms of the German Foundation "Remembrance, Responsibility and Future" executed on July 17, 2000, the Joint Statement establishing the terms of the Austrian Fund "Reconciliation, Peace and Cooperation" executed on October 24, 2000, and the Joint Statement establishing the terms of the "Austrian General Settlement Fund", on January 17, 2001.

The international human rights matters currently being handled by Mr. D'Avino include cases

against:

(a) Talisman Energy, Inc. and The Republic of Sudan for genocide complicity in Southern Sudan, *Presbyterian Church of Sudan v. Talisman Energy, Inc. and The Republic of Sudan,* 2003 U.S. Dist. Lexis 4085 (S.D.N.Y. March 19, 2003) (denying motion to dismiss);

(b) Royal Dutch/Shell for complicity in human rights violations in the Niger Delta against the Ogoni people, *Kiobel, et al. v. Royal Dutch Petroleum Co. and Shell Transport and Trading p.l.c.,* 02-CV-7618 (S.D.N.Y.); and

(c) Bayer AG and Schering AG for participation in the chemical sterilization of a concentration camp inmate. *Rozenkier v. Bayer,* No. 03-CV-1422 (E.D.N.Y.)

### Roslyn G. Pollack

Roslyn G. Pollack is Counsel to the firm, concentrating on securities, qui tam, and other complex civil litigation. Ms. Pollack is a graduate of the University of Florida, magna cum laude, and the University of Pennsylvania Law School. She is a member of the bar in both Pennsylvania and Florida.

She was formerly a partner in the Litigation Department of the Philadelphia firm of Cohen, Shapiro, Polisher, Shiekman and Cohen where she specialized in commercial and corporate litigation. Ms. Pollack also served as Associate General Counsel - Lead Attorney - Litigation for PECO Energy Company. She has extensive trial experience in state and federal courts.

Ms. Pollack has lectured for the Pennsylvania Bar Institute and has written on a variety of legal topics. Formerly a member of the Philadelphia Bar Association Board of Governors and the Pennsylvania Bar Association House of Delegates, Ms. Pollack is active in a number of professional and civic organizations. She serves on the Commercial Panel of the American Arbitration Association and as a judge pro tem for the Philadelphia Court of Common Pleas. She is a member of the Forum of Executive Women.

malta408177-001.wpd

# Exhibit E



**TRUJILLO**
**RODRIGUEZ &**
**RICHARDS, LLC**
ATTORNEYS AT LAW

1717 Arch Street
Suite 3838
Philadelphia, PA 19103
215-731-9004
215-731-9044 Fax

8 Kings Highway West
Haddonfield, NJ 08033
856-795-9002
856-795-9887 Fax

## FIRM BIOGRAPHY

Trujillo Rodriguez & Richards, LLC, with offices in Philadelphia, Pennsylvania, and Haddonfield, New Jersey, is a small firm with a big firm practice. The Firm is an AV rated law firm, which practices in the area of complex litigation, with an emphasis on antitrust, consumer, securities, labor and employment law, and complex commercial litigation, as well as government relations. The Firm also counsels clients on business, financial, employment, and contractual matters. The Firm's practice is unusually diverse for a firm of its size, and frequently involves the Firm's lawyers in challenging, cutting edge issues. The Firm practiced as Rodriguez & Richards, LLC, in 2000 and 2001, when Kenneth I. Trujillo assumed office as City Solicitor of Philadelphia, Pennsylvania, following his appointment by Mayor John F. Street.

The Firm and its lawyers have repeatedly made headlines for successful representation of clients in complex matters. For example, the Firm obtained a widely reported judgment of $120 million against Thorn Americas, Inc., in the New Jersey Superior Court. The Firm also represented concerned citizens in negotiating a settlement of potential environmental claims. The settlement resulted in the creation of a program to abate the discharge of pollutants into the rivers and creeks in the Philadelphia area. The Firm also has an active antitrust practice. For example, the Firm's lawyers obtained a $50 million settlement as co-lead counsel in a multi-district antitrust matter involving the pricing of laser vision correction procedures. In the securities area, the Firm most recently served as co-counsel for the Pennsylvania Public School Employers' Retirement System, the Pennsylvania State Employers' Retirement System, the State Workers' Insurance Fund and the Tobacco Settlement Investment Board in litigation arising from the funds' purchase of Time Warner and AOL securities, which resulted in a $23 million settlement for the funds.

The Firm's lawyers are experienced in international matters, particularly matters involving Mexico. For example, the Firm has represented Ferrocarriles Nacionales de Mexico, the Mexican national railroad, in litigation in the United States. In addition, the Firm has represented a Mexican restaurant franchisers in cross-border, intellectual property disputes, and a Mexican marketing company in a cross-border commercial dispute. In the public finance area, the Firm's lawyers have served as counsel in connection with a wide range of municipal financings. In the white-collar criminal defense area, the Firm has represented defendants in high profile trial, post-trial, and appellate proceedings.

The Firm has also represented businesses and individuals in matters raising a range of issues, including employment, contract, and defamation claims in federal and state court.

SECURITIES LITIGATION

TR&R presently serves as counsel in a variety of securities litigation matters. For example, the Firm is co lead counsel in In re KLA-Tencor Corp. Securities Litigation, No. 06-cv-04065 (N.D. Cal.). The Firm is one of two firms that represented the Commonwealth of Pennsylvania Public School Employees' Retirement System, Commonwealth of Pennsylvania State Employees' Retirement System, Commonwealth of Pennsylvania Tobacco Settlement Investment Board and Commonwealth of Pennsylvania State Workers' Insurance Fund in the Commonw. of Pa. Pub. Sch. Employees' Ret. Sys. v. Time Warner Inc., No. 002103 (Ct. Com. Pl. Phila.) case, and obtained a $23 million settlement. In addition, the Firm was one of the approved firms representing the lead plaintiff in the recently settled WorldCom litigation in the Southern District of New York. In re WorldCom, Inc. Securities Litigation, No. 02 Civ. 3288 (S.D.N.Y.). The Firm is co-lead counsel in In re Mattel, Inc. Derivative Litigation, No. CV07-06613 (C.D. Cal.).

The Firm has served as counsel in derivative actions in New Jersey state court involving AT&T, Great Atlantic & Pacific Tea Co., and Bio Technology, Inc. In New Jersey federal court, the Firm served as liaison counsel in Selis v. KTI, Inc., No. 2:00CV10478 (D.N.J.), representing the lead plaintiff, and obtaining a $3.8 million settlement. In Laborers Local 1298 Pension Fund vs. Campbell Soup Company, D.N.J. 00-152, the Firm served as liaison counsel representing lead plaintiff the Connecticut State Retirement System, in a case that settled for $35 million. The Firm also served as derivative counsel in recently settled litigation, In re Lucent Technologies, Inc. Derivative Securities Litigation, No. 02-2460 (D.N.J.).

Some of the other securities cases in which TR&R attorneys have had significant roles include In re: Washington Public Power Supply System Sec. Lit., 568 F. Supp. 1250 (J.P.M.L. 1983) ("WPPSS"); Moskowitz v. Lopp, 128 F.R.D. 624 (E.D. Pa. 1989); Steiner, et. al. v. Hercules Corporation, et al., No. 90-422 (D. Del. 1992); Hayes v. Gross, 982 F.2d 104 (3d Cir. 1992); Riley v. Simmons, 43 F.3d 764 (3d Cir. 1994); Joseph White v. Heartland High-Yield Municipal Bond Fund, et al., No 00-C-1388 (D.Wi.); In re Dreyfus Aggressive Growth Mutual Fund Litigation, No. 98-CV-4318 (HB) (S.D.N.Y.); In re Technical Chemical Securities Litigation, No. 98-7334-CIV-Davis (S.D. Fl.); Ray Chiostri v. Fore Systems, Inc. et al., CA-97-1540 (W.D. Pa.); In re PaineWebber Limited Partnerships Litigation, 94 Civ. 8547 (S.D.N.Y.), In re UJB Financial Services Corp. Shareholders Litigation, No. 90-1569 (D.N.J.), and Bogart v. National Community Bank, No. 2:90-cv-05032-HAA (D.N.J.). In addition, the Firm also served as a member of the Executive Committee in litigation in federal court on behalf of policyholders raising constitutional and other challenges to the conversion of a mutual insurance company to a stock company.

TR&R lawyers have a broad range of trial experience, most recently obtaining a jury verdict in a consumer class action matter, Ilene Folbaum v. Rexall Sundown, Inc., C.A. No. L-8625-98 (N.J. Super. Ct.). In 2006, the Firm was part of the trial team that obtained a verdict in the amount in excess of $20 million in the Kathryn Casey v. George G. Brennan, C.A. No. UNN-C-180-97 (N.J. Super. Ct.). One of our lawyers was a lead and trial counsel in In re Airline Ticket Commission Antitrust Litigation, 898 F. Supp. 685 (D. Minn. 1995), which settled on the

eve of trial and resulted an $86 million settlement for travel agency owners. In addition, TR&R lawyers have tried dozens of non-class action jury and bench trials.

INDIVIDUAL BIOGRAPHIES

**KENNETH I. TRUJILLO,** a member of the Firm, returned to the Firm after serving as the City Solicitor of Philadelphia for two years. As City Solicitor, Mr. Trujillo represented the Mayor, City Council and all departments, agencies and commissions of the City of Philadelphia. In addition, Mr. Trujillo sat on the Mayor's cabinet and ran the 155-lawyer Law Department. During Mr. Trujillo's tenure, the Law Department instituted a number of significant initiatives. For example, in April 2000, the City of Philadelphia filed a lawsuit against handgun manufacturers. Mr. Trujillo played a major role in the planning of the Republican National Convention and advised the Mayor in implementing the Neighborhood Transformation Initiative and the development of the Eagles and Phillies stadiums. Mr. Trujillo established an affirmative litigation unit to pursue claims in which the City has a significant interest. He also advised the Mayor and the Administration on labor disputes. He reorganized the Law Department's labor and employment practices to provide a higher level of service to City departments.

Mr. Trujillo was born in Española, New Mexico and raised in Durango, Colorado. He received a Bachelor of Science degree from Evangel College in Springfield, Missouri. Mr. Trujillo graduated from the University of Pennsylvania Law School in 1986 and joined the Philadelphia law firm of Schnader, Harrison, Segal & Lewis. While at the Schnader firm, Mr. Trujillo served the Philadelphia Law Department on loan for six months as part of the Public/Private Leadership Initiative. Mr. Trujillo joined the United States Attorney's Office in 1990. As an Assistant U.S. Attorney, Mr. Trujillo prosecuted some of the area's most significant financial fraud, labor corruption, and tax cases.

A substantial portion of Mr. Trujillo's work includes the representation of U.S. businesses in Mexico, and Mexican companies doing business in the United States. Mr. Trujillo has represented, among other companies, Ferrocarriles Nacionales de Mexico, the Mexican railroad, and Grupo Anderson's, S.A. de C.V., the largest restaurant chain in Mexico. Mr. Trujillo also does a significant amount of retirement, severance, and employee benefit litigation. Mr. Trujillo represents public entities in complex litigation. For example, Mr. Trujillo represented the City of Camden and the City of Philadelphia in handgun litigation. He also represented a Native American tribe in litigation seeking to recover damages from tobacco companies.

Mr. Trujillo is active locally and nationally in civic and business matters. He is the President of the Board of Directors of Congreso de Latinos Unidos, Inc. and served as the Secretary/Treasurer of the National Council of La Raza Board of Directors. In addition, Mr. Trujillo is the Vice Chairman of the Board of Directors of Health Partners, a 150,000 member managed care organization. Mr. Trujillo served on the Board of Trustees of the University of the Arts. In 1997, Mr. Trujillo was named by Mayor Ed Rendell to serve as a member of the City of Philadelphia Police Corruption Task Force. In 1999, Mr. Trujillo was named one of the Philadelphia Business Journal's "40 Under 40." In 2003, Mr. Trujillo served as counsel to Governor Ed Rendell's Transition Team and shortly thereafter, Governor Rendell appointed Mr. Trujillo to the Board of Directors of the Pennsylvania Intergovernmental Cooperation Authority, the entity that oversees the City of Philadelphia's finances. In 2004, Mayor John F. Street asked Mr. Trujillo to serve on the Ethics Committee of his transition team. In 2005, Governor Rendell appointed Mr. Trujillo as a Commissioner of the Delaware River Port Authority. He has been a

member of the boards of directors of Community Legal Services, Inc., Philadelphia Volunteers for the Indigent Program and Big Brothers/Big Sisters of Philadelphia, Inc. In 2000 and 2001, Mr. Trujillo served as a board member of the City of Philadelphia Board of Retirement and Pensions and the Philadelphia Industrial Development Corporation.

Mr. Trujillo is a past President of the Hispanic Bar Association of Pennsylvania and board member of the Hispanic Bar Association of Pennsylvania Legal Education Fund and the Hispanic National Bar Association Board of Governors. He is a past member of the Board of Governors of the Philadelphia Bar Association and co-chair of its Federal Courts Committee. Mr. Trujillo was elected to membership in the American Law Institute. Since 2005, Mr. Trujillo has been a Lecturer in Law at the University of Pennsylvania Law School.

**LISA J. RODRIGUEZ**, a member of the Firm, is a 1983 graduate (*with honors*) of the George Washington University Law School. She served as a law clerk to the Honorable Mitchell H. Cohen, Senior Judge of the United States District Court for the District of New Jersey. Ms. Rodriguez has appeared as a panel speaker for the Practicing Law Institute on Securities Regulation and has also appeared as a Lecturer for consumer and class action issues. She has participated in programs sponsored by consumer organizations, speaking and writing on consumer issues in general, and the rent-to-own industry in particular. Ms. Rodriguez served as a member of the Third Circuit Task Force on The Selection of Class Counsel, a position to which then Chief Judge Edward Becker appointed her. In addition, Ms. Rodriguez has served as a member of the Board of Editors of the Fen-Phen Strategist, a publication dealing with litigation concerning widely prescribed diet drugs.

Ms. Rodriguez is the attorney in charge of the Firm's New Jersey office, where she presides over a primarily class action practice. Ms. Rodriguez served as co-lead counsel in class actions challenging the practices of some companies in the rent-to-own industry in New Jersey, obtaining summary judgment on liability on behalf of three certified classes. In addition, Ms. Rodriguez is presently litigating cases on behalf of a class of retired and disabled law enforcement personnel in order to receive their share of proceeds stemming from an insurance company's demutualization. She is also co-counsel in an action on behalf of a class of pilots who were denied seniority when their airline was purchased by a competing airline.

In the securities and corporate governance areas, Ms. Rodriguez played a substantial role in In re PaineWebber Limited Partnerships Litigation, 94 Civ. 8547 (S.D.N.Y.), In re UJB Financial Services Corp. Shareholders Litigation, No. 90-1569 (D.N.J.) and Bogart v. National Community Bank, No. 2:90-cv-05032-HAA (D.N.J.) among other cases, each of which resulted in substantial settlements. Also, Ms. Rodriguez was co-counsel in Casey v. Amboy Bancorporation, No. UNN-C-180-97, (N.J. Sup. Ct.), a case challenging a "squeeze out" bank merger which resulted in a substantial judgment for shareholders after trial, and Ryan v. First Hope Bank, No. C-180-06 (N.J. Sup. Ct.), a derivative shareholder action which settled on the day of trial. Ms. Rodriguez served as counsel to the State of Connecticut pension funds in litigation under the Private Securities Litigation Reform Act pending in the District of New Jersey, and has also represented other institutional investors in similar litigation. In the antitrust area, Ms. Rodriguez has served as liaison counsel in a number of actions, including in In re Mercedes Benz Antitrust Litigation, No. 99-4311 (D.N.J.), In re Electrical Carbon Antitrust Litigation, No. 1:03-cv-02182 (D.N.J.) and In re Bulk Graphite Products Antitrust Litigation, Civ. No. 02-6030 (D.N.J.). Ms. Rodriguez has also served as liaison counsel in the ERISA actions, including Furstenau v. AT&T Corp., No. 02 CV 8853 (D.N.J.), In re Honeywell ERISA

Litigation, No. 03-1214 (D.N.J.) and In re Merck/Vioxx/ERISA Litigation, No. 05-cv-1151 (D.N.J.).

Additionally, Ms. Rodriguez serves on the District IV Ethics Committee and the New Jersey Supreme Court Committee on Character. She is a member of the Board of Trustees of the New Jersey Federal Bar Association. Ms. Rodriguez also serves on the Boards of the Camden Center for Law and Social Justice, and New Jersey Legal Services.

Ms. Rodriguez is admitted to practice before the United States Court of Appeals for the Third Circuit, the United States District Courts for the Eastern District of Pennsylvania, the District of New Jersey, and the Northern District of California. She is also admitted to the Supreme Court of Pennsylvania, the Supreme Court of New Jersey and the United States Supreme Court.

**IRA NEIL RICHARDS**, a member of the Firm, is admitted to practice in the States of New York and Pennsylvania, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the Southern District of New York, and the District of Nebraska, as well as the United States Court of Appeals for the Third Circuit, the United States Court of Appeals for the Second Circuit, and the United States Supreme Court. He is a 1986 graduate of the University of Pennsylvania School of Law (*magna cum laude*), where he served as Special Project Director of the University of Pennsylvania Law Review. He was elected to the Order of the Coif and received the Philadelphia Trial Lawyers Association Award and the Wapner, Newman & Associates Award, both for trial advocacy. He is a 1983 graduate of Cornell University, where he received a B.S. in industrial and labor relations.

Mr. Richards has played a prominent role in complex litigation matters, including litigation in the securities, antitrust, and consumer fields, as well as in criminal defense matters in federal and state courts. In the securities area, Mr. Richards has had a substantial role in the following cases, among others: Moskowitz v. Lopp 128 F.R.D. 624 (E.D. Pa. 1989); Steiner, et. al. v. Hercules Corporation, et al., No. 90-422 (D. Del. 1992); and Hayes v. Gross, 982 F.2d 104 (3d Cir. 1992). In Riley v. Simmons, 43 F.3d 764 (3d Cir. 1994), Mr. Richards successfully argued for the reversal of a District Court's order dismissing claims of investors in annuities on abstention grounds. Most recently, Mr. Richards served as co-counsel for four Pennsylvania government funds in litigation arising from the funds' purchases of AOL and Time Warner securities. The litigation resulted in a $23 million settlement for the funds. Mr. Richards also serves as counsel to the City of Philadelphia Board of Pensions in derivative litigation arising from a corporation's alleged backdating of stock options.

In the antitrust field, Mr. Richards served as co-lead counsel in In re Pillar Point Partners Patent and Antitrust Litigation, MDL No. 1202 (D. Ariz.), which was a multi-district litigation involving antitrust claims asserted against manufacturers of excimer lasers used in vision correction procedures. The litigation resulted in a $50 million settlement on behalf of a class of direct purchasers. Mr. Richards serves as co-lead counsel for plaintiffs in In re Pressure Sensitive Labelstock Antitrust Litigation, MDL No. 1556 (M.D. Pa.). In Meijer, Inc. v. 3M (E.D. Pa.), Mr. Richards served as counsel in an action brought on behalf of direct purchasers of private label tapes, alleging monopolization of the tape market. The litigation resulted in a $28.8 million settlement for the class. Mr. Richards also served as a member of the Executive Committee of class counsel in In re Copper Antitrust Litigation, MDL No. 1303 (D. Wis.), was a member of the deposition team in In re Linerboard Antitrust Litigation, MDL No. 1261 (E.D. Pa.), and is one of plaintiffs' counsel in In re Mercedes Benz Antitrust Litigation, No. 99-4311

(D.N.J.), and is counsel for the City of Philadelphia in In re Hydrogen Peroxide Antitrust Litigation, No. 05-666 (E.D. Pa.). Mr. Richards served as co-lead counsel and a member of the trial team in an action against the major domestic airlines, see In re Airline Ticket Commission Antitrust Litigation, 898 F. Supp. 685 (D. Minn. 1995), which resulted an $86 million settlement for travel agency owners. Mr. Richards presently is involved in a variety of other antitrust matters in a variety of capacities.

In the financial services area, Mr. Richards has litigated claims arising from the sale of credit insurance, home improvement financing, and the force placement of insurance, among other things, serving as lead or co-lead counsel in several cases that have resulted in significant recoveries. In Denise Roberts v. Fleet Bank (R.I.), N.A., 342 F.3d 260 (3d Cir. 2003), Mr. Richards successfully argued for application of the Truth in Lending Act in a case involving credit card solicitations. Mr. Richards also served as co-lead counsel in litigation on behalf of financial advisors asserting claims under ERISA and state law, obtaining a $15 million settlement in this litigation.

Mr. Richards has been active in the Firm's criminal defense practice, particularly in issues relating to the application of RICO, and the forfeiture of assets, and in post-trial and appellate proceedings. In addition, Mr. Richards has represented a variety of individuals and businesses in a range of litigation matters involving employment, contract, defamation, and other claims in both state and federal courts. For example, Mr. Richards served as co-counsel to the City of Philadelphia and the Philadelphia City Commissioners in litigation challenging the acquisition of voting equipment and the selection of polling places, under the Americans with Disabilities Act. Mr. Richards also successfully represented the Philadelphia Housing Authority in an appeal before the Pennsylvania Commonwealth Court (en banc) involving an issue of first impression under the Expedited Eviction of Drug Traffickers Act.

Mr. Richards is the co-author of an article published in the Practicing Law Institute's Practical Litigator on the trial of securities actions. He has also lectured on financial services and litigation issues. In addition, Mr. Richards serves as a member of the Board of Directors of Congregation Beth Tikvah-B'nai Jeshuran and President of its Mens Club, as a coordinator for the Plymouth Soccer Club, and as a member of the Board of Directors of the Philadelphia Region of the Anti-Defamation League. In 1999, Mr. Richards was named one of the Philadelphia Business Journal's "40 Under 40." In 2004, 2005, and 2006, Mr. Richards was named one of Pennsylvania's "Super Lawyers."

## ASSOCIATES

**NICOLE M. ACCHIONE** is a 1996 graduate (*magna cum laude)* of New England School of Law, Boston, MA. While in law school, Ms. Acchione was a Case and Note Editor of the New England Law Review. Ms. Acchione served as a judicial law clerk to the Honorable George L. Seltzer of the Superior Court of New Jersey, Atlantic County, Civil Division. Prior to joining the Firm, Ms. Acchione was an Assistant Prosecutor with the Atlantic County Prosecutor's Office. Ms. Acchione is admitted to practice law in New Jersey and Pennsylvania, as well as the United States District Court for the District of New Jersey.

**GARY M. GOLDSTEIN** is a 1997 graduate (*magna cum laude*) of Temple University Law School. Mr. Goldstein was formerly an associate with Dechert, Price & Rhoads, in Philadelphia. Mr. Goldstein is admitted to practice in the Commonwealth of Pennsylvania and in the United States District Court of the Eastern District of Pennsylvania.

**KATHRYN C. HARR** is a 2002 graduate (*cum laude*) of Temple University Law School, where she served as Managing Editor of Temple Law Review. While in law school, she acted as a mediator in Landlord Tenant Court in Philadelphia and completed an internship with the U.S. Attorney's Office for the Eastern District of Pennsylvania. Ms. Harr concentrates her practice on complex litigation, including antitrust and securities class actions and health effects matters. Having previously served as a member of the board of directors of the Wissahickon Art Center, she currently sits on the editorial board of the Philadelphia Bar Reporter and has authored numerous articles. Ms. Harr is admitted to practice in the Commonwealth of Pennsylvania and the United States District Court for the Eastern District of Pennsylvania.

**R. ANDREW SANTILLO** is a 2004 graduate of Temple University School of Law where he served as the Editor-in-Chief of the Temple Political & Civil Rights Law Review and authored the comment, "National Wrestling Coaches Association v. United States Department of Education: The Potential Takedown of the Current Application of Title IX to Intercollegiate Athletics," 13 Temp. Pol. & Civ. Rts. L. Rev. 187 (Fall 2003). Mr. Santillo is admitted to practice law in Pennsylvania and New Jersey, as well as the United States District Court for the District of New Jersey, the Eastern District of Pennsylvania and the Middle District of Pennsylvania.

April 2008