1  MILBERG LLP
   JEFF S. WESTERMAN (SBN 94559)
2  ELIZABETH P. LIN (SBN 174663)
   300 South Grand Ave., Suite 3900
3  Los Angeles, CA 90071
   Telephone: (213) 617-1200
4  Facsimile: (213) 617-1975
   E-mail: jwesterman@milberg.com
5          elin@milberg.com

6  MILBERG LLP
   ANITA KARTALOPOULOS
7  ANNE MARIE VU (SBN 238771)
   One Pennsylvania Plaza, 49th Floor
8  New York, NY 10119
   Telephone: (212) 594-5300
9  Facsimile: (212) 868-1229
   E-mail: akartalopoulos@milberg.com
10         avu@milberg.com

11  Proposed Lead Counsel

12  [Additional Counsel Appear on Signature Page]

13              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
14                  SAN JOSE DIVISION

15  ALLAN QUERY, Individually and on Behalf )   Civil Action No.: C 08-00832-PVT
    of All Others Similarly Situated,       )
16                                          )   CLASS ACTION
                        Plaintiff,          )
17                                          )   THE NEW JERSEY INSTITUTIONAL
             vs.                            )   INVESTOR GROUP'S NOTICE OF
18                                          )   MOTION AND MOTION FOR
    MAXIM INTEGRATED PRODUCTS, INC., )         APPOINTMENT OF LEAD PLAINTIFF
19  JOHN F. GIFFORD and CARL W. JASPAR, )      AND APPROVAL OF LEAD COUNSEL
                                            )   SELECTION; MEMORANDUM OF POINTS
20                      Defendants.         )   AND AUTHORITIES IN SUPPORT
                                            )   THEREOF
21                                          )
                                            )   DATE:    May 13, 2008
22                                          )   TIME:    10:00 a.m.
                                            )   CTRM:    5
23                                          )   JUDGE:   Hon. Patricia V. Trumbull
                                            )
24                                          )
                                            )
25  _____)

26

27

28

THE NEW JERSEY INSTITUTIONAL INVESTOR GROUP'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT
OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL SELECTION; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF - Civil Action No.: C 08-00832-PVT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I. PRELIMINARY STATEMENT ......................................................................................1

II. INTRODUCTION........................................................................................................1

III. PROCEDURAL BACKGROUND................................................................................3

IV. FACTUAL BACKGROUND.......................................................................................3

V. MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF........................................4

        A.      The Procedure Required By the PSLRA ....................................................4

        B.      Movant Satisfies The Lead Plaintiff Requirements Of The PSLRA ...........5

              1.      Movant Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff...............................................................5

              2.      Movant Has the Requisite Financial Interest in the Relief Sought by the Class...........................................................................6

              3.      Movant Otherwise Satisfies Rule 23.................................................7

                    a.      Movant Fulfills the Typicality Requirements.....................8

                    b.      Movant Fulfills the Adequacy Requirement.......................9

               4.      The NJ Institutional Investors Group Is An Institutional Investor With The Largest Financial Interest In The Relief Sought .........................................................................................10

VI. THE COURT SHOULD APPROVE MOVANT'S CHOICE OF LEAD COUNSEL ..........13

VII. CONCLUSION ........................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Appleyard v. Wallace*,
    754 F.2d 955 (11th Cir. 1985) ............................................................................9

*In re Baan Co. Sec. Litig.*,
    186 F.R.D. 214 (D.D.C. 1999) ...........................................................................12

*Babcock v. Computer Associates International, Inc.*,
    212 F.R.D. 126 (E.D.N.Y. 2003).....................................................................9, 10

*Bowman v. Legato System*,
    195 F.R.D. 655 (N.D. Cal. 2000).......................................................................12

*Burke v. Ruttenberg*,
    102 F. Supp. 2d 1280 (N.D. Ala. 2000).............................................................11

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ...............................................................5, 6, 8, 14

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ...........................................................................6, 12

*In re Faro Technologies Sec. Litig.*,
    No. 6:05-CV-1810-ORL-22 (DAB), 2006 WL 1119201 (M.D. Fla. Apr. 26, 2006)............11

*Ferrari v. Gisch*,
    225 F.R.D. 599 (C.D. Cal. 2004).........................................................................13

*Fischler v. Amsouth Bancorporation*,
    No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997).................8

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation*,
    55 F.3d 768 (3d Cir. 1995) ................................................................................10

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) .........................................................11, 12, 13

*Goplen v. 51job, Inc.*,
    No. 05 Civ. 0769, 2005 U.S. Dist. LEXIS 15059 (S.D.N.Y. July 26, 2005) ..........................6

*Greebel v. FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996)......................................................................5, 12

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) ............................................................................9

*Kirkpatrick v. J.C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ................................................................10

*Lax v. First Merchants Acceptance Corp.*,
   No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ......................5, 8, 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................14

*In re Network Associates Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ................................................................12

*Philips v. Joint Legislative Committee On Performance & Expenditure Review*,
   637 F.2d 1014 (5th Cir. 1981) ................................................................9

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ................................................................5, 8, 9

*Priest v. Zayre Corp.*,
   118 F.R.D. 552 (D. Mass. 1988) ................................................................9

*Ravens v. Iftikar*,
   174 F.R.D. 651 (N.D. Cal. 1997) ................................................................12

*In re Razorfish Inc. Sec. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001) ................................................................12

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ................................................................9

*Schulman v. Lumenis, Ltd.*,
   No. 02 Civ. 1989 (DAB), 2003 WL 21415287 (S.D.N.Y. June 18, 2003) ........................12

## DOCKETED CASES

*In re Initial Public Offering Sec. Litig.*,
   No. 21-mc-92 (S.D.N.Y. filed Aug. 9, 2001) ................................................................14-15

*In re Lucent Technologies, Inc. Sec. Litig.*,
   No. 00-CV-621 (D.N.J.) ................................................................15

*In re Nortel Networks Corp. Sec. Litig.*,
   No. 01-CV-1855 (S.D.N.Y.) ................................................................15

*In re Raytheon Sec. Litig.*,
   No. 99-CV-12142 (E.D. Mass.) ................................................................15

*In re Sears, Roebuck & Co. Sec. Litig.*,
   No. 02-CV-7527 (N.D. Ill.) ................................................................15

*In re Tyco International Ltd., Sec. Litig.,*
    MDL Docket No. 02-1335-B (D.N.H. 2002) ..........................................................................15

### STATUTES, RULES AND REGULATIONS

15 U.S.C. § 78j(b) ...........................................................................................................................2

15 U.S.C. § 78t(a) ...........................................................................................................................2

15 U.S.C. § 78u-4(a)(1) ...................................................................................................................5

15 U.S.C. § 78u-4(a)(2)(A) ..............................................................................................................2

15 U.S.C. § 78u-4(a)(3)(A) ..........................................................................................................5, 6

15 U.S.C. § 78u-4(a)(3)(B) ....................................................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(A)(i) ......................................................................................................3, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ..........................................................................................1, 5, 6, 13

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) .........................................................................................14

15 U.S.C. § 78u-4(a)(3)(B)(v) .......................................................................................................14

Fed. R. Civ. P. 23 .............................................................................................................................4

Fed. R. Civ. P. 23(a) .........................................................................................................................8

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 .......................11

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in*, 1995 U.S.C.C.A.N. 730, 733 .....................11

S. Rep. No. 104-98 (1995) .............................................................................................................13

### OTHER AUTHORITIES

Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring: How*
    *Institutional Investors Can Reduce Agency Costs In Securities Class Actions,* 104
    Yale L.J. 2053 (1995) ..............................................................................................................13

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 13, 2008 at 10:00 a.m., or as soon as this matter may be heard in Courtroom 5 of the Honorable Patricia V. Trumbull, at 280 South 1st Street, San Jose, California. The New Jersey Institutional Investors Group, a group of class members which consists of the New Jersey Building Laborers Pension Fund and the New Jersey Carpenters Annuity Fund (the "NJ Institutional Investors Group" or "Movant"), will move for an order: (1) appointing Movant as Lead Plaintiff pursuant to the PSLRA; (2) approving Movant's selection of Milberg LLP ("Milberg") as lead counsel in this action and in any subsequently filed and/or related cases; and (3) granting such other and further relief as the Court may deem just and proper.

This motion is based on the attached Memorandum of Points and Authorities, the Declaration of Jeff S. Westerman in support thereof, all pleadings, records and files in this action, any evidence presented at or before the hearing, including any written or oral argument as may be presented to the Court, and all other matters of which the Court may take judicial notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. PRELIMINARY STATEMENT

The New Jersey Institutional Investors Group, a group of class members which consists of the New Jersey Building Laborers Pension Fund and the New Jersey Carpenters Annuity Fund (the "NJ Institutional Investors Group" or "Movant"), suffered losses approximately in excess of $244,231 under the FIFO analysis, $256,322 under the LIFO analysis, and $429,020 under the Net/Net analysis, [1] as a result of its investments in the securities of Maxim Integrated Products, Inc. ("Maxim" or the "Company" or "Defendant").  Movant believes that it has incurred the largest loss of any other movant, and as such, it has the largest financial interest in the outcome of this litigation, and satisfies the requirements to qualify as the "most adequate plaintiff" as defined by the Private Securities Litigation Reform Act of 1995 ("PSLRA").

As the most adequate plaintiff, Movant hereby respectfully requests that the Court: (1) appoint Movant as Lead Plaintiff pursuant to the PSLRA; (2) approve Movant's selection of Milberg LLP ("Milberg") as lead counsel in this action and in any subsequently filed and/or related cases; and (3) grant such other and further relief as the Court may deem just and proper.

Movant should be appointed Lead Plaintiff because Movant: (1) timely filed a motion for appointment of Lead Plaintiff; (2) suffered losses in excess of $244,231 in connection with its transactions in Maxim securities during the relevant period, and thus has a substantial financial interest in the litigation; and (3) will adequately represent the interests of the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  Furthermore, Movant's choice of Milberg as Lead Counsel should be approved by the Court because, pursuant to the PSLRA, the presumptive Lead Plaintiff selects Lead Counsel, and Milberg has extensive experience in the prosecution of securities class actions and will more than adequately represent the interests of all class members.

## II. INTRODUCTION

This federal class action (the "Action") is brought on behalf of persons and entities who purchased or otherwise acquired Maxim securities between April 29, 2003 and January 17, 2008,

---

[1] Plaintiff's losses calculated under the FIFO, LIFO, and Net/Net accounting methodologies are set forth below.

1  inclusive (the "Class Period"), and who were damaged thereby, seeking to pursue remedies

2  under federal securities law.  The Action is brought pursuant to §§ 10(b) and 20(a) of the

3  Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and

4  Securities Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.  Defendants

5  include Maxim and certain of its officers and directors.[2]

6  Movant, with losses approximately in excess of $244,231 under the FIFO analysis,

7  $256,322 under the LIFO analysis, and $429,020 under the Net/Net analysis in connection with

8  its purchases of Maxim securities during the Class Period, is suitable and adequate to serve as

9  Lead Plaintiff.[3]  Movant has submitted sworn certifications signed by George Laufenberg on

10  behalf of Movant New Jersey Building Laborers Pension Fund and Mary Castrovinci on behalf

11  of Movant New Jersey Carpenters Annuity Fund, demonstrating Movant's desire to serve as the

12  Lead Plaintiff.  *See* Westerman Decl. Ex. A.[4]

13  To the best of its knowledge, Movant's losses represent the largest known financial

14  interest of any Class member seeking to be appointed as Lead Plaintiff.  *See* Westerman Decl.

15  Ex. B.  Movant is not aware of any other class member that has filed an action or filed an

16  application for appointment as Lead Plaintiff that has sustained greater losses.  In addition,

17  Movant satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules of

18  Civil Procedure and therefore is qualified for appointment as Lead Plaintiff in this Action.  Thus,

19  as demonstrated herein, Movant is presumptively the most adequate plaintiff and should be

20  appointed Lead Plaintiff.

21

22  [2] Individual defendants to this action include John F. Gifford ("Gifford" or "Defendant"), the

23  Company's former President, CEO, and Chairman of the Board, and Carl W. Jaspar ("Jaspar" or ("Defendants"), the Company's former CFO.

24  [3] The losses suffered by Movant are not the same as its legally compensable damages, measurement of which is often a complex legal question that cannot be determined at this stage

25  of the litigation.  The approximate losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(A) and based upon

26  reference to information concerning the current market for the Company's securities.

27  [4] Unless otherwise indicated, all exhibit references herein refer to the Declaration of Jeff S. Westerman in Support of Plaintiff's Motion for Appointment as Lead Plaintiff, and Approval of

28  Selection of Lead Counsel submitted herewith (the "Westerman Decl.").

1   Movant respectfully submits this Memorandum of Law in support of its motion, pursuant
2   to Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for
3   an order: (1) appointing the NJ Institutional Investors Group as Lead Plaintiff pursuant to the
4   PSLRA; (2) approving Movant's selection of Milberg LLP ("Milberg") as lead counsel in this
5   action and in any subsequently filed and/or related cases; and (3) granting such other and further
6   relief as the Court may deem just and proper.

## III.  PROCEDURAL BACKGROUND

8   As noted in the introduction, this is a federal class action brought on behalf of persons
9   and entities who purchased or otherwise acquired Maxim securities during the Class Period, and
10  who were damaged thereby, seeking to pursue remedies against Maxim and certain of its officers
11  and directors under the Exchange Act and SEC Rule 10b-5.

12  This action was commenced in this jurisdiction on or about February 6, 2008.  Pursuant
13  to 15 U.S.C. § 78u-4(a)(3)(A)(i), on February 6, 2008, the first notice that a class action had been
14  initiated against Defendants was published on *Market Wire*, a widely circulated national
15  business-oriented wire service advising members of the proposed class members of their right to
16  move the Court to serve as Lead Plaintiff within 60 days.  *See* Westerman Decl. Ex. C.

17  The NJ Institutional Investors Group is a member of the class (*see* Westerman Decl. Ex.
18  A) and is timely filing this motion within the 60-day period following publication of the first
19  notice pursuant to Section 21D of the PSLRA, as discussed herein.

## IV.  FACTUAL BACKGROUND

21  This Action is brought on behalf of persons and entities who purchased or otherwise
22  acquired Maxim securities during the Class Period, and who were damaged thereby, seeking to
23  pursue remedies under the Exchange Act and SEC Rule 10b-5.  Maxim is a semiconductor
24  company that designs and manufactures analog and mixed-signal integrated circuits ("ICs" or
25  "chips").  The Company has 75 product lines which include amplifiers, data converters, interface
26  circuits, power supply chips, wireless, fiber and telecommunications, clock parts, automotive
27  electronic components, audio, video, analog switches, sensor circuits, filters, thermal
28  management, and battery management.  Maxim also manufactures its own lines of

1   microcontrollers.  The Company was formed in 1983 and has headquarters in Sunnyvale,

2   California, which is located within this district.  During the Class Period, Maxim senior

3   executives are alleged to have violated the federal securities laws by publicly issuing false and

4   misleading statements and failing to disclose material adverse facts about the Company's stock

5   option program.  Specifically, defendants failed to disclosed or indicate that during the Class

6   Period the Company had engaged in improper stock option granting practices which led to the

7   concealment of millions of dollars in expenses from investors and the overstatement of the

8   Company's income as reported in its financial statements during the Class Period.

9         Towards the end of 2007 as a result of the Company's inability to file financial

10  statements related to stock option backdating, the Company was delisted from the NASDAQ

11  Stock Exchange under the ticker symbol "MXIM", and currently trades Over-the-Counter and

12  quoted on the Pink Sheets under the ticker symbol "MXIM.PK."  Still the full truth was yet to be

13  discovered.  On January 17, 2008, the last day of the Class Period, Maxim finally revealed that it

14  had failed to properly account for almost $650 million of stock option compensation expenses

15  and would likely have to restate its earnings by $360-425 million lower than previously reported

16  as a result of the improper stock options back-dating.  This announcement caused Maxim's stock

17  to drop precipitously during the next three trading days by more than $5.00 per share, or

18  approximately 23%, from $23.63 per share on January 16, 2008, to $18.07 per share on January

19  22, 2008, on usually heavy trading volume.

20  **V.  MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF**

21        The NJ Institutional Investors Group should be appointed Lead Plaintiff because it has

22  complied with all of the PSLRA's requirements, is believed to have the largest financial interest

23  in this litigation and otherwise meets the relevant requirements of Fed. R. Civ. P. 23.

24        A.    **The Procedure Required By the PSLRA**

25        The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in

26  "each private action arising under the [Exchange Act] that is brought as a plaintiff class action

27  pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

28        First, the plaintiff who files the initial action must publish a notice to the class, within 20

1  days of filing the action, informing class members of their right to file a motion for appointment

2  as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Plaintiff in the first-filed, above-captioned

3  action caused notice to be published on *Market Wire* on February 6, 2008.[5]

4       Second, within 60 days of publishing the notice, any person or group of persons who are

5  members of the proposed class may apply to the court to be appointed as lead plaintiff, whether

6  or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

7       Next, within 90 days after publication of the initial notice of pendency, the Court shall

8  consider any motion made by a class member and shall appoint as lead plaintiff the member or

9  members of the class that the court determines to be most capable of adequately representing the

10  interests of class members. 15 U.S.C. § 78u-4(a)(3)(B).  In determining the "most adequate

11  plaintiff," the PSLRA provides that:

12       [T]he court shall adopt a presumption that the most adequate plaintiff in any private

13  action arising under this Act is the person or group of persons that:

14       (aa) has either filed the complaint or made a motion in response to a notice . . .

15       (bb) in the determination of the court, has the largest financial interest in the relief

16       sought by the class; and

17       (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil

18       Procedure.

19  15 U.S.C. § 78u-4(a)(3)(B)(iii).  *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); s*ee*

20  *also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D.

21  395, 402-04 (S.D.N.Y. 2004).

22      B.    **Movant Satisfies The Lead Plaintiff Requirements Of The PSLRA**

23         1.    **Movant Has Complied With the PSLRA and Should Be**
               **Appointed Lead Plaintiff**

24       The time period in which class members may move to be appointed Lead Plaintiff in this

25

26  [5]  *See* Westerman Decl. Ex. C.  National news wire services have been recognized as suitable
   vehicles for meeting the statutory requirement that notice be published "in a widely circulated

27  national business-oriented publication or wire services."  *Greebel v. FTP Software, Inc.*, 939 F.
   Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchants Acceptance Corp.*, No. 97-C-2715,

28  1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

case, under 15 U.S.C. § 78u-4(a)(3)(A) and (B), expires on April 7, 2008.  Movant's application, filed April 7, 2008, is thus timely.  Movant has reviewed a complaint against Maxim and is willing to serve as a representative party on behalf of the Class.  *See* Westerman Decl. Ex. A (Certifications of the New Jersey Building Laborers Pension Fund and the New Jersey Carpenters Annuity Fund).  In addition, Movant has selected and retained competent counsel to represent it and the Class. *See* Westerman Decl. Ex. D (attaching firm résumé of Milberg).

Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff, and its selection of Milberg as Lead Counsel, approved by the Court.

> **2.    Movant Has the Requisite Financial Interest in the Relief Sought by the Class**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the Class member who represents the largest financial interest in the relief sought by the action.  *See In re Cavanaugh*, 306 F.3d. at 730 ("[T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."); s*ee also In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001)(identification of the most adequate plaintiff, "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'") (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)).

The PSLRA, however, does not provide a method for determining the relative financial interests of lead plaintiff movants.  Courts are generally divided on how relative financial interest should be determined.  Briefly, some courts have adopted the "FIFO" (First-In-First-Out) methodology.  Under this methodology, first-purchased shares (even if purchased before the class period) are offset against first-class period sales.  *See, e.g., Goplen v. 51job, Inc.*, No. 05 Civ. 0769, 2005 U.S. Dist. LEXIS 15059, at *8 (S.D.N.Y. July 26, 2005).

During the Class Period, as evidenced by, among other things, the accompanying signed Certifications and chart showing Movant's Class Period transactions (*see* Westerman Decl. Exs. A and B), the NJ Institutional Investors Group collectively purchased 35,800 shares of Maxim common stock at prices artificially inflated by the materially false and misleading statements

1  issued and/or lack of material disclosures by defendants and were injured thereby.  In addition,

2  the NJ Institutional Investors Group incurred a substantial FIFO loss of approximately $244,231

3  on its transactions in Maxim stock.

4          Other courts have adopted the "LIFO" (Last-In-First-Out) methodology.  Under this

5  methodology, last-purchased shares are offset against first-class period sales; any remaining

6  shares sold during the class period are generally offset against shares held at the beginning of the

7  class period.  For purchase transactions that are not matched to sell transactions that occurred

8  during the Proposed Class Period, the 90-day average hold price is applied.  In this case, Movant

9  had pre-Class Period Maxim holdings.  As such, the LIFO analysis yields a different financial

10  interest from that calculated using the FIFO analysis.  Using the LIFO methodology, Movant

11  experienced a loss of approximately $256,322.

12          In addition to the FIFO and LIFO accounting methodologies, other courts have adopted

13  the "Net/Net" methodology.  Under the Net/Net methodology, the total funds expended by the

14  movant during the Class Period are subtracted from the total funds received by the movant

15  during the Class Period.  In this case, under the Net/Net analysis, Movant has suffered a

16  considerable loss of approximately $429,020.

17          As demonstrated herein, Movant has a large financial interest in this case.  Movant

18  invested approximately $429,020 during the Class Period and under the FIFO, LIFO and Net/Net

19  methodology has experienced the following losses:

20

21  | **Movant** | **Net/Net Losses** | **FIFO Losses** | **LIFO Losses** |
    | --- | --- | --- | --- |
22  | **NJ Institutional Investors Group** | ($429,020.20) | ($244,231.62) | ($256,322.12) |

23

24          Therefore, Movant satisfies all of the PSLRA's prerequisites for appointment as Lead

25  Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-

26  4(a)(3)(B).  *See* Westerman Decl. Ex. B.

27          3.      **Movant Otherwise Satisfies Rule 23**

28          According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial

1  interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the

2  requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cavanaugh*, 306

3  F.3d. at 730.  Rule 23(a) provides that a party may serve as a class representative if the following

4  four requirements are satisfied:

5      (1) the class is so numerous that joinder of all members is impracticable;

6      (2) there are questions of law or fact common to the class;

7      (3) the claims or defenses of the representative parties are typical of the claims or

8      defenses of the class; and

9      (4) the representative parties will fairly and adequately protect the interests of the

10     class.

11 Fed. R. Civ. P. 23(a).

12     Of the four prerequisites to class certification, only two — typicality and adequacy —

13 directly address the personal characteristics of the class representative.  Consequently, in

14 deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality

15 and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until

16 the Lead Plaintiff moves for class certification.  *See id.*; *see also Lax v. First Merchants*

17 *Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 6,

18 1997); *Fischler v. Amsouth Bancorporation*, No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS

19 2875, at *7-8 (M.D. Fla. Feb. 6, 1997); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412.  As

20 detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23,

21 thereby justifying its appointment as Lead Plaintiff.

22                    a.    **Movant Fulfills the Typicality Requirements**

23     Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical

24 of those of the class.  Typicality exists where the plaintiffs' claims arise from the same series of

25 events and are based on the same legal theories as the claims of all the class members.  *See*

26 *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *see also Rossini v. Ogilvy & Mather,*

27 *Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Babcock*

28 *v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003).  The requirement that the

1  proposed class representative's claims be typical of the claims of the class does not mean,

2  however, that the claims must be identical.  *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412;

3  *Philips v. Joint Legislative Comm. On Performance & Expenditure Review*, 637 F.2d 1014, 1024

4  (5th Cir. 1981).  Typicality does not require that there be no factual differences between the class

5  representatives and the class members because it is the generalized nature of the claims asserted

6  that determines whether the class representatives are typical.  *See Priest v. Zayre Corp.*, 118

7  F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need

8  not show substantial identity between their claims and those of absent class members, but need

9  only show that their claims arise from the same course of conduct that gave rise to the claims of

10  the absent [class] members") (citation omitted).  Since the plaintiffs seek to prove that

11  defendants "committed the same unlawful acts in the same method against an entire class . . . all

12  members of this class have identical claims . . . therefore, the certification of the suite as a class

13  action satisfied the requirements of typicality requirement of Rule 23(a)(3)."  *Kennedy v. Tallant*,

14  710 F.2d 711, 717(11th Cir. 1983).

15        Movant seeks to represent a class of purchasers of Maxim securities that have identical,

16  non-competing and non-conflicting interests.  Movant satisfies the typicality requirement

17  because, just like all other Class members, it: (1) purchased or otherwise acquired Maxim

18  securities during the Class Period; (2) purchased or otherwise acquired Maxim securities at

19  prices artificially inflated as a result of the allegedly materially false and misleading statements

20  and/or omissions; and (3) suffered economic loss thereby when the price of Maxim common

21  stock declined when the misrepresentations made to the market, and/or the information alleged in

22  the complaint to have been concealed from the market, were revealed, removing the inflation

23  from Maxim's stock price.  Thus, Movant's claims are typical of those of other Class members

24  since its claims and the claims of other Class members arise out of the same course of events.

25                b.    **Movant Fulfills the Adequacy Requirement**

26        Under Rule 23(a)(4), the representative parties must fairly and adequately protect the

27  interests of the class.  The PSLRA directs this Court to limit its inquiry regarding the adequacy

28  of Movant to represent the Class to the existence of any conflicts between the interest of Movant

1 | and the members of the Class.  This standard for adequacy is met if it appears that (1) the named

2 | plaintiff has interests in common with, and not antagonistic to, the class' interests; and (2) the

3 | plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation.  *See,*

4 | *e.g., Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *see also In re GMC*

5 | *Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995); *Babcock*, 212

6 | F.R.D. at 131 (citation omitted) (stating that the standard for adequacy of representation under

7 | Rule 23(a)(4) is met by:  (1) the absence of potential conflict between the proposed Lead

8 | Plaintiff and the class members; and (2) the class representatives' choice of counsel who is

9 | qualified, experienced and able to vigorously conduct the proposed litigation.).

10 |      As detailed above, Movant is an adequate representative of the Class because it shares

11 | common questions of law and fact with the members of the Class and its claims are typical of the

12 | claims of other Class members.  As evidenced by the injury suffered by Movant, who acquired

13 | 35,800 shares of Maxim stock at prices artificially inflated by defendants' materially false and

14 | misleading statements and/or omissions, the interests of Movant are clearly aligned with the

15 | interests of the members of the Class, and there is no evidence of any antagonism between

16 | Movant's interests and those of the other members of the Class.

17 |      Further, Movant has already taken significant steps demonstrating that it has protected

18 | and will continue to protect the interests of the Class: it executed a Certification detailing its

19 | Class Period transactions and expressing its willingness to serve as Lead Plaintiff; it moved this

20 | Court to be appointed as Lead Plaintiff in this action; and it retained competent and experienced

21 | counsel who, as shown below, will be able to conduct this complex litigation in a professional

22 | manner.  *See generally Lax*, 1997 U.S. Dist. LEXIS 11866, at *21-25.

23 |         4.    **The NJ Institutional Investors Group Is An Institutional Investor With The Largest Financial Interest In The Relief Sought**

24 |

25 |      The NJ Institutional Investors Group is a classic example of the sort of Lead Plaintiff

26 | envisioned by Congress in its enactment of the PSLRA — a sophisticated institutional investor

27 | with a real financial interest in the litigation.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995),

28 | *reprinted in* 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the role of institutional

1  investors in class actions will ultimately benefit the class and assist the courts by improving the

2  quality of representation in securities class actions").

3    The legislative history of the PSLRA demonstrates that it was intended to encourage

4  institutional investors, such as the NJ Institutional Investors Group, to serve as lead plaintiff.

5  The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional
> investors will serve as lead plaintiffs by requiring courts to presume that the
> member of the purported class with the largest financial stake in the relief sought
> is the "most adequate plaintiff."
>
> *    *    *
>
> The Conference Committee believes that . . . in many cases the beneficiaries of
> pension funds - small investors - ultimately have the greatest stake in the outcome
> of the lawsuit.   Cumulatively, these small investors represent a single large
> investor interest.   Institutional investors and other class members with large
> amounts at stake will represent the interests of the plaintiff class more effectively
> than class members with small amounts at stake.

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in*, 1995 U.S.C.C.A.N. 730, 733.

   Courts around the country have noted a Congressional preference to appoint institutional

investors.  *See, e.g., In re Faro Techs. Sec. Litig.*, No. 6:05-CV-1810-ORL-22 (DAB), 2006 WL

1119201, at *3 (M.D. Fla. Apr. 26, 2006) (favoring proposed institutional investor lead plaintiff);

*Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1331 (N.D. Ala. 2000) (noting aim of PSLRA was to

encourage institutional investors to control securities class actions); *Gluck v. CellStar Corp.*, 976

F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally

expressed its preference for securities fraud litigation to be directed by large institutional

investors"); *Schulman v. Lumenis, Ltd.*, No. 02 Civ. 1989 (DAB), 2003 WL 21415287, at *2

(S.D.N.Y. June 18, 2003) (one purpose behind the PSLRA is "to ensure that 'parties with

significant holdings in issuers, whose interests are more strongly aligned with the class of

1    shareholders, will participate in the litigation and exercise control over the selection and actions

2    of plaintiff's counsel'") (citation omitted).  "Congress believed that this could best be achieved

3    by encouraging institutional investors to serve as lead plaintiffs."  *Id.  See also In re Cendant*

4    *Corp. Litig.*, 264 F.3d at 244 (Congress "anticipated and intended that [institutional investors]

5    would serve as lead plaintiffs.")[6]

6        Indeed, Congress deemed institutional investors "presumptively most adequate to serve

7    as lead plaintiffs in securities class actions."  *Greebel v. FTP Software, Inc.*, 939 F. Supp. at 63.

8    Furthermore, Congress believed that "increasing the role of institutional investors in class actions

9    would ultimately benefit shareholders and assist courts by improving the quality of

10   representation in securities class action."  *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221

11   (D.D.C. 1999); *Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (stating that Congress

12   wanted to encourage large, sophisticated institutional investors to direct securities class actions,

13   thereby supplanting the prior regime of "figurehead plaintiffs who exercise no meaningful

14   supervision of litigation").  Congress reasoned that the empowerment of institutional investors

15   would result in the appointment of lead plaintiffs that can best prosecute the claims and are best

16   able to negotiate with and oversee counsel.  *See In re Razorfish Inc. Sec. Litig.*, 143 F. Supp. 2d

17   304, 309 (S.D.N.Y. 2001) (stating that Congress intended that "institutional plaintiffs with

18   expertise in the securities market and real financial interests in the integrity of the market would

19   control the litigation . . . ."); *Gluck*, 976 F. Supp. at 548 ("The legislative history of the Reform

20   Act is replete with statements of Congress' desire to put control of such litigation in the hands of

21   large, institutional investors").

22       This presumption is rooted in Congress' belief that "increasing the role of institutional

23   investors in class actions will ultimately benefit the class and assist the courts."  S. Rep. No. 104-

24   98, at 11 (1995).  In reaching this conclusion, Congress reasoned that:

25   _____

26   [6]  *See also Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (institutional investors
     are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA]
27   lead plaintiff requirements . . ."); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1020
     (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional
28   investor").

1    Institutions' large stakes give them an incentive to monitor, and institutions have

2    or readily could develop the expertise necessary to assess whether plaintiffs'

3    attorneys are acting as faithful champions for the plaintiff class.

4  Elliot J. Weiss & John S. Beckerman, *Let The Money Do The Monitoring:  How Institutional*

5  *Investors Can Reduce Agency Costs In Securities Class Actions*, 104 Yale L.J. 2053, 2095 (1995)

6  ("Weiss & Beckerman").   *See also* S. Rep. No. 104-98, at 11 n.32 (noting that Weiss &

7  Beckerman provided "the basis for the most adequate plaintiff provision").

8       The NJ Institutional Investors Group is ideally suited for the role as lead plaintiff.  The

9  NJ Institutional Investors Group has purchased more than 35,800 in Maxim common stock and

10  experienced approximately $244,231 in FIFO losses during the Class Period.  As a large

11  institutional investor with significant resources dedicated to overseeing and supervising the

12  prosecution of the litigation, the NJ Institutional Investors Group will be able to actively

13  represent the class and "drive the litigation" to ensure that the Class obtains the best recovery

14  possible and implement corporate governance changes to correct the environment which allowed

15  this fraud to take place and to prevent a recurrence ever again.  *See Gluck*, 976 F. Supp. at 549

16  (citation omitted).

17       Movant has the largest known financial interest, which gives it "an incentive to prosecute

18  the case vigorously." *Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004).  Accordingly,

19  Movant, in addition to having the largest financial interest, also *prima facie* satisfies the

20  typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements of Rule 23 of the Federal

21  Rules of Civil Procedure and, therefore, satisfy all elements of the Exchange Act's prerequisites

22  for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii).

23  **VI.  THE COURT SHOULD APPROVE MOVANT'S CHOICE OF LEAD COUNSEL**

24
       Movant's choice of Co-Lead Counsel satisfies the requirements of the PSLRA.  Pursuant
25
    to 15 U.S.C § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and
26
    retain counsel to represent the Class.  The Court should not disturb the Lead Plaintiff's choice of
27
    counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. § 78u-
28

4(a)(3)(B)(iii)(II)(aa).  *See also In re Cavanaugh*, 306 F.3d 726.  Movant has selected and retained Milberg to serve as Lead Counsel for the Class.[7]  Milberg possesses extensive experience litigating securities class actions and have successfully prosecuted numerous securities class actions on behalf of injured investors.  *See* Westerman Decl. Ex. D (firm résumé of Milberg).

Milberg, is ideally suited to serve as lead counsel in this litigation.  Milberg has extensive experience handling shareholder class actions and other complex litigation, and claims of the type asserted in this action.  Further, Milberg possesses vast resources, in terms of both financial ability and expertise, and has committed to put these resources to use for the benefit of stockholders like the Proposed Lead Plaintiff here.

Milberg has served as Lead or Co-Lead Counsel in many high profile class actions, recovering billions of dollars for investors and others harmed by corporate mismanagement, forcing a number of important corporate reforms.  Milberg currently serves as Lead Counsel or as chair of plaintiffs' executive committees in many high-profile securities actions pending throughout the country.  Milberg has been appointed as Lead or Co-Lead Counsel in landmark class actions, including *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998), where plaintiffs' recovery was the largest ever in an antitrust case, and is currently chairman of the Executive Committee appointed as Lead Counsel in *In re Initial Pub. Offering Sec. Litig.*, No. 21-mc-92 (S.D.N.Y. filed Aug. 9, 2001).  Other cases in which Milberg was responsible for obtaining outstanding recoveries for investors include *In re Tyco International Ltd., Sec. Litig.*, MDL Docket No. 02-1335-B (D.N.H. 2002) ($3.2 billion); *In re Nortel Networks Corp., Sec. Litig.*, No. 01-CV-1855 (S.D.N.Y.) ($1.1 billion); *In re Lucent Techs., Inc., Sec. Litig.*, No. 00-CV-621 (D.N.J.) ($600 million settlement); *In re Raytheon Sec. Litig.*, 99-CV-12142 (E.D. Mass.) ($460 million settlement); and *In re Sears, Roebuck & Co. Sec. Litig.*, No. 02-CV-7527 (N.D. Ill.) ($215 million settlement).

---

[7]  Movant has been advised that on May 18, 2006, Milberg, and 3 former named partners (who are no longer with the firm)  were indicted, the nature of the charges, and the status of those proceedings.

## VII.  CONCLUSION

For the reasons stated above, Movant satisfies the requirements of the PSLRA for appointment as the most adequate plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).  As the most adequate plaintiff, Movant respectfully requests that the Court: (1) appoint Movant as Lead Plaintiff pursuant to the PSLRA; (2) approve Movant's selection of Milberg as lead counsel in this action and in any subsequently filed and/or related cases; and (3) grant such other and further relief as the Court may deem just and proper.

DATED:  April 7, 2008

MILBERG LLP


_____/s/ Jeff S. Westerman_____
JEFF S. WESTERMAN
ELIZABETH P. LIN|
300 South Grand Ave - Suite 3900
Los Angeles, CA  90071
Telephone:  (213) 617-1200
Facsimile:  (213) 617-1975
E-mail: jwesterman@milberg.com
         elin@milberg.com

MILBERG LLP
ANITA KARTALOPOULOS
ANNE MARIE VU
One Pennsylvania Plaza - 49th Floor
New York, NY 10119
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229
E-mail: akartalopoulos@milberg.com
         avu@milberg.com

*Counsel for the Proposed Lead Plaintiff*

KROLL HEINEMAN, LLP
Albert G. Kroll
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, New Jersey 08830
Telephone:  (732) 491-2100
Facsimile:  (732) 491-2120
E-mail:  akroll@krollfirm.com

*Counsel for the Proposed Lead Plaintiff*

<u>DECLARATION OF SERVICE BY MAIL</u>

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, employed in the County of Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is One California Plaza, 300 South Grand Avenue, Suite 3900, Los Angeles, California 90071.

2.      That on April 7, 2008, declarant served the THE NEW JERSEY INSTITUTIONAL INVESTOR GROUP'S NOTICE OF MOTION AND MOTION FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL SELECTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF by depositing a true copy thereof in a United States mailbox at Los Angeles, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed on the attached Service List.

3.      That there is a regular communication by mail between the place of mailing and the places so addressed.

4.      That on the above date, declarant served via e-mail to: scac@law.stanford.edu.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of April, 2008, at Los Angeles, California.

_____
ELIZABETH VILLALOBOS

*Maxim Integrated Products, Inc.*
**SERVICE LIST**

Jeff S. Westerman
Elizabeth P. Lin
**MILBERG LLP**
300 South Grand Ave., Suite 3900
Los Angeles, CA  90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
Email: jwesterman@milberg.com
        elin@milberg.com

Anita Kartalopoulos
Anne Marie Vu
**MILBERG LLP**
One Pennsylvania Plaza, 49th Floor
New York, NY  10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229
Email: akartalopoulos@milberg.com
        avu@milberg.com

Albert G. Kroll
**KROLL HEINMAN, LLP**
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, NJ  08830
Telephone: (732) 491-2100
Facsimile: (732) 491-2120
Email: akroll@krollfirm.com

Lionel Z. Glancy
Peter A. Binkow
**GLANCY BINKOW & GOLDBERG LLP**
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

Laurence Rosen
Phillip Kim
**THE ROSEN LAW FIRM, P.A.**
350 Fifth Avenue, Suite 5508
New York, NY  10118
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: lrosen@rosenlegal.com
        pkim@rosenlegal.com

*Defendants:*

**MAXIM INTEGRATED PRODUCTS, INC.**
Attention: Legal Department
120 San Gabriel Drive
Sunnyvale, CA  94086
Telephone: (408) 737-7600
Facsimile: (408) 737-7194

John F. Gifford
Carl W. Jaspar
**C/O MAXIM INTEGRATED PRODUCTS, INC.**
Attention: Legal Department
120 San Gabriel Drive
Sunnyvale, CA  94086
Telephone: (408) 737-7600
Facsimile: (408) 737-7194