1  BERNSTEIN LITOWITZ BERGER
       & GROSSMANN LLP
2  BLAIR A. NICHOLAS   (Bar No. 178428)
   TIMOTHY A. DELANGE   (Bar No. 190768)
3  TAKEO A. KELLAR   (Bar No. 234470)
   12481 High Bluff Drive, Suite 300
4  San Diego, CA 92130
   Tel:    (858) 793-0070
5  Fax:    (858) 793-0323
   blairn@blbglaw.com
6  timothyd@blbglaw.com
   takeok@blbglaw.com
7

CHITWOOD HARLEY HARNES LLP
MARTIN D. CHITWOOD
(To Be Admitted *Pro Hac Vice*)
JAMES M. WILSON, JR.
(To Be Admitted *Pro Hac Vice*)
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel:    (404) 873-3900
Fax:    (404) 876-4476
mchitwood@chitwoodlaw.com
jwilson@chitwoodlaw.com
            -and-
8  GREGORY E. KELLER
   (To Be Admitted *Pro Hac Vice*)
9  11 Grace Avenue, Suite 306
   Great Neck, New York  11021
10 Tel:    (516) 773-6090
   Fax:    (404) 876-4476
   gkeller@chitwoodlaw.com

11

12 *Attorneys for Proposed Lead Plaintiffs The*
   *Cobb County Government Employees' Pension*
13 *Plan, the DeKalb County Pension Plan and the*
   *Mississippi Public Employees Retirement*
   *System*

14

15              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
16                    **SAN JOSE DIVISION**

17 ALLAN QUERY, Individually and on Behalf       Case No. C-08-00832-PVT
   of All Others Similarly Situated,
18                                                CLASS ACTION
                    Plaintiff,
19                                                MEMORANDUM OF LAW IN SUPPORT OF
        v.                                        MOTION BY THE COBB COUNTY
20                                                GOVERNMENT EMPLOYEES' PENSION
   MAXIM INTEGRATED PRODUCTS, INC.,               PLAN, THE DEKALB COUNTY PENSION
21 JOHN F. GIFFORD and CARL W. JASPER             PLAN AND THE MISSISSIPPI PUBLIC
                                                  EMPLOYEES RETIREMENT SYSTEM FOR
22                  Defendants.                   APPOINTMENT OF LEAD PLAINTIFFS AND
                                                  APPROVAL OF LEAD PLAINTIFFS'
23                                                SELECTION OF CO-LEAD COUNSEL

24
                                                  Date:          May 13, 2008
25                                                Time:          10:00 A.M.
                                                  Courtroom:     5, 4th Floor
26                                                Judge:         Hon. Patricia V. Trumbull

27

28

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD
PLAINTIFFS AND APPROVAL OF CO-LEAD COUNSEL
CASE NO. C-08-00832-PVT

1

# TABLE OF CONTENTS

2

Page

3   I.    PRELIMINARY STATEMENT ........................................................................................1

4   II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

5   III.  ARGUMENT.....................................................................................................................3

6         A.   The Public Funds Group Should Be Appointed Lead
               Plaintiffs..................................................................................................................3

7
               1.   The Public Funds Group Believes That It Has The
8                   Largest Financial Interest In The Relief Sought By
                    The Class...................................................................................................4

9
               2.   The Public Funds Group Otherwise Satisfies The
10                  Requirements Of Rule 23...........................................................................5

11        B.   This Court Should Approve The Public Funds Group's
               Choice Of Co-Lead Counsel....................................................................................8

12
    IV.   CONCLUSION.................................................................................................................9

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2    Case                                                                                                    Page

3    *Armour v. Network Assocs.*,
        171 F. Supp. 2d 1044 (N.D. Cal. 2001) ........................................................................ 8
4

5    *In re Baan Co. Sec. Litig.*,
        186 F.R.D. 214 (D.D.C. 1999).......................................................................................... 7
6

7    *Bowman v. Legato Sys.*,
        195 F.R.D. 655 (N.D. Cal. 2000)) ................................................................................. 8

8    *In re Cavanaugh*,
        306 F.3d 726 (9th Cir. 2002) ..................................................................................... 3, 5
9

10   *In re Cendant Corp. Litig.*,
        264 F.3d 201 (3d Cir. 2001)........................................................................................... 3
11

12   *In re Cephalon Sec. Litig.*,
        No. CIV. A. 96-cv-0633, 1996 WL 515203 (E.D. Pa. Aug. 27, 1996) ....................... 7

13   *Gluck v. CellStar Corp.*,
        976 F. Supp. 542 (N.D. Tex. 1997) ............................................................................. 8
14

15   *Greebel v. FTP Software, Inc.*,
        939 F. Supp. 57 (D. Mass. 1996) .................................................................................. 8
16

17   *Hanon v. Dataproducts Corp.*,
        976 F.2d 497 (9th Cir. 1992) ........................................................................................ 5
18

19   *Lax v. First Merchs. Acceptance Corp.*,
        No. C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ..................... 3, 4

20   *In re Olsten Corp. Sec. Litig.*,
        3 F. Supp. 2d 286 (E.D.N.Y. 1998) .............................................................................. 4
21

22   *In re Oxford Health Plans, Inc. Sec. Litig.*,
        182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................................... 7
23

24   *Richardson v. TVIA, Inc.*,
        No. 06-07307, 2007 U.S. Dist. LEXIS 28406 (N.D. Cal. April 16, 2007)........... 4, 5, 6
25

26   *Ruland v. Infosonics Corp.*,
        No. 06-CV-1231 (BTM), 2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006)................. 6

27

28

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD
PLAINTIFFS AND APPROVAL OF CO-LEAD COUNSEL
CASE NO. C-08-00832-PVT

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) ...........................................................................................5

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .................................................................................................6

<u>Statutes</u>

15 U.S.C. § 78u-4(a)(3) ............................................................................................................*passim*

1    The Cobb County Government Employees' Pension Plan (the "Cobb Fund"), the DeKalb

2  County Pension Plan (the "DeKalb Fund") and the Mississippi Public Employees Retirement System

3  ("Mississippi PERS") (collectively, the "Public Funds Group") respectfully move this Court for an

4  order: (a) appointing the Public Funds Group as Lead Plaintiff pursuant to the Private Securities

5  Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4; and (b) approving its selection of

6  Chitwood Harley Harnes LLP ("Chitwood") and Bernstein Litowitz Berger & Grossmann LLP

7  ("Bernstein Litowitz") as Co-Lead Counsel for the Class.

8  **I.       PRELIMINARY STATEMENT**

9    Pending before this Court is a securities class action lawsuit brought on behalf of all persons

10  and entities that purchased or otherwise acquired the common stock of Maxim Integrated Products

11  ("Maxim" or the "Company") during the class period from April 29, 2003 through January 17, 2008,

12  inclusive (the "Class Period").  Pursuant to the PSLRA, this Court must appoint the "most adequate

13  plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required

14  to determine which movant has the "largest financial interest" in the relief sought by the Class in this

15  litigation and also make a *prima facie* showing that it is an adequate class representative under Rule 23

16  of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

17    The Public Funds Group believes that it is the "most adequate plaintiff" as defined by the

18  PSLRA and should be appointed Lead Plaintiff for this action.  Specifically, the Public Funds Group

19  suffered approximately $9,221,709[1] in losses as a result of its purchases of shares of Maxim.[2]  The

20  Public Funds Group is, moreover, comprised of sophisticated public institutional investors, experienced

21  in conducting and supervising counsel in complex securities litigation, and is therefore the paradigmatic

22

23  _____

24  [1] The Public Fund Group's total FIFO losses are $9,221,709 and LIFO losses are $6,697,610.  FIFO and
    LIFO are defined below.

25
    [2] A copy of the Certifications of the Public Funds Group are attached as Ex. A to the Declaration of
26  Blair A. Nicholas ("Nicholas Decl."), filed herewith.  As required by the PSLRA, these Certifications
    set forth the transactions of each member of the Public Funds Group in Maxim stock during the Class
27  Period.  In addition, a chart reflecting the calculation of the Public Funds Group's financial losses on
    Maxim stock is attached as Ex. B to the Nicholas Decl.
28

1  Lead Plaintiff under the PSLRA.  Accordingly, the Public Funds Group respectfully submits that it

2  should be appointed Lead Plaintiff.

3  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

4       Maxim is a semiconductor manufacturer that designs, develops, and manufactures analog,

5  mixed-signal, high-frequency, and digital circuits.  The complaint on file alleges that Defendants issued

6  a series of materially false and misleading statements or failed to disclose material adverse information

7  regarding Maxim's stock option granting practices.

8       During the Class Period, Defendants regularly used employee stock options as a form of

9  compensation to recruit, retain, and incentivize employees and compensate members of the Company's

10 Board of Directors.  Stock options were vital to Maxim's overall compensation for key employees.

11 Maxim competed against other rival high-technology companies for engineering employees and

12 attempted to best the competition by offering large amounts of stock-based compensation.  Maxim's

13 ability to recruit and retain engineers was largely tied to its ability to grant lucrative stock options.  In

14 turn, Maxim attributed its earnings growth to its competitive advantage based on its options practices

15 and low compensation expenses.  Defendants repeatedly emphasized Maxim's recruitment capabilities

16 and reduced compensation expenses.

17      For instance, each option gave the grantee the right to buy Maxim common stock from the

18 Company at a set price, called the "exercise" or "strike" price, on a future date after the option vested.

19 Under Generally Accepted Accounting Principles ("GAAP"), Maxim did not need to record an expense

20 for options granted to employees with an exercise price equal to the current market price ("at-the-

21 money").  However, the Company was required to record an expense in its financial statements for any

22 options granted with an exercise price below the current market price ("in-the-money").  In order to

23 provide Maxim's employees and outside directors with valuable "in-the-money" options without

24 recording an expense, Defendants routinely backdated stock options to dates corresponding to historical

25 lows in Maxim's stock price and falsified records to make it appear as though the options were granted

26 "at-the-money."  In turn, during the Class Period, Maxim issued materially false and misleading

27

28

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD
PLAINTIFFS AND APPROVAL OF CO-LEAD COUNSEL                                                           -2-
CASE NO. C-08-00832-PVT

1    statements and financial information in violation of GAAP because Maxim failed to record

2    compensation expenses associated with undisclosed grants of "in-the-money" stock options.

3    On January 17, 2008, the last day of the Class Period, Maxim announced that it had failed to

4    properly account for almost $650 million of stock option compensation expenses and would restate its

5    financials by lowering earnings approximately $360 million to $425 million as a result of the stock

6    options backdating.  On this news, the price of Maxim stock plummeted from $23.63 per share on

7    January 16, 2008, to close at $18.07 per share on January 22, 2008 – a drastic 23% drop over a three-

8    day period.

9    The complaint in this action was filed on February 6, 2008.  That same day, the first notice of

10    pendency of this action was published.[3]  The PSLRA permits any member of the purported class to

11    move for appointment as Lead Plaintiff within 60 days of the publication of the first notice of the filing

12    of a securities class action.  *See* 15 U.S.C. § 78u-4(a)(3)(A).  The Public Funds Group satisfies this

13    deadline by making this motion.

14    **III.    ARGUMENT**

15    **A.    The Public Funds Group Should Be Appointed Lead Plaintiff**

16    The Public Funds Group respectfully submits that it should be appointed Lead Plaintiff because

17    it is the movant "most capable of adequately representing the interests of class members."  15 U.S.C. §

18    78u-4(a)(3)(B)(i).  The PSLRA establishes a presumption that the "most adequate plaintiff" is the

19    movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies

20    the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(3)(B); *see*

21    *also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262

22    (3d Cir. 2001); *Lax v. First Merchs. Acceptance Corp.*, No. C 2715, 1997 U.S. Dist. LEXIS 11866, at

23    *3 (N.D. Ill. Aug. 6, 1997) (members of moving group with largest collective financial interest were

24    presumptive lead plaintiffs).

25

26

27    _____

28    [3] This notice is attached as Ex. C to the Nicholas Decl.

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD
PLAINTIFFS AND APPROVAL OF CO-LEAD COUNSEL                                                        -3-
CASE NO. C-08-00832-PVT

**1.    The Public Funds Group Believes That It Has The
Largest Financial Interest In The Relief Sought By The Class**

The Public Funds Group should be appointed Lead Plaintiff because it has the largest financial interest in the relief sought by the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  Courts generally look to four factors (often referred to as the *Lax* analysis) in determining which movant has the largest financial interest in the litigation.  *Richardson v. TVIA, Inc.*, No. 06-07307, 2007 U.S. Dist. LEXIS 28406 (N.D. Cal. April 16, 2007) (noting that courts have typically considered the "*Olsten-Lax*" factors to determine who has the largest financial interest).  Under the four-factor analysis, courts consider the following to determine the largest financial interest: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered."  *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (citing *Lax*, 1997 U.S. Dist. LEXIS 11866 at \*17). The fourth factor of this "*Olsten-Lax*" analysis, "approximate loss," is generally considered the most important factor. *Richardson*, 2007 U.S. Dist. LEXIS 28406 at \*14.

The Public Funds Group purchased a total of 850,137 Maxim shares during the Class Period. The Public Funds Group sold 820,815 of these shares during the Class Period, and, therefore, had net purchases of 29,322 shares.  During the Class Period, the Public Funds Group had net expenditures of $7,245,001 on these purchases.  The Public Funds Group sustained approximate losses of $9,221,709 in connection with their investment in Maxim.[4]   The magnitude of the Public Funds Group's financial interest in this litigation can be summarized as follows:

---

[4] Courts recognize two principal methods for calculating losses for purposes of appointing a Lead Plaintiff under the PSLRA.  These are the "first in, first out" ("FIFO") method and the "last in, first out" ("LIFO") method.  Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward.  Under the alternative LIFO method, the sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward.  The Public Funds Group's above losses were calculated using the "first-in first-out" ("FIFO") method. The Public Funds Group's losses under the LIFO method are $6,697,610.  The Cobb Fund's losses are $459,287.64 under FIFO and $283,469.15 under LIFO. *See* Nicholas Decl. Ex. B.  The DeKalb Fund's losses are $1,758,189.91 under FIFO and LIFO. *Id*.  The Mississippi PERS's losses are $7,004,231.75 under FIFO and $4,655,950.94 under LIFO. *Id*.

| | (1) Number of shares purchased during class period | (2) Number of net shares purchased during class period | (3) Total net funds expended during class period | (4) Approximate losses suffered |
|---|---|---|---|---|
| Cobb County Government Employees' Pension Plan | 46,987 | 400 | $290,936 | $459,287.64 |
| DeKalb County Pension Plan | 150,600 | 0 | $1,758,189 | $1,758,189.91 |
| Mississippi Public Employees Retirement System | 652,550 | 28,922 | $5,195,876 | $7,004,231.75 |
| **TOTAL:** | **850,137** | **29,322** | **$7,245,001** | **$9,221,709** |

Based on these factors, the Public Funds Group is the presumptive "most adequate plaintiff" and should be appointed Lead Plaintiff in this action.

### 2.    The Public Funds Group Otherwise Satisfies The Requirements Of Rule 23

The Public Funds Group should be appointed Lead Plaintiff because it also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the proposed class representatives.  Consequently, the typicality and adequacy requirements of Rule 23(a) are the main focus in deciding a motion to appoint lead plaintiff, and examination of the remaining requirements is deferred until class certification. *See Richardson*, 2007 U.S. Dist. LEXIS 28406 at \*15 (citing *In re Cavanaugh*, 306 F.3d at 730).  Here, the Public Funds Group satisfies both requirements.

The Public Funds Group's claims are typical of the claims of other Class members. Generally, the test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)); s*ee also Richardson*, 2007 U.S. Dist. LEXIS 28406, at \*17 (typicality satisfied where the proposed lead plaintiff shared substantially similar questions of law and fact with other members of the class and the claims arose from the same course of conduct by defendants).  The Public Funds Group's claims in this action arise from the very same events and course of conduct as the claims of the other Class members – *i.e*., the artificial inflation and consequent market correction of the price of Maxim's stock caused by the false

1    and misleading disclosures during the Class Period pursuant to which the Public Funds Group and its

2    fellow class members all purchased Maxim's shares.  The Public Funds Group's claims are also

3    founded on precisely the same legal theories as the other class members.

4         The Public Funds Group likewise satisfies the adequacy requirement of Rule 23.  Under Rule

5    23(a)(4), the representative parties must fairly and adequately protect the interests of the class.  This

6    requirement is met if "there are no conflicts between the representative and class interests and the

7    representative's attorneys are qualified, experienced, and generally able to conduct the litigation."

8    *Richardson*, 2007 U.S. Dist. LEXIS 28406, at \*16 (citing Fed. R. Civ. P. 23(a)(4)); *Staton v. Boeing*

9    *Co.*, 327 F.3d 938, 957 (9th Cir. 2003)).  The Public Funds Group is adequate to represent the Class

10   because its interests are perfectly aligned with those of the other Class members and are not

11   antagonistic in any way.  As investors in the artificially inflated publicly traded stock of Maxim, and

12   having suffered substantial losses upon the Company's corrective disclosures, the Public Funds Group

13   has an identity of interest with its fellow Class members.[5]  There are no facts suggesting that any actual

14   or potential conflict of interest or other antagonism exists between the interests of the Public Funds

15   Group and other Class members.   As discussed below, the Public Funds Group's selection of highly

16   experienced law firms such as Chitwood and Bernstein Litowitz as counsel likewise demonstrates its

17   adequacy to oversee this action as the Lead Plaintiff.

18        The Public Funds Group also has a financial interest in the outcome of this case sufficient to

19   ensure vigorous advocacy.  *See, e.g., Ruland v. Infosonics Corp.*, No. 06-CV-1231 (BTM), 2006 U.S.

20   Dist. LEXIS 79144, at \*17-18 (S.D. Cal. Oct. 23, 2006) (finding adequate a proposed Lead Plaintiff

21   that "has [adequate] incentive to prosecute this action vigorously and states that he is willing to serve as

22   a representative on behalf of the class.").   As set forth above, the Public Funds Group suffered

23   _____

24   [5] Mississippi PERS has a record of success serving as a Lead Plaintiff in securities class actions. For
     example, Mississippi PERS is presently a Lead Plaintiff in the Delphi securities class action in the

25   Eastern District of Michigan, in which combined settlements with a value of over $322 million have
     received judicial approval.  In addition, Mississippi PERS served as lead plaintiff in *Ley v. Visteon*

26   *Corporation et al.*, Case No. 05-cv-70737 (E.D. Mich.) and *In re SCOR Holding (Switzerland) AG*
     *Securities Litigation*, Case No. 04-cv-7897 (S.D.N.Y.) within the past three years. These cases are not

27   listed on Mississippi PERS' Certification, however, because they were all filed prior to the three-year
     period preceding the date of the Certification. *See* 15 U.S.C. § 78u-4(a)(2)(A)(v).

28

1   substantial losses on its investments in Maxim sufficient to ensure a commitment to the vigorous

2   prosecution of this lawsuit.  The Public Funds Group has likewise submitted certifications affirming

3   each fund's understanding of the duties owed to Class members through their commitment to oversee

4   the prosecution of this Class action.  *See* Nicholas Decl., Ex. A.  Through these Certifications, the

5   members of the Public Funds Group accept their fiduciary obligations they will assume if appointed

6   Lead Plaintiffs in this action.

7       The Public Funds Group consists of three institutional investors who share the common goal of

8   pursuing this action and have a pre-existing relationship.  They have decided to serve together to

9   monitor and supervise their counsel and actively participate in the prosecution of this action.  *See*

10  Nicholas Decl., Ex. F, the Joint Declaration of J. Virgil Moon, Edmund Wall and George Neville in

11  Support of the Public Funds Group's Motion for Appointment as Lead Plaintiff.  As is evident from the

12  statutory language, a group of lead plaintiffs, especially a small group with a pre-existing relationship

13  who consulted independent of their attorneys' involvement, may be appointed under the Act, and

14  numerous courts have appointed small groups of plaintiffs as lead plaintiffs.  *See, e.g., In re Oxford*

15  *Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45 (S.D.N.Y. 1998) (appointing group of three as lead

16  plaintiffs and finding that the interests of the class would be best served by the group of lead plaintiffs

17  because of "the substantial benefits of joint decision-making and joint funding"); *In re Cephalon Sec.*

18  *Litig.*, No. CIV. A. 96-cv-0633, 1996 WL 515203, at \*1 (E.D. Pa. Aug. 27, 1996) ("Clearly, the Act

19  does not preclude appointing more than one lead plaintiff."); s*ee also* Memorandum of SEC, Amicus

20  Curiae attached to the court's opinion in *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999)

21  ("Construing the term 'group of persons' in light of the language and purposes of the Act, a court

22  generally should only approve a group [as lead plaintiff unless it is] small enough to be capable of

23  effectively managing the litigation and the lawyers.  The Commission believes that ordinarily this

24  should be no more than three to five persons, a number that will facilitate joint decision-making and

25  also help to assure that each group member has a sufficiently large stake in the litigation.").  The

26  appointment of the Public Funds Group as Lead Plaintiff is consistent with the language of the PSLRA,

27  case law authority, and the SEC's view on the subject.

28

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT OF LEAD
PLAINTIFFS AND APPROVAL OF CO-LEAD COUNSEL                                                    -7-
CASE NO. C-08-00832-PVT

1    Moreover, the inclusion of institutional investors, such as the Public Funds Group, to serve as

2    Lead Plaintiff is precisely what the framers of the PSLRA hoped to accomplish.  *See Armour v.*

3    *Network Assocs*., 171 F. Supp. 2d 1044, 1051 (N.D. Cal. 2001) (quoting *Bowman v. Legato Sys.*, 195

4    F.R.D. 655, 659 (N.D. Cal. 2000)) ("As an institutional investor with a large financial stake in the

5    outcome of this litigation, [Movant] 'is exactly the type of lead plaintiff envisioned by Congress when

6    it instituted the lead plaintiff requirements.'").  As noted in the House Conference Report, the PSLRA

7    was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because

8    among other reasons, institutional investors and other class members with large amounts at stake "will

9    represent the interests of the plaintiff class more effectively than class members with small amounts at

10   stake."  House Conference Report No. 104-369, 104th Cong. 1st Sess. at 34 (1995).  *See e.g., Gluck v.*

11   *CellStar Corp*., 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("The legislative history of the Reform Act is

12   replete with statements of Congress' desire to put control of such litigation in the hands of large,

13   institutional investors."); *Greebel v. FTP Software, Inc*., 939 F. Supp. 57, 63-64 (D. Mass. 1996)

14   (same).

15   **B.    This Court Should Approve The Public**
     **Funds Group's Choice Of Co-Lead Counsel**

16

17   The PSLRA vests authority in the lead plaintiff, subject to court approval, to select and retain

18   lead counsel.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should not disturb the proposed lead

19   plaintiff's choice of counsel unless necessary to "protect the interests of the [plaintiff] class."

20   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

21   Accordingly, the Public Funds Group has selected and retained Chitwood and Bernstein

22   Litowitz as Co-Lead Counsel, both of whom possess extensive experience in the area of securities

23   litigation and have successfully prosecuted numerous securities fraud actions on behalf of injured

24   investors.  *See* Résumés of Chitwood and Bernstein Litowitz (Nicholas Decl., Exs. D and E,

25   respectively).  Thus, the Court may be assured that, in the event this motion is granted, the members of

26   the class will receive the highest caliber of legal representation available.

27   Because there is nothing to suggest that the Public Funds Group or its counsel will not fairly

28   and adequately represent the Class, or that the Public Funds Group is subject to unique defenses, this

1   Court should appoint the Public Funds Group as Lead Plaintiff and approve its selection of Chitwood

2   and Bernstein Litowitz as Co-Lead Counsel for the Class.

3   **IV.    CONCLUSION**

4         For the foregoing reasons, the Public Funds Group respectfully requests that the Court: (i)

5   appoint the Public Funds Group as Lead Plaintiff pursuant to the PSLRA; (ii) approve the Public Funds

6   Group's selection of Chitwood Harley Harnes LLP and Bernstein Litowitz Berger & Grossmann LLP

7   as Co-Lead Counsel for the Class; and (iii) grant such other and further relief as the Court may deem

8   just and proper.

9   Dated: April 7, 2008                             Respectfully submitted,

10                                                    BERNSTEIN LITOWITZ BERGER
                                                        & GROSSMANN LLP
11
                                                        /s/ *Blair A. Nicholas*
12                                                      BLAIR A. NICHOLAS

13                                                    BLAIR A. NICHOLAS
                                                      TIMOTHY A. DELANGE
14                                                    TAKEO A. KELLAR
                                                      12481 High Bluff Drive, Suite 300
15                                                    San Diego, CA 92130
                                                      Tel:    (858) 793-0070
16                                                    Fax:    (858) 793-0323

17                                                    CHITWOOD HARLEY HARNES LLP
                                                      MARTIN D. CHITWOOD
18                                                    JAMES M. WILSON, JR.
                                                      2300 Promenade II
19                                                    1230 Peachtree Street, N.E.
                                                      Atlanta, Georgia 30309
20                                                    Tel:    (404) 873-3900
                                                      Fax:    (404) 876-4476
21                                                    mchitwood@chitwoodlaw.com
                                                      jwilson@chitwoodlaw.com
22                                                            -and-
                                                      GREGORY E. KELLER
23                                                    11 Grace Avenue, Suite 306
                                                      Great Neck, New York  11021
24                                                    Tel:    (516) 773-6090
                                                      Fax:    (404) 876-4476
25                                                    gkeller@chitwoodlaw.com

26                                                    *Proposed Co-Lead Counsel and Attorneys for Proposed
                                                      Lead Plaintiffs The Cobb County Government Employees'*
27                                                    *Pension Plan, the DeKalb County Pension Plan and the
                                                      Mississippi Public Employees Retirement System*

28