IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re Maxim Integrated Products, Inc. Securities Litigation. | NO. C 08-00832 JW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MAXIM'S MOTION TO DISMISS WITH LEAVE TO AMEND; DENYING DEFENDANT TIMOTHY RUEHLE'S MOTION TO DISMISS** |

## I. INTRODUCTION

Plaintiffs[1] bring this putative securities fraud class action on behalf of investors who acquired publicly traded securities of Maxim Integrated Products, Inc. ("Maxim") between April 29, 2003 and January 17, 2008 (the "Class Period") against Maxim and several former Maxim officers and directors (collectively, "Defendants"),[2] alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities Exchange Commission ("SEC") Rule 10b-5. Plaintiffs allege that, from 1994 to 2008, Defendants participated in the large-scale and systematic backdating of Maxim stock options, which resulted in the issuance of false and misleading financial statements and the artificial inflation of Maxim's stock price.

---

[1] Lead Plaintiffs are the Cobb County Government Employees' Pension Plan, the DeKalb County Pension Plan, and the Mississippi Public Employees Retirement System. (See Docket Item No. 129.)

[2] The individual Defendants are John Gifford, Carl W. Jasper and Timothy Ruehle. (See Docket Item No. 129.) On January 21, 2009, Counsel for Gifford filed a Statement of Death of Defendant Gifford. (See Docket Item No. 163.) On April 28, 2009, the Court granted the parties' stipulated motion to substitute Gifford's estate ("the Estate") as a Defendant in this action. (See Docket Item No. 197.)

Presently before the Court are Defendant Maxim's Motion to Dismiss[3] and Defendant Timothy Ruehle's Motion to Dismiss.[4] The Court found it appropriate to take the motions under submission without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court GRANTS in part and DENIES in part Defendant Maxim's Motion to Dismiss and DENIES Defendant Timothy Ruehle's Motion to Dismiss.

## II. BACKGROUND

### A. Stock Option Granting, Dating and Pricing

A stock option granted to an employee of a corporation allows the employee to purchase at some future date a specified number of shares of corporate stock at a specified price, called the "exercise price." If the exercise price is the same as the market price of the stock on the date the option is granted, the option is said to be "at-the-money." Under Generally Accepted Accounting Principles ("GAAP"), a company that grants an option "at-the-money" is not required to record the grants as compensation expenses. On the other hand, if the exercise price of the option is less than the market price of the stock on the date the option is granted, the option is said to be "in-the-money." Under GAAP, the company must record a compensation expense for the "in-the-money" option grant, equal to the difference between the exercise price and the market price of the stock on

---

[3] (Defendant Maxim Integrated Products, Inc.'s Notice of Motion and Motion to Dismiss the Consolidated Class Action Complaint and Memorandum of Points and Authorities in Support, hereafter, "Maxim Motion," Docket item No. 165.) Defendants Carl W. Jasper and the Estate of John Gifford have joined in Maxim's Motion to Dismiss. (Defendant Carl W. Jasper's Notice of Joinder and Joinder to Maxim Integrated Products, Inc's Motion to Dismiss the Consolidated Class Action Complaint, Docket Item No. 168; Defendant Estate of John Gifford's Joinder to Maxim Integrated Products, Inc's Motion to Dismiss, hereafter, "Estate Joinder," Docket Item No. 195.) Although the Estate provides a discussion of the adequacy of Plaintiffs' scienter allegations with respect to John Gifford, Plaintiffs and the Estate agree that the Court need not consider that issue since the Estate is "merely joining" in Defendant Maxim's Motion. (Estate Joinder at 1; Lead Plaintiffs' Response to Defendant Estate of John F. Gifford's Joinder to Maxim Integrated Products Inc.'s Motion to Dismiss the Consolidated Class Action Complaint at 2, Docket Item No. 203.)

[4] (Defendant Timothy Ruehle's Notice of Motion and Motion to Dismiss Consolidated Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), hereafter, "Ruehle Motion," Docket Item No. 169.)

2

the date the option is granted. Walter L. Lukken and James A. Overdahl, Financial Product Fundamentals: A Guide for Lawyers § 18:2 (5th ed. 2004).

**B.** **Stock Option Backdating**

"Stock option backdating" is a phrase that describes a practice in which the record of the option grant deviates from the actual grant date. A stock option is said to have been "backdated" if it was actually granted on one date, but the option itself is dated and is "recorded" on the books of the company as granted on an earlier date. Backdating a stock option is not necessarily improper. Backdating may be improper, however, if the practice misleads shareholders. For example, if the grant date of a stock option to an employee is backdated to a date when the market price was lower than the market price on the actual grant date, the option would be "in-the-money." If the company does not record and report a compensation expense as required by GAAP, any subsequently issued financial statement would be misleading. See 6 Bromberg & Lowenfels on Securities Fraud § 17:1 (2d ed. 2007).

**C.** **Factual Allegations**

In a Consolidated Complaint[5] filed on November 14, 2008, Plaintiffs allege as follows:

> Defendant Maxim is a Delaware Corporation headquartered in Sunnyvale, California. (Consolidated Class Action Complaint ¶ 23, hereafter, "Consolidated Complaint," Docket Item No. 129.) Maxim is a worldwide leader in the design, development and manufacture of mixed-signal, high-frequency, and digital circuits that enable interface between digital processors and the physical world. (Consolidated Complaint ¶ 2.) Defendant John F. Gifford ("Gifford") is Maxim's former CEO, President and Chairman of the Board from April 1983 to December 2006. (Id. ¶ 24(a).) Defendant Carl W. Jasper ("Jasper") served as Maxim's Vice President and CFO from April 1999 to January 2007. (Id. ¶ 25(a).)

---

[5] On May 15, 2008, Plaintiffs and Lead Counsel were appointed pursuant to 15 U.S.C. § 78u-4(a). (See Docket Item No. 110.)

3

1  Defendant Timothy Ruehle is Maxim's former Managing Director and Treasurer. (Id. ¶ 26(a).)

Since 1994, Defendants engaged in stock option backdating by exercising options that were "in-the-money" numerous times. (Consolidated Complaint ¶¶ 2-4.) To disguise the cost of backdating options from shareholders, Maxim repeatedly failed to properly record a compensation expense for its issuance of "in-the-money" options. (Id. ¶ 5.) Until January 17, 2008, Defendants made false and misleading statements regarding their backdating practices through the issuance of financial statements, press releases and conference calls. (Id. ¶ 6.) These statements were false and misleading in that they failed to disclose that Defendants were regularly and consistently backdating stock options such that they were "in-the-money," and they failed to properly record compensation expenses associated with their backdating practices. (Id. ¶ 128.)

Defendants' materially false and misleading statements caused Maxim's stock price to become improperly inflated. (Consolidated Complaint ¶¶ 12, 293-94.) As a result of the truth regarding Defendants' materially false and misleading statements being revealed, the artificial price inflation was removed from the price of Maxim shares, causing Plaintiffs, who purchased Maxim shares during the Class Period, to suffer economic loss. (Id. ¶ 295.) By the time Maxim issued its final corrective disclosure on January 17, 2008, Defendants' fraudulent scheme to improperly inflate stock prices had resulted in a multi-billion dollar market capitalization loss. (Id. ¶¶ 12, 293-94.)

On September 30, 2008, Maxim issued its final restatement, revealing that $773.5 million in additional stock-based compensation expenses were recorded. (Consolidated Complaint ¶ 105.)

Presently before the Court are Defendant Maxim's Motion to Dismiss and Defendant Ruehle's Motion to Dismiss.

## III. STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Any existing ambiguities must be resolved in favor of the pleading. Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also, McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. __ , 127 S. Ct. 1955, 1974 (2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

Claims brought under Section 10(b) of the Exchange Act and Rule 10b-5 must meet the particularity requirements of Federal Rule of Civil Procedure 9(b). In re Daou Sys., Inc. Sec. Litig., 411 F.3d 1006, 1014 (9th Cir. 2005). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

Moreover, claims brought under Section 10(b) and Rule 10b-5 must also meet the stringent pleading standards of the Private Securities Litigation Reform Act of 1995. The PSLRA amends the Exchange Act to require that a private securities fraud litigation complaint "plead with particularity both falsity and scienter." In re Daou, 411 F.3d at 1014. Specifically, a complaint alleging securities fraud must "specify each statement alleged to have been misleading, the reason or reasons

why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1085 (9th Cir. 2002).

To plead a violation of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, a plaintiff must allege that (1) defendants made a material misrepresentation or omission; (2) the misrepresentation was in connection with the purchase or sale of a security; (3) the misrepresentation caused plaintiff's loss; (4) plaintiff relied on the misrepresentation or omission; (5) defendants acted with scienter; and (6) plaintiff suffered damages. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005). Each of these elements must be pleaded as to each defendant. Id.

## IV. DISCUSSION

### A. Defendant Maxim's Motion to Dismiss

Defendant Maxim moves to dismiss Plaintiffs' Consolidated Complaint on the grounds that (1) Plaintiffs have failed to adequately plead economic loss caused by the revelation of prior misrepresentations, and (2) that Plaintiffs have failed to adequately plead reliance on Maxim's misrepresentations following a January 31, 2007 corrective disclosure. (Motion at 1-2.) The Court considers each issue in turn.

#### 1. Loss Causation

The parties dispute whether Plaintiffs adequately allege loss causation with respect to three categories of disclosures: (1) Pre-January 31, 2007 disclosures, (2) Maxim's January 31, 2007 Announcement, and (3) Post-January 31, 2007 disclosures.

##### a. Pre-January 31, 2007 Disclosures

Maxim contends that Plaintiffs fail to adequately allege loss with respect to any information disclosed prior to January 31, 2007 because none of the alleged disclosures were "corrective" with regard to Maxim's option-related accounting irregularities. (Motion at 10.)

6

To adequately plead loss causation, a plaintiff must allege a causal connection between the defendant's material misrepresentation and the plaintiff's loss; that is, the "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." 15 U.S.C. § 78u-4(b)(4); Dura Pharm., 544 U.S. at 341; Lentell v. Merrill Lynch & Co., 396 F.3d 161, 173 (2d Cir. 2005). The plaintiff "must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss." Lentell, 396 F.3d at 173 (quoting Suez Equity Investors, L.P. v. Toronto Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001) (emphasis in original.)).

While it appears that a plaintiff's allegations of loss causation need only meet the pleading requirements of Rule 8(a)(2), the allegations must still provide the defendant fair notice of the grounds upon which the plaintiff's claim rests. Dura, 544 U.S. at 347. Thus, if the plaintiff alleges a fraud on the market, a mere allegation of an inflated purchase price is insufficient to plead that the fraud constituted or proximately caused a relevant economic loss. Id. at 342-43. Pleading loss causation under the fraud on market theory requires a plaintiff to (1) identify the fraudulent statement that causes the stock price to increase, (2) identify the statements or acts which revealed to the market that the statement was fraudulent, and (3) show a decline in stock price after the revelation. See id. at 346; In re Daou, 411 F.3d at 1025-26.

When identifying corrective statements that reveal the fraud, a plaintiff must identify disclosures revealing more than a "'risk' or 'potential' for widespread fraudulent conduct." Metzler Investment Gmbh v. Corinthian Colleges, Inc., 540 F.3d 1049, 1063-64 (9th Cir. 2008). A corrective disclosure must reveal some aspect of the alleged fraud to the market. See Lentell, 396 F.3d at 175. A plaintiff need not identify an actual admission or finding of fraud. Metzler, 540 F.3d at 1064. However, a plaintiff cannot plead loss causation through "euphemism," and avoid alleging the necessary connection between a defendant's alleged fraud and the plaintiff's loss. Id.; see also In re Hansen natural Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007).

In this case, the alleged fraudulent activity consists of a series of alleged misrepresentations that fail to disclose that Defendant Maxim regularly engaged in backdating stock options, and failed to properly record compensation expenses related to its backdating practices. (Consolidated Complaint ¶ 128.) For example, Plaintiffs allege that Maxim's May 12, 2003 SEC Form 10-Q filing stated that:

> [Maxim] has elected to follow APB Opinion No. 25, Accounting for Stock Issued to Employees, and related interpretations in accounting for the stock options granted to employees and directors. Accordingly, employee and director compensation expense is recognized only for those options whose price is less than fair market value a the measurement date.

(Id. ¶ 131.) Plaintiffs further allege that the foregoing representation is false in that it omits the fact that Maxim was backdating stock options at prices below the fair market value of Maxim's common stock at the time of the grant, and omits that Maxim did not record a compensation expense to account for the difference between the exercise price and the fair market value price despite engaging in such backdating. (Id. ¶ 133.) According to Plaintiffs, these fraudulent statements "caused Maxim's net income, operating income and earnings per share to be materially inflated during the Class Period." (Id. ¶ 293.)

With respect to Pre-January 31, 2007 corrective disclosures, Plaintiffs' allege the following key disclosures[6]:

- A May 22, 2006 analyst report issued by Merrill Lynch identifying companies whose options granting practices have "consistently generated excess returns," and identifying Maxim as a "standout" company with regard to its "aggressive" options dating practices.[7] (Consolidated Complaint ¶ 297.)

---

[6] The Court examines these disclosures by way of example. Plaintiffs have alleged other corrective disclosures which have been considered by the Court, and are typified by the disclosures expressly considered in this Order. (See Consolidated Complaint ¶¶ 293-310.)

[7] Although Plaintiffs characterize the Merrill Lynch Report as placing Maxim on a list of "the worst backdating offenders," a careful review of the Report reveals that it only assesses the extent to which options pricing out-performs overall returns. (Declaration of Joshua S. Amsel in Support of Defendant Maxim Integrated Products, Inc.'s Motion to Dismiss the Consolidated Class Action Complaint, Ex. D, hereafter, "Amsel Decl.," Docket Item No. 166.) The Merrill Lynch Report emphasizes that it is "not taking any position in this report on whether companies have actually backdated options . . . ." (Id., Ex. D.)

- On May 23, 2006, a Credit Suisse analyst stated that "[g]iven [Maxim's] aggressive stance on options and options accounting, we expect options to be the most contentious issue of the [upcoming May 24, 2006 analyst] day." (Consolidated Complaint ¶ 298.)

- On June 7, 2006, Maxim announced that it had received notice that the SEC was conducting an informal inquiry into Maxim's stock option backdating. (Consolidated Complaint ¶ 300.)

- On July 3, 2006, Maxim announced that it had "received a subpoena from the U.S. Attorney for the Northern District of California asking for documents relating to its stock option grants and practices." Further, Maxim announced that its Board of Directors had authorized a review of Maxim's stock option grant practices by a "Special Committee of the Board with the assistance of outside independent legal counsel." (Consolidated Complaint ¶ 302.)

- On July 5, 2006, a Citigroup Research analyst downgraded Maxim stock from "buy" to "hold" and increased its risk rating from "High" to "Speculative," based in part on "unfavorable backdating exposure" and Maxim's "recent announcements of SEC inquiries and subsequently higher risk for potential earnings restatement and/or SEC filings delays." (Consolidated Complaint ¶ 302.) The report further explained that its "rating incorporates stock option grant analysis that suggests the company may have engaged in aggressive practices" and "the company's options grants could cause further pressure to the shares and potentially result in a financial restatement." (Id. ¶ 304.)

- On September 7, 2006, Maxim disclosed that it would be unable to file its SEC Form 10-K for the year ended June 24, 2006 because the Board's Special Committee had not completed its review of certain past stock option grants. (Consolidated Complaint ¶ 306.)

- On September 28, 2006, Maxim announced that it had received a letter from NASDAQ regarding a violation of NASDAQ Marketplace Rule 4310(c)(14) "as a result of the delay in the filing of Maxim's Annual Report on Form 10-K for the fiscal year ended June 24, 2006 with the [SEC]." (Consolidated Complaint ¶ 308.)

While each of these disclosures provides notice that Maxim *may* have illicitly backdated stock options, none of them goes beyond speculation. In In re Daou Systems, the Ninth Circuit found that, among other disclosures, an anonymous stock analyst's statement opining that a company was "manufacturing earnings" was sufficient to plead loss causation based on a corrective disclosure. 411 F.3d at 1026. In contrast, the analyst reports identified by Plaintiffs here indicate only a "risk for potential earnings restatement," that Maxim "may have engaged in aggressive practices," and that backdating could be expected to be a "contentious issue" when being rated by other analysts. Such speculative statements are insufficient under Ninth Circuit law. See e.g., Teamsters Local 617

Pension and Welfare Funds v. Apollo Group, Inc., — F.R.D. —, 2009 WL 890479, at *52-58 (D. Ariz. Mar. 31, 2009).

Similarly, Maxim disclosures regarding compliance with an SEC investigation, subpoenas from the United States Attorney's office, and the formation of its own Special Committee to investigate options granting practices do not reveal the alleged fraud. In re Hansen Natural Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007). A reasonable investor may view these disclosures as indicators of risk because they reveal the potential existence of future corrective information. However, they do not themselves indicate anything more than a "risk" or "potential" that Defendants engaged in widespread fraudulent conduct. Thus, the Court finds that these statements are not corrective disclosures for which Plaintiffs can plead loss causation.

Accordingly, the Court GRANTS Defendant Maxim's Motion to Dismiss as to Maxim's alleged Pre-January 31, 2007 disclosures.

### b. Maxim's January 31, 2007 Announcement

Defendant Maxim concedes that on January 31, 2007, Maxim issued a corrective disclosure by announcing the findings of its Special Committee investigation. (Motion at 8.) However, Maxim contends that Plaintiffs fail to allege that Maxim's stock price fell as a result of the January 31, 2007 Announcement. (Id. at 9.) Specifically, Maxim submits historical opening and closing stock prices indicating that the following day, February 1, 2007, Maxim's stock price increased by $0.93 (or 3%). (Id.)

A plaintiff's allegations of economic loss are sufficient if the facts alleged, when assumed to be true, raise "a reasonable expectation that discovery will reveal evidence of loss causation." In re Gilead Sciences Securities Litigation, 536 F.3d 1049, 1057 (2008) (quoting Twombly, 127 S. Ct. at 1965) (internal quotations omitted)). There is no bright-line rule requiring an immediate market reaction. Id. at 1057-58. "A limited temporal gap between the time a misrepresentation is publicly revealed and the subsequent decline in stock value does not render a plaintiff's theory of loss

causation *per se* implausible." Id. at 1058. A court must evaluate the plausibility of the specific facts alleged. Id.

Here, Plaintiffs allege that on January 31, 2007, Maxim announced the following:

> [T]here were deficiencies related to the process for granting stock options to employees and directors during the period under review and, specifically, that in certain instances from the beginning of fiscal year 2000 until the end of fiscal year 2006, the recorded exercise price of certain stock option grants to employees and directors differed from the fair market value of the underlying shares on the actual measurement date.
>
> [Maxim] believes that accounting adjustments to previously issued financial statements to reflect stock-based compensation at measurement dates different from the original measurement dates used for certain grants to employees and directors are material and expects to restate its financial statements for the fiscal years 2000 through 2005 and the related interim periods through March 25, 2006.
>
> [Maxim] has not yet determined the amount to be restated in any specific period, nor has the Company determined the tax consequences that may result from these matters or whether any tax consequences will give rise to additional tax liabilities. Accordingly, the financial statements, and the related reports of its independent registered accountants, and all earnings press releases and similar communications issued by the Company relating to the periods discussed above . . . should not be relied on.

(Consolidated Complaint ¶ 311.) Further, Plaintiffs allege that a series of disclosures occurred from March 9, 2007 to August 28, 2007 regarding Maxim's possible delisting from the NASDAQ in connection with Maxim's failure to file required periodic reports with the SEC. (Id. ¶¶ 314-19.) On August 28, 2007, according to Plaintiffs, the news surrounding Maxim's possible delisting caused Maxim's stock to fall 5.56% from $31.12 to $29.39 on a volume of 7,628,064, 28% more than the average volume during the previous 30 days. (Id. ¶ 320.)

The Court finds that these allegations fail to allege a causal connection between Maxim's January 31, 2007 Announcement and the August 28, 2007 fall in Maxim's stock price. Although Plaintiffs are not required to allege an immediate market reaction, they must allege a plausible connection between corrective information and Plaintiffs' economic loss. Here, the time between Maxim's corrective disclosure on January 31, 2007 and the next alleged price drop is eight months. Further, although it can be inferred from the allegations that Maxim's looming delisting may have been connected to the findings of Maxim's Special Committee disclosed on January 31, 2007,

11

Plaintiffs only allege a causal connection between reports of Maxim's potential delisting and a drop in stock price. The allegations do not provide a plausible connection between the revelation of Maxim's fraud on January 31, 2007, and the eventual price drop eight months later on August 28, 2007. Thus, the Court finds that Plaintiffs have not adequately alleged loss causation with respect to the January 31, 2007 Announcement.

Accordingly, the Court GRANTS Defendant Maxim's Motion to Dismiss as to Maxim's January 31, 2007 Announcement.

### c. Post-January 31, 2007 Disclosures

Defendant Maxim contends that Plaintiffs cannot allege loss causation in connection with any disclosures after the January 31, 2007 Announcement of the Special Committee findings. (Motion at 14.) Specifically, Maxim contends that its January 31, 2007 Announcement revealed that Defendants had engaged in backdating that had not been properly accounted for, and therefore its further disclosure on January 17, 2008 could not have revealed anything materially new to the market. (Motion at 14-15.)

Loss causation may be alleged through a series of partial disclosures. See In re Daou, 411 F.3d at 1026; In re Juniper Networks, Inc. Sec. Litig., 542 F. Supp. 2d 1037, 1050 (N.D. Cal. 2008). However, a disclosure that "does not reveal anything new to the market is, by definition, not corrective." In re Apollo Group, Inc. Sec. Litig., No. C 04-2147 PHX, 2008 WL 3072731, at *2 (D. Ariz. Aug. 4, 2008).

Here, the January 31, 2007 Announcement stated that Maxim had granted "in-the-money" stock options, Maxim "believed that accounting adjustments to previously issued financial statements" would be necessary, and that Maxim had "not yet determined the amount to be restated in any specific period" or "whether any tax consequences will give rise to additional tax liabilities." (Consolidated Complaint ¶ 311.) Plaintiffs allege that Maxim's January 17, 2008 Announcement revealed "the extensive magnitude of the restatement for the first time: *in the estimated range of $550 to $650 million.*" (Id. ¶ 330 (emphasis in original)). The January 17, 2008 Announcement also

12

revealed that, contrary to Defendants' previous representations, the scope of Maxim's restatements would not be limited to fiscal years 2000 through 2006, but would extend back to 1997. (Id.) According to Plaintiffs' allegations, Maxim's stock price fell 11.98% on January 17, 2008, from $23.62 to $20.80 on a 629% increase in volume compared to the average of the previous 30 days. (Id.) The following day, Plaintiffs allege Maxim's stock price fell an additional 7.07%, from $20.80 to $19.33, on an increased volume of 473%, as a result of the January 17, 2008 disclosure. (Id. ¶¶ 333-35.)

Based on these allegations, the January 17, 2008 Announcement revealed new information regarding the scope and magnitude of Defendants' fraudulent conduct that was not previously disclosed in the January 17, 2007 Announcement. Since Plaintiffs allege that declines in Maxim's stock price fell following, and as a result of, these revelations, the Court finds that Plaintiffs have adequately alleged loss causation with respect to the January 17, 2008 Announcement.

Accordingly, the Court DENIES Defendant Maxim's Motion to Dismiss as to Maxim's Post-January 31, 2007 disclosures.

### 2. Reliance

Defendant Maxim moves to dismiss Plaintiffs' Consolidated Complaint to the extent Plaintiffs relied on Maxim's post-January 31, 2007 financial statements since Maxim had disclosed that those statements would need to be restated and that they "should not be relied upon." (Motion at 17.)

Reliance is often equated with transaction causation. Dura, 544 U.S. at 341-42. Transaction causation requires an allegation that but for the deceptive act, the injured would not have entered into the securities transaction. Binder v. Gillespie, 184 F.3d 1059, 1065-66 (9th Cir. 1999). Reliance can be based on a "fraud-on-the-market," which allows for a rebuttable presumption of investor reliance based on the theory that investors presumable rely on the market price, which typically reflects the alleged misrepresentation or omission. Basic, Inc. v. Levinson, 485 U.S. 224, 245-47 (1988). The presumption "is premised on the fact that a misrepresentation has affected the

stock's price incongruently to the stock's true value." No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 947 (9th Cir. 2003). This presumption of reliance can be rebutted by a showing that "severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff." Basic, 485 U.S. at 248. One means of severing that link is to show that corrective information has been "transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression." Provenz v. Miller, 102 F.3d 1478, 1492-93 (9th Cir. 1996).

Here, the corrective information that Defendants contend vitiates a fraud-on-the-market presumption is the following statement from Maxim's January 31, 2007 Announcement:

> [T]he financial statements, and the related reports of its independent registered accountants, and all earnings press releases and similar communications issued by [Maxim] relating to the periods discussed above (fiscal years 2000 through 2005 and the related interim periods through March 25, 2006) should not be relied upon.

(Consolidated Complaint ¶ 311.) As is clear from Maxim's January 17, 2008 Announcement, however, the January 31, 2007 disclosure did not reveal the full scope of Defendants' fraud. The January 31, 2007 disclosure did not reveal to the market precisely which financial statements would be restated, nor did it reveal the magnitude of the restatements. Thus, the Court cannot find that, at the pleading stage, Maxim's January 2007 statement provided the market with sufficient information to counterbalance any misleading impression that was previously absorbed by the market, and on which investors may have relied.

Accordingly, the Court finds that Defendant Maxim is not entitled to a dismissal of Plaintiffs' fraud claim based on the Post-January 31, 2007 disclosures on the basis that Plaintiffs have failed to adequately alleged reliance.

**B.    Defendant Ruehle's Motion to Dismiss**

Defendant Ruehle moves to dismiss Plaintiffs' § 20(a) claim against him on the grounds that Plaintiffs do not sufficiently allege his control over Defendant Maxim's conduct, and that Plaintiffs' claim against him is time-barred by the statute of limitations. (Ruehle Motion at 2.)

14

### 1. Allegations of Control

Ruehle contends that Plaintiffs' § 20(a) claim against him should be dismissed because Plaintiffs' allegations are conclusory. (Ruehle Motion at 8-9.)

Under § 20(a) of the Securities Exchange Act of 1934, any person who controls a person liable for violating § 10(b) is jointly and severally liable for the violation. 15 U.S.C. § 78t(a). To adequately allege a § 20(a) violation, a plaintiff must state (1) a primary violation of federal securities law and (2) that the defendant exercised actual power and control over the primary violator. Howard v. Everex Sys., Inc. 228 F.3d 1057, 1065 (9th Cir. 2000). The SEC has defined "control" to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405. "[I]n order to make out a prima facie case, it is not necessary to show actual participation or the exercise of actual power; however, a defendant is entitled to a good faith defense if [it] can show no scienter and an effective lack of participation." Howard, 228 F.3d at 1065.

In this case, as discussed above, Plaintiffs have adequately alleged a primary violation under § 10(b). Thus, the Court proceeds to consider whether Plaintiffs have sufficiently pleaded Ruehle's control over Maxim. Plaintiffs allege the following with respect to their § 20(a) claim against Ruehle:

- Ruehle was Managing Director and Treasurer at Maxim. As a certified public accountant, he understood the accounting consequences of granting options at a price other than the fair market value on the date of the grant. According to a former cost accounting manager, Ruehle was the "architect of Maxim's stock option program and one of Defendant Gifford's closest advisors." (Consolidated Complaint ¶ 26.) Further, Defendant Gifford was one of the employees most involved in the selection of grant dates. (Id. ¶ 364.)

- Along with Gifford and Jasper, Ruehle was a major contributor to a letter submitted to the Financial Accounting Standards Board arguing that Maxim should not have to recognize a compensation expense for granting stock options "in-the-money." (Consolidated Complaint ¶ 56.)

- Maxim's September 30, 2008 Restatement revealed that Ruehle had knowledge of and participated in the backdating of options at Maxim. (Consolidated Complaint ¶ 64.)

15

- By virtue of Ruehle's high-level and management positions with Maxim, Ruehle had intimate knowledge of Maxim's fraudulent scheme, and participated in the selection of grant dates with the benefit of hindsight or prior to completion of the grant-approval process. (Consolidated Complaint ¶ 364.)

Plaintiffs allege that Ruehle had the power to, and did, direct the affairs of Maxim regarding its stock option backdating through his knowing participation in Maxim's backdating and, through his managerial position, control over the design of Maxim's options program, and relationship with Gifford. Such allegations are sufficient at the pleading stage. The intensely factual questions surrounding Ruehle's actual participation in the day-to-day affairs of Maxim relate to any good faith defense that Ruehle may choose to assert in response to Plaintiffs' allegations. See Howard, 228 F.3d at 1065. Thus, the Court finds that Plaintiffs have adequately alleged control under §20(a) as to Ruehle.

### 2. Statute of Limitations

Ruehle contends that Plaintiffs' § 20(a) claim against him is time-barred by the statute of limitations. (Ruehle Motion at 5-6.)

A complaint is properly dismissed under Rule 12(b)(6) where it is apparent on the face of the pleading that plaintiff's claims are barred by the statute of limitations. Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980). This is true even though expiration of the limitations period is an affirmative defense, because Federal Rule of Civil Procedure 9(f) "makes averments of time and place material for the purposes of testing the sufficiency of a complaint." Suckow Borax Mines Consol. v. Borax Consol., 185 F.2d 196, 204 (9th Cir. 1951). When a motion to dismiss is based on the running of the statute of limitations, "it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Jablon, 614 F.2d at 682. In contrast, where the statute of limitations question turns on factual issues that may be disputed, the question is more appropriately addressed at a later stage of the proceeding. See id.

Under the Sarbanes-Oxley Act of 2002, the statute of limitations for a claim brought under § 10(b) is two years from the discovery of facts constituting the violation but no more than five years

16

from the date of the violation. 28 U.S.C. 1658(b)(1)(2).[8] Since § 20(a) liability is derivative of a § 10(b) violation, the same statute of limitations is applied to a § 20(a) claim. In re Apple Computer Inc., Derivative Litigation, No. C 06-4128 JF, 2007 WL 4170566, at *7 (N.D. Cal. Nov. 19, 2007). The two-year statute of limitations is not subject to equitable tolling. See Durning v. Citibank, Int'l, 990 F.2d 1133, 1136-37 (9th Cir. 1993). The five-year outer limitations period serves as a statute of repose[9] in lieu of equitable tolling. See Lampf, 501 U.S. at 363 (construing the former statute, which imposed a one and three-year limitation).

Since the two-year statute of limitations is a "discovery statute," it begins to run on the date the plaintiff has actual or inquiry notice of the fraudulent misrepresentation at issue. Betz v. Trainer Wortham & Co., Inc., 519 F.3d 863, 869 (9th Cir. 2008) (amending Betz v. Trainer Wortham & Co., Inc., 486 F.3d 590 (2007)). To satisfy the actual notice standard, the defendant must show that the plaintiff actually discovered all of the elements which constitute a claim more than two years before filing an action against the defendant. See Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 951 (9th Cir. 2005); Betz, 519 F.3d 863, 865-67. To satisfy the inquiry notice standard, the defendant must show that the plaintiff had notice of facts sufficiently probative of fraud to cause an ordinary investor to conduct a further investigation; however, the statute of limitations does not begin to run until the date the ordinary investor exercising reasonable diligence, would have discovered the facts giving rise to his or her claim. Id. at 873. The Ninth Circuit calls this standard the "inquiry-plus-reasonable-diligence test." Id. at 870.

Here, Plaintiffs first filed their § 20(a) claim against Ruehle in the Consolidated Complaint on November 14, 2008. (See Docket Item No. 129.) Thus, their § 20(a) claim against Ruehle is time-barred only if a reasonably diligent investor would have discovered the facts giving rise to their

---

[8] In 2002, Congress passed the Sarbanes-Oxley Act extending the statute of limitations for § 10(b) actions. Pub.L. No. 107-204, 116 Stat. 745 (2002), codified in part at 28 U.S.C. § 1658(b).

[9] "A statute of repose is a fixed, statutory cutoff date, usually independent of any variable, such as claimant's awareness of a violation." Munoz v. Ashcroft, 339 F.3d 950, 957 (9th Cir. 2003) (citing Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991)).

17

claim against Ruehle before November 14, 2006. The parties do not dispute that the May 22, 2006 Merrill Lynch Report provided sufficient notice to cause reasonable investor to conduct a further investigation to determine whether any fraud took place.

Defendant Ruehle contends that the statute of limitations began to run no later than July 3, 2006, by which time Maxim had disclosed that its options dating practices were under investigation by the SEC and that the company's records were being subpoenaed by the United States Attorney's Office. (Ruehle Motion at 6.) Neither of those disclosures, however, provided notice to investors of the facts giving rise to a claim against Ruehle. Based on the Court's review of Plaintiffs' Consolidated Complaint, it is not clear from the allegations when the information regarding Ruehle's participation in the backdating scheme would have been discovered by a reasonably diligent investor.

Accordingly, the Court DENIES Defendant Ruehle's Motion to Dismiss.

### V.  CONCLUSION

The Court GRANTS in part and DENIES in part Defendant Maxim's Motion to Dismiss with leave to amend. The Court DENIES Timothy Ruehle's Motion to Dismiss. Any amended Complaint shall be filed on or before **August 3, 2009** and shall be consistent with the terms of this Order.

The parties shall appear for a Case Management Conference on **September 28, 2009 at 10 a.m.** On or before **September 18, 2009**, the parties shall file a Joint Case Management Statement. The Statement shall include, among other things, an update on the parties' mediation efforts and a good faith discovery plan with a proposed date for the close of all discovery.

Dated:  July 16, 2009

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Barbara A Podell bpodell@bm.net
Blair Allen Nicholas blairn@blbglaw.com
Blake M. Harper office@hulettharper.com
Chet Barry Waldman Cwaldman@wolfpopper.com
Christopher William Johnstone chris.johnstone@lw.com
Daniel H. Bookin dbookin@omm.com
Darren T. Kaplan dkaplan@chitwoodlaw.com
David Siegel dsiegel@irell.com
David Michael Friedman david.friedman@lw.com
Douglas Matthew Risen drisen@bm.net
Elizabeth Pei Lin elin@milberg.com
Garland Aycuff Kelley Gkelley@irell.com
Gregory Hull greg.hull@weil.com
Gregory D. Hull greg.hull@weil.com
Gregory E. Keller gkeller@chitwoodlaw.com
Heather Lynn Thompson heather.thompson@lw.com
Ira Neil Richards irichards@trrlaw.com
James M. Wilson Jwilson@chitwoodlaw.com
Jeff S. Westerman jwesterman@milberg.com
John A. Neuwirth john.neuwirth@weil.com
Jordan L. Lurie jlurie@weisslurie.com
Joseph S. Allerhand MCO_ECF@weil.com
Kenneth Israel Trujillo ktrujillo@trrlaw.com
Laurence M. Rosen lrosen@rosenlegal.com
Leigh Anne Parker lparker@wllawca.com
Lionel Z. Glancy info@glancylaw.com
Martin D. Chitwood Mchitwood@chitwoodlaw.com
Meredith N. Landy mlandy@omm.com
Michael M. Goldberg info@glancylaw.com
Nicole Catherine Lavallee nlavallee@bermandevalerio.com
Niki L. Mendoza nikim@blbglaw.com
Patricia I. Avery pavery@wolfpopper.com
Patrick C. Doolittle patrickdoolittle@quinnemanuel.com
Paul R. Kiesel Kiesel@kbla.com
Peter Arthur Binkow info@glancylaw.com
Peter Todd Snow psnow@omm.com
Phillip P Kim pkim@rosenlegal.com
Risha Nickelle Jamison risha.jamison@lw.com
Robert E. Sims bob.sims@lw.com
Sharon M. Bunzel sbunzel@omm.com
Shaunt Toros Arevian sarevian@irell.com
Sherrie R. Savett ssavett@bm.net
Takeo Austin Kellar takeok@blbglaw.com
Thad Alan Davis Thad.Davis@ropesgray.com
Timothy Alan DeLange timothyd@blbglaw.com
Timothy J. Burke service@ssbla.com

**Dated: July 16, 2009**                         **Richard W. Wieking, Clerk**

                                                 **By:  /s/ JW Chambers**
                                                      **Elizabeth Garcia**
                                                      **Courtroom Deputy**