BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
BLAIR A. NICHOLAS   (Bar No. 178428)
TIMOTHY A. DeLANGE   (Bar No. 190768)
NIKI L. MENDOZA (Bar No. 214646)
BENJAMIN GALDSTON   (Bar No. 211114)
MATTHEW P. JUBENVILLE (Bar No. 228464)
TAKEO A. KELLAR   (Bar No. 234470)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323
blairn@blbglaw.com
timothyd@blbglaw.com
nikim@blbglaw.com
beng@blbglaw.com
matthewj@blbglaw.com
takeok@blbglaw.com

*Attorneys for Lead Plaintiffs the Cobb County
Government Employees' Pension Plan, the
DeKalb County Pension Plan and the
Mississippi Public Employees Retirement
System*

CHITWOOD HARLEY HARNES LLP
MARTIN D. CHITWOOD
(Admitted *Pro Hac Vice*)
JAMES M. WILSON, JR.
(Admitted *Pro Hac Vice*)
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel:    (404) 873-3900
Fax:    (404) 876-4476
mchitwood@chitwoodlaw.com
jwilson@chitwoodlaw.com
            -and-
GREGORY E. KELLER
(Admitted *Pro Hac Vice*)
11 Grace Avenue, Suite 306
Great Neck, NY 11021
Tel:    (516) 773-6090
Fax:    (404) 876-4476
gkeller@chitwoodlaw.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

In re MAXIM INTEGRATED
PRODUCTS, INC., SECURITIES
LITIGATION

CASE NO. C-08-00832-JW

<u>CLASS ACTION</u>

**LEAD PLAINTIFFS' NOTICE OF
MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

Date:        July 12, 2010
Time:        9:00 a.m.
Courtroom: 8, Fourth Floor
Judge:      Hon. James Ware

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................................................... ii

I.     INTRODUCTION ..................................................................................... 2

II.    STATEMENT OF FACTS ........................................................................ 3

III.   ARGUMENT ............................................................................................ 4

    A.   This Court Should Grant Preliminary Approval Of The Proposed
    Settlement .......................................................................................... 4

        1.   Factors To Be Considered By The Court In The Preliminary
        Approval Of A Class Action Settlement................................... 4

            a)   The Settlement Was Vigorously Negotiated And Is
            Supported By Experienced Counsel ............................ 7

            b)   The Substantial Benefit Obtained For The Class, Especially
            In Light Of Serious Risks Of Lesser Or No Recovery,
            Supports Approval Of The Settlement........................... 8

            c)   The Stage Of The Proceedings And Discovery Completed
            Support Approval Of The Settlement ........................... 8

        2.   Proposed Notice To The Class Is Adequate ........................... 8

    B.   The Proposed Class Meets The Prerequisites For Class Certification Under
    Rule 23(a)........................................................................................ 10

        1.   Numerosity............................................................................. 11

        2.   Commonality........................................................................... 12

        3.   Typicality ............................................................................... 13

        4.   Adequacy ............................................................................... 14

        5.   Common Questions Of Law Predominate And A Class Action Is
        The Superior Method Of Adjudication ................................... 15

            a)   Common Questions Of Law And Fact Predominate ........... 15

            b)   A Class Action Is Superior To Other Available Methods
            For Resolving This Controversy.................................... 16

IV.   SCHEDULE OF SETTLEMENT EVENTS ........................................... 17

V.    CONCLUSION....................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)................................................................................................15

*In re Applied Micro Circuits Corp. Sec. Litig.*,
   2003 U.S. Dist. LEXIS 14492 (S.D. Cal. July 10, 2003) ................................14

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ...............................................11, 12, 13, 15

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) .........................................................7

*Browning v. Yahoo Inc.*,
   2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ........................................4

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................4, 5

*Crossen v. CV Therapeutics*,
   2005 WL 1910928 (N.D. Cal. Aug. 10, 2005) ........................................13

*Dukes v. Wal-Mart, Inc.*,
   509 F.3d 1168 (9th Cir. 2007) ...........................................................14

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ...............7

*In re Emulex Corp. Sec. Litig.*,
   210 F.R.D. 717 (C.D. Cal. 2002) .........................................................16

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   1992 WL 226321 (C.D. Cal. June 10, 1992) ..........................................7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..................................................... passim

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ..............................................................14

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ..............................................................11

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................................4, 5

*Hicks v. Morgan Stanley & Co.*,
2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003) ...............................................15

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .........................................................................9

*In re Infineon Techs. AG Sec. Litig.*,
2009 WL 3647892 (N.D. Cal. Mar. 6, 2009) ...........................................................11, 13

*In re Juniper Networks Sec. Litig.*,
264 F.R.D. 584 (N.D. Cal. 2009) ......................................................................... passim

*Kirkorian v. Borelli*,
695 F. Supp. 446 (N.D. Cal. 1988) ...............................................................................7

*In re LDK Solar Sec. Litig.*,
255 F.R.D. 519 (N.D. Cal. 2009) .......................................................................13, 14, 16

*Mendoza v. United States*,
623 F.2d 1338 (9th Cir. 1980) .....................................................................................8

*In re Micron Techs., Inc. Sec. Litig.*,
247 F.R.D. 627 (D. Idaho 2007) ................................................................................16

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ..............................................................................4, 5, 6

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ........................................................................................5

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 1991529 (N.D. Cal. June 30, 2007) .............................................................10

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......................................................................................9

*Santos v. Camacho*,
2007 U.S. Dist. LEXIS 1668 (D. Guam Jan. 9, 2007) ..................................................10

*Schaefer v. Overland Express Family of Funds*,
169 F.R.D. 124 (S.D. Cal. 1996) .................................................................................13

*Schwartz v. Harp*,
108 F.R.D. 279 (C.D. Cal. 1985) .................................................................................11

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .......................................................................................4

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................................7

*In re THQ Inc. Sec. Litig.,*
   2002 U.S. Dist. LEXIS 7753 (C.D. Cal. Mar. 22, 2002) ..................................................10, 12, 13, 16

*Torrisi v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir. 1993) ..................................................................................................................6

*Utility Reform Project v. Bonneville Power Admin.,*
   869 F.2d 437 (9th Cir. 1989) ................................................................................................................4

*Van Bronkhorst v. Safeco Corp.,*
   529 F.2d 943 (9th Cir. 1976) ................................................................................................................4

*In re VeriSign Inc. Sec. Litig.,*
   2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ......................................................10, 11, 14

*In re Veritas Software Corp. Sec. Litig.,*
   496 F.3d 962 (9th Cir. 2007) ................................................................................................................9

*Williams v. Costco Wholesale Corp.,*
   2010 WL 761122 (S.D. Cal. Mar. 4, 2010) ...............................................................................4, 5, 6

*In re Wireless Facilities, Inc. Sec. Litig.,*
   253 F.R.D. 630 (S.D. Cal. 2008) ...................................................................................................9, 13

*Yamner v. Boich,*
   1994 U.S. Dist. LEXIS 20849 (N.D. Cal. Sept. 15, 1994) ...............................................................13

*Zinser v. Accufix Research Inst., Inc.,*
   253 F.3d 1180 (9th Cir. 2001) ...........................................................................................................15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C. § 78u-4(a)(7) .............................................................................................................................9

Fed. R. Civ. P. 23 ............................................................................................................................. passim

Private Securities Litigation Reform Act of 1995 .................................................................9, 10, 14, 15

**OTHER AUTHORITIES**

7A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice & Procedure* § 1778
   (2d ed. 1986).......................................................................................................................................16

H.R. Conf. Rep. No. 104-369 (1995).......................................................................................................15

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on July 12, 2010, at 9:00 a.m., before the Honorable James Ware of the United States District Court for the Northern District of California, San Jose, California, Lead Plaintiffs the Cobb County Government Employees' Pension Plan, the DeKalb County Pension Plan and the Mississippi Public Employees Retirement System ("Lead Plaintiffs") will and hereby do move the Court for an order, pursuant to Fed. R. Civ. P. 23(e), preliminarily approving the Settlement in the above-captioned action, preliminarily certifying the action as a class action for settlement purposes, approving of the manner and form of notice to be sent to Class Members, and scheduling a hearing for consideration of final approval of the Settlement.  The Court previously granted with modification the Stipulation and [Proposed] Order Shortening Time Regarding Preliminary Approval of Settlement filed by Lead Plaintiffs and Maxim Integrated Products, Inc. ("Maxim" or the "Company"), and ordered that the hearing on this Motion is scheduled for July 12, 2010, at 9:00 a.m., and that the hearing to consider final approval of the Settlement is scheduled for September 27, 2010, at 9:00 a.m.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in Support Thereof, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

**STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))**

1.      Whether the Settlement of this action should be granted preliminary approval.

Lead Plaintiffs' Answer:  Yes.

2.      Whether this action should be certified as a class action for settlement purposes.

Lead Plaintiffs' Answer:  Yes.

3.      Whether the manner and form of notice to be sent to Class Members should be approved.

Lead Plaintiffs' Answer:  Yes.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiffs, the Cobb County Government Employees' Pension Plan, the DeKalb County Pension Plan and the Mississippi Public Employees Retirement System (collectively, "Lead Plaintiffs"), respectfully submit this Memorandum of Points and Authorities in support of their unopposed motion for preliminary approval of the Settlement in the above-captioned class action. Specifically, Lead Plaintiffs move this Court for entry of the [Proposed] Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Settlement Hearing ("Preliminary Approval Order"), submitted herewith.  The proposed Preliminary Approval Order will, among other things: (i) grant preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement dated as of June 18, 2010 (the "Stipulation" or "Settlement")[1]; (ii) certify the Class for settlement purposes only[2]; (iii) approve the form and manner of giving notice of the proposed Settlement to the Class; and (iv) confirm the date for the Final Approval Hearing.

## I.   INTRODUCTION

The proposed Settlement provides for the payment of $173 million in cash, plus interest (the "Settlement Fund"), for the benefit of the Class, in exchange for the dismissal and release of the claims against Defendants and their related parties.[3]   The Settlement was reached only after extensive litigation and negotiations.  Lead Plaintiffs and Lead Counsel – based upon their evaluation of the facts and applicable law and their recognition of the substantial risk and expense of continued litigation – submit that the proposed Settlement is in the best interests of the Class, providing a

---

[1] All capitalized terms that are not defined herein are defined in the Stipulation, which is submitted herewith.

[2] The "Class" is defined as all persons or entities who purchased the common stock of Maxim between April 29, 2003, through January 17, 2008, inclusive, and who were damaged thereby.  Excluded from the Class are Defendants Maxim, the Estate of John F. Gifford ("Gifford"), Carl W. Jasper ("Jasper"), and Timothy Ruehle ("Ruehle") (collectively "Defendants"); the officers and directors of the Company, at all relevant times; members of the immediate families of any Defendant and/or officer or director and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class are any persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

[3] "Defendants" includes Maxim, and the Individual Defendants, Carl W. Jasper, John F. Gifford, and Timothy Ruehle.

1   meaningful recovery for the Class now.   Accordingly, Lead Plaintiffs respectfully move for

2   preliminary approval of the Settlement.

3   **II.   STATEMENT OF FACTS**

4       This is a securities fraud class action alleging false and misleading statements and omissions in

5   violation of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-

6   5, and control person liability under § 20(a) of the Exchange Act.

7       On February 6, 2008, a class action complaint was filed against Maxim and certain Individual

8   Defendants in the United States District Court for the Northern District of California, San Jose

9   Division (Case No. C-08-00832-JW).   The complaint alleged, *inter alia*, that those defendants

10  improperly backdated stock option grants, which caused the Company to file materially false and

11  misleading financial statements.   Following a hearing, by Order dated May 15, 2008, this Court

12  appointed the Cobb County Government Employees' Pension Plan, the DeKalb County Pension Plan

13  and the Mississippi Public Employees Retirement System as Lead Plaintiffs and Bernstein Litowitz

14  Berger & Grossmann LLP and Chitwood Harley Harnes LLP as Lead Counsel (collectively, "Lead

15  Counsel").   [Docket No. 110].

16      On November 14, 2008, Lead Plaintiffs filed the operative complaint in this action, the

17  Consolidated Class Action Complaint ("Complaint"), asserting claims under §§ 10(b) and 20(a) of the

18  Exchange Act and Rule 10b-5 against Defendants.   [Docket No. 129].   Defendants moved to dismiss

19  the Complaint, and on July 16, 2009, the Court granted in part and denied in part Defendants' motion

20  to dismiss, dismissing claims for failure to plead loss causation with respect to alleged "corrective"

21  disclosures prior to January 17, 2008.   [Docket No. 205].   The Court denied Ruehle's motion to

22  dismiss the Complaint.   Defendants answered the Complaint on August 28, 2009.   [Docket Nos. 218;

23  219; 222; and 224].

24      On December 11, 2009, Lead Plaintiffs filed their motion for class certification pursuant to

25  Rule 23 of the Federal Rules of Civil Procedure.   [Docket No. 244].   On March 26, 2010, Defendants

26  filed their opposition to class certification.   [Docket No. 251].

27      During the course of the litigation, Lead Plaintiffs and Defendants conducted extensive

28  discovery, including the review by Lead Plaintiffs of more than one million pages of documents

produced by Defendants and third parties.  Lead Plaintiffs reviewed over 25 depositions taken in related actions and noticed an additional six witness depositions to be completed by Lead Plaintiffs before the close of discovery.  Additionally, Lead Counsel defended the depositions of Lead Plaintiffs and Lead Plaintiffs' loss causation expert witness and deposed Defendants' expert witness who offered a rebuttal opinion.

On June 10, 2009, Lead Plaintiffs and Defendants participated in a mediation session with the Honorable Daniel Weinstein (Ret.) in New York.  The parties reached an impasse during the in-person mediation, however, and did not agree to a settlement.

On May 3, 2010, after considerable negotiations, the Settling Parties executed a Memorandum of Understanding reflecting an agreement in principle to settle the Action for $173 million in cash to be paid by Maxim.

## III.   ARGUMENT

### A.   This Court Should Grant Preliminary Approval Of The Proposed Settlement

#### 1.   Factors To Be Considered By The Court In The Preliminary Approval Of A Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis.  When a proposed settlement precedes class certification, the court must examine the propriety of the certification and the fairness of the settlement contemporaneously in conjunction with preliminary approval.[4]  "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'"  *In re Heritage Bond Litig*., 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Browning v. Yahoo*

---

[4] *Williams v. Costco Wholesale Corp*., 2010 WL 761122, at *2 (S.D. Cal. Mar. 4, 2010) (preliminary approval order) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)).

1     *Inc.,* 2007 WL 4105971, at *13 (N.D. Cal. Nov. 16, 2007) ("public and judicial policies strongly favor

2     settlement of class action suits").

3         Accordingly, "in making its assessment pursuant to Rule 23(e), the Court's intrusion upon

4     what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be

5     limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of

6     fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken

7     as a whole, is fair, reasonable and adequate to all concerned." *Heritage Bond*, 2005 WL 1594403, at

8     *2 (quoting *Officers for Justice*, 688 F.2d at 625).   Recognizing that "[p]arties represented by

9     competent counsel are better positioned than courts to produce a settlement that fairly reflects each

10     party's expected outcome in litigation," courts favor approval of the settlement rather than

11     continuation of the litigation. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

12         At the preliminary approval stage, the "Court need only determine whether the proposed

13     settlement appears on its face to be fair" and "falls within the range of possible [judicial] approval."

14     *Williams*, 2010 WL 761122, at *5.   In considering whether to grant preliminary approval of a class

15     action settlement, courts make a preliminary evaluation of the fairness of the settlement prior to

16     issuing notice to the class and prior to holding a final approval hearing.   If the proposed settlement

17     falls within the range of what could be found "fair, adequate and reasonable," preliminary approval is

18     appropriate, notice may be given to the proposed class and a hearing for final approval can be

19     scheduled. *See id.*; *Class Plaintiffs*, 955 F. 2d at 1276.   "Given that some . . . factors cannot be fully

20     assessed until the Court conducts the Final Approval Hearing, 'a full fairness analysis is unnecessary

21     at this stage.'" *Williams*, 2010 WL 761122, at *5.

22         At this point, the Court need not answer the ultimate question:   whether the Settlement is fair,

23     reasonable and adequate.   When the Court makes this ultimate determination at a later point, the Court

24     will be asked to review the following factors:   the strength of plaintiffs' case; the risk, expense,

25     complexity, and likely duration of further litigation; the risk of maintaining class action status

26     throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of

27     the proceedings; the experience and views of counsel; and the reaction of Class Members to the

28

proposed settlement.  *Id.; see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) (citing *Officers for Justice*, 688 F. 2d at 625).

The Settling Parties here request only that the Court take the first step in the settlement approval process and grant preliminary approval of the proposed Settlement.  The proposed Settlement, which provides $173 million in cash for distribution to eligible Class Members after deduction of Court-awarded fees and expenses, is unquestionably beneficial to the Class.  Given the complexities of this action and the continued risks if the parties were to proceed, the Settlement represents a reasonable resolution and eliminates the risk that the Class might recover less or nothing at all.

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, Lead Plaintiffs, through the Claims Administrator, will notify Class Members of the Settlement by mailing the Notice and Claim Form to Class Members (*see* A-1 and A-2 to the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation).  Additionally, Lead Counsel will cause to be published the Summary Notice (Exhibit A-3) pursuant to the terms of the Preliminary Approval Order.  The Notice advises Class Members of the essential terms of the Settlement, information regarding Lead Counsel's fee and expense application, and the proposed plan for allocating the Settlement proceeds among Class Members.  The Notice also sets forth the procedure for objecting to the Settlement, Plan of Allocation or the request for an award of attorneys' fees and reimbursement of litigation expenses; sets out the procedure for opting out of the Class; and provides specifics on the date, time, and place of the Final Approval Hearing.  The proposed Preliminary Approval Order further requires Lead Plaintiffs to cause the Summary Notice to be published once in *The Investor's Business Daily,* a widely-disseminated national investors' news publication.  Lead Counsel believe that, because the Notice and Summary Notice fairly apprise Class Members of their rights with respect to the Settlement, they represent the best notice practicable under the circumstances and should be approved by the Court.

As summarized below, and as will be detailed further in a subsequent motion for final approval of the Settlement, a preview of the factors considered by courts in granting final approval of class action settlements demonstrates that this Settlement is well within the range of possible approval.

a)      **The Settlement Was Vigorously Negotiated**
**And Is Supported By Experienced Counsel**

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arm's-length negotiations is entitled to considerable weight.[5]   Here, the parties have been actively litigating this case for over two years since its commencement in 2008.   Lead Counsel conducted a sophisticated and extensive investigation into the claims asserted in the Complaint, including but not limited to multiple interviews with confidential witnesses, review of an extensive document production, depositions, and consultation with experts.   Thus, by the time settlement discussions began, Lead Counsel had a solid understanding of the strengths and weaknesses of the claims, both factually and legally, and were able to engage in a rigorous negotiation process with Defendants.   A "proposed settlement [that] appears to be the product of serious, informed, non-collusive negotiations" should be given effect.[6]

Additionally, throughout the litigation and settlement negotiations, Defendants have been represented by experienced counsel from prominent law firms.   Counsel for Defendants were equally well-informed regarding the case, and their representation of the Defendants was no less rigorous than Lead Counsel's representation of the Class.

As a result, the parties' settlement negotiations were hard-fought.   The negotiations required not only a formal mediation session – conducted under the direction of the Honorable Daniel Weinstein (Ret.), a retired federal judge and well-regarded mediator with extensive experience in the mediation of complex actions – but also extensive negotiations following the mediation session.

---

[5] *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *Kirkorian v. Borelli,* 695 F. Supp. 446, 451 (N.D. Cal. 1988).

[6] *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) ("As noted in the Manual for Complex Litigation, Second, '[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing . . . .'") (quoting Manual for Complex Litigation, Second § 30.44 (1985)).

1   With this background, there is no doubt that the Settlement was reached without collusion and

2   after good-faith bargaining among the parties, and this factor supports a finding that the Settlement is

3   fair, adequate, and reasonable for purposes of preliminary approval.

4          **b)      The Substantial Benefit Obtained For The Class,
                     Especially In Light Of Serious Risks Of Lesser Or**

5                    **No Recovery, Supports Approval Of The Settlement**

6   As set forth above, the Settlement provides for the recovery of $173 million in cash plus

7   interest to be allocated among Class Members after deduction for Court-approved fees and expenses.

8   If the action had continued, Lead Plaintiffs faced substantial risks, including establishing Defendants'

9   liability and the full amount of the Class' damages at summary judgment or trial.   In addition,

10  litigating this complex securities fraud class action to completion would result in significant expense

11  and delay.   This recovery, obtained in the face of the risk of a lesser recovery or no recovery at all,

12  supports approval of the Settlement.

13         **c)      The Stage Of The Proceedings
                     And Discovery Completed**

14                   **Support Approval Of The Settlement**

15  The stage of proceedings and discovery completed are additional factors supporting the

16  Settlement.   Here, Lead Counsel advanced the case through the drafting of the consolidated

17  Complaint, opposing Defendants' motions to dismiss, discovery, consultation with experts, a motion

18  for class certification, and preparation and participation in mediation before an experienced mediator.

19  In addition, Lead Counsel conducted a thorough investigation of the facts and claims of this case,

20  including review and analysis of the Company's SEC filings, annual reports, and other public

21  statements; interviews with confidential witnesses; review and analysis of over one million pages of

22  documents produced by Defendants and third-parties; and depositions.   Consequently, at the time the

23  parties agreed to the Settlement, Lead Counsel had a firm understanding of the strengths and

24  weaknesses of the claims.

25         **2.      Proposed Notice To The Class Is Adequate**

26  Notice of a proposed settlement must be given to class members in the most practicable

27  manner under the circumstances, describing "the terms of the settlement in sufficient detail to alert

28  those with adverse viewpoints to investigate and to come forward and be heard." *Mendoza v. United*

*States*, 623 F.2d 1338, 1352 (9th Cir. 1980); *see also* Fed. R. Civ. P. 23(c)(2)(B).  In addition, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), "every settlement notice must include a statement explaining a plaintiff's recovery."  *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008) (citing *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007)).

The proposed Notice to the Class (Exhibit A-1) more than satisfies this standard.   The proposed Notice informs the Class of:  (1) the amount of the Settlement – $173 million; (2) the reasons why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the attorneys' fees and expenses sought; (5) the name, telephone number, and address of representatives of Lead Counsel who will be reasonably available to answer questions from Class Members concerning matters contained in the Notice; (6) the right of Class Members to object to the Settlement or seek exclusion from the Class; and (7) the dates and deadlines for certain Settlement-related events.  15 U.S.C. § 78u-4(a)(7).

Here, the proposed Notice is adequate and complies with due process, Fed. R. Civ. P. 23, and the PSLRA.[7]  If the Court grants preliminary approval of the Settlement, the Notice will be mailed to all Class Members who appear on the transfer records of Maxim as having transferred to their names Maxim common stock during the time period between April 29, 2003, through January 17, 2008, inclusive (the "Class Period").

Further, Lead Counsel, through the Claims Administrator, will use reasonable efforts to give notice to nominee holders such as brokerage firms and other persons or entities who purchased and/or acquired Maxim common stock during the Class Period as record owners but not as beneficial owners.

---

[7] *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 962 (9th Cir. 2009) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'") (citations omitted); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal. 2007) (notice providing description of the nature of the action and issues involved in the litigation, concise and clear statement of definition of the class that was certified, procedure for requesting appearance at the settlement hearing, procedure for exclusion from the class, binding effect of the class judgment and deadline for filing objections approved).

Courts routinely find that comparable notice procedures meet the requirements of due process, Fed. R. Civ. P. 23, and the PSLRA.[8]

### B.   The Proposed Class Meets The Prerequisites For Class Certification Under Rule 23(a)

The Settling Parties have stipulated that the Court may, for settlement purposes only, certify a Class.  Stipulation ¶2.  The Ninth Circuit has long recognized that class actions may be certified for the purpose of settlement only.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

"Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants."  *In re VeriSign Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438, at *31-32 (N.D. Cal. Jan. 13, 2005).  Accordingly, courts liberally construe the requirements of Rule 23 in favor of certification for class action cases brought under the federal securities laws.  *In re THQ Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 7753, at *8 (C.D. Cal. Mar. 22, 2002).

Fed. R. Civ. P. 23(a) sets forth four prerequisites to class certification applicable to all class actions, including classes for the purpose of settlement:  (1) numerosity;  (2) commonality;  (3) typicality;  and (4) adequacy of representation.   In addition, the class must meet one of the three requirements of Rule 23(b).  Fed. R. Civ. P. 23; *see also* Manual for Complex Litigation, § 21.633 (4th ed. 2004).

Here, the proposed Class is defined in the Stipulation as follows:

> All persons and entities who purchased the common stock of Maxim between April 29, 2003, through January 17, 2008, inclusive, and who were damaged thereby. Excluded from the Class are Defendants Maxim, Gifford, Jasper and Ruehle;  the officers and directors of the Company, at all relevant times; members of the immediate families of any Defendant and/or officer or director and their legal representatives, heirs,

---

[8] *See, e.g., In re Portal Software, Inc. Sec. Litig.,* 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (dissemination of notice to all reasonably identifiable class members with summary notice published in *Investor's Business Daily* approved as best practical) (citing Manual for Complex Litigation (4th ed. 2004) § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if class members are not identifiable after reasonable effort")); *Santos v. Camacho*, 2007 U.S. Dist. LEXIS 1668, at *24-25 (D. Guam Jan. 9, 2007) (notice approved where each class member would be mailed a notice and notice would also be published, and where the proposed notice adequately described the facts of the case, the members of the class, the settlement terms, information regarding attorney fees, information on how class members could object to the settlement, and contact information for class counsel and defense counsel).

successors or assigns and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class are any persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

Generally, courts have found securities claims to be particularly well-suited for class action status because they allow for enforcement of the policies behind the securities laws in circumstances where there are numerous investors with small individual claims that otherwise would effectively be barred from litigation.  *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 911 (9th Cir. 1975).  This action is no exception, and as explained below, the Settling Parties agree that, for purpose of the Settlement, the Class should be certified as satisfying each of the requirements set forth above.

### 1.   Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable."  For purposes of Rule 23(a)(1), "[i]mpracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class."  *In re Juniper Networks Sec. Litig.*, 264 F.R.D. 584, 588 (N.D. Cal. 2009) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)).  "Numerosity does not presume a strict numerical cut-off.  Courts have certified classes whose membership sizes range from less than one hundred to over one hundred thousand."  *VeriSign,* 2005 U.S. Dist. LEXIS 10438, at *12.  "In cases involving securities traded on national stock exchanges, numerosity is practically a given."  *Id.*; *see also Juniper*, 264 F.R.D. at 588 ("Some courts have assumed that the numerosity requirement is met in securities fraud suits involving nationally traded stocks.").  Mathematical computation of class size is not a prerequisite for class certification, and the court may use common sense assumptions to support a finding of numerosity when the class is obviously large.  *See Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification.").

Here, Lead Plaintiffs estimate that the number of record holders of Maxim common stock throughout the Class Period number in the tens of thousands.  During the Class Period, Maxim's average weekly trading volume was 5.6 million shares.  Given the number and geographic distribution of the Maxim Class members, joinder of all Class members would be impracticable, and the proposed Class easily satisfies Rule 23's numerosity requirement.  *See Juniper,* 264 F.R.D. at 588 (numerosity met where weekly volume of trading was over 50 million shares); *In re Infineon Techs. AG Sec. Litig.,*

2009 WL 3647892, at *6 (N.D. Cal. Mar. 6, 2009) (finding numerosity where the weekly volume of trading "was frequently in the millions" and the class was presumed to have potentially thousands of members).

### 2.   Commonality

Fulfillment of Rule 23(a)(2) requires only the existence of "questions of fact and law which are common to the class."  The Ninth Circuit construes this requirement "permissively."  *Hanlon*, 150 F.3d at 1019.  Thus, "[a]ll questions of fact and law need not be common to satisfy the rule."  *Id*. Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*; *see also THQ*, 2002 U.S. Dist. LEXIS 7753, at *11 (noting that courts have found that a single issue common to the proposed class satisfies Rule 23(a)(2)).

As the Ninth Circuit explained in *Blackie*:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement. Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

524 F.2d at 902 (citations omitted).

"Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2)."  *Juniper*, 264 F.R.D. at 588.

Here, the Complaint describes a "common course of conduct" which demonstrates commonality for class certification purposes.  All Class members who purchased Maxim common stock were allegedly injured by Defendants' material misrepresentations and omissions, which artificially inflated the market price of Maxim's common stock.  The questions of law and fact common to all Class members include:

      i)      whether the federal securities laws were violated by Defendants' acts and omissions as alleged in the Complaint;

      ii)     whether Defendants participated in and pursued the common course of conduct and fraudulent scheme as alleged in the Complaint;

      iii)    whether Defendants acted with scienter;

iv)  whether the price of Maxim common stock was artificially inflated during the Class Period;

v)  whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, financial performance, and management of Maxim; and

vi)  to what extent the members of the Class have sustained damages and the proper measure of damages.

Courts have consistently certified classes in securities fraud cases involving similar common questions.  *See, e.g., Blackie*, 524 F.2d at 902-05; *Juniper*, 264 F.R.D. at 590; *Infineon*, 2009 WL 3647892, at *7; *Yamner v. Boich*, 1994 U.S. Dist. LEXIS 20849, at *9 (N.D. Cal. Sept. 15, 1994) ("These are the standard questions upon which federal courts have based the grant of class certification in numerous securities actions.").  In light of these questions of law and fact common to all members of the Class, Rule 23(a)(2) is easily satisfied here.  *See In re Wireless*, 253 F.R.D. at 635 (finding "core issue" in a securities litigation to be plaintiffs' "acquisition of [defendant's] common stock at artificially inflated prices").

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representatives parties are typical of the claims or defenses of the class."  *Juniper,* 2009 WL 3353321, at *5.  Typicality does not require that all members of the Class be *identically* situated. *See Hanlon*, 150 F.3d at 1020.  "The Ninth Circuit has held that typical claims need only be 'reasonably coextensive with those of absent class members; they need not be substantially identical.'"  *Crossen v. CV Therapeutics*, 2005 WL 1910928, at *4 (N.D. Cal. Aug. 10, 2005) (quoting *Hanlon,* 150 F.3d at 1020). Like commonality, typicality is interpreted permissively. *Juniper*, 264 F.R.D. at 588.  Consequently, differences in the amount of damages, the size or manner of purchase or holding, and the nature of the purchase or holding are insufficient to defeat class certification.  *See In re LDK Solar Sec. Litig.,* 255 F.R.D. 519, 530 (N.D. Cal. 2009) (certifying the class and holding that "potential complications regarding the computation of damages" do not defeat class certification); *THQ*, 2002 U.S. Dist. LEXIS 7753, at *12 ("In the securities context, the fact that the class representatives may have reviewed different documents from other members of the class or purchased different amounts of stock does not mean their claims are not typical of the class."); *Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 128-29 (S.D.

Cal. 1996) ("differences in the amount of damages, the size or manner of purchase, the nature of the purchase, and even the specific document influencing the purchase will not render a claim atypical in most securities cases").

Here, the Lead Plaintiffs and the members of the Class seek to recover damages for losses caused by the same alleged course of conduct by Defendants – dissemination to the investing public of materially false and misleading statements.  The claims of the Class and the Lead Plaintiffs are co-extensive and the same proof is needed to establish the claims which arise out of the same wrongful course of conduct.  The alignment of the Lead Plaintiffs' interests with those of the Class constitutes fulfillment of the purpose of the typicality requirement.  *See Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

### 4.   **Adequacy**

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In the Ninth Circuit, the adequacy requirement is met if plaintiffs: (1) "do not have conflicts of interest with the proposed class"; and (2) "are represented by qualified and competent counsel."  *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1185 (9th Cir. 2007) (citing *Hanlon*, 150 F.3d at 1020); *see also LDK Solar*, 255 F.R.D. at 532.  Here, the requirements for adequacy are satisfied.

Lead Plaintiffs' interests are co-extensive with the Class Members – no conflict exists.  Lead Plaintiffs sustained losses as a result of the same alleged material misrepresentations and omissions whereby the Class was allegedly injured.  *See VeriSign*, 2005 U.S. Dist. LEXIS 10438, at *29 (finding adequacy where lead plaintiffs' claims and the unnamed class members' claims do not conflict because they all arise out of the same set of facts); *In re Applied Micro Circuits Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 14492, at *14 (S.D. Cal. July 10, 2003) (finding adequacy requirement met where the interests of the class representative are co-extensive with the class because they bring identical claims under federal securities laws).

Lead Plaintiffs have been actively engaged in this Action, including supervising the progress of the litigation and responding to Defendants' written discovery and document requests.  Lead Plaintiffs are precisely the type of institutional investors Congress sought to empower when passing the PSLRA.

1   Congress enacted the PSLRA in large part to encourage sophisticated institutional investors, like Lead

2   Plaintiffs, to take control of securities class actions and "increase the likelihood that parties with

3   significant holdings in issuers, whose interests are more strongly aligned with the class of

4   shareholders, will participate in the litigation and exercise control over the selection and actions of

5   plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995).

6        Lead Plaintiffs retained skilled and experienced counsel.  There can be no doubt that Lead

7   Counsel are qualified and capable of prosecuting this action.  Lead Counsel Bernstein Litowitz Berger

8   & Grossmann LLP and Chitwood Harley Harnes LLP both have proven track records of success in

9   complex cases such as this one.  Importantly, Lead Plaintiffs, as proposed Class Representatives,

10  understand that they owe a fiduciary duty to all Class Members to provide fair and adequate

11  representation and to continue to work actively with Lead Counsel in order to obtain the largest

12  recovery for the Class consistent with good faith and meritorious advocacy.  Lead Plaintiffs have

13  fulfilled the Rule 23(a)(4) adequacy requirement.

### 5.    Common Questions Of Law Predominate And A Class Action Is The Superior Method Of Adjudication

16       Here, Lead Plaintiffs propose certification pursuant to Rule 23(b)(3), requiring that in addition

17  to meeting the prerequisites of Rule 23(a), Lead Plaintiffs must demonstrate that: (1) common

18  questions of law or fact predominate over individual questions; and (2) a class action is superior to

19  other available methods of adjudication.  *Juniper,* 264 F.R.D. at 590 (citing *Zinser v. Accufix Research

20  Inst., Inc.*, 253 F.3d 1180, 1188-89 (9th Cir. 2001)).  As discussed below, common questions of law

21  and fact predominate in this case, and a class action is the superior method to fairly and efficiently

22  litigate this securities action.

#### a)    Common Questions Of Law And Fact Predominate

24       Here, the Complaint alleges a "common course of conduct" of misrepresentations, omissions

25  and other wrongdoings that affect all members of the Class in the same manner, demonstrating

26  common questions predominate.  *See Blackie*, 524 F.2d at 902-03.  "[T]he predominance requirement

27  of *Rule 23(b)(3)* is readily met in securities-fraud class actions."  *Hicks v. Morgan Stanley & Co.*, 2003

28  U.S. Dist. LEXIS 11972, at *6 (S.D.N.Y. July 16, 2003) (emphasis in original) (citing *Amchem Prods.

1  *v. Windsor*, 521 U.S. 591, 625 (1997)); *THQ*, 2002 U.S. Dist. LEXIS 7753, at *30 ("Plaintiffs' claim –

2  which is based on a series of misrepresentations and market manipulations – clearly satisfies the

3  requirement that common questions predominate over those affecting individual members."). "When

4  common questions present a significant aspect of the case and they can be resolved for all members of

5  the class in a single adjudication, there is clear justification for handling the dispute on a representative

6  rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citing 7A Charles Alan Wright, Arthur

7  R. Miller and Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)); *see also LDK*

8  *Solar*, 255 F.R.D. at 530; *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002)

9  (granting motion for class certification where "[t]he predominant questions of law or fact at issue in

10  this case are the alleged misrepresentation Defendants made during the Class Period and are common

11  to the class").

12      Rule 23(b)(3) does not require commonality of all questions of fact or law, but merely

13  predominance.  The critical issues of fact and law raised which predominate in this Action are

14  common to all members of the Class – all regarding alleged false statements disseminated by

15  Defendants that damaged all Class Members.  There are no significant – let alone predominant –

16  individual issues to preclude class certification.

17          **b)      A Class Action Is Superior To Other**
                       **Available Methods For Resolving This Controversy**
18

19      Rule 23(b)(3) also requires that class resolution be "superior to other available methods for

20  fairly and efficiently adjudicating the controversy."  If Lead Plaintiffs and each of the Class Members

21  were to bring individual actions, each would be required to prove the same wrongdoing by Defendants

22  to establish liability.  *See In re Micron Techs., Inc. Sec. Litig.*, 247 F.R.D. 627, 635 (D. Idaho 2007)

23  ("If this action was not certified as a class, each plaintiff would have to establish the same fraudulent

24  scheme.  This repetitive process would 'unnecessarily burden the judiciary.'").  In sum, class

25  certification promotes judicial efficiency by permitting common claims and issues to be tried only

26  once with a binding effect on all parties.  *See, e.g., Juniper,* 264 F.R.D. at 592 ("Where thousands of

27  identical complaints would have to be filed, it is superior to concentrate claims through a class action

28  in a single forum.").  The superiority requirement is met here.

In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied.  Thus, there are no issues which would prevent the Court from certifying the Class for settlement purposes.

## IV.   SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiffs propose the schedule set forth below for the Settlement-related events in this case.  The proposed dates in the right column are respectfully requested assuming that preliminary approval is granted on or about July 12, 2010.

| Event | Proposed Due Date | Date/Deadline |
|---|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class Members[9] ("Notice Date") | 10 business days after entry of Preliminary Approval Order | July 26, 2010 |
| Deadline for publishing Summary Notice[10] | 10 business days after Notice Date | August 9, 2010 |
| Deadline for filing of papers in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses | 20 business days prior to Final Approval Hearing | August 27, 2010 |
| Deadline for submitting exclusion requests or objections | 15 business days prior to Final Approval Hearing | September 3, 2010 |
| Deadline for filing reply papers | 7 calendar days prior to the Final Approval Hearing | September 20, 2010 |
| Final Approval Hearing | At least 100 calendar days after filing of Settlement | September 27, 2010, 9:00 a.m., per the Court's June 17, 2010 Order |
| Deadline for submitting claim forms | 120 calendar days after the Notice Date | November 23, 2010 |

---

[9]  *See* Exhibits A-1 and A-2 to the Preliminary Approval Order (Exhibit A to the Stipulation).

[10]  *See* Exhibit A-3 to the Preliminary Approval Order (Exhibit A to the Stipulation).

1   **V.     CONCLUSION**

2          Based on the foregoing, Lead Plaintiffs respectfully move this Court to enter the [Proposed]

3   Preliminary Approval Order submitted herewith.

4   Dated:  June 18, 2010                    Respectfully submitted,

5                                            BERNSTEIN LITOWITZ BERGER
                                               & GROSSMANN LLP
6

7                                            _____*/s/ Blair A. Nicholas*_____
8                                                 BLAIR A. NICHOLAS

9                                            BLAIR A. NICHOLAS
                                             TIMOTHY A. DeLANGE
10                                           NIKI L. MENDOZA
                                             BENJAMIN GALDSTON
11                                           MATTHEW P. JUBENVILLE
                                             TAKEO A. KELLAR
12                                           12481 High Bluff Drive, Suite 300
                                             San Diego, CA 92130
13                                           Tel:    (858) 793-0070
                                             Fax:    (858) 793-0323
14

15                                           CHITWOOD HARLEY HARNES LLP
                                             MARTIN D. CHITWOOD
16                                           (Admitted *Pro Hac Vice*)
                                             JAMES M. WILSON, JR.
17                                           (Admitted *Pro Hac Vice*)
                                             2300 Promenade II
18                                           1230 Peachtree Street, N.E.
                                             Atlanta, GA 30309
19                                           Tel:    (404) 873-3900
                                             Fax:    (404) 876-4476
20                                                   -and-
                                             GREGORY E. KELLER
21                                           (Admitted *Pro Hac Vice*)
                                             11 Grace Avenue, Suite 306
22                                           Great Neck, NY 11021
                                             Tel:    (516) 773-6090
23                                           Fax:    (404) 876-4476

24                                           *Attorneys for Lead Plaintiffs the Cobb County*
                                             *Government Employees' Pension Plan, the DeKalb*
25                                           *County Pension Plan and the Mississippi Public*
                                             *Employees Retirement System*
26

27

28

---