BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
BLAIR A. NICHOLAS (Bar No. 178428)
TIMOTHY A. DeLANGE (Bar No. 190768)
NIKI L. MENDOZA (Bar No. 214646)
BENJAMIN GALDSTON (Bar No. 211114)
MATTHEW P. JUBENVILLE (Bar No. 228464)
TAKEO A. KELLAR  (Bar No. 234470)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:     (858) 793-0070
Fax:     (858) 793-0323
blairn@blbglaw.com
timothyd@blbglaw.com
nikim@blbglaw.com
beng@blbglaw.com
matthewj@blbglaw.com
takeok@blbglaw.com

CHITWOOD HARLEY HARNES LLP
MARTIN D. CHITWOOD
(Admitted *Pro Hac Vice*)
JAMES M. WILSON, JR.
(Admitted *Pro Hac Vice*)
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel:     (404) 873-3900
Fax:     (404) 876-4476
mchitwood@chitwoodlaw.com
jwilson@chitwoodlaw.com
           -and-
GREGORY E. KELLER
(Admitted *Pro Hac Vice*)
11 Grace Avenue, Suite 306
Great Neck, NY 11021
Tel:     (516) 773-6090
Fax:     (404) 876-4476
gkeller@chitwoodlaw.com

*Attorneys for Lead Plaintiffs the Cobb County
Government Employees' Pension Plan, the
DeKalb County Pension Plan and the
Mississippi Public Employees Retirement
System*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| In re MAXIM INTEGRATED PRODUCTS, INC., SECURITIES LITIGATION | CASE NO. C-08-00832-JW<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          September 27, 2010<br>Time:          9:00 a.m.<br>Courtroom:  8, Fourth Floor<br>Judge:        Hon. James Ware |

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.  INTRODUCTION ..........................................................................................................2

II.  PROCEDURAL HISTORY..........................................................................................4

III.  ARGUMENT ..................................................................................................................6

    A.  The Standards For Judicial Approval Of Class Action Settlements ................................6

    B.  The Settlement Meets The Ninth Circuit Standard For Approval ....................................7

        1.  Lead Plaintiffs' Case Was Strong, But Entailed Risks ....................................7

        2.  The Expense, Complexity, And Likely Duration Of Further Litigation....................................................................................................9

        3.  The Amount Obtained In Settlement .................................................................10

        4.  The Extent Of Discovery Completed, And The Stage Of The Proceedings .................................................................................................11

        5.  The Experience And Views Of Lead Counsel And Lead Plaintiffs ..................12

        6.  Reaction Of The Class Members To The Proposed Settlement .........................14

    C.  The Settlement Provided Adequate Notice To The Class .............................................15

    D.  The Plan Of Allocation Is Fair And Reasonable And Should Be Approved.................16

IV.  CONCLUSION.............................................................................................................18

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*In re Apple Computer Sec. Litig.,*
    1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .................................................................9

*Boyd v. Bechtel Corp.,*
    485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................12

*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ............................................................................17

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005) .........................................................................................8

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980) ..........................................................................12

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,*
    1992 WL 226321 (C.D. Cal. June 10, 1992) ........................................................12

*In re Gilat Satellite Networks, Ltd.,*
    2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) .......................................................9

*Glass v. UBS Fin. Servs., Inc.,*
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ........................................................12

*Glass v. UBS Fin. Servs. Inc.,*
    331 Fed. Appx. 452 (9th Cir. 2009) .........................................................12, 15, 17

*Granada Invest., Inc. v. DWG Corp.,*
    962 F.2d 1203 (6th Cir. 1992) ...........................................................................11

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .............................................................................7

*In re Heritage Bond Litig.,*
    2005 WL 1594403 (C.D. Cal., June 10, 2005) ................................................12, 13

*Howard v. Everex Sys., Inc.,*
    228 F.3d 1057 (9th Cir. 2000) .............................................................................8

*In re Immune Response Sec. Litig.,*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...............................................................15

*In re JDS Uniphase Corp. Sec. Litig.,*
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .......................................................9

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ...........................................................................11

*Lundell v. Dell, Inc.*,
 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ..................................................................14

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) ..........................................................................7, 11, 17

*Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................11, 14

*In re Nat'l Student Mktg. Litig.*,
 68 F.R.D. 151 (D.D.C. 1974) ................................................................................10

*Newman v. Stein*,
 464 F.2d 689 (2d Cir. 1972) .................................................................................10

*Officers for Justice v. Civil Serv. Comm'n*,
 688 F.2d 615 (9th Cir. 1982) ...........................................................................6, 7, 9

*In re Omnivision Techs., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................ passim

*In re Pac. Enters. Sec. Litig.*,
 47 F.3d 373 (9th Cir. 1995) ...............................................................................6, 12

*Petrovic v. AMOCO Oil Co.*,
 200 F.3d 1140 (8th Cir. 1999) ...............................................................................17

*In re Portal Software, Inc. Sec. Litig.*,
 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............................................................15

*In re Rambus Inc. Deriv. Litig.*,
 2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ........................................................7, 11, 12, 14

*Republic Nat'l Life Ins. Co. v. Beasley*,
 73 F.R.D. 658 (S.D.N.Y. 1977) ...............................................................................11

*Rodriguez v. W. Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) ................................................................................15

*In re Sumitomo Copper Litig.*,
 189 F.R.D. 274 (S.D.N.Y. 1999) ..............................................................................10

*In re Top Tankers, Inc. Sec. Litig.*,
 2008 WL 2944620 (S.D.N.Y. July 31, 2008) .................................................................9

*Torrisi v. Tucson Elec. Power Co.*,
 8 F.3d 1370 (9th Cir. 1993) ...................................................................................6

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
 718 F. Supp. 1099 (S.D.N.Y. 1989) ...........................................................................11

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...................................................................................6

*In re Washington Public Power Supply Sys. Sec. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989) ..........................................................................6

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)........................................................................................7

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910).................................................................................................6

*Woo v. Home Loan Group, L.P.*,
    2008 WL 3925854 (S.D. Cal. Aug. 25, 2008) .....................................................6, 7

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................17

## RULES AND OTHER AUTHORITIES

Fed. R. Civ. P.
    Rule 23 ............................................................................................................ passim

A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008) ...............................6

H.R. CONF. REP. 104-369 (1995) ...................................................................................14

*Manual For Complex Litig.* (Third) § 30.44 (1995) ............................................................14

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that on September 27, 2010, at 9:00 a.m., before the Honorable

3   James Ware of the United States District Court for the Northern District of California, San Jose,

4   California, Lead Plaintiffs the Cobb County Government Employees' Pension Plan, the DeKalb

5   County Pension Plan and the Mississippi Public Employees Retirement System ("Lead Plaintiffs")

6   will and hereby do move the Court for an order, pursuant to Fed. R. Civ. P. 23(e) and the Court's

7   Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Settlement Hearing

8   (Docket No. 276), for final approval of the proposed settlement of this action for $173 million in cash

9   and proposed Plan of Allocation for distribution of the net settlement proceeds.

10      This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities in

11   Support Thereof, the Stipulation of Settlement dated June 18, 2010 (Docket No. 271), all pleadings

12   and papers filed herein, arguments of counsel, and any other matters properly before the Court.

13

**STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))**

14      1.      Whether the Settlement of this action should be granted final approval.

15          Lead Plaintiffs' Answer:  Yes.

16      2.      Whether the Plan of Allocation for distribution of the net settlement fund should be

17   approved.

18          Lead Plaintiffs' Answer:  Yes.

19

20

21

22

23

24

25

26

27

28

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiffs, the Cobb County Government Employees' Pension Plan, the DeKalb County Pension Plan and the Mississippi Public Employees Retirement System (collectively, "Lead Plaintiffs"), respectfully submit this Memorandum of Points and Authorities in support of their motion for final approval of the Settlement in the above-captioned class action.  Specifically, Lead Plaintiffs request that the Court:  (i) grant final approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement dated June 18, 2010 (the "Stipulation" or "Settlement"); (ii) approve of the Plan of Allocation for distributing the net settlement fund to Class Members; and (iii) grant final certification of the Class as certified in this court's Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Settlement Hearing ("Preliminary Approval Order, Docket No. 276).[1]

## I.      **INTRODUCTION**

This is a securities fraud class action alleging false and misleading statements and omissions in violation of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5, and control person liability under § 20(a) of the Exchange Act.  Following over two years of litigation and extensive arm's-length settlement negotiations overseen by the mediator, the Honorable Daniel Weinstein (Ret.), Lead Plaintiffs have succeeded in reaching a proposed settlement for $173 million in cash.  The $173 million was deposited into an escrow account on July 23, 2010, and has been earning interest for the benefit of the Class.

Lead Plaintiffs submit this motion pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.  If approved, the Settlement will resolve all claims against Maxim, the Individual

---

[1] All capitalized terms that are not defined herein are defined in the Stipulation, which was filed with the Court on June 18, 2010 (Docket No. 271).  The "Class," as certified in the Court's Preliminary Approval Order is defined as all persons or entities who purchased the common stock of Maxim Integrated Products, Inc. ("Maxim") between April 29, 2003, through January 17, 2008, inclusive, and who were damaged thereby.  Excluded from the Class are Defendants Maxim, and the Estate of John F. Gifford ("Gifford"), Carl W. Jasper ("Jasper"), and Timothy Ruehle ("Ruehle") (collectively, the "Individual Defendants," with Maxim, "Defendants"); the officers and directors of the Company, at all relevant times; members of the immediate families of any Defendant and/or officer or director and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.  Also excluded from the Class are any persons who exclude themselves by filing a request for exclusion in accordance with the requirements set forth in the Notice.

Defendants and their related parties.  Lead Plaintiffs and Lead Counsel – based upon their evaluation of the facts, applicable law, and the decisions in this case – submit that the proposed Settlement is in the best interests of the Class and provides an excellent recovery for the Class now.[2]

As discussed below, in reaching the Settlement, Lead Counsel and Lead Plaintiffs considered the numerous risks in continued litigation against Defendants.  In addition, litigating this complex securities fraud class action to completion would result in significant expense and delay.  Even though Lead Counsel and Lead Plaintiffs believe that the action has substantial merit, it involved complex legal and factual issues that raised risks for summary judgment and at trial.  Lead Plaintiffs and their counsel believe that the monetary benefits the Settlement provides to the Class outweigh the risks of continued and protracted litigation in which the result was inherently uncertain.

On July 13, 2010, following a hearing, the Court granted preliminary approval of the Settlement.  Pursuant to the Preliminary Approval Order, beginning on July 27, 2010, Lead Counsel, through the Court-appointed claims administrator The Garden City Group Inc. ("Garden City Group"), caused the Court-approved Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") to be sent to potential Class Members.  *See* Declaration of Jennifer M. Keough Re:  Notice Dissemination and Publication ("Keough Decl."), ¶¶3-8, attached as Ex. B to the Joint Declaration.  In addition, the Court-approved Summary Notice was published in *The Investor's Business Daily* on August 6, 2010.  *Id.* ¶9.

Pursuant to the Preliminary Approval Order, the deadline for Class Members to file objections to the Settlement, Plan of Allocation or the fee and expense application, or to seek exclusion from the Class, will expire on September 3, 2010.  As of August 15, 2010, over 195,000 Notices have been sent

---

[2] *See* Joint Declaration of Blair A. Nicholas and Gregory E. Keller in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Motion for An Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Decl."), ¶3, submitted herewith; *see also* Joint Declaration of George W. Neville, J. Virgil Moon and Edmund J. Wall in Support of Class Action Settlement ("Lead Plaintiff Decl."), ¶23, attached as Exhibit ("Ex.") A to the Joint Decl.

to potential Class Members.  *Id.* ¶8.  To date, no Class Member has objected.[3]  While the deadline for submitting claim forms does not expire until November 24, 2010, the claims administrator has already received 234 claims representing a total of over 350,000 shares purchased during the Class Period.

## II.   PROCEDURAL HISTORY

A detailed description of the procedural history of the litigation, the investigation, document discovery, and depositions undertaken, the negotiation and substance of the Settlement, and the substantial risks and uncertainties of the litigation is contained in the accompanying Joint Declaration. A summary description is provided below.

On February 6, 2008, a class action complaint was filed against Maxim and certain Individual Defendants in the United States District Court for the Northern District of California, San Jose Division (Case No. C-08-00832-JW).  The complaint alleged, *inter alia*, that certain Defendants improperly backdated stock option grants, which caused the Company to file materially false and misleading financial statements.  Following a hearing, by Order dated May 15, 2008, this Court appointed the Cobb County Government Employees' Pension Plan, the DeKalb County Pension Plan and the Mississippi Public Employees Retirement System as Lead Plaintiffs and Bernstein Litowitz Berger & Grossmann LLP and Chitwood Harley Harnes LLP as Lead Counsel (collectively, "Lead Counsel").  [Docket No. 110].

On November 14, 2008, Lead Plaintiffs filed the operative complaint in this action, the Consolidated Class Action Complaint ("Complaint"), asserting claims under §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 against Defendants.  [Docket No. 129].  Defendants moved to dismiss the Complaint, and on July 16, 2009, the Court granted in part and denied in part Defendants' motion to dismiss, dismissing claims for failure to plead loss causation with respect to alleged "corrective" disclosures prior to January 17, 2008.  [Docket No. 205].  The Court also denied Ruehle's motion to

---

[3] In addition, the claims administrator has received only a total of twenty exclusion requests (eleven of which were received after the Keough Declaration was finalized).  Fifteen of the twenty exclusion requests indicate, however, that they are not from Class Members because they did not purchase or acquire any Maxim common stock during the Class Period, and thus there are only five potentially valid requests for exclusion from potential Class Members.  Those seeking exclusion will be listed in Ex. 1 to the proposed Final Approval Order which will be submitted to the Court following expiration of the deadline for seeking exclusion.

dismiss the Complaint.  Defendants answered the Complaint on August 28, 2009.  [Docket Nos. 218, 219, 222, 224].

On December 11, 2009, Lead Plaintiffs filed their motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.  [Docket No. 244].  On March 26, 2010, Defendants filed their opposition to class certification.  [Docket Nos. 251, 252, 256, 258].

During the course of the litigation, Lead Plaintiffs and Defendants conducted extensive discovery, including the review by Lead Plaintiffs of more than one million pages of documents produced by Defendants and third parties.  Lead Counsel participated in nine depositions – defending seven depositions of Lead Plaintiffs' representatives and one deposition of Lead Plaintiffs' loss causation expert witness, and noticing and deposing Defendants' expert witness who offered a rebuttal opinion.

On or about June 10, 2009, Lead Plaintiffs and Defendants participated in a mediation session with the Honorable Daniel Weinstein (Ret.) in New York.  The parties reached an impasse during the in-person mediation, however, and did not agree to a settlement.

On May 3, 2010, after considerable negotiations, the Settling Parties executed a Memorandum of Understanding reflecting an agreement in principle to settle the Action for $173 million in cash to be paid by Maxim.

Following this Court's issuance of the Preliminary Approval Order, on July 23, 2010, the Settlement Fund was deposited into an interest-bearing escrow account.  *See* Joint Decl. ¶3.  In addition, pursuant to the Court's Preliminary Approval Order, beginning on July 27, 2010, Lead Counsel, through the claims administrator, caused the Notice packet (including the Court-approved Notice, Claim Form and Opt Out Form) to be sent to potential Class Members, and the Summary Notice to be published in *The Investor's Business Daily.  See* Keough Decl. ¶¶3-9.

III.   **ARGUMENT**

    A.   **The Standards For Judicial
        Approval Of Class Action Settlements**

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in class action lawsuits.[4]   Indeed, class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.   It is beyond question that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."[5] "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."   4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 (4th ed. West 2008).

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action may be settled upon notice of the proposed settlement to class members, and a court finding, after a hearing, that it is fair, reasonable and adequate.   *See also Woo v. Home Loan Group, L.P.*, 2008 WL 3925854, at *3 (S.D. Cal. Aug. 25, 2008).   On a motion for approval of a class action settlement, "the Court must determine whether the interests of the class will be better served by resolution of the litigation than by continuation of it."   *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

A court's role in settlement approval is essentially twofold, determining whether the settlement: (i) is tainted by fraud or collusion; and (ii) is fair, reasonable and adequate.   *See Officers for Justice*, 688 F.2d at 625.   In exercising its discretion to approve the settlement of a class action, a district court should consider the following factors:  (1) "the strength of the plaintiff's case"; (2) "the

---

[4]   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").

[5]   *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).   The law always favors the compromise of disputed claims, including those asserted in stockholder class actions.   *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

risk, expense, complexity, and likely duration of further litigation"; (3) "the risk of maintaining a class action throughout the trial"; (4) "the amount offered in settlement"; (5) "the extent of discovery completed and the stage of the proceedings"; (6) "the experience and views of counsel"; and (7) "the reaction of the class members to the proposed settlement." *In re Rambus Inc. Deriv. Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)); *see also Omnivision*, 559 F. Supp. 2d at 1041; *Home Loan Group*, 2008 WL 3925854, at *3 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

In exercising its sound discretion, a district court should not adjudicate the merits of the case. As the Ninth Circuit has noted:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what **might** have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (bold emphasis added); *see also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) ("in order to avoid a trial, the judge must [not] in effect conduct one").

The presumption of reasonableness in this action is fully warranted because the Settlement is the product of arm's-length negotiations presided over by an experienced retired judge mediator. *See* Joint Decl., ¶¶60-63. It is the considered judgment of Lead Counsel that this Settlement is a fair, reasonable, and adequate resolution of the litigation and warrants this Court's approval. *See* Joint Decl. ¶3.

### B.   The Settlement Meets The Ninth Circuit Standard For Approval

#### 1.   Lead Plaintiffs' Case Was Strong, But Entailed Risks

Lead Plaintiffs' case involves federal securities claims asserted against Defendants under §§ 10(b) and 20(a) of the Exchange Act. To prevail on a § 10(b) claim, Lead Plaintiffs would have the

1    burden of establishing that:  (1) Defendants made a material misrepresentation or omission; (2) the

2    misrepresentation or omission was in connection with the purchase or sale of a security; (3) the

3    misrepresentation caused plaintiffs' loss; (4) plaintiffs relied on the misrepresentation or omission; (5)

4    Defendants acted with scienter; and (6) plaintiffs suffered damages.  *See Dura Pharms., Inc. v.*

5    *Broudo*, 544 U.S. 336, 341-42 (2005).  A § 20(a) control person claim requires that Lead Plaintiffs

6    establish:  (1) an underlying primary violation of the securities laws; and (2) the defendant exercised

7    actual power and control over the primary violator.  *Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1065

8    (9th Cir. 2000).

9           While Lead Plaintiffs were largely successful in prosecuting their claims against Defendants

10   and believe that their case is meritorious and supported by strong evidence, if the litigation had

11   continued, Lead Plaintiffs faced substantial risks, including establishing Defendants' liability and the

12   Class' full amount of damages at summary judgment or trial.  Defendants argued throughout the

13   litigation that Lead Plaintiffs would be unable to prove loss causation and reliance as to some or all of

14   the Class Period.  They raised these arguments in their motions to dismiss and their class certification

15   opposition, and would have no-doubt reasserted them at the summary judgment phase and at trial and

16   on appeal.  Specifically, Defendants argued in their motion to dismiss that Lead Plaintiffs failed to

17   sufficiently plead loss causation and reliance.  Lead Counsel, however, were able to largely defeat

18   Defendants' arguments when the Court largely sustained Lead Plaintiffs' Complaint under the

19   PSLRA's heightened pleading standards.

20          Defendants also argued in opposing class certification that the "fraud on the market"

21   presumption was rebutted by a lack of loss causation, and that the Class should exclude anyone who

22   purchased shares after the first partially corrective disclosure.  Through Lead Counsel's retention of,

23   and consultation with, Professor Gregg A. Jarrell, Lead Plaintiffs effectively countered these

24   contentions with Dr. Jarrell's Expert Report which included evidence that:  (1) Maxim's common

25   stock traded in an efficient market; (2) Defendants' alleged false statements and omissions were

26   material to investors; and (3) several of the misrepresentations and omissions caused losses for

27   shareholders who purchased common stock during the Class Period and held the shares through at

28   least one of the partially corrective disclosures.  These efforts, in part, led to additional settlement

1  negotiations, resulting in Lead Counsel obtaining the $173 million cash recovery for the Class.

2  If Defendants had been successful as to even some of their arguments – which they were at the

3  motion to dismiss stage with respect to all announcements prior to January 17, 2008 – total

4  recoverable damages would have been greatly reduced or eliminated altogether.  *See* Joint Decl. ¶¶53-

5  55.

6  Even if Lead Plaintiffs prevailed through summary judgment, risks to the Class remain.  Lead

7  Plaintiffs considered that certain contested issues would have been decided by a jury in the event of a

8  trial, including whether Defendants acted with an intent to mislead investors, whether the alleged

9  misrepresentations or omissions were false and material to investors, whether all of the Class

10  Members' losses were caused by the alleged misrepresentations or omissions, and the amount of

11  damages.  Even a meritorious case can be lost at trial.  *See In re JDS Uniphase Corp. Sec. Litig.*, 2007

12  WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs,

13  the action was dismissed and plaintiffs were ordered to pay defendants the costs of defending the

14  action).  Even success at trial does not eliminate the risk.[6]

### 2. The Expense, Complexity, And Likely Duration Of Further Litigation

15

16

17  The certainty of an immediate substantial recovery for Class Members weighs in favor of

18  settlement given the costs, delays and risks of possibly achieving a larger recovery at some point in the

19  future.  *See, e.g., Officers for Justice,* 688 F.2d at 626.  The established policy favoring settlement of

20  disputed claims is even stronger for class actions due to the associated expense, complexity, and

21  delays.  *See In re Top Tankers, Inc. Sec. Litig.*, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

22  Indeed, "[c]lass action suits readily lend themselves to compromise because of the difficulties of

23  proof, the uncertainties of the outcome, and the typical length of the litigation."  *Id.*

24  In this particular area of law, courts recognize that "[s]ecurities class actions are generally

25  complex and expensive to prosecute."  *In re Gilat Satellite Networks*, *Ltd.*, 2007 WL 1191048, at *10

26

27  [6]  For example, in *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an extended trial.  The court, however, overturned the verdict, entered judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporate defendant.

28

1   (E.D.N.Y. Apr. 19, 2007).  Thus, "in evaluating the settlement of a securities class action, federal

2   courts . . . 'have long recognized that such litigation is notably difficult and notoriously uncertain.'"  *In*

3   *re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (citations omitted).

4          There is no doubt that this securities class action involves complex factual and legal issues.  As

5   detailed in the Joint Declaration, the various risks and obstacles confronting the Class – including, for

6   example, establishing loss causation and reliance – would necessarily "flow from the complexities and

7   difficulties inherently involved in shareholder securities fraud litigation."  *In re Nat'l Student Mktg.*

8   *Litig.*, 68 F.R.D. 151, 155 (D.D.C. 1974).

9          If this Settlement had not been achieved, the action would likely have continued for years and

10  the ultimate result of further litigation cannot be foreseen.  Given the stakes involved in this litigation,

11  an appeal is virtually assured regardless of the result of trial.  Instead of the lengthy, costly, and

12  uncertain course of further litigation with Defendants, the Settlement provides an immediate and

13  certain recovery for the Class.  The Settlement clearly outweighs the substantial risks associated with

14  lengthy continued litigation.  *See* Joint Decl. ¶¶53-59.

### 3.      The Amount Obtained In Settlement

16         As set forth above, the Settlement provides for the recovery of $173 million in cash plus

17  interest allocated among Class Members after deduction for Court-approved fees and expenses.  As

18  noted above, the settlement amount was obtained as a result of arm's-length negotiations, including an

19  in-person mediation session with the Mediator.  *See* Joint Decl. ¶¶60-63.  The $173 million was

20  deposited into an escrow account on July 23, 2010, and has been earning interest for the benefit of the

21  Class.  *See id.* ¶3.

22         As discussed above, there were substantial risks with respect to establishing loss causation and

23  the Class' full amount of damages.  In addition, litigating this complex securities fraud class action to

24  completion would result in significant expense and delay.  This recovery, obtained in the face of the

25  risk of no recovery at all, is particularly supportive of approval of the Settlement.

26         The determination of a "reasonable" settlement is not susceptible to a mathematical equation

27  yielding a particularized sum.  Rather, "in any case there is a range of reasonableness with respect to a

28  settlement."  *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  In fact, a proposed settlement may

1   be acceptable even though it amounts to only a fraction of the potential recovery that might be

2   available to the class members at trial.  *See Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*, 221

3   F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th

4   Cir. 1998) (citations omitted)).  Here the substantial amount of the Settlement clearly falls within the

5   "range of reasonableness" and provides a tremendous benefit to the Class considering, *inter alia*, the

6   limitations on the Class' claims and other litigation risks.

7       While contested issues over damages might have yielded a smaller recovery after trial or none

8   at all, even the possibility that the Class "might have received more if the case had been fully litigated

9   is no reason not to approve the settlement."[7]  Indeed, "[t]he dollar amount of the settlement by itself is

10  not decisive in the fairness determination . . . Dollar amounts are judged not in comparison with the

11  possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses

12  of plaintiffs' case."  *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 718 F. Supp. 1099,

13  1103 (S.D.N.Y. 1989) (citation omitted).

14      Here, the Settlement confers an immediate and valuable cash benefit to Class Members.  Given

15  the complexities of the litigation and the continued risks if the parties were to proceed throughout

16  dispositive motions and trial, the Settlement presents a reasonable resolution of this action and

17  eliminates the risk that the Class might not otherwise recover.

18      **4.    The Extent Of Discovery Completed,
               And The Stage Of The Proceedings**

19

20      The stage of the proceedings and the amount of information available to the parties to assess

21  the strengths and weaknesses of their case is one factor that courts consider in determining the

22  fairness, reasonableness, and adequacy of a settlement.  *See Mego Fin.*, 213 F.3d at 459; *Rambus*,

23  2009 WL 166689, at *2.  As detailed in the Joint Declaration, Lead Counsel conducted an extensive

24  investigation and analysis of the claims.   Its efforts included, but were not limited to:   (1) an

25  exhaustive factual investigation into the events and circumstances underlying the claims, including

26

27  [7]   *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992) (citation omitted); *see
      also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 668 (S.D.N.Y. 1977) ("In evaluating the
28  proposed settlement, the Court is not to compare its terms with a hypothetical or speculative measure
      of a recovery that might be achieved by prosecution of the litigation to a successful conclusion.").

contacting and interviewing confidential witnesses and reviewing and analyzing all relevant publicly available media, analyst reports, and SEC filings and public statements; (2) drafting of a detailed consolidated complaint; (3) extensive briefing on Defendants' motions to dismiss; (4) obtaining evidence through discovery, including review and analysis of over one million pages of documents produced by Defendants and third-parties; (5) taking and defending nine depositions; (6) noticing and preparing for additional depositions; (7) drafting class certification briefing and supporting documents; and (8) preparing for and participating in mediation.  *See* Joint Decl. ¶¶20-38, 44-52.

Lead Counsel also retained and conferred with experts, including an experienced damages consultant regarding loss causation and class certification and other experts in specialized areas.  As a result, Lead Counsel gained a comprehensive understanding of the strengths and weaknesses of the case and possible recoverable damages.  *Id.* ¶¶39-43.

This Settlement is based upon adequate information and a sufficient investigation for an in-depth analysis of the Class' claims.

### 5.   The Experience And Views Of Lead Counsel And Lead Plaintiffs

Courts recognize that the opinion of experienced counsel supporting the settlement after vigorous arm's-length negotiations is entitled to considerable weight.[8]  This makes sense, as counsel is "most closely acquainted with the facts of the underlying litigation."[9]  This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Pac. Enters.*, 47 F.3d at 378.  Thus, "the trial

---

[8]  *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *see also In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *see also Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (quoting *Boyd*, 485 F. Supp. at 622).

[9]  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) (citations omitted); *Rambus*, 2009 WL 166689, at *3; *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009) (unpubl.).

judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage Bond*, 2005 WL 1594403, at *9 (internal citation omitted).

Here, the parties have been actively litigating this case for over two years since its commencement in February 2008. Lead Counsel have many years of experience in litigating securities fraud actions throughout the country, and in assessing the relevant merits of each side's case.[10] As discussed above and in the Joint Declaration, Lead Counsel conducted a sophisticated and extensive investigation into the claims asserted in the Complaint, including but not limited to multiple interviews with confidential witnesses, review of an extensive document production, nine depositions, and consultation with experts. Thus, by the time settlement discussions began, Lead Counsel had a solid understanding of the strengths and weaknesses of the claims, both factually and legally, and were able to engage in a rigorous negotiation process with Defendants.

Additionally, throughout the litigation and settlement negotiations, Defendant Maxim has been represented by experienced counsel from a prominent law firm, Weil, Gotshal & Manges LLP, and Defendants Gifford, Jasper and Ruehle have been represented by Sonnenblick, Parker & Selvers, P.C., Latham & Watkins, LLP, and O'Melveny & Myers LLP, respectively, firms with substantial experience in this type of litigation. The representation of the Defendants was no less rigorous than Lead Counsel's representation of the Class.

As a result, the parties' settlement negotiations were hard-fought. The negotiations required not only a formal mediation session – conducted under the direction of Judge Weinstein, a retired judge and well-regarded mediator with extensive experience in the mediation of complex actions – but also extensive negotiations following the mediation session. *See* Joint Decl. ¶¶60-63.

With this background, there is no doubt that the Settlement was reached without collusion and after good-faith bargaining among the parties, and this factor supports a finding that the Settlement is

---

[10]   *See* Firm Biographies of Bernstein Litowitz Berger & Grossmann and Chitwood Harley Harnes, attached, respectively, as Ex. 3 to the Declaration Of Blair A. Nicholas In Support Of Lead Counsel's Application For Attorneys' Fees And Reimbursement Of Litigation Expenses On Behalf Of Bernstein Litowitz Berger & Grossmann LLP ("Nicholas Decl.," Ex. D to Joint Decl.), and Ex. 5 to the Declaration Of Gregory E. Keller In Support Of Lead Counsel's Application For Attorneys' Fees And Reimbursement Of Litigation Expenses On Behalf Of Chitwood Harley Harnes LLP (Ex. E to Joint Decl.).

fair, adequate, and reasonable.  *See Lundell v. Dell, Inc.*, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving class action settlement that was "the result of intensive, arms'-length negotiations between experienced attorneys familiar with the legal and factual issues of this case").

Moreover, under the regime put in place with the enactment of the PSLRA, the Lead Plaintiffs' approval of a settlement should be accorded "special weight because [the Lead Plaintiffs] may have a better understanding of the case than most members of the class."  *DIRECTV*, 221 F.R.D. at 528 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.44 (1995)).  Congress enacted the PSLRA in large part to encourage sophisticated institutional investors to take control of securities class actions and "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel."  H.R. CONF. REP. 104-369, at *32 (1995).

Here, the Lead Plaintiffs are sophisticated institutional investors, and their active participation in the prosecution of this case and the approval of the Settlement is compelling evidence that the Settlement is fair, reasonable and adequate.  *See* Lead Plaintiff Decl. ¶¶20-22.

### 6.      Reaction Of The Class Members To The Proposed Settlement

As courts have noted, the reaction of the class to the proffered settlement is weighed in considering its adequacy.  *See Rambus*, 2009 WL 166689, at *3 (citation omitted).  Indeed, courts have explained that "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).

Pursuant to the Preliminary Approval Order, the deadline for Class Members to object to any aspect of the Settlement, the proposed Plan of Allocation or Lead Counsel's fee and expense request will expire on September 3, 2010.  In response to over 195,000 Notices being sent to potential Class Members, to date no Class Member has objected.  *See* Keough Decl. ¶¶8, 13.  The favorable reaction of the Class further supports approval of the Settlement.

1

2

### C.     The Settlement Provided
###        Adequate Notice To The Class

3

As required by the Court's Preliminary Approval Order, beginning on July 27, 2010, Lead

4   Plaintiffs (through the claims administrator) notified potential Class Members of the Settlement by

5   mailing a copy of the Notice packet to all persons (as stated in Maxim's transfer agent's records) who

6   purchased or acquired Maxim common stock during the Class Period.  *See* Keough Decl. ¶¶3-8.  In

7   addition, a Summary Notice was published in the national edition of *The Investor's Business Daily* on

8   August 6, 2010.  *Id.* ¶9.  The Notice and the Summary Notice also referenced the Internet websites for

9   Lead Counsel and the Claims Administrator where investors could view and download the Notice,

10  Proof of Claim form, and Opt Out form.  *Id.* ¶11.  This method of giving notice, previously approved

11  by the Court, is appropriate because it directs notice in a "reasonable manner to all class members who

12  would be bound by the propos[ed judgment]."  Fed. R. Civ. P. 23(e)(1).

13

The Notice packet (attached as Ex. A to the Keough Decl.) advises Class Members of the

14  essential terms of the Settlement, sets forth the procedure for objecting to the Settlement, and provides

15  specifics on the date, time and place of the final approval hearing.  It also provides instructions for

16  opting out of the Class, and provides the Court-approved Opt Out form.  The Notice also contains

17  information regarding Lead Counsel's fee application and the proposed plan of allocating the

18  settlement proceeds among Class Members.  Thus, the Notice provided the necessary information for

19  Class Members to make an informed decision regarding the proposed Settlement.

20

The Notice fairly apprises Class Members of their rights with respect to the Settlement and

21  therefore is the best notice practicable under the circumstances and complies with the Court's

22  Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.  *See In*

23  *re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *1 (N.D. Cal. Nov. 26, 2007) (approving

24  similar notice regimen); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D. Cal.

25  2007); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) ("Notice is

26  satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with

27  adverse viewpoints to investigate and to come forward and be heard") (citations omitted).

28

**D.**     **The Plan Of Allocation Is Fair And
Reasonable And Should Be Approved**

Lead Plaintiffs have proposed a plan to allocate the proceeds of the Settlement among Class Members who submit valid Proofs of Claim.  The objective of the proposed Plan of Allocation is to equitably distribute the Settlement proceeds to those Class Members who suffered economic losses as a result of the alleged false and misleading statements and omissions set forth in the Complaint.  While all Class Members' claims arise from the same false or misleading statements, the amount of such potential damages varies.  Differences of this nature among class members are common in securities litigation and are commonly addressed by a plan of allocation in class actions.  *Cf. Glass*, 331 Fed. Appx. at 455 (unpubl.) (affirming plan for distributing settlement proceeds that treats various class members differently based on differences in recoverable damages).

Lead Plaintiffs considered different approaches for allocating the recovery to claimants.  For the purpose of allocation, Lead Plaintiffs engaged Forensic Economics, Inc. to consult in drafting the plan to allocate the settlement proceeds among claimants, and to provide an opinion on whether the Plan of Allocation is fair and reasonable.  The Declaration of Howard J. Mulcahey ("Mulcahey Decl."), attached as Ex. C to the Joint Decl., explains the methods used to determine the Recognized Losses and the basis for the analysis.  As explained in the Class Notice, a "Recognized Loss" will be calculated for each purchase or acquisition of Maxim common stock during the Class Period as reflected on the Claim Forms timely submitted by Class Members.  The calculation of the Recognized Loss will depend upon several factors, including how many shares were purchased, when and at what price they were purchased or otherwise acquired, and when and at what price they were sold.[11]

---

[11] As explained in the Keough Declaration, Garden City Group reviewed the Plan of Allocation. Garden City Group determined that it is able to administer the settlement based on the Plan of Allocation, and has administered numerous other securities class action settlements with similar plans of allocation that are based on the amount of calculated artificial inflation in the stock price during the relevant class period. *See* Keough Decl. ¶14.  Pursuant to the Court's Preliminary Approval Order, Class Members are required to submit valid Proof of Claim forms and supporting documentation in order to be potentially eligible to participate in the distribution of the settlement funds.  Such supporting documentation typically includes brokerage confirmation slips, or other documentation as sufficiently reliable to establish the transactions in the relevant security while preventing acceptance of fraudulent claims.  If or when Garden City Group receives Proof of Claim forms without sufficient

1    Assessment of the adequacy of a plan of allocation in a class action is governed by the same

2    standards of review applicable to the settlement as a whole – the plan need be only fair, reasonable and

3    adequate.  *See Omnivision*, 559 F. Supp. 2d at 1045; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284-

4    85 (9th Cir. 1992).  "An allocation formula need only have a reasonable, rational basis, particularly if

5    recommended by experienced and competent class counsel."  *In re WorldCom, Inc. Sec. Litig.*, 388 F.

6    Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted).

7    The goal of an equitable plan of allocation is fairness to the class as a whole, taking into

8    consideration the strengths of claims based upon available facts and evidence, as well as the size of the

9    fund to be distributed.  A plan of allocation that allocates settlement funds to class members based on

10   the extent of their injuries or the strength of their claims is reasonable.  *See Omnivision*, 559 F. Supp.

11   2d at 1045; *see also Glass*, 331 Fed. Appx. at 454; *Mego Fin.*, 213 F.3d at 461; *Petrovic v. AMOCO*

12   *Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan where class members

13   received different levels of compensation and finding that no subgroup was treated unfairly).

14   The proposed Plan of Allocation in this case is based on such principles and therefore falls

15   within the mainstream of allocation plans routinely approved by courts.  It was prepared in

16   consultation with Lead Plaintiffs' damages consultant, tracks the theory of damages asserted by Lead

17   Plaintiffs, is consistent with Lead Plaintiffs' expert report submitted in connection with class

18   certification, and is fair, reasonable and adequate to the Class as a whole.  *See* Mulcahey Decl. ¶¶3-30.

19   In addition, the proposed Plan of Allocation was adequately explained in the Notice sent to Class

20

21

---

22   documentation, the claimant will be advised of the deficiency and we will attempt to work with the

claimant in order for them to remedy the deficiency.  *See* Keough Decl. ¶15.  Prior to distributing the

23   net settlement fund, pursuant to paragraph 26 of the Stipulation, Lead Counsel will apply to the Court

for a Class Distribution Order which will, among other things, approve of Garden City Group's

24   administrative determinations concerning the acceptance and rejection of the Claims submitted, and

approve of payment of Garden City Group's expenses for the notice and claims administration

25   process.  Garden City Group will submit an additional declaration at that time updating the Court on

the claims administration process.  In the event that the Court approves of one or more distribution of

26   the net settlement fund, and distributions are completed to the point where it is no longer economically

feasible to continue making distributions, Lead Plaintiffs will request that the Court approve of an

27   appropriate recipient for a *cy pres* donation for the remaining amount following payment of all

outstanding costs and expenses.  *See* Keough Decl. ¶16.

28

Members.  Notably, in response to over 195,000 Notices, as of the date of this filing, there have been no objections to the proposed Plan of Allocation.  *See* Keough Decl. ¶¶8, 12, 13.

## IV.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation.

Dated:  August 30, 2010

Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP


        */s/ Blair A. Nicholas*
        BLAIR A. NICHOLAS

BLAIR A. NICHOLAS
TIMOTHY A. DeLANGE
NIKI L. MENDOZA
BENJAMIN GALDSTON
MATTHEW P. JUBENVILLE
TAKEO A. KELLAR
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323


CHITWOOD HARLEY HARNES LLP
MARTIN D. CHITWOOD (Admitted *Pro Hac Vice*)
JAMES M. WILSON, JR. (Admitted *Pro Hac Vice*)
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309
Tel:    (404) 873-3900
Fax:    (404) 876-4476
        -and-
GREGORY E. KELLER (Admitted *Pro Hac Vice*)
11 Grace Avenue, Suite 306
Great Neck, NY 11021
Tel:    (516) 773-6090
Fax:    (404) 876-4476

*Attorneys for Lead Plaintiffs the Cobb County Government Employees' Pension Plan, the DeKalb County Pension Plan and the Mississippi Public Employees Retirement System*